| | |
|---|---|
| **From:** | Tatiana Cohen <Tatiana.Cohen@sapinda.com> |
| **Sent:** | Monday, December 16, 2013 4:01 PM |
| **To:** | Eli Sabag; Jonathan Raz (jonraz@gmail.com) |
| **Subject:** | FW: GPS Global Term Sheet (2013_12_11_LW).doc    [IWOV-EBN_DMS.FID176979] |
| **Attachments:** | EBN 1035713_3 GPS Global LOI - EBN - 15 December 2013 -    GD .DOCX |

Dear Eli and Jonathan,
Please find attached our response to the LOI.

We have been able to accept most of your changes, with the exception of:
- 10. transaction related costs in the company remain the responsibility of the seller --> this is common practice and should for whatever reason there be no closing, the costs will remain with the seller. Each party funds their own expenses until closing.
- reverted to original clause 13

and added clarification:
- specifying that 2.c does not include the units referred to under 2.b --> this was always the understanding, ie we do not pay twice for the same event.
- specify under 2. that value of the shares will be 20USD --> avoids any misunderstanding and 'freezes' the amount of shares you will receive, even when price would increase beyond 20 between now and closing. Also allows us to prep the S-1 with the exact number of shares to be registered.

I hope this is clear and happy to discuss tomorrow morning.
Kind regards,
Tatiana

The information contained in this communication from tatiana.cohen@sapinda.com sent at 2013-12-16 21:01:24 is confidential and may be legally privileged. It is intended solely for use by eli@gpsglobal.co.il and others authorised to receive it. If you are not eli@gpsglobal.co.il you are hereby notified that any disclosure, copying, distribution or taking action in reliance of the contents of this information is strictly prohibited and may be unlawful. The information contained in this E-Mail is confidential and may be legally privileged. If you are not the intended recipient please delete in its entirety. Messages sent via this medium may be subject to delays, non-delivery and unauthorised alteration. The information contained herein or attached hereto has been obtained from sources we believe to be reliable but we do not represent that it is accurate or complete. Any reference to past performance should not be taken as an indication of future performance. The information contained herein or attached hereto is not to be construed as an offer or solicitation to buy or sell any security, instrument or investment. Sapinda Holding BV, its subsidiaries or any affiliated company, may have an interest, position, or effect transactions, in any investment mentioned herein.

Sapinda Holding BV, its subsidiaries or any affiliates are not licensed to provide regulated financial services in any jurisdiction.



December 10, 2013

VIA: Eli@GPSGlobal.co.il

Mr. Eli Sabag
Chairman
GPS Global
Tel Aviv
Israel

RE: Non-Binding Letter of Intent

Dear Eli:

This non-binding Letter of Intent (the "LOI"), which sets forth our mutual understanding and intent regarding the principal terms and conditions of the proposed acquisition (the "Acquisition") by SecureAlert, Inc., a Utah corporation (the "Buyer"), of 100% of the equity interests and voting rights (the "Stock") of GPS Global, a company incorporated in Israel (the "Company"). For purposes of this LOI, the Seller's shareholders are collectively referred to as the "Sellers."

While we anticipate that all of the terms and conditions will be fully set forth in a later definitive purchase agreement, we confirm that the proposed terms of the Acquisition are as follows:

1. Basic Transaction. The Sellers would sell all of the issued and outstanding Stock to the Buyer at the price (the "Purchase Price") set forth below in Paragraph 2, free and clear of all liens, security interests and other encumbrances. This assumes that there are no other issued and outstanding equity interests of the Company, and there are no outstanding or contingent rights to acquire equity interests of the Company. It is further understood that following the closing there will be no remaining shareholder loans due. The Acquisition shall be structured such that the shareholder loans shall be repaid from the consideration received.

2. Purchase Price. The total consideration for the Acquisition shall be $8 million and will be settled as follows:

   (a) $5.0 million on the closing date, as follows:
   1. $0.5 million in cash;
   2. $1.6 million in freely tradeable SecureAlert equity;
   3. $2.9 million in SecureAlert equity, carrying a 2 year trading restriction which will be held in escrow for a period of 6 months following closing to allow for confirmation of the product performance of the Company's unit;

   (b) $1.0 million in SecureAlert equity following the signing of the Thailand contract for a minimum of 2,000 units;

   (c) $2.0 million in SecureAlert equity following the successful installation of 2,000 recurrent revenue generating units, excluding the units referenced under (b).

Mr Eli Sabag
Chairman
GPS Global
December 10, 2013
Page 2 of 4

All SecureAlert equity issued shall be registered for trade immediately after its issuance. The ~~trade~~ price per SecureAlert share~~, as of the date hereof is~~will be valued at $20——————. The shares issued under this agreement shall be identical to such publicly traded shares.

3. Exclusivity.   During the period from the date that this LOI is executed by the Company and Sellers (the "Signing Date") and through and including the date that is 45 days after the date that this LOI is executed by the Company and Sellers (the "Target Date"):

    (a) neither the Company nor the Sellers will, directly or indirectly, through any representative or otherwise solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept, or consider any proposal of any other person relating to the acquisition of the Stock or the Company, the assets or business, in whole or in part, whether directly or indirectly, through purchase, merger, consolidation, or otherwise;
    (b) the Company and the Sellers will immediately notify the Buyer regarding any contact between the Sellers, the Company or its respective representatives any other person regarding any such offer or proposal or any related inquiry; and
    (c) the Company and the Sellers will inform any such interested party that the Company and the Sellers are unable to entertain any offer during such period.

4.   Confidentiality: Public Announcements.           Each of the Company, Sellers and Buyer shall maintain the confidentiality of and shall not disclose any of the terms of this LOI (including its existence or the fact that the parties are in negotiations) and any other information related to the other party or its representatives or affiliates except to the extent required by law (provided that any party so required shall provide the other party with the contents of such disclosure as soon as reasonably practicable prior to making such disclosure).  It is understood that all press releases or other public communications of any sort relating to this LOI or the transactions contemplated herein, including the method of release for publication thereof, shall be subject to the approval of each of the parties hereto; provided, however, that the parties shall be entitled to make such disclosures as may be required pursuant to applicable law or the lawful requirements of any governmental agency or by order of a court of competent jurisdiction.

5.   Conditions to Closing.  The closing of the Acquisition would be subject to the satisfaction of various conditions, including:

    (a) the parties shall have negotiated and executed the Definitive Agreement (as hereinafter defined) and any other documents described in this LOI;
    (b) the completion by the Buyer and the Buyer's representatives of its due diligence review and investigation of the Company and its assets and liabilities;
    (c) the absence of any material adverse change in the business, condition or prospects of the Company (financial or otherwise), or its relationship with customers, vendors and independent consultants/contractors prior to the closing;
    (d) the receipt of all contractual, and governmental consents and approvals necessary (if any) in connection with the Acquisition;
    (e) each of the parties shall have received all required corporate approvals of the Acquisition.

6.   Other Agreements to be Executed at Closing.   In addition to the Definitive Agreement (as hereinafter defined), the following agreements would be entered into at the closing (in each case in form and substance satisfactory to the parties thereto):

Mr Eli Sabag
Chairman
GPS Global
December 10, 2013
Page 3 of 4

    (a) Each seller would execute a non-compete agreement in favor of Buyer; and
    (b) The senior management and selected contractors of Company would enter into regular employment agreements with the Company; and
    (c) Eli Sabag shall be nominated as a Director of the Buyer and shall remain as the CEO of the Company for a period of no less than 24 months. His total annual base remuneration will be [$0.2] million with an additional variable bonus potential of 50%.
    (d) The Buyer shall provide a funding agreement of up to $3.0 million to the Company to ensure sufficient working and operating capital is available to allow the company to deliver on its objectives

7.    <u>Access</u>.    During the period from the Signing Date through and including the earlier of (a) the Target Date, or (b) the date on which the Buyer provides the Company and Sellers with written notice that negotiations toward a Definitive Agreement are terminated (the "Termination Date"), the Company and the Sellers will afford the buyer, and its employees, agents, representatives, accountants, actuaries, consultants, and counsel access to their property, books, records, documents, premises, employees, customers, suppliers and independent accountants for the purpose of a due diligence investigation. Such access shall be at reasonable times during normal business hours, with reasonable prior notice to the Sellers and the Company. Buyer will work cooperatively with the Sellers and the Company to conduct such investigation in as efficient manner as is reasonably possible to permit the Company to continue to operate in the ordinary course with limited interruptions. Buyer shall not contact any employee, customer or other business relation of the Company without the prior written consent of the Company. A copy of the Buyer's Due Diligence – Request for Materials enclosed herewith and it is anticipated that the Buyer will conclude its due diligence investigation on or before the 45th day after the <u>date hereof</u>. Buyer intends to use third parties to assist with its due diligence investigation and will so advise the Company and the Sellers of the identities of such advisors upon engagement of the advisors. The Buyer and its advisors shall execute an NDA in a form agreed by the Company prior to any disclosure.

8.    <u>Conduct of the Business</u>.    During the period from the Signing Date through and including the Termination Date, the Sellers shall cause the Company to operate the business in the ordinary course, consistent with past practice, and to refrain from any extraordinary transactions.

9.    <u>Cooperation and Closing</u>.    During the period from the Signing Date through and including the Target Date (or if earlier, the Termination Date), the Buyer, the Company and the Sellers will cooperate with each other and proceed in good faith toward the completion of the proposed transaction(s) described herein. The parties are interested that the Closing of the transaction shall occur no later than 45 days from the date of acceptance of this LOI by the Sellers.

10.    <u>Costs</u>. The Buyer and the Sellers will be responsible for and bear all of their own respective costs and expenses (including any broker's, bankers' or finder's fees and the expenses of its attorneys and other representatives) incurred at any time in connection with pursuing or consummating the Acquisition. Each party shall indemnify and hold harmless the other from expenses related to brokerage, banker or finder's fees or agent's commissions and any similar charges in connection with the transaction for which such party is responsible. All transaction related expenses incurred by the Company shall be the responsibility of the Sellers~~Company~~.

11.    <u>Definitive Agreement</u>. Upon execution of this LOI, the Buyer, the Sellers and the Company mutually agree to proceed in good faith toward negotiation and execution of a definitive agreement (the

Mr Eli Sabag
Chairman
GPS Global
December 10, 2013
Page 4 of 4

"Definitive Agreement"), which will provide for the Acquisition, and contain representations, warranties, and indemnifications customary for transactions of this nature. This LOI is intended to be a guide in drafting the Definitive Agreement and should not be construed to preclude other provisions that are consistent with the terms specified in this LOI.

12.  [Reserved]

13.  Non-Binding. It is expressly understood and agreed that this is a letter of intent only and that no liability or obligation of any nature whatsoever is intended to be created between the parties hereto; provided that the parties do intend to be legally bound by the provisions of paragraphs 3,4, 7, 8, 9, 10,11, and 12 (the "Binding Provisions").

If you are in agreement with the foregoing, please sign and return one copy of this LOI to the undersigned, which thereupon will constitute our agreement with respect to its subject matter. If you do not return a signed copy to the undersigned on or before December 15, 2013, this LOI shall terminate and be without further force or effect.

This LOI may be executed in one or more counterparts, each of which will be deemed to be an original copy of this LOI and all of which, when taken together, will be deemed to constitute one and the same agreement. This LOI may be executed by facsimile or other electronic signatures.

Sincerely yours,

SECUREALERT, INC.


Guy Dubois
Chairman of the Board


**Acknowledged, accepted and agreed** to this _____ day of December, 2013, by:

GPS Global


By:_____
       Eli Sabag, Chairman

*Strictly private and confidential*

To:
Eli Sabag,
Owner and Chairman
GPS Global
23 Hataas St. Kfar Saba, Israel

London, 16.12.2013

Dear Mr. Sabag,

Reference: Indicative offer to enter into a Put Option contract (subject to contract and conditions precedent)

We, (LARS WINDHORST, residing at Apartment D.03.1, One Hyde Park The Residence at Mandarin Oriental, 100 Knightsbridge, London, SW1X 7LJ, United Kingdom and SAPINDA ASIA LIMITED, a BVI limited liability company with its registered address at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, BVI, ("Sapinda Asia") (together the "Investors") would like to offer you the following with regards to a non-binding offer to acquire up to 100% of the share capital of G.P.S Global Tracking & Surveillance System Ltd. ("GPSG").

WHEREAS, Lars Windhorst is a sole direct shareholder of Sapinda Asia Limited;

WHEREAS, Sapinda Asia has in their ownership, among other things, a majority ownership package of shares of Common Stock, par value $.0001, and share of Common Stock of SecureAlert, Inc., a Utah corporation (the "Company" or "SCRA") (CUSIP 81373R109);

WHEREAS, SCRA has submitted to you a non-binding offer for acquiring a 100% of shares in GPSG in a combination of cash and SCRA shares (the "Shares") payable to you as consideration ("Consideration").

NOW, THEREFORE, the Investors wish to confirm that Sapinda Asia and you shall enter into a separate agreement, whereby you shall have the right to sell the shares to the Investors on the terms and conditions set forth in this offer.

The following term sheet sets forth the material terms and conditions of the agreement, subject to the conditions precedent as detailed below.

1. With regards to the 1.6 million USD worth of shares in SCRA on the date of closing of the Reference Transaction (as defined below): Sapinda Asia shall purchase the abovementioned shares from the Seller (as defined below) on the day of the closing of the Reference Transaction in consideration for 1.6 million USD, which will be paid at the closing in immediately available funds. Performance by Sapinda Asia shall be personally guaranteed by Mr. Lars Windhorst.

2. With regards to the remaining shares of SCRA payable to the Seller under the attached LOI, Sapinda Asia shall grant a put option to the Seller, which will allow the seller to sell the Shares, in whole or in part, to Sapinda Asia under conditions set below.

3. Sapinda Asia shall provide a letter evidencing sufficient funds on its brokerage account.

| Issue | Details |
|---|---|
| Reference Transaction | Acquisition by SCRA of shares of GPS Global ("GPSG") representing 100% of the share capital of GPSG from Mr. Eli Sabag (the "Seller") (the "Reference Transaction") |

*Strictly private and confidential*

| Issue | Details |
|---|---|
| Underlying | In accordance with LOI attached:<br><br>$2.9 million in SecureAlert equity, carrying a 2 year trading restriction which will be held in escrow for a period of 6 months following closing to allow for confirmation of the product performance of the Company's unit;<br><br>$1.0 million in SecureAlert equity following the signing of the Thailand contract for a minimum of 2,000 units;<br><br>$2.0 million in SecureAlert equity following the successful installation of 2,000 recurrent revenue generating units. |
| Strike Price | 20 USD per common share of SCRA |
| Option Type | European (Exercisable on the date of expiry of the Term) |
| Option Term Commencement Date | The date of the completion of the Reference Transaction |
| Option Expiration date | 24 months from the Option Term Commencement Date |
| Personal Guarantee | Performance of Sapinda Asia under the Put Option agreement shall be personally guaranteed by Mr. Lars Windhorst. |
| Confidentiality | This offer is confidential and shall not be disclosed to any person without the prior approval of the Investors other than (i) as required by law or court order, (ii) to the directors, officers and employees of GPSG and their advisors in connection to the offer, provided they have been informed of the confidential nature of such information and agree to keep it confidential. |
| Non-binding offer. Conditions Precedent | This offer is subject to the following conditions precedent:<br><br>-singing of a binding contract for acquisition of GPSG by SCRA; |

Should you wish to accept this proposal please countersign below and return to us. We look forward to working with you in an efficient manner to bring this transaction to a successful completion.

Yours sincerely,

[signatures to follow on the next page]



- 2 -

*Strictly private and confidential*

Lars Windhorst

Berlin, 17 December 2013

*[signature]*

For and on behalf of Sapinda Asia Limited

*[signature]* 17 December 2013

*[signature]*

*[signature]*

Accepted and signed by

_____, ____ December 2013

Eli Sabag, Chairman and Owner
GPS Global

*[GPS Global stamp]*



- 3 -

## APPENDIX 1: SIGNED LOI SECUREALERT