# PUT OPTION AGREEMENT

## MARCH 16, 2014

Put Option Agreement
relating to
shares in SecureAlert, Inc.



EXHIBIT L

**THIS AGREEMENT** is made on March 16, 2014

**BETWEEN:**

(1) **MR E. SABAG**, residing at Hamaapilim 14, Kfar Saba, born on May 19, 1976 in Kfar Saba, Israel and holder of an Israeli ID with number 038720769 (the **Seller**);

(2) **SAPINDA ASIA LIMITED**, a limited liability company under the laws of the British Virgin Islands, having its registered office at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands (**Sapinda Asia**); and

(3) **MR L. WINDHORST**, residing at 21 Chesham Place, SW1X 8HG, London, United Kingdom, born in Rahden, Germany, on the 22 November 1976 and holder of a German passport with number C3FF27NZV (the **Guarantor**).

**WHEREAS:**

(A) Sapinda Asia holds common shares of SecureAlert, Inc., a Utah corporation (**SCRA**). The Guarantor holds the entire issued share capital in Sapinda Asia.

(B) SCRA and the Seller are contemplating to enter into a share purchase agreement regarding the entire issued share capital of G.P.S. Global Tracking & Surveillance System Ltd., a limited liability company under the laws of Israel, against an aggregate purchase price valued at USD 8,000,000 consisting of an amount in cash of USD 500,000 and a number of shares in the capital of SCRA representing a value of USD 7,500,000 in the aggregate, which is expected to be signed and closed on April 1st 2014 (respectively, the **Reference Transaction** and the **Reference Transaction SPA**).

(C) In connection with the Reference Transaction, on March 16, 2014, Sapinda Asia (as purchaser) and the Seller (as seller) entered into a certain Loan Agreement.

(D) Now, Sapinda Asia wishes to grant to the Seller a put option in respect of the shares in the capital of SCRA which shall be issued to the Seller pursuant to the Reference Transaction SPA, to the extent issued, representing a value of USD 5,900,000 in the aggregate at the moment of acquisition thereof by the Seller in accordance with the Reference Transaction SPA, on the terms and subject to the conditions of this agreement.

**IT IS HEREBY AGREED** as follows:

**1. DEFINITIONS**

1.1 The following words and expressions have the following meanings for the purposes of this agreement:

**Business Day** means the working day of the week which is not on weekend and which is not a bank holiday in Israel, Hong Kong, or London.

**Closing Date** means the day of the closing of the Reference Transaction

**Exercise Date** means the date on which the Seller serves an Exercise Notice;

**Exercise Notice** means a notice substantially in the form of Schedule 1;

**Option Expiration Date** means a day which is 30 days after the third anniversary of the Closing Date of the Reference Transaction;

**Put Option** means the option granted by Sapinda Asia to the Seller under clause 2;

**SCRA Shares** means the following common shares in the capital of SCRA:

(i) The Restricted Stock, as such term is defined in the Reference Transaction SPA;

(ii) The First Contingent Stock, as such term is defined in the Reference Transaction SPA, to the extent issued to the Seller; and

(iii) The Second Contingent Stock, as such term is defined in the Reference Transaction SPA, to the extent issued to the Seller.

**Strike Price** means a price of USD 20 per SCRA Share.

## 2. GRANT OF THE OPTION

Conditional upon the closing of the Reference Transaction, Sapinda Asia hereby grants to the Seller the Put Option to sell and transfer to Sapinda Asia part or all SCRA Shares against the Strike Price per share, at the Seller's sole and absolute discretion in accordance with terms and conditions of this Agreement.

## 3. EXERCISE OF THE OPTION

3.1 The Put Option becomes exercisable upon the Option Expiration Date.

3.2 The Seller may only exercise the Put Option by serving an Exercise Notice to Sapinda Asia on or before third anniversary of the Closing Date, provided that if such notice is served prior to the third anniversary of the Closing Date, it shall be deemed to be delivered on the third anniversary of the Closing Date.

3.3 Exercise of the Put Option shall oblige Sapinda Asia to purchase from the Seller a number of SCRA Shares as indicated in the Exercise Notice against payment of the Strike Price per SCRA share. The Closing of the sale of SCRA Shares to Sapinda Asia shall be held on the Option Expiration Date (or, if such day is not a Business Day, on the next Business Day), or any other date mutually agreed by the parties.

3.4 The transfer of SCRA Shares pursuant to the Put Option shall be effected by the Seller delivering or procuring the delivery of the respective SCRA Shares to Sapinda Asia in an "electronic" method of transfer (not by transfer of a hard-copy stock certificate). In the event that the SCRA Shares are not registered upon the Exercise Date, the Put Option shall extend until the SCRA Shares are registered. The parties shall cooperate in good faith to make all arrangements and provide all documents and instruments required to allow the transfer of the SCRA Shares pursuant to the Put Option. The SCRA Shares shall be sold and transferred free from all liens, charges, equities and encumbrances, other than under law or under the organizational documents or agreements of SCRA.

## 4. WARRANTIES

The Seller warrants to Sapinda Asia that on the Option Expiration Date the following is correct:

(a) The Seller has full and unencumbered title to the respective SCRA Shares other than under law or under the organizational documents or agreements of SCRA;

(b) The respective SCRA Shares are not subject to rights of third parties or obligations to transfer to third parties or claims based on contracts of any nature other than under law or under the organizational documents or agreements of SCRA.

(c) By the transfer of the SCRA Shares to Sapinda Asia, the full and unencumbered title to the SCRA Shares is transferred to Sapinda Asia other than under law or under the organizational documents or agreements of SCRA.

Sapinda Asia and the Guarantor warrant and represent to the Seller that on the date hereof and on the Option Expiration Date the following is correct:

(a) Sapinda Asia is a limited liability company duly organized, validly existing, and in good standing under the laws of the British Virgin Islands.

(b) This Agreement constitutes the legal, valid, and binding obligation of Sapinda Asia and the Guarantor, enforceable against each of them in accordance with its terms. Each of Sapinda Asia and the Guarantor has the absolute and unrestricted right, power, and authority to execute and deliver this Agreement.

(c) The execution, delivery and performance of this Agreement by Sapinda Asia and/or the Guarantor will not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under or give rise to any right or obligation under, any provision of (i) the incorporation documents of Sapinda Asia or SCRA; (ii) any applicable law; or (iii) any contract.

(d) Sapinda Asia and the Guarantor are not and will not be required to obtain any consent from any third party in connection with the execution, delivery and performance of this agreement.

(e) Sapinda Asia shall acquire the shares not with a view to their distribution as an underwriter or a placement agent.

(f) Notwithstanding anything contained in this agreement to the contrary, Sapinda Asia acknowledges and agrees that the Seller is not making any representations or warranties whatsoever, express or implied, with respect to SCRA, beyond those expressly given by the Seller in **Section 4** above, and Sapinda Asia acknowledges that, except for the representations and warranties contained therein, the shares shall be transferred on an "as is" basis. Any claims Sapinda Asia may have for breach of representation or warranty shall be based solely on the representations and warranties of the Seller set forth in **Section 4**.

(g) Sapinda Asia and the Guarantor agrees and acknowledges that the Seller has entered into the Reference Transaction in reliance on Sapinda Asia and the Guarantor's representations, warranties and undertakings set forth in this Agreement, and without such representations, warranties and undertakings, the Seller would not have entered into the Reference Transaction.

(h) A true and correct letter by Sapinda Asia's bank evidencing sufficient funds is attached hereto as **Schedule 2**.

4

5. **PAYMENT OF THE STRIKE PRICE**

   At the closing of the sale of the SCRA Shares in accordance with Section 3 above, Sapinda Asia shall pay in full the respective Strike Price for the respective SCRA Shares by wire transfer of immediately available funds in US$ to the Seller's bank account.

6. **ENJOYMENT OF RIGHTS ATTACHING TO THE SCRA SHARES**

   Until such time the SCRA Shares are transferred, the Seller shall be entitled to exercise the rights attached to the SCRA Shares the Seller holds and shall be entitled to receive and retain all dividends and other distributions in respect of those SCRA Shares.

7. **GUARANTEE**

   In consideration of the Seller and Sapinda Asia agreeing to enter into this agreement, the Guarantor irrevocably and unconditionally guarantees to the Seller and Sapinda Asia the due and punctual performance of the obligation of Sapinda Asia to purchase the SCRA Shares and pay the Strike Price per share pursuant to this agreement. The Guarantor shall pay to the Seller, promptly on demand any part of the Strike Price Sapinda Asia is at any time liable to pay to the Seller under or pursuant to this agreement and which has not been paid by the Purchaser in default of this agreement. The Guarantor's obligations under this clause 7 are primary obligations and not those of a mere surety and the Guarantor shall not have any right of protest or other similar right.

8. **COSTS**

   Each party to this agreement shall bear its own costs and expenses with respect to the preparation and negotiation of agreement and with respect to the transfer of SCRA Shares.

**SIGNATORIES**

SIGNED by:  )
**MR E. SABAG**  )

SIGNED by: Tatiana Cohen  )
For and on behalf of  )
**SAPINDA ASIA LIMITED**  )

SIGNED by:  )
**MR L. WINDHORST**  )

6

## SCHEDULE 1

## FORM OF EXERCISE NOTICE

To:

**SAPINDA ASIA LIMITED**
To the attention of Ms. Theresa Tsang
Rooms 803-4, 8/F
Hang Seng Bank Building
200 Hennessy Road
Wanchai
Hong Kong
Fax: (852) 3764 0813
Email: theresa@kimbaco.com

With a copy to:

**Mr L. WINDHORST**
6th Floor
23 Savile Row
London W1S 2ET
Fax: +44 207 6479879
Email: lars.windhorst@sapinda.com

Dear Sirs,

I refer to the Put Option Agreement dated March 16, 2014 made between yourselves and me and to the Put Option granted by you to me under that agreement.

I hereby give you notice under and pursuant to the Option Agreement that I exercise the Put Option granted by you to me in respect of _____ SCRA Shares. The Strike Price in the aggregate is equal to USD _____. I ask you to transfer this amount to _____.


Yours faithfully,


SIGNED by

_____
**MR E. SABAG**

7

**POWER OF ATTORNEY**

<u>Mr L. Windhorst</u>, residing at Apartment D.03.1, One Hyde Park The Residence at Mandarin Oriental, 100 Knightsbridge, SW1X 7LJ, London, United Kingdom, born in Rahden, Germany, on the 22 November 1976 and holder of a German passport with number C3FF27NZV (the Grantor),

**hereby grants full power of attorney to:**

Ms T. Cohen, with the power of substitution (the **Attorney-in-Fact**),

**to, on behalf of the Grantor:**

sign and execute a put option agreement in respect of the shares in the capital of SecureAlert, Inc., a Utah corporation, representing a value of USD 5,900,000, between Mr. E Sabag, Sapinda Asia Limited (granting the put option) and the Grantor (as Guarantor) (the **Put Option Guarantee**), and to do all such other acts, deeds and things as the Attorney-in-Fact itself may lawfully do howsoever arising in connection with the Put Option Guarantee.

The Grantor shall hold harmless and fully indemnify an Attorney-in-Fact for any losses, damages and liabilities that an Attorney-in-Fact may incur in connection with the acts performed or omitted by an Attorney-in-Fact within the scope of the present power of attorney.

This power of attorney shall be governed by Dutch law.

Signed on ___27___ January 2014.

**Mr L. Windhorst**

*[signature]*

**POWER OF ATTORNEY**

Sapinda Asia Limited, a limited liability company under the laws of the British Virgin Islands, having its registered office at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands (the **Grantor**),

**hereby grants full power of attorney to:**

Ms T. Cohen, with the power of substitution (the **Attorney-in-Fact**),

**to, on behalf of the Grantor:**

(1) sign and execute the agreement for the sale and purchase of the shares in the capital SecureAlert, Inc., a Utah corporation, (SCRA) representing a value of USD 1,600,000 against a purchase price of USD 1,600,000, between Mr E. Sabag as Seller and the Grantor as Purchaser (the **SPA**), and to do all such other acts, deeds and things as an Attorney-in-Fact itself may lawfully do howsoever arising in connection with the SPA;

(2) sign and execute a put option agreement in respect of the shares in the capital of SCRA representing a value of USD 5,900,000, between Mr. E Sabag, the Grantor (granting the put option) and Mr L. Windhorst (as Guarantor) (the **Put Option**), and to do all such other acts, deeds and things as the Attorney-in-Fact itself may lawfully do howsoever arising in connection with the Put Option; and

(3) sign and execute any agreement, deed, resolution or other document, and to do all such things an Attorney-in-Fact in her absolute discretion may reasonably deem necessary or conducive in respect of the transactions referred to above in this power of attorney.

The Grantor shall hold harmless and fully indemnify an Attorney-in-Fact for any losses, damages and liabilities that an Attorney-in-Fact may incur in connection with the acts performed or omitted by an Attorney-in-Fact within the scope of the present power of attorney.

This power of attorney shall be governed by Dutch law.

Signed on __27__ January 2014.

**Sapinda Asia Limited**

By : Mr L. Windhorst
Its : jointly authorised managing director

By : Ms T. Tsang
Its : jointly authorised managing director