UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| APPLICATION OF ELI SABAG, FOR AN | ) | No. 1:19-mc-00084-JPH-TAB |
| ORDER PURSUANT TO 28 U.S.C.&#167; 1782 | ) | |
| TO CONDUCT DISCOVERY FOR USE IN | ) | |
| FOREIGN PROCEEDINGS | ) | |
| | ) | |

## SUPPLEMENTAL ORDER ON MOTION TO VACATE
## AND MOTION FOR PROTECTIVE ORDER

**I.      Introduction**

This matter is back before the Court on intervenor Lars Windhorst's motion [Filing No. 24] to vacate the Court's order permitting applicant Eli Sabag to conduct discovery pursuant to 28 U.S.C. § 1782, as well as Windhorst's motion for a protective order [Filing No. 86].  For reasons stated more fully below, the Court denies Windhorst's motion to vacate and allows Sabag's § 1782 application to proceed.  However, Windhorst's motion for a protective order is granted, and Windhorst and Track Group, Inc. shall be allowed to participate in and receive the discovery Sabag receives through his application.

**II.      Background**

On December 31, 2019, Eli Sabag submitted an *ex parte* application with the Court for an order pursuant to 28 U.S.C. § 1782, seeking leave to obtain "targeted discovery from Marion County Community Corrections ('MCCC') and various employees of MCCC and Marion County for use in an anticipated criminal investigation conducted before formal accusation in a foreign court."  [Filing No. 1, at ECF p. 1.]  The Court initially granted Sabag's *ex parte* application on January 31, 2020, and unsealed it in February 2020.  [Filing No. 13; Filing No. 15.]  Windhorst and Track Group moved to intervene in March 2020, which the Court allowed.  [Filing No. 54.]

On March 18, 2020, Windhorst filed a motion to vacate the Court's earlier order granting Sabag's application.  [Filing No. 24.]  The Court granted Windhorst's motion, concluding that Sabag's application fell short of demonstrating that an actual foreign criminal investigation or proceeding was within reasonable contemplation at the time Sabag filed the application.  [Filing No. 69.]  Sabag appealed the decision to District Judge Hanlon.  [Filing No. 70.]  Judge Hanlon noted that for Sabag's objection, only one statutory requirement was at issue—whether the requested discovery is for use in a foreign or international proceeding within reasonable contemplation at the time Sabag filed his application.  [Filing No. 80, at ECF p. 5.]  Judge Hanlon concluded that Sabag's application and supporting exhibits set forth that a foreign proceeding was within reasonable contemplation at the time Sabag filed his application.  Thus, on April 26, 2021, Judge Hanlon sustained Sabag's objection and returned Sabag's application to the magistrate judge for further consideration of the remaining requirements for § 1782 applications, including discretionary factors and, if necessary, potential limits on the scope or use of discovery.  [Filing No. 80, at ECF p. 9.]

On July 7, 2021, Windhorst filed a motion for a protective order [Filing No. 86] seeking to limit the use of discovery to the contemplated foreign proceedings.  In addition, Windhorst's motion requests that all discovery produced pursuant to the subpoenas be made available to Windhorst, and that Windhorst have the right to participate in any depositions that proceed pursuant to the subpoenas.  [Filing No. 87, at ECF p. 2.]  Sabag objects to the Court entering a protective order.  [Filing No. 88, at ECF p. 1-3.]  Track Group believes that a request for a protective order is premature at this time, but also requests access to any future discovery obtained through Sabag's § 1782 application and copies of all documents Sabag has retrieved from MCCC pursuant to the previously issued non-party subpoena.  [Filing No. 85.]

2

III.    **Discussion**

A.    **Windhorst's motion to vacate order granting Sabag's § 1782 application and quash subpoenas**

Since Judge Hanlon sustained Sabag's objections to the Court's order granting Windhorst's motion to vacate, the Court must address the remaining arguments raised in that motion regarding Sabag's § 1782 application for discovery.  A Section 1782 application should only be granted if (1) the person from whom discovery is sought resides in or is found in the district where the application is filed; (2) the discovery sought is for use in a foreign proceeding; and (3) the application is made by an interested person to a foreign proceeding.  28 U.S.C. § 1782(a).  In the Court's earlier order granting Windhorst's motion to vacate, the magistrate judge found Sabag's application too speculative and concluded it fell short on the second factor of demonstrating that an actual foreign criminal investigation or proceeding was within reasonable contemplation at the time he filed the application in December 2019.  [Filing No. 69, at ECF p. 8.]  Since the magistrate judge concluded Sabag failed to meet a necessary statutory factor, that order did not further analyze the remaining requirements or discretionary factors.

However, in ruling on Sabag's objection, Judge Hanlon concluded that the evidence—Sabag's affidavit and U.K. counsel Peter Bibby's affidavit—showed Sabag intends to bring criminal complaints against Windhorst and has taken specific action, which is enough to show a foreign or international proceeding is reasonably contemplated.  [Filing No. 80, at ECF p. 7.] Thus, Judge Hanlon returned this matter to the undersigned to consider the remaining requirements for § 1782 applications, including discretionary factors and, if necessary, potential limits on the scope or use of discovery.

Windhorst has consistently argued that Sabag's application failed all three of these statutory requirements because (1) Sabag does not allege residence of the individuals he seeks to

depose or where they were found for service; (2) discovery not for use in a reasonably contemplated foreign proceeding; and (3) Sabag is not an interested person to a foreign proceeding because no foreign proceeding exists.  Now that Judge Hanlon's order—which concluded that Sabag set forth sufficient evidence that a foreign or international proceeding was within reasonable contemplation at the time Sabag filed his application—is the law of the case, the Court need not spend more time analyzing the second and third factors.  *See e.g., Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("Among other things, the law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination.") Thus, it is established that discovery is for use in a reasonably contemplated foreign proceeding, and Sabag is an interested person to that proceeding.

This leaves only the first requirement—that the person from whom the discovery is sought must reside in this district.  Windhorst argues that Sabag fails to meet this first statutory requirement because nowhere in his application does he allege either the residency of the individuals he seeks to depose or where they were found for service.   [Filing No. 25, at ECF p. 18.]  Windhorst's arguments related to this statutory requirement fall short.  In Sabag's § 1782 application, he attached the individual subpoenas for witnesses John Deiter and David Condon.  The subpoenas established where these two individuals to be served were found within the Southern District of Indiana.  [Filing No. 6-40.]  Sabag has also provided evidence that both subpoenas have been successfully served to the Indianapolis, Indiana, addresses presented to the Court.  [Filing No. 56-3.]  Finally, Sabag noted that Marion County is legally representing both Deiter and Condon and does not object to service of process.  [Filing No. 56, at ECF p. 15.]

Thus, Sabag satisfied the statutory requirements for a § 1782 application. However, the Court must also consider whether any of the additional discretionary factors bear consideration or weigh against granting the application. These factors include:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent;

> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

> (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

> (4) whether the request is unduly intrusive or burdensome.

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). Windhorst claims Sabag's application should fail because factors one and four weigh substantially against granting his application, as (1) Sabag's potential claims against Windhorst are too hypothetical to designate anyone as parties or nonparties in a foreign proceeding; and (2) Sabag's document requests are unduly intrusive and burdensome. [Filing No. 25, at ECF p. 26.]

In relation to the first discretionary factor, Windhorst argues that MCCC, Deiter, and Condon are not participants or nonparticipants, since any foreign proceeding is purely hypothetical at this stage. This discretionary factor relates to the idea that if the person from whom discovery is sought is a participant in the foreign proceeding, then the need for § 1782(a) aid is generally not as apparent as when evidence is sought from a nonparticipant in a matter arising abroad. This is because a foreign tribunal has jurisdiction over those appearing before it and can order them to provide evidence. *See Intel, id.*

The analysis here is complicated by the fact that the foreign proceeding is within reasonable contemplation, but not yet actually pending.  Thus, there are no parties or non-parties at this stage.  *Cf. In re Medytox, Inc.*, No. 1:18-mc-46-TWP-DLP, 2019 WL 3162174, at \*4-5 (S.D. Ind. July 16, 2019) ("The parties agree that Dr. Lee is a non-party in the pending Korean Action. . . .  Dr. Lee, a seven-year resident of the Southern District of Indiana, however, is beyond the jurisdictional reach of the Seoul Central District Court in Korea, raising the need for Medytox to file this § 1782 application."), *report and recommendation adopted*, No. 1:18-mc-46-TWP-DLP, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019).  However, the evidence presented indicates that discovery is sought from individuals located in the Southern District of Indiana that would be nonparticipants in the foreign proceeding and thus outside of any foreign tribunal's jurisdictional reach.  Bibby's declaration with Sabag's application indicates that neither Marion County nor MCCC, or any employees including Deiter, would be an expected party in any proceedings in the United Kingdom.  Thus, this discretionary factor weighs in favor of granting Sabag's § 1782 application.

Windhorst also argues that the fourth discretionary factor is applicable because Sabag's discovery requests are unduly intrusive and burdensome under Fed. R. Civ. P. 45.  Windhorst labels Sabag's § 1782 request as a broad fishing expedition, and argues that Sabag seeks information plainly unrelated to criminal allegations against Windhorst, including MCCC's negotiations with other vendors, such as 3M and CorrectiveSolutions, which bears no relevance to Windhorst's alleged securities fraud or bribery of MCCC officials.  Windhorst notes that the Marion Superior Court already denied Sabag's requests for jurisdictional discovery.  He argues that Sabag is attempting to abuse § 1782 by relying on a pretext of speculative foreign criminal

proceedings to seek discovery he intends to use for civil claims—in particular, the pending New York arbitration.  [Filing No. 25, at ECF p. 30.]

In response, Sabag argues that Windhorst "completely misrepresents the actual events in the prior Indiana state court case to this Court."  [Filing No. 56, at ECF p. 24.]  Sabag also claims that Windhorst has no standing to argue that Sabag's discovery requests are unduly intrusive and burdensome because the subpoenas were directed to third parties.  [Filing No. 56, at ECF p. 28.] However, the Court already granted Windhorst's motion to intervene, and he has asserted legitimate personal interests with respect to the discovery sought.  *See, e.g., Kyner v. Loveridge*, No. 2:17-cv-373-JPH-MJD, 2019 WL 1778663, at *1 (S.D. Ind. Apr. 23, 2019) ("Generally, only the subject of a subpoena may move to quash; however, if a party has a personal right or privilege or legitimate interests, that party may object to the subpoena.  The decision of whether to quash a subpoena falls within the district court's discretion."  (Internal citations and quotation marks omitted)); *Barnhouse v. City of Muncie*, No. 1:19-cv-958-TWP-DLP, 2020 WL 9349545, at *4 (S.D. Ind. July 7, 2020) ("The limits and breadth of discovery expressed in Rule 26 are also applicable to non-party discovery under Rule 45."  (Internal citations and quotation marks omitted)), *reconsideration denied*, 2020 WL 9349544 (S.D. Ind. Sept. 11, 2020).

However, even with standing, Windhorst has not demonstrated that Sabag's discovery requests are so unduly intrusive or burdensome to the target (MCCC, Deiter, and Condon) that the Court needs to modify the request at this time.  The scope of material obtainable by a Rule 45 subpoena is generally measured by the same broad relevancy standard set forth in Fed. R. Civ. P. 26(b)(1).  *See, e.g., Noble Roman's, Inc. v. Hattenhauer Dist. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) ("The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45.").  Rule 26(b)(1) states that a party "may obtain discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). MCCC and the named individuals have not raised any concerns with the discovery requests. Windhorst argues that Sabag seeks information that is plainly unrelated to the criminal allegations against Windhorst or that bear no relevance to his alleged securities fraud. However, Sabag's allegations are widespread, and his application and supporting filings set forth allegations of bribery and other concerns that relate to the evidence sought. Windhorst has not provided any argument indicating that production of the discovery sought would invade his personal interests or be so intrusive that the Court should intervene at this point. Any burden on production falls on the targeted individuals, not Windhorst, and as noted those individuals have not raised any concerns with the Court.

Moreover, as discussed below, rather than limiting the type of discovery sought, the Court is limiting the use of the information obtained. This approach addresses Windhorst's main concern regarding whether Sabag really intends to use the information sought for other purposes. In sum, Sabag's application meets the requirements set forth in 28 U.S.C. § 1782. In addition, the discretionary factors support granting Sabag's application. Accordingly, for these reasons, Sabag's § 1782 application may proceed, and Windhorst's motion to vacate the Court's earlier order is denied.

### B.    Windhorst's motion for protective order

Alternatively, Windhorst argues that if the Court grants Sabag's application, it should grant Windhorst's motion for a protective order. [Filing No. 86.] Windhorst seeks a protective order limiting the use of the discovery to the contemplated foreign proceeding, requiring that all discovery produced pursuant to the subpoenas be made available to Windhorst, and providing that Windhorst should have the right to participate in any depositions that proceed pursuant to

the subpoenas.  [Filing No. 87, at ECF p. 2.][1]  Windhorst argues he has standing to seek a

protective order under Fed. R. Civ. P. 26, which provides a broad grant of authority over

discovery matters and permits a party to seek a protective order against a third party subpoena.

*See, e.g., Alerding Castor Hewitt LLP v. Fletcher*, No. 1:16-cv-2453-RLY-MJD, 2017 WL

6035327, at *2 (S.D. Ind. Dec. 5, 2017) ("As a general rule, only the person subject to a

subpoena has standing to move to quash or modify a subpoena pursuant to Federal Rule of Civil

Procedure 45. . . .  However, district courts have found that a person who lacks standing under

Rule 45 to challenge a subpoena may achieve a similar end under Rule 26 by requesting a

protective order relating to document requests served on a non-party."  (Internal citations,

quotation marks, and brackets omitted)).

It is true, as Sabag argues, that the arbitrator has the right to determine all issues

regarding admissibility of evidence in the arbitration proceedings.  [Filing No. 88, at ECF p. 3.]

However, this Court also has the power and responsibility to ensure that discovery proceeds in a

fair and reasonable manner.  Given the substantial concerns that have been raised by Windhorst

and Track Group about the possibility of misuse, a protective order is a reasonable request.  *See,

e.g., Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015) ("[A] party, for good cause, may

also ask the § 1782 court to enter a protective order prohibiting use, in United States

proceedings, of documents obtained under the statute.  The judge can then decide whether, under

the particular circumstances of the case, she believes the entry of such an order to be

---

[1] Track Group argues that a protective order would be premature at this time, but asks that the
Court require Sabag to share with Track Group copies of all documents received from MCCC
and to allow Track Group to participate in any ongoing discovery of MCCC so that Track Group
can protect its interests.  [Filing No. 85, at ECF p. 10-11.]  Thus, Track Group also requests the
ability to participate fully in any future discovery and to receive copies of documents already
produced.

appropriate."  (Internal citation omitted)); *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2nd Cir. 2017) ("Parties concerned in a particular case that a Section 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery for use in other foreign proceedings can and should bring evidence of such chicanery to the Section 1782 court's attention.  Should such evidence exist, it could provide good cause for entry of a protective order prohibiting use of the discovery in other proceedings, and might support denying the Section 1782 application altogether."  (Internal citations, quotation marks, and brackets omitted)).  While the Court has already concluded that a foreign proceeding was within reasonable contemplation at the time Sabag's application was filed, this does not preclude the Court from putting restrictions in place to address concerns related to the use of the information sought and ensure that the use remains for that stated purpose.

A protective order limiting the use of discovery to only the contemplated foreign proceedings is reasonable and does not impact Sabag's stated purpose for obtaining the discovery with his § 1782 application.  His application is premised solely on his intention to initiate criminal proceedings against Windhorst in the U.K.  While Windhorst is free to pursue civil claims against Windhorst, as he is doing in the New York arbitration proceedings, he cannot attempt to circumvent the requirement that § 1782 be used for foreign proceedings.  Granting Windhorst's protective order allows Sabag's requested discovery to proceed, while simultaneously addressing the underlying concerns raised by Windhorst and Track Group.

Finally, to the extent that Windhorst and Sabag seek the Court's permission to participate in the discovery, that request is granted.  District courts have authority to condition a § 1782 application on reciprocal exchange of information.  *See, e.g., Intel*, 542 U.S. at 262 ("When information is sought be an 'interested person,' a district court could condition relief upon that

person's reciprocal exchange of information.").  Windhorst and Track Group have already established that they have an interest in the results of Sabag's § 1782 application, and the Court allowed them to intervene.  Their requests to receive participatory rights in any depositions and access to the information obtained are reasonable.  *See, e.g., GMRI, Inc. v. Swinson*, No. 3:18-cv-1570, 2020 WL 564263, at *8 (D. Conn. Feb. 4, 2020) (ordering party to share responses received to non-party subpoena "in light of Rule 45(a)(4)'s mandate and the advisory committee notes to that rule[.]"); *In re Hornbeam Corp.*, 14 Misc. 424 (Part 1), 2015 WL 13647606, at *9 (S.D. N.Y. Sept. 17, 2015) (granting Symeou's motion to intervene in § 1782 action and requiring applicant Hornbeam to allow Symeou to "inspect all materials produced in response to the previously issued subpoenas."), *aff'd*, 822 F. App'x 7 (2d Cir. 2018).

## IV.   Conclusion

Windhorst's motion to vacate [Filing No. 24] the Court's earlier order granting Sabag's application is denied.  Sabag's application [Filing No. 1] may proceed.  However, Windhorst's motion for a protective order [Filing No. 86] is granted.  The use of discovery obtained from Sabag's § 1782 application is limited to the foreign proceeding in contemplation at the time of Sabag's application.  Finally, Sabag shall provide Windhorst and Track Group with copies of the discovery he has received so far in relation to his § 1782 application, as well as the discovery he receives as a result of this order granting his application.

Date: 7/28/2021

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email