**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: | ) |
| The Application of: | ) |
| | ) Case No.: 1:19-mc-00084-JPH-TAB |
| ELI SABAG, for an Order Pursuant to | ) |
| 28 U.S.C. § 1782 to Conduct Discovery | ) |
| for Use in Foreign Proceedings. | ) |

**SUPPLEMENTARY REQUEST FOR DISCOVERY**
**IN ACCORDANCE WITH 28 U.S.C. § 1782**

Comes now, the Section 1782 Applicant, Eli Sabag ("Mr. Sabag"), through counsel, to supplement his Section 1782 Application with a request to depose Intervenor Lars Windhorst ("Windhorst") in Indiana by videotaped deposition in accordance with 28 U.S.C. § 1782.  The proposed notice of deposition and subpoena for Lars Windhorst is attached hereto as **Exhibit A**.

## I.   **Background and History**

On July 28, 2021, this Court granted Mr. Sabag's Section 1782 Application to obtain discovery from Marion County Community Corrections ("MCCC") and its employees for use in a "reasonably contemplated" U.K. criminal proceedings against Windhorst.[1] [Doc. 89].  Mr. Sabag has alleged that Windhorst committed various British crimes, including the bribery of an MCCC official, securities fraud, and common law fraud.  [Doc. 9, p. 8-9; Doc. 6-1, pp. 2-3].

In May 2020, Windhorst was granted the right to intervene [Doc. 54] in these proceedings, and he has repeatedly claimed that (1) Mr. Sabag did not reasonably contemplate any U.K. criminal proceedings, and (2) the Section 1782 discovery that Mr. Sabag was seeking was actually "for use" in an unrelated ICDR arbitration taking place in New York.

---

[1] This Court had originally approved Mr. Sabag's Section 1782 Application on January 31, 2020, but it later vacated its own Order on August 18, 2020.  [Doc. 13; Doc. 69].

In October 2021, Mr. Sabag and the U.K. Serious Fraud Office ("SFO") established direct communications regarding the actions of Windhorst as described by Mr. Sabag in his Section 1782 Application.  Mr. Sabag has attached a second affidavit to confirm that his communications with SFO continue into the present period.  *See* **Exhibit B**, ¶ 4.[2]

As a result of this Section 1782 proceeding, Mr. Sabag has thus far discovered, for example, that the 18-year-old son of both the Executive Director and the Deputy Director of MCCC was hired by Intervenor Track Group, Inc. ("Track Group") (then controlled by Windhorst) shortly after Track Group won a multi-million dollar contract from MCCC.  At the time of the hiring, Track Group was bidding for an even larger contract with MCCC, which it later won.[3]  But for Mr. Sabag's efforts to pursue Section 1782 discovery (and despite Windhorst's vigorous efforts to vacate that discovery), such information would not have been available to Mr. Sabag, nor to the U.K. criminal authorities.

In August 2022, Mr. Sabag entered into a settlement agreement with Track Group, Sapinda Asia Limited (BVI) ("Sapinda Asia"), and Windhorst to resolve the ICDR arbitration matter. Track Group reported the settlement as a "material event" on its SEC Form 8-K, and it attached a copy of the settlement agreement to its SEC filing.  According to the published terms of the agreement,[4] Track Group agreed to pay Mr. Sabag $1.6 million.  The settlement agreement also

---

[2] Windhorst has also been the recent target of a German criminal investigation.  *See* Financial Times, Lars Windhorst under investigation by criminal prosecutors (July 5, 2021) ("The Berlin prosecution office is investigating [Windhorst] over the suspected violation of the German banking act," prosecutors told the Financial Times, adding that they acted after financial watchdog BaFin filed a criminal complaint.). https://www.ft.com/content/28df16c7-fbec-4898-8792-3fad9986fc77.

[3] Windhorst would later claim that he was relieved of paying Mr. Sabag tens of millions of dollars under his "put option agreement" with Mr. Sabag because MCCC's first contract with Track Group was exactly 18 months (rather than the 6 month term that the MCCC Advisory Board had actually authorized).  Mr. Sabag has provided extensive details regarding the last-minute changes that were advanced by the Executive Director of MCCC (due to supposed oversight) that led to the modified 18-month term for Track Group. [Doc. 9, pp. 27-45].

[4] *See* https://trackgrp.com/wp-content/uploads/2022/06/TRCK-8K.pdf.

included an unpublished "Schedule A" in which Windhorst/Sapinda Asia agreed to pay Mr. Sabag $2.8 million.  Track Group later made its full settlement payment of $1.6 million to Mr. Sabag, and it has agreed to withdraw as an intervenor in this proceeding.   On the other hand, Windhorst/Sapinda Asia breached the settlement agreement by failing to make their promised payment.[5]  Windhorst/Sapinda Asia would later negotiate an amended settlement agreement with Mr. Sabag under which Mr. Sabag would receive an additional $50,000 in exchange for providing Windhorst/Sapinda Asia with additional time to pay the full settlement amount.  Notwithstanding this amendment, Windhorst/Sapinda Asia would once again fail to make their promised settlement payment.

The ICDR arbitrator would later declare Windhorst/Sapinda Asia in breach of the settlement agreement, and the arbitrator would grant a final award to Mr. Sabag against Windhorst/Sapinda Asia (as jointly and severally liable parties) in the amount of $2.85 million (plus various costs and interest).[6]  Accordingly, Windhorst can no longer speculate that Mr. Sabag intends to use his Section 1782 discovery from this proceeding for the ICDR arbitration.

---

[5] Windhorst has a history of dishonoring his settlement agreements.  *See e.g.*, *Heritage Travel and Tourism v. Windhorst*, England and Wales High Court (Commercial Court), August 27, 2021 (finding Windhorst arguments to avoid honoring his settlement agreement as "unsatisfactory") https://www.casemine.com/judgement/uk/612db96e2c94e035561f4fab.  Mr. Sabag considered the settlement agreement with Windhorst as causing partial remediation/restitution for Windhorst's criminal acts against Mr. Sabag.  Windhorst's failure to honor his settlement obligation, however, leaves Mr. Sabag as a continued victim without any remediation/restitution.  In 2009, the German criminal authorities ordered Windhorst, as a part of a criminal plea agreement in a fraud case, to pay restitution of £2.5 million to his alleged victim as well as a fine of £1 million.  By admitting to a lesser "breach of the trust" offense with the German criminal authorities, Windhorst was able to obtain a one-year suspended sentence to avoid jail time.  *See* https://www.globalcapital.com/asia/article/28mtprvln953z7atop7uo/people-and-markets/goldman-sachs-worked-with-windhorst-despite-compliance-alert.

[6] Mr. Sabag confirms the facts (described above) relating to the ICDR arbitration through his second affidavit.  *See* **Exhibit B**, ¶ 7.

Mr. Sabag now seeks to depose Mr. Windhorst with respect to the reasonably contemplated (and/or actual) investigations taking place in the United Kingdom that formed the basis for this Court's Order approving Mr. Sabag's Section 1782 Application.

In this Court's Section 1782 Order, it also approved a protective order proposed by Windhorst to limit Mr. Sabag's "use" of his Section 1782 discovery to the contemplated U.K. criminal proceedings that Mr. Sabag described in his Application. [Doc. 89, p. 10]. Accordingly, Mr. Windhorst asked for and was granted full protections under Rule 26(c) against any possible misuse of the discovery that is being used to pursue criminal charges against him. Mr. Windhorst was also granted the right, as an intervening party, to fully participate in the Section 1782 discovery that may be used by the U.K. criminal authorities against him. This Court has fully protected Mr. Windhorst's "foreign" criminal rights far beyond any right that Windhorst may enjoy under the U.K. criminal laws.[7]

Windhorst obviously has highly relevant information regarding the crimes that he is alleged to have committed in the United Kingdom, and this Court has personal jurisdiction over Windhorst to authorize his deposition.

As demonstrated below, this supplemental request for discovery satisfies all of the statutory and discretionary factors under Section 1782. The factual basis for Mr. Sabag's assertions is once again found in Mr. Sabag's original Section 1782 Application as well as the affidavit from Solicitor Bibby supporting Mr. Sabag's Section 1782 Application. As this Court previously found:

---

[7] As Solicitor Peter Bibby ("Solicitor Bibby") explained with respect to Windhorst's actual rights to participate in a U.K. investigation, "The investigation is an independent process which gathers the evidence, and then the evidence is collated and provided to a prosecutor who will take a decision on whether to prosecute based on the test set out in the Code for Crown Prosecutors. . . . However, in making such submissions in advance of a decision to prosecute, [the suspect] would have no right of access to the evidence gathered in the course of the investigation." [Doc. 40-1, p. 2].

Mr. Bibby's affidavit []sets forth relevant facts linking the evidence that Mr. Sabag seeks to obtain through his § 1782 application to five potential violations of UK criminal law that Mr. Sabag alleges that Mr. Windhorst committed. The affidavit explains that any discovery "would form part of Mr. Sabag's report" to several law-enforcement agencies in the United Kingdom. It also explains that an agency could decide to prosecute Mr. Windhorst, or Mr. Sabag could pursue a private prosecution with his own legal team . . .  Mr. Bibby's affidavit provides a detailed analysis of the contractual agreements between Mr. Sabag, Track Group, and Mr. Windhorst. It then explains Mr. Sabag's allegations and identifies five specific criminal offenses that he believes Mr. Windhorst committed. That affidavit's detailed legal analysis and Mr. Sabag's sworn statement that he intends to pursue criminal charges are "objective indicium that the action is being contemplated" and that criminal proceedings in the United Kingdom are not "merely speculative" or "just a twinkle in counsel's eye."

[Doc. 80, p. 7-8].

## II.    **The Four Section 1782 Statutory Factors**

As explained by this Court in *In re Medytox, Inc.*, No. 2019 WL 3162174, * 4 (S.D. Ind. Jul. 16, 2019), a request pursuant to 28 U.S.C. § 1782 must satisfy the following four statutory requirements:

(1) the request must be made "by a foreign or international tribunal," or by "any interested person;" (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing;" (3) the evidence must be "for use in a proceeding a foreign or international tribunal;" and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

## *(1) The Request Was Made by an "Interested Person"*

This Court has determined that Mr. Sabag is an "interested person" in the "reasonably contemplated" foreign investigation(s) of Windhorst.  [Doc. 89, p. 4].  Mr. Sabag is still an interested person in the same reasonably contemplated (and/or actual) criminal investigations of Windhorst.

## *(2) The Request Seeks the Testimony of a Person*

This Motion seeks the sworn deposition testimony of Windhorst.

### (3) The Evidence is Being Sought for Use in a Proceeding in a Foreign Tribunal

The evidence will be obtained "for use" in the reasonably contemplated (and/or actual) criminal investigation of Windhorst (before charging) in the U.K.  This Court has previously ruled that the "for use" standard has been satisfied in this case, despite Windhorst's repeated claims that the discovery was being sought "for use" in another proceeding.  [Doc. 80, p. 7].[8]

### (4) Windhorst "Is Found" in this District

Mr. Sabag must also show that Mr. Windhorst "is found" in the Southern District of Indiana.  The Second Circuit has ruled that "a person or entity 'resides or is found' in a district when it is subject to personal jurisdiction within that district."  *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).  A large number of district courts outside the Second Circuit have adopted the Second Circuit's interpretation of the phrase "resides or is found" as used in Section 1782.[9]

When Windhorst moved to intervene in this Section 1782 proceeding as a "party" to assert his "claims and defenses" (including the privilege to participate in the discovery under Rule 45), he waived his right to object to personal jurisdiction or whether he "is found" in the Southern District of Indiana.  *See, e.g., County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("[a] motion to intervene is fundamentally incompatible with an objection to

---

[8] As Solicitor Bibby informed this Court, "[e]vidence obtained from a person abroad will be used by the Agencies to establish whether a formal investigation should be opened and used in the course of an investigation to help establish whether offences have been committed." [Doc. 6-1, ¶ 104].  Moreover, in this Section 1782 proceeding, Mr. Sabag is not required to show whether Windhorst's testimony will be "admissible" in either the investigation(s) or the subsequent criminal charges that are brought. *See Brandi-Dohrn v. IKB Deutsche Insustriebank AG*, 673 F.3d 76, 77 (2d Cir. 2012)  ("Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered 'for use in a proceeding in a foreign or international tribunal.'").

[9] *See In re Tovmasyan*, 557 F. Supp. 3d 348 (D. P.R. Aug. 20, 2021); *Ex parte Under 28 U.S.C. § 1782 to Take Discovery from Américo Fialdini Junior*, 2021 WL 253455 (D. Colo. Jan. 26, 2021); *In re Ex Parte Application of Qualcomm Inc*., 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016); *Matter of De Leon*, 2020 WL 1047742 (D. D.C. Mar. 4, 2020); *In re Kurbatova*, 2019 WL 2180704 (S.D. Fla. May 20, 2019); *In re Servotronics, Inc*., 2021 WL 1521931(D. S.C. Apr. 16, 2021).

personal jurisdiction."); *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 37 (S.D.N.Y. Feb. 10, 1992) ("Finally, by moving to intervene in this action, Dr. Nava has consented to personal jurisdiction."); *see also* Wright, Miller & Kane, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.) ("[T]he intervenor has submitted to the personal jurisdiction of the court by seeking to intervene in the action and cannot move to dismiss on that ground.").

The more recent jurisprudence of the Second Circuit that ties the Section 1782 phrase "resides or is found" to "personal jurisdiction" grew out of a 2002 decision of the Second Circuit in which it had to interpret the phase in the context of an <u>individual</u> target of the Section 1782 discovery. Specifically, in *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002), the Second Circuit recognized that Congress requires district courts to read Section 1782 consistent with the Federal Rules of Civil Procedure, and Rule 45 ties the reach of a district court's jurisdiction over a party to concepts of "personal jurisdiction." The Second Circuit specifically held:

> We think another part of § 1782(a) supports a flexible reading of the phrase "resides or is found." Section 1782(a) expressly provides that "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." . . . One of these procedural rules, Rule 45, states: "a subpoena may be served at any place within the district of the court by which it is issued." Fed. R. Civ. P. 45(b)(2). The same rule further states that *unless a person is a party to the litigation* or an officer of a party, he cannot be compelled to travel more than 100 miles from where he resides or works to be deposed. Fed. R. Civ. P. 45(c)(3)(A)(ii).

*Id.* at 178.

Windhorst intervened as a "party" in this matter under Rule 24(b), and he has been provided with the right to participate in the discovery (physically taking place in this District) under Rule 45. Thus, as a party to this proceeding through his own actions, Windhorst can, in fact, be compelled to travel more than one hundred miles from where he resides to be deposed in <u>this</u> District.

The Fourth Circuit recently questioned the Second Circuit's interpretation of the term "is found" to suggest that the term requires a greater form of physical presence (beyond mere "personal jurisdiction") in a district before the statutory requirements of Section 1782 can be satisfied.[10]  Notwithstanding, the Fourth Circuit conceded that the term "is found" could include any corporation that designates an agent for service of process in a particular place, even if the corporation was not incorporated there."  *See Eli Lilly & Co. v. Novartis Pharma AG*, 37 F.4th 160, 166 (4th Cir. 2022) (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170-71 (1939) for the proposition "that a corporation may be 'found' in a particular district for venue purposes merely because it had consented to be sued there.").  By intervening and participating in the discovery taking place in Indiana, Windhorst has designated his lawyers in Indiana to <u>both</u> participate in the litigation of matters in Indiana and to conduct activities in Indiana. Windhorst obviously cannot use Rule 45 as an intervenor to participate in the deposition of an MCCC official (*e.g.*, John Deiter) in Indiana if he is nowhere to be "found" in Indiana under Rule 45.[11]

An Indiana state court also found "personal jurisdiction" over Windhorst in a civil case brought by Mr. Sabag in Indiana that arose out of the same facts as this Section 1782 proceeding. The state court ruled that Windhorst was engaged in a "joint venture" in Indiana with Intervenor Track Group, so Windhorst could be found where the joint venture was found in Indiana.[12] Windhorst cannot argue that he cannot be found in Indiana when an Indiana state court has ruled that he was a partner of an Indiana joint venture with co-Intervenor Track Group.

---

[10] *See Eli Lilly & Co. v. Novartis Pharma AG*, 37 F.4th 160, 167 (4th Cir. 2022).

[11] Windhorst could have filed his original motion to vacate Mr. Sabag's Section 1782 Application without intervention under Rule 24, but he chose to intervene as a party and to participate in the discovery taking place in this District, subjecting himself to the jurisdiction of this Court.

[12] *See* **Exhibit C** (*Sabag v. Windhorst et al.*, 49D14-1805-PL-017647, Order Denying Defendants Sapinda Asia Limited and Lars Windhorst's Motion to Dismiss Plaintiff's Complaint, issued April 1, 2019).

### III.     The Section 1782 Discretionary "Intel" Factors

To the extent that Mr. Sabag has successfully supported his statutory right to Section 1782 discovery, Section 1782 provides discretion to the Court to approve or deny the requested discovery after the Court has evaluated four additional factors:

> (1) whether "the person from whom the discovery is sought is a participant in the foreign proceeding;" (2) the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the Section 1782 request conceals "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request includes unduly intrusive or overly burdensome requests.

*In re Medytox*, 2019 WL 3162174, at *4 (citing *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 264-65 (2004)).

Courts are required to exercise their discretion taking into account the "twin aims" of Section 1782 of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *See Intel Corp.*, 542 U.S. at 252 (internal citation omitted).  "The animating purpose of § 1782 is comity:  Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Automotive U.S., Inc. v. Luxshare, Ltd*., 142 S. Ct. 2078, 2082 (2022).

Here, each discretionary factor weighs in favor of granting Mr. Sabag's request to depose Windhorst.

### *(1) Jurisdictional Reach of Foreign Tribunal--Windhorst is Not a Participant in the Investigation*

The first *Intel* factor provides:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily

> is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264.

Windhorst is not a participant in the reasonably contemplated and actual criminal "investigations." Rather, he is the non-participant "target." As the Eleventh Circuit and Second Circuit have held (and this Court the same), foreign "investigations" themselves are "foreign proceedings" within the meaning of § 1782 (even before formal charging).[13]

Even to the extent that that Windhorst is formally charged by the U.K. criminal authorities, Windhorst no longer resides in the United Kingdom. [Doc. 25, pp. 9, 13]. As the U.S. Supreme Court explained in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent §1782(a)." *Intel*, 542 U.S. at 264. Absent this Section 1782 proceeding, the U.K. criminal authorities may never have the opportunity to solicit Windhorst's future testimony (except possibly through criminal extradition).[14]

---

[13] *See In re Furstenberg Finance SAS*, 785 Fed. App'x 882, 884-85 (2d Cir. 2019); *In re Application of Furstenberg Finance SAS v. Litai Assets LLC*, 877 F.3d 1031 (11th Cir. 2017). This Court has also held, "[s]imilarly, in *In re Furstenberg Finance SAS*, the Second Circuit held that a criminal proceeding was reasonably contemplated when applicants and their counsel supported the application with 'well-documented assertions . . . outlining the basis of their intended criminal complaint pending receipt of the evidence sought.'" [Doc. 80, p. 8] (internal citations omitted).

[14] *See e.g., In re Republic of Turkey*, 2021 WL 3022318, * 5 (N.D. Ill. Jul. 16, 2021) ("None of the respondents [i.e., the potential targets of the investigation by Turkey] in this case are participants in the criminal investigations or any proceeding underway in Turkey. . . The respondents do not appear to challenge Turkey's contention that the first *Intel* factor is satisfied." *See also, Eni Ghana Exploration & Prod. Ltd v. Gaffney Cline & Assocs.*, 2022 WL 3156224, * 4 (S.D. Tex. Aug. 8, 2022) ("Section 1782 does not require [an applicant] to seek discovery in the foreign jurisdiction before seeking the assistance of a district court.") (citations omitted).

**(2) *The U.K. Criminal Authorities Would Be Receptive to the Evidence Produced in these Proceedings.***

This Court has already determined, as supported by Solicitor Bibby's prior affidavit, that the U.K. criminal agencies, including SFO, would be receptive to any evidence that would indicate whether Windhorst committed a crime under U.K. laws. [Doc. 80, p. 7].[15]

**(3) *This Section 1782 Request Does Not Conceal an Attempt to Circumvent Foreign Proof-Gathering Restrictions.***

Windhorst has devoted substantial efforts to discredit Mr. Sabag by asserting that this entire Section 1782 proceeding represented a ruse to allow Mr. Sabag to collect evidence to be used in an unrelated ICDR arbitration. Windhorst's arguments have turned out, in hindsight, to conceal Windhorst's own guise to distract this Court from the merits of Mr. Sabag's U.K. criminal claims. Mr. Sabag's claims and Windhorst's counterarguments in the ICDR arbitration have been addressed and adjudicated, and Mr. Sabag is still pursuing criminal remedies against Windhorst in the United Kingdom.

The Second Circuit has clarified that district courts should not "delve into the mysteries of foreign law" in Section 1782 cases, and the "district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1100 (2d Cir. 1995). Windhorst will not be able to offer any "authoritative proof" that the U.K. criminal authorities or the U.K. courts would not want to consider Windhorst's deposition. Instead, as set forth in footnote 15, Solicitor Bibby has opined that there was "no basis" in which

---

[15] As Solicitor Bibby opined, "There is no basis on which the Agencies would refuse to consider the material evidence obtained under this Application as part of their assessment of whether to launch an investigation. . . As explained above, discovery obtained under this Application would thereafter be material when drafting the particulars of any offence for the purpose of laying an information before the Magistrates' Court (albeit this will have been supplemented by evidence subsequently gathered through further investigation)." [Doc. 6-1, ¶ 106].

the U.K. criminal authorities "would refuse to consider material evidence obtained under this Application." [Doc. 6-1, ¶ 106].

Notwithstanding, even if this Court had reservations about subjecting Windhorst to a deposition in the United States based on this Court's U.S. views regarding a criminal suspect's rights against self-incrimination (which the Second Circuit has strongly suggested district courts should not do), the British courts (and/or prosecutor) may, in various circumstances, infer guilt against a suspect who refuses to answer questions.[16]

**(4)  This Section 1782 Request Is Not Unduly Intrusive or Overly Burdensome.**

This Court has previously ruled that Mr. Sabag's request for discovery from MCCC would not be unduly intrusive or overly burdensome as to Windhorst.  [Doc. 89, p. 7].  The facts surrounding this supplemental request to depose Windhorst himself do not change this Court's previous analysis.  Just as an intervenor in civil litigation may not claim that a deposition request is unduly intrusive merely because the intervenor may have to admit to civil liability, a criminally accused individual who intervenes in a proceeding (and even seeks and receives rights that arguably "burden" the investigation) may not suddenly complain because he may be asked to answer questions regarding his alleged criminal acts.

To address Windhorst's stated "concerns" regarding the potential misuse of the discovery materials "outside" the instant proceeding, the Court previously granted Windhorst a protective order to limit the use of the MCCC discovery to the U.K. criminal proceedings.[17]  [Doc. 89].  Mr. Sabag acknowledges that the protective order will also apply to Windhorst's deposition.

---

[16] See e.g., U.K. Crown Prosecution Service website describing "adverse inferences" regarding the failure to answer questions under the Criminal Justice and Public Order Act (CJPOA) 1994 (https://www.cps.gov.uk/legal-guidance/adverse-inferences).

[17] When addressing the fourth Intel factor regarding unduly burdensome discovery requests, the Second Circuit has adopted the view that "it is far preferable for a district court to reconcile whatever misgivings it may have

Windhorst has repeatedly noted to his benefit in this proceeding that Section 1782 draws from the Federal Rules of Civil Procedure, not the Federal Rules of Criminal Procedure.[18]  This Court owes Windhorst no special criminal protections.  In fact, Windhorst has used the Federal Rules of Civil Procedure to obtain special rights to participate in a criminal investigation that no other U.K. criminal target would normally enjoy.  Following the 2015 Amendments to the Federal Rules of Civil Procedure, requests for discovery should be proportional, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Furthermore, the information to be obtained through discovery need not be admissible to be discoverable.  *Id*.

Mr. Sabag's Section 1782 discovery has uncovered that Windhorst's company hired the son of an Indiana public official shortly after the public official directed a multi-million-dollar contract to the company in a very suspect manner (and while the company was being considered for a larger contract, which it later won).  The U.K. criminal authorities have a right to apply their own laws in the context of the indisputable facts, and U.S. district courts are not tasked with the responsibility of subjectively analyzing the merits of the foreign legal claims (as Windhorst will seek for this Court to do through his creative rhetoric).  *See In re Furstenberg Fin. SAS*, 2018 WL

---

about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa,* 51 F.3d at 1101; The Seventh Circuit, which has decided substantially fewer Section 1782 cases, has followed the same approach.  *See Applications of Heraeus Kulzer v. Biomet Inc*., 633 F.3d 591 (7th Cir. 2011) ("The district court's second error was to turn down Heraeus's discovery request flat, on the ground that compliance would be unduly burdensome to Biomet, without requiring Biomet to negotiate with Heraeus over cutting down the request to eliminate excessive burden and failing that to ask the district court to limit the scope of discovery.").

[18] *See Heraeus Kulzer, GMBH v. Biomet, Inc*., 633 F.3d 591, 595 (7th Cir. 2011) ("As indicated in one of the passages we quoted from the statute, discovery sought under section 1782 must (in the absence of a contrary order by the district court) comply with Rule 26 and the other rules governing discovery in federal courts.").

3392882 (S.D.N.Y. Jul. 12, 2018), *aff'd Paul v. Furstenberg Fin. SAS (In re Furstenberg Fin. SAS)*, 785 Fed.Appx. 882 (2d Cir. 2019).  As the District Court for the Southern District of New York explained in a Section 1782 case involving a reasonably contemplated criminal complaint:

> The Objectors also argue that it is clear that the petitioners do not have any basis for bringing a criminal complaint in a Luxembourg court and therefore this application is simply a fishing expedition. . . . But that argument asks this Court to consider the merits of the foreign proceeding and determine whether the petitioners are likely to prove their damages in that case. This Court should not address such arguments in a § 1782 application. *See Promneftstroy*, 134 F. Supp. 3d at 793 (declining to address the issue of whether the petitioner would have standing in a Dutch court and holding that it is "not within the Court's purview to adjudge the scope, relevance, and precedential effect of Dutch cases on later Dutch proceedings"); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) ("[I]it is unwise -- as well as in tension with the aims of [§] 1782 -- for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law."). The petitioners have asserted that they will bring a criminal proceeding and will submit the discovery they seek in this application for use in that proceeding. Their legal expert has asserted that the petitioners can allege damages sufficient to institute a criminal proceeding. The Objectors may be right that the petitioners may not ultimately recover any damages in the foreign proceeding, but this Court cannot decide the merits of the contemplated foreign proceeding when deciding an application under § 1782.

*Id*. (docket references omitted).

## IV.    Conclusion

Mr. Sabag has established that the statutory and discretionary factors strongly favor his request to depose Windhorst.  Windhorst's testimony would be highly "relevant" to Mr. Sabag's criminal accusations against Windhorst.  Solicitor Bibby's affidavit provides an objective basis to suggest that Windhorst has in fact committed one or more criminal acts in the United Kingdom. Mr. Sabag therefor asks for Windhorst, who regularly travels internationally on his own private jet, to be ordered to personally appear in Indiana for a videotaped deposition (to be conducted in accordance with the Federal Rules of Civil Procedure) at a mutually acceptable time in the near future.  Mr. Sabag consents to limit the discovery for use only in U.K. criminal proceedings, except

to the extent that Mr. Sabag seeks, and this Court grants, a modification of the protective order.

Dated:  October 11, 2022

Respectfully submitted,

*Offer Korin*
Offer Korin, No.: 14014-49
Brooke Smith, No. 32427-03
STOLL KEENON OGDEN PLLC
334 N. Senate Avenue
Indianapolis, IN  46204
Office:  317-464-1100; Fax:  317-464-1111
offer.korin@skofirm.com
brooke.smith@skofirm.com

Courtney Caprio [Admitted *pro hac vice*]
AXS LAW GROUP, PLLC
2121 NW Second Avenue, Suite 201
Miami, FL  33127
Office:  305-297-1873; Fax:  305-397-2336
courtney@axslawgroup.com

*Counsel for Movant Eli Sabag*

## CERTIFICATE OF SERVICE

I hereby certify that on **October 11, 2022**, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's ECF.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Evan Carr<br>Andrew W. Hull<br>HOOVER HULL TURNER LLP | ecarr@hooverhullturner.com<br>awhull@hooverhullturner.com |
| Tai-Heng Chang<br>Gaelle E. Tribie<br>Martin B. Jackson<br>SIDLEY AUSTIN LLP | tcheng@sidley.com<br>gtribie@sidley.com<br>mjackson@sidley.com |
| Sean Tyler Dewey<br>Michael A. Wukmer<br>Meredith Wood<br>ICE MILLER LLP | sean.dewey@icemiller.com<br>michael.wukmer@icemiller.com<br>meredith.wood@icemiller.com |

*Offer Korin*
Offer Korin