**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: <br> The Application of: <br><br><br> ELI SABAG, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Case No.: 1:19-mc-00084-JPH-TAB |

**LARS WINDHORST'S MOTION TO VACATE OR MODIFY UNDER RULE 60 THE COURT'S ORDER TO SHOW CAUSE WHY SANCTIONS ARE NOT APPROPRIATE (DOC. 108), AND, IN THE ALTERNATIVE, MOTION TO STAY PENDING ADJUDICATION OF MR. WINDHORST'S MOTION TO VACATE UNDER RULES 55 AND 60, AND ALTERNATIVELY RULE 72(A) OBJECTION TO, THE MAGISTRATE JUDGE'S ORDER ON SUPPLEMENTARY REQUEST FOR DISCOVERY IN ACCORDANCE WITH 28 U.S.C. § 1782 (DOC. 105) AND/OR PENDING RESOLUTION OF THE PARTIES' ICDR ARBITRATION**

Lars Windhorst ("Mr. Windhorst"), through counsel, hereby moves this Court to vacate or modify under Fed. R. Civ. P. 60(b) the Court's Order to Show Cause Why Sanctions Are Not Appropriate (Doc. 108 ("OSC Order")), and in the alternative, moves to stay the OSC Order pending adjudication of Mr. Windhorst's Motion to Vacate under Fed. R. Civ. P. 55 and 60, and Alternatively Rule 72(a) Objection to, the Court's Order on Supplementary Request for Discovery in Accordance with 28 U.S.C. § 1782 (Doc. 105 ("Deposition Order")), filed concurrently herewith ("Mr. Windhorst's Motion to Vacate the Deposition Order") and/or pending resolution of the ICDR Arbitration proceeding between Mr. Windhorst and Applicant Eli Sabag ("Mr. Sabag").  In support of this Motion, Mr. Windhorst states as follows:

**I.      PRELIMINARY STATEMENT**

Mr. Sabag should have voluntarily dismissed this action over 3 weeks ago.  Mr. Windhorst and Mr. Sabag have a settlement agreement pursuant to which both parties agreed to release their

1

claims against each other and to jointly dismiss this § 1782 proceeding.  The releases and dismissal clauses of the parties' settlement agreement were triggered when Mr. Windhorst tendered a payment in excess of $3 million to Mr. Sabag in accordance with the settlement agreement and a summary award enforcing that agreement obtained by Mr. Sabag following Mr. Windhorst's delay in completing the payment.  But while that delay was regrettable (and caused entirely by circumstances outside of Mr. Windhorst's control, including his account being frozen and the liquidity issues that entailed), it is now entirely academic: Mr. Windhorst has unquestionably made Mr. Sabag whole under the settlement agreement, which has triggered Mr. Sabag's obligation to jointly dismiss this action.

Unfortunately, Mr. Sabag, having greatly benefitted from the parties' settlement, now seeks to have his cake and eat it too by pocketing more than $3 million dollars while simultaneously refusing to dismiss this proceeding.  This left Mr. Windhorst no option but to seek to enforce, via arbitration before ICDR, the very settlement agreement Mr. Sabag has previously enforced against Mr. Windhorst.  In the arbitration, Mr. Windhorst seeks an award requesting Mr. Sabag to comply with the terms of the parties' settlement agreement, including his obligation to dismiss this proceeding.

Through this Motion, Mr. Windhorst seeks to vacate or modify the Court's OSC Order – entered just one week ago – or alternatively stay the OSC Order pending resolution of two motions – Mr. Windhorst's Motion to Vacate the Deposition Order, filed concurrently herewith, and Mr. Windhorst's Motion to Enforce the Settlement Agreement as Amended Against Claimant Eli Sabag and for Entry of Award filed in the parties' arbitration earlier this week – that, if granted, would moot the OSC Order.  The OSC Order and the Deposition Order were issued, and Mr. Sabag's Supplementary Request was filed, after this Court directed the clerk to close the case and

after Mr. Windhorst's prior counsel in this case ceased representing Mr. Windhorst. As such, Mr. Windhorst has good cause for this Motion for several reasons, including excusable neglect, a release by Mr. Sabag of all claims and judgments against him, and extraordinary circumstances. Mr. Windhorst took quick action to address his delay by, *inter alia¸* tendering payment to Mr. Sabag and retaining new counsel to move to enforce the parties' settlement agreement in the parties' arbitration and file this Motion (and Mr. Windhorst's Motion to Vacate the Court's Order on Supplementary Request for Discovery in Accordance with 28 U.S.C. § 1782) in this Court. Moreover, Mr. Windhorst exceeds the low standard for showing a meritorious defense to Mr. Sabag's OSC Motion by demonstrating that he should not be sanctioned for his failure to respond to Mr. Sabag's deposition subpoena in light of his efforts to tender payment to Mr. Sabag in order to finally and completely resolve all disputes, expressly including this proceeding, between the parties, and the absence of prejudice to Mr. Sabag.

Accordingly, Mr. Windhorst respectfully requests that the Court vacate, or, at minimum, modify, the OSC Order, or, in the alternative, stay the OSC Order pending resolution of Mr. Windhorst's Motion to Vacate the Deposition Order and the parties' ICDR Arbitration.

## II.    FACTUAL AND PROCEDURAL HISTORY

On December 31, 2019, Mr. Sabag initiated this proceeding ("1782 Action") by filing under seal an *ex parte* application with the Court for an order pursuant to 28 U.S.C. § 1782, seeking "targeted discovery from Marion County Community Corrections (MCCC) and various employees of MCCC and Marion County for use in an anticipated criminal investigation conducted before formal accusation in a foreign court." Doc. 1 at 1. Mr. Sabag's application, however, was mostly describing an acquisition transaction, related agreements, and subsequent disputes among or between Mr. Sabag, Mr. Windhorst, Track Group, Inc. ("Track Group") and Sapinda Asia Limited

("Sapinda").  *See* Doc. 9 at 8-36.  On January 31, 2020, the Magistrate Judge granted Mr. Sabag's *ex parte* application.  Doc. 13.

Shortly after obtaining the *ex parte* order from the Magistrate Judge, on March 11, 2020, Mr. Sabag filed a notice of arbitration in the International Center for Dispute Resolution (ICDR) in New York ("ICDR Arbitration") in accordance with Section 11.5 of the parties' Share Purchase Agreement ("SPA").[1]  Doc. 33-3 ("Mr. Sabag's Statement of Claim") at ¶ 15.  Section 11.5 of the SPA provides in relevant part:

> [A]ny dispute, claim or controversy which shall arise out of or in relation to this Agreement, or the breach thereof, shall be settled by binding arbitration.  Any such arbitration shall be held in New York, New York U.S.A. in accordance with the Rules of the International Centre for Dispute Resolution in accordance with its international Arbitration Rules (the "Rules"), which Rules are deemed to be incorporated by reference. . . .

Doc. 6-5 at § 11.5.

The facts section in Mr. Sabag's original § 1782 Application is almost the same as the facts section in Mr. Sabag's Statement of Claim, and this time Mr. Sabag sought damages under claims including breach of the share purchase agreement and put option agreement.  *Compare* Doc. 33-3 *with* Doc. 9; *see also* Doc. 65 at 12 (noting Mr. Sabag's original § 1782 Application and the Statement of Claim "are inextricably linked and involve an identical nucleus of facts all stemming from the potential joint venture between Mr. Sabag, Mr. Windhorst, and Track Group").

After almost two years of launching proceedings in different forums against Mr. Windhorst on the acquisition transaction, Mr. Sabag, Mr. Windhorst, Sapinda, and Track Group entered into

---

[1]  ICDR Case No. 01-20-0003-693.

a Confidential Settlement Agreement and Mutual Release ("Settlement Agreement"), effective on June 10, 2022.  Decl. of Lars Windhorst ("Windhorst Decl."), Ex. 1 [Settlement Agreement].[2]

The Settlement Agreement requires Mr. Sabag to voluntarily dismiss all his existing claims and proceedings relating to Mr. Windhorst, expressly including this 1782 Action, with prejudice after receiving the settlement payment.  The Settlement Agreement "is intended to settle and resolve permanently and forever any and all claims" that were asserted by Mr. Sabag against Mr. Windhorst in, *inter alia*, the 1782 Action.  Windhorst Decl. Ex. 1 ¶ 3.  Paragraph 5 of the Settlement Agreement requires Mr. Sabag's counsel to "file a Joint Stipulation of Dismissal of the 1782 Action" "within five (5) business days [of receiving the settlement payment]." *Id.* ¶ 5.  The Settlement Agreement defines "1782 Action" as this case.  *See id.* ¶ 3 ("[Mr.] Sabag filed an action in the United States District Court of the Southern District of Indiana under case number 1:19-mc-00084-JPH-TAB, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings ('1782 Action').").

Under Paragraph 6.a of the Settlement Agreement, Mr. Sabag is also obligated to "RELEASE AND FOREVER DISCHARGE[]" Mr. Windhorst "from any and all past, present or future claims … of any nature whatsoever, whether or not now known, suspected, or claimed, that exist in whole or in part as of the Effective Date of this Agreement," immediately upon the disbursement of the settlement payment.  *Id.* ¶ 6.a.

Paragraph 8.d of the Settlement Agreement further sets forth that:

The Parties shall not initiate, prosecute, participate in, or enforce any legal or equitable action that is contrary to the terms and conditions or intent of this Agreement or otherwise required by law. The Parties acknowledge that the claims being released include all existing

---

[2]   The published terms of the agreement can be found on https://trackgrp.com/wp-content/uploads/2022/06/TRCK-8K.pdf, as part of Track Group's SEC Form 8-k filing.  Track Group's SEC Form 8-K explicitly provides that the Effective Date of the Settlement Agreement is June 10, 2022.

claims up to the Effective Date of this Agreement and they have voluntarily given up the right to pursue those claims in any forum or proceeding. The Parties expressly WAIVE any right to assert in the future any claims of any kind or nature whatsoever that may have existed up to and including the Effective Date of this Agreement, even it if they are not now known and regardless of the amount or extent of any damages.

*Id.* ¶ 8.d.

Because Mr. Windhorst had administrative issues with his bank and his bank account was frozen (which subsequently caused him liquidity issues), (Windhorst Decl. ¶ 5), he and Mr. Sabag entered into an Amendment to the Settlement Agreement that extended the time by which Mr. Windhorst needed to make the settlement payment and increased the amount of the settlement payment.  Windhorst Decl. Ex. 3 [Amendment to the Settlement Agreement].

On July 14, 2022, this Court ordered that "[t]he clerk shall close this case on the docket." Doc. 97 at 10.

Because Mr. Windhorst's administrative issues with the bank were not resolved, Mr. Windhorst was not able to make the payment by the time set forth in the Amendment to the Settlement Agreement.  Windhorst Decl. ¶ 8.  Mr. Sabag then filed a motion to enforce the Settlement Agreement and its Amendment in the ICDR Arbitration on August 2, 2022, (Windhorst Decl. Ex. 6 [Sabag Motion to Enforce]), and obtained arbitral awards against Mr. Windhorst and Sapinda under the Settlement Agreement, which included interest and attorneys' fees ("Enforcement Awards").  Windhorst Decl. Ex. 11 [Settlement Enforcement Award]; Windhorst Decl. Ex. 12 [Final Award].

Mr. Sabag's affirmation of the Settlement Agreement is not only evident from his motion to enforce it, but also from Mr. Sabag (via counsel) chasing Mr. Windhorst for payments of funds, both before and after the issuance of the arbitral award on the breach by Mr. Windhorst of the Settlement Agreement in August 2022.  Windhorst Decl. ¶¶ 9, 11.

However, on October 11, 2022, and while Mr. Sabag was enforcing the Settlement Agreement via arbitration, Mr. Sabag filed in this 1782 Action a supplementary request for discovery to conduct a videotaped deposition of Mr. Windhorst in Indiana at a "mutually acceptable time", purportedly for use in contemplated criminal proceedings in England ("Supplementary Request").  Doc. 98 at 1, 14.

Between the filing of the Supplementary Request and the filing of this Motion, Mr. Windhorst was not represented by any counsel in this 1782 Action.  On October 11, Mr. Windhorst's then counsel Sidley Austin LLP informed Mr. Windhorst that they were terminating their representation of Mr. Windhorst in this case.  Windhorst Decl. ¶ 12.  On October 20, 2022, Sidley Austin LLP and Hoover Hull Turner LLP formally moved to withdraw their appearances on behalf of Mr. Windhorst, (Docs. 100, 101), and this Court granted both motions. Docs. 102, 103.

After this, Mr. Windhorst continued to focus on arranging the payment of the settlement funds instead of retaining a counsel and expending this Court's resources to fight the additional request.  Windhorst Decl. ¶¶ 13, 15.  Mr. Windhorst believed that Mr. Sabag would abide by the Settlement Agreement such that focusing his efforts on making the payment would result in Mr. Sabag fulfilling his obligation under the Settlement Agreement to dismiss this proceeding.  *Id.* ¶¶ 14-16.  Moreover, Mr. Windhorst did not expect the Court to entertain the Supplementary Request because he understood the case had already been closed pursuant to the Court's July 15 Order.  *Id.* ¶ 13.

On December 15, 2022, the Magistrate Judge granted Mr. Sabag's Supplementary Request. Doc. 105 (the "Deposition Order").  The Deposition Order states that "the deposition shall occur at a mutually acceptable time."  *Id.* at 6.  Mr. Windhorst did not respond to the deposition notice

that Mr. Sabag sent on December 29, 2022 (*see* Doc. 106 at 1), as Mr. Windhorst was committed to gathering settlement funds to satisfy his obligations under the Settlement Agreement, and expected Mr. Sabag to also follow the Settlement Agreement.  Windhorst Decl. ¶ 16.  Since the parties' foreign counsel were discussing arrangements for payment during this time period, Mr. Windhorst did not expect that Mr. Sabag would file his Motion for Order to Show Cause on Civil Contempt ("Motion for OSC"), (Doc. 107), particularly since no "mutually acceptable time" had been set, and when Mr. Sabag had already taken steps to enforce the Settlement Agreement. Windhorst Decl. ¶ 17.

On February 8, 2023, Mr. Windhorst was able to successfully wire the settlement funds and paid Mr. Sabag the full amount as set forth in the Amendment to the Settlement Agreement and the Enforcement Awards.  Windhorst Decl. ¶ 18.  On February 10, 2023, Mr. Windhorst retained the undersigned U.S. counsel to communicate with Mr. Sabag's Indiana counsel about withdrawal of this 1782 Action pursuant to the Settlement Agreement.  Windhorst Decl. ¶ 19 .

Following Mr. Windhorst's payment to Mr. Sabag, Mr. Sabag was required under the Settlement Agreement to dismiss the 1782 Action by no later than February 15, 2023.  *See* Windhorst Decl. Ex. 1 ¶ 5.  On the same day, U.S. counsel for Mr. Windhorst called Mr. Sabag's attorney in Indiana, informing him of the payment and requesting that the 1782 Action be dismissed per the Settlement Agreement.  Decl. of Lucas Bento ("Bento Decl.") ¶ 4.  On this call, Mr. Windhorst's U.S. counsel was informed by Mr. Sabag's Indiana counsel that he would need some time to confer with his client because, *inter alia*, Mr. Sabag's mother had recently passed. *Id.* ¶ 5.  In an effort to respect what must undoubtedly been a difficult time for Mr. Sabag (and in observance of the Jewish Shiva 7-day period), Mr. Windhorst's U.S. counsel agreed to confer back the following week.  *Id.* ¶ 6.  Mr. Windhorst's U.S. counsel also proposed whether it would make

sense to file a letter with the Court advising of the parties' conferral on this issue but was advised that the filing of letters are not permitted in this district.  *Id*.  On February 22, 2023, Mr. Sabag, through Indiana counsel, repeated his intention to depose Mr. Windhorst, thus refusing to dismiss this 1782 Action.  Bento Decl. Ex. A [Email Correspondence Between L. Bento and O. Korin on Feb. 22, 2023].  On February 23, 2023, Mr. Windhorst's U.S. counsel spoke with Mr. Sabag's Indiana counsel over the telephone to better understand Mr. Sabag's position in an effort to avoid further litigation or arbitration while offering to compensate Mr. Sabag for his reasonable legal fees incurred in preparing for the deposition and Mr. Sabag's OSC Motion.  Bento Decl. ¶ 8.  On February 27, 2023, Mr. Sabag, through Indiana counsel, stated that "[a]t this time" he is "committed to depose Mr. Windhorst."  Bento Decl. Ex. B [Email Correspondence Between L. Bento and O. Korin on Feb. 27, 2022].

On March 1, 2023, the Court entered an Order to Show Cause on Civil Contempt (Doc. 108 (the "OSC Order")), directing Mr. Windhorst to appear in person at a hearing on April 11, 2023 to show cause.

On March 2, 2023, Mr. Windhorst's current U.S. counsel sent a letter to Mr. Sabag's counsel, once again requesting that Mr. Sabag dismiss this proceeding in accordance with the parties' Settlement Agreement.  Bento Decl. ¶ 10.  Mr. Sabag's counsel did not respond.  *Id.* at ¶ 11.  On March 6, 2023, Mr. Windhorst filed a motion to enforce the Settlement Agreement ("Mr. Windhorst's Motion to Enforce") in the ICDR Arbitration proceeding based on Mr. Sabag's failure to dismiss this proceeding, which constitutes a breach of the Settlement Agreement.  Bento Decl. Ex. D [Windhorst Motion to Enforce].  Mr. Windhorst, through that motion, requests that the arbitrator order Mr. Sabag to dismiss this 1782 Action and compensate Mr. Windhorst for his attorneys' fees incurred in continuing to litigate this proceeding.  *Id.*; Bento Decl. ¶ 12.

## III.    LEGAL STANDARDS

### 1.    Federal Rule of Civil Procedure 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure authorizes relief from a final judgment or order in enumerated circumstances, including "(1) mistake, inadvertence, surprise, or excusable neglect; … (5) the judgment has been satisfied, released, or discharged …; and (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).

A motion to vacate or set aside a court's order under Rule 60 will be granted if the moving party shows (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint.  *Pretzel & Stouffer Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994).

The Seventh Circuit has "articulate[d] a policy of favoring [adjudication on the merits] over default judgment."  *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009).  The decision whether to grant relief under Rule 60(b) is a matter of discretion for the court.  *Helm v. Resolution Tr. Corp.*, 84 F.3d 874, 877 (7th Cir. 1996); *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 250 (7th Cir. 1990).

### 2.    Motion to Stay

District courts have "the power to stay the instant suit based on its inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Joyner v. Tyson Foods, Inc.*, No. 1:07-CV-0141-LJM-TAB, 2007 WL 9751846, at *1 (S.D. Ind. May 3, 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In determining whether to grant a stay, courts consider three factors: "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation[.]" *Id.*; *see also Irving Materials, Inc. v. Zurich Am. Ins. Co.*, No. 1:03-cv-0361-SEB-TAB, 2008 WL

1971468, at *2 (S.D. Ind. May 5, 2008) (stating the three factors in determining whether to grant a motion to stay are: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court.").

### 3.    Motion to Stay Pending Arbitration

Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory."). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Under the FAA, state contract law determines whether an arbitration agreement is valid. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (looking to state law to determine whether arbitration clause was enforceable). Meanwhile, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Where a contract contains a broad arbitration clause, courts generally hold that "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the [arbitration] clause." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983).

Whether to stay the litigation for claims not covered by the arbitration agreement is a matter of the court's discretion. *See, e.g.*, *Irving Materials,* 2008 WL 1971468, at *2 (exercising

discretion to grant a motion to stay pending an arbitration proceeding).  Whether the stay is pending resolution of arbitration or some other proceeding, this Court uses the same three factor inquiry to determine if a stay is warranted.  *Compare Irving Materials*, 2008 WL 1971468, at *2  (staying case pending arbitration), *with Estimating Grp. LLC v. Rickey Conradt, Inc.*,  2019 WL 2869686, at *3 (S.D. Ind. July 3, 2019) (granting in part motion to stay pending court's ruling on defendants' motion to dismiss for lack of jurisdiction).

## IV.    ARGUMENT

### 1.    The OSC Order Should be Vacated Pursuant to Rule 60(b)

The Court should vacate the OSC Order pursuant to Rule 60(b).  Mr. Windhorst has good cause for his delay, he took quick action to correct his failure to respond to Mr. Sabag's deposition subpoena, and he has a meritorious defense to any sanctions that may be imposed.

#### a.    Mr. Windhorst Has Good Cause for the Delay

Mr. Windhorst has good cause for the delay.  Indeed, at least three independent grounds provide a basis for finding good cause: excusable neglect under Rule 60(b)(1), the judgment has been released under Rule 60(b)(5), and other justifiable reasons under Rule 60(b)(6).

*Excusable Neglect*:  The OSC Order may be vacated due to Mr. Windhorst's excusable neglect.  *See* Fed. R. Civ. P. 60(b)(1).  In considering whether excusable neglect exists under Rule 60(b)(1), "all relevant circumstances" are considered, including "the danger of prejudice [to the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *United States v. Brown*, 133 F.3d 993, 996 (7th Cir. 1998) (quoting *Pioneer Investment Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)).  Here, there is excusable neglect as Mr. Windhorst was unrepresented at the time Mr. Sabag filed his Supplementary Request (Windhorst Decl. ¶ 12) and at the time of the Deposition Order, (*see*

Docs. 100-103, 105), and he believed the case to be closed in light of the Court's July 15, 2022 Order (Doc. 98) directing the clerk to close the case docket. Windhorst Decl. ¶ 13. Mr. Windhorst's reason for delay was that his efforts were directed towards making Mr. Sabag whole, *id.* ¶¶ 13-15, which would have required Mr. Sabag to dismiss this proceeding after obtaining payment under the Settlement Agreement. Windhorst Decl. Ex. 1 ¶ 5. Given that Mr. Sabag was obligated to dismiss this action no later than February 15, 2023, it is clear that Mr. Windhorst's delay has also been excused by Mr. Sabag's own conduct in refusing to dismiss this proceeding.[3] *See Friedman Feiger, L.L.P. v. Ulofts Lubbock, LLC*, No. 3:09-CV-1384-D, 2009 WL 3378401, at *2 (N.D. Tex. Oct. 19, 2009) (finding excusable neglect based on "[a] party's good faith but mistaken reliance on settlement negotiations to defer the expense and effort of filing an unnecessary responsive pleading"); *Whitman v. United States Lines, Inc.*, 88 F.R.D. 528, 530 (E.D. Tex. 1980) (finding excusable neglect and setting aside a default under Rule 55(c) where defendant's failure to answer the complaint was due to good faith belief that case would be resolved by ongoing settlement negotiations); *c.f. Cent. Illinois Carpenters Health & Welfare Tr. Fund v. Rice Equip. Co.*, No. 14-3390, 2015 WL 4378192, at *3 (C.D. Ill. July 16, 2015) (vacating order where defaulting party established good case based on non-defaulting party's counsel's unkept promise to inform defaulting party's counsel when an action was filed). In any event, as described below, (*infra* § IV.1.b), Mr. Sabag has not been prejudiced by the delay. Accordingly, relief is appropriate under Rule 60(b)(1).

*Release*: The OSC Order may be vacated due to the fact it has been released. *See* Fed. R. Civ. P. 60(b)(5). Here, this entire Section 1782 proceeding was released under paragraph 6(a) of

---

[3] Mr. Windhorst's U.S. counsel would have acted even faster in response to this Court's orders but elected to give Mr. Sabag's Indiana counsel ample time to confer with Mr. Sabag in light of the passing of Mr. Sabag's mother. *See* Bento Decl. ¶ 5.

the Settlement Agreement, which provides that "Sabag on behalf of himself and on behalf of each and every person or entity that could possibly claim by, through, or on behalf of Sabag RELEASES AND FOREVER DISCHARGES . . . Windhorst . . . from any and all past, present or future claims, causes of action, suits, . . .controversies, judgments, obligations, damages and liabilities of any nature whatsoever, whether or not now known, suspected, or claimed, that exist in whole or in part as of the Effective Date of this Agreement, including but not limited to the Settled Claims as described above in this Agreement."  Windhorst Decl. Ex. 1 ¶ 6(a).  The Settlement Agreement expressly defines "Settled Claims" to include "the 1782 Action," and defines the "1782 Action" as the "action in the United States District Court of the Southern District of Indiana under case number 1:19-mc-00084-JPH-TAB, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings." ("1782 Action")  *Id.* ¶3.  The Settlement Agreement also provides that the release is "effective immediately upon the disbursement of the Settlement Funds."  *Id.* ¶ 6.  Because Mr. Windhorst has paid what he owed Mr. Sabag under the Settlement Agreement, Sabag has released Mr. Windhorst from this proceeding, and the OSC Order may be vacated under Rule 60(b)(5).

*Other Justifiable Reasons*:  Finally, the OSC order may be vacated for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Rule 60(b)(6) is available only in 'extraordinary circumstances.'"  *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"  *Id.* (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

Here, even if Mr. Windhorst does not meet the threshold for relief under Rule 60(b)(1), Rule 60(b)(2), or Rule 60(b)(5), the totality of these extraordinary circumstances justifies relief. Following Mr. Windhorst making Mr. Sabag whole, Mr. Sabag was obligated to dismiss this proceeding and release all claims and judgments against him. Windhorst Decl. Ex. 1 ¶ 6. Despite this obligation, Mr. Sabag effectively seeks to compel Mr. Windhorst to violate his privileges against self-incrimination through his requested deposition. Decl. of Gavin S. Frisch ("Frisch Decl."), Ex. 1 [Proposed Opposition] §§ IV.1.a & IV.2.c. This poses a significant risk of injustice to Mr. Windhorst. *See Buck*, 580 U.S., at 123; *cf. McCloud v. Goodyear Dunlop Tires North America, Inc.*, No. 04-1118, 2006 WL 1791162, at \*1-3 (C.D. Ill. June 27, 2006) (quashing deposition subpoena, finding that the defendant would be prejudiced by a deposition subpoena that caused "unfair surprise" to the defendant, and that the plaintiff was playing tactically in serving the subpoena).[4] Moreover, allowing the OSC Order to stand in light of Mr. Sabag's contractual obligation to dismiss this proceeding additionally risks undermining the public's confidence in the judicial process. Specifically, if parties, like Mr. Sabag here, are allowed to eschew their settlement obligations by maintaining litigation of claims they agreed to dismiss or release, the court will be fostering the circumvention of well-established federal and state policies favoring the enforcing contractual agreements and, in particular, settlement agreements. *See, e.g.*, *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992) (recognizing U.S. federal "policy favoring enforcement of contracts"); *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383 (N.Y. App. 1993) (recognizing New York's "[s]trong policy

---

[4] In this Circuit, the court will prohibit the taking of a deposition when finding "exceptional circumstances." *Kaiser v. Mut. Life Ins. Co. of New York*, 161 F.R.D. 378, 380 (S.D. Ind. 1994).

considerations favor the enforcement of settlement agreements"). Accordingly, the OSC Order may be vacated under Rule 60(b)(6).

          **b.**      **Mr. Windhorst Took Quick Action to Correct the Delay**

Mr. Windhorst has also taken quick action to correct the delay. Mr. Windhorst should have filed an opposition to Mr. Sabag's OSC Motion by February 15, 2023, Doc. 107; Local Rule 7.1, and has filed this Motion only 1 week after the Court's entry of the OSC Order. Doc. 108. This is well within the 1-year maximum allowed under Rule 60(b). *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 797 (7th Cir. 1980) ("Motions under Rule 60(b)(1) must be filed within a reasonable time, not to exceed one year, after entry of the judgment at issue."); Fed. R. Civ. P. 60(c)(1). Yet the full period of delay should not solely be attributed to Mr. Windhorst in light of Mr. Sabag's obligation to dismiss this proceeding by February 15, 2023 (i.e., the date Mr. Windhorst's opposition to the OSC Motion would have been due), especially where Mr. Windhorst, who hired new representation for this proceeding after Mr. Sabag filed the Motion for OSC, Windhorst Decl. ¶ 17, relied in good faith on Mr. Sabag's Indiana counsel's request for additional time to confer with Mr. Sabag in light of the passing of Mr. Sabag's mother. Windhorst Decl. ¶¶ 17-19 (Mr. Windhorst made the settlement payment on February 8, 2023 and attained counsel to execute the Settlement Agreement); *see, e.g.*, *Whitman*, 88 F.R.D. at 530 (granting motion to set aside default under Rule 55(c) where defendant showed default was due to good faith belief that case would be resolved by ongoing settlement negotiations); *Cent. Illinois*, 2015 WL 4378192, at *3 (vacating order where non-defaulting party's counsel promised to inform defaulting party's counsel when an action was filed but failed to do so).

In any event, irrespective of whether any of the brief delay can be attributed to Mr. Sabag instead of Mr. Windhorst, courts have found delays of significantly longer time-periods to be

reasonable. *See, e.g.*, *Smith*, 627 F.2d at 797-98 (affirming district court's vacatur under Rule 60(b) where motion was filed approximately 10 weeks late); *Allen Russell Pub., Inc. v. Levy*, 109 F.R.D. 315, 319 (N.D. Ill. 1985) (holding nine-week delay was sufficiently quick action); *U.S. v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d 909, 912 (7th Cir. 1983) (vacating judgment where Rule 60(b) motion was filed forty-nine weeks after the default judgment was entered).

Importantly, Mr. Sabag cannot credibly argue he has been prejudiced by Mr. Windhorst's delay. The delay here, if anything, was for Mr. Sabag's benefit, as Mr. Windhorst was focused on securing funds to compensate Mr. Sabag. Windhorst Decl. ¶¶ 13-15. Mr. Windhorst paid Mr. Sabag the entire amount he was owed on February 8, 2023 (including interest and attorneys' fees), and, just two days later, Mr. Sabag's counsel confirmed receipt of Mr. Windhorst's payment (noting that Mr. Windhorst in fact overpaid). Windhorst Decl. ¶ 18.

To the extent Mr. Sabag may argue he has incurred additional expenses resulting from Mr. Windhorst's delay, for example, by incurring legal fees to brief his Motion for OSC and prepare for the deposition, Mr. Windhorst has offered to compensate Mr. Sabag for those expenses. Bento Decl. ¶ 8. Given Mr. Windhorst's offer to compensate Mr. Sabag for these expenses, there is simply no prejudice to Mr. Sabag if the Court vacates the OSC Order, especially where Mr. Sabag, having been made whole, refuses to dismiss this proceeding in accordance with his obligation under the Settlement Agreement.[5] *See Allen Russell*, 109 F.R.D. at 319 (setting aside default where there was good cause for nine-week delay and the "only prejudice alleged [] [wa]s the

---

[5] Indeed, if anyone has been prejudiced at this point it is Mr. Windhorst. Mr. Windhorst, in order to continue to litigate this proceeding that Mr. Sabag should have already dismissed, has had to retain new counsel and incur expenses briefing this Motion (and Mr. Windhorst's Motion to Vacate the Deposition Order, filed concurrently herewith).

expense plaintiff has already incurred with respect to discovery," which could be "addressed by taxing certain costs to [the movant]."); *Smith*, 627 F.2d at 798 (affirming district court's vacatur of judgment under Rule 60(b) where there were no allegations of prejudice due to ten-week delay).

Ultimately, Mr. Windhorst has taken quick action to address the delay, including by, *inter alia*, making Mr. Sabag whole, retaining new counsel following Mr. Sabag's filing of the Motion for OSC and refusal to dismiss this action, and by filing this Motion, a Motion to Enforce the Settlement Agreement in the ICDR Arbitration, Motion to Vacate the Deposition Order, and a proposed opposition to Mr. Sabag's Supplementary Request.  *See Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988) (vacating default judgment where defaulting party, in addition to seeking to vacate the default, filed its proposed answer and counterclaims).  This satisfies the second requirement for vacating the OSC Order.

      c.    Mr. Windhorst has a meritorious defense

Finally, Mr. Windhorst has a meritorious defense to any potential sanctions that may be entered against him in connection with Mr. Sabag's Motion for OSC.  "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Anilina Fabrique*, 856 F.2d at 879 (quoting *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986)); *see also United States f/u/b/o Venture Elec. Contractors, Inc. v. Liberty Mut. Ins. Co.*, No. 17-CV-1473-PP, 2018 WL 4120175, at *8 (E.D. Wis. Aug. 29, 2018) (describing the meritorious defense prong as a "low standard" which "means more than bare legal conclusions, but less than a definitive showing that the defense will prevail").  "In deciding whether sanctions are warranted, the court should consider (1) the prejudice suffered by the requesting party, (2) the ability to cure the prejudice, (3) the likelihood of disruption to trial, and (4) bad faith or willfulness involved in not disclosing evidence at an earlier date."  *McLemore v. Menard, Inc.*, No. 3:10-CV-429 JD, 2011 WL 6122746, at *1

(N.D. Ind. Nov. 8, 2011), *report and recommendation adopted*, No. 3:10-CV-429 JD, 2011 WL

6122745 (N.D. Ind. Dec. 8, 2011) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir.

2003)).  Each of these factors weigh against sanctions here.

With respect to the first two sanctions factors, as explained above, (*supra* § IV.1.b), and

below, (*infra* § IV.2), Mr. Sabag has suffered no prejudice as a result of Mr. Windhorst's delay

beyond briefing the OSC Motion and paying for a court reporter; Mr. Windhorst has offered to

reimburse Mr. Sabag for those expenses which would cure the limited prejudice Mr. Sabag

incurred due to Mr. Windhorst's delay.  Bento Decl. ¶ 8.

With respect to the third factor, there is no trial in a § 1782 proceeding, so the likelihood

of disruption of trial is zero.  *See Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No.

16 C 3401, 2020 WL 208825, at *3 (N.D. Ill. Jan. 14, 2020) ("Under Section 1782, a litigant in a

foreign proceeding or 'interested person' initiates a discrete action in a United States District

Court, for the order of discovery to be used in a foreign proceeding.").[6]  Similarly, there is no

disruption to the purported foreign proceedings, as they have not yet commenced (and indeed there

is no evidence that an investigation is even afoot or that the foreign authorities are even interested

in Mr. Sabag's allegations).

Finally, there is no evidence Mr. Windhorst has acted in bad faith.  Mr. Windhorst has paid

Mr. Sabag in full, (Windhorst Decl. Ex. 1 ¶¶ 4-5; Windhorst Decl. Ex. 15 [Correspondence

Confirming Settlement Payment] at 1, 3; Windhorst Decl. Ex. 16 [Bank Receipt of Settlement

Payment]), and he has submitted a declaration detailing his good faith intentions to abide by the

---

[6]  To the extent the "trial" that may be disrupted is a hypothetical criminal trial in the U.K.,
Mr. Sabag still has offered no evidence he has actually initiated any criminal proceeding abroad.
Moreover, even if a criminal proceeding was underway in the U.K., the U.K. authorities are able
to compel Mr. Windhorst's testimony absent any action by Mr. Sabag.  Frisch Decl. Ex. 2 [Decl.
of Julianne Hughes Jennett] ¶¶ 6-15.

parties' Settlement Agreement in the face of liquidity issues.  *See* Windhorst Decl.  Moreover, Mr.

Windhorst had a good faith belief that, with the Settlement Agreement in place, upon tendering

payment to Mr. Sabag, Mr. Sabag would in turn dismiss this proceeding.  *Id.* ¶¶ 16-17.

For at least these reasons, Mr. Windhorst has a meritorious defense, and the Court should

vacate the OSC Order.

> d.     If the Court will not vacate the OSC Order, it should at least modify it

As explained above, (*supra* §IV.1), Mr. Windhorst has met the standard to have the OSC

Order vacated in its entirety.  But even if the Court disagrees, Mr. Windhorst submits that the OSC

Order should be modified insofar as the OSC Order requires Mr. Windhorst, a German citizen and

European resident who conducts business in the United Kingdom, to appear in person at the

Court's April 11, 2023 order to show cause hearing.  *See* Doc. 108 at 1 ("Windhorst shall

personally attend th[e] hearing.").  Mr. Windhorst has retained counsel who are more than capable

of speaking on behalf of Mr. Windhorst at the order to show cause hearing.[7]  Accordingly, the

Court should, at minimum, modify the OSC Order to remove the requirement that Mr. Windhorst

personally appear at the hearing.

**2.     Alternatively, the Court Should Stay this OSC Order Pending Resolution of
Mr. Windhorst's Motion to Vacate the Deposition Order and/or the ICDR Arbitration**

If the Court declines to vacate the OSC Order, it should at least stay the OSC Order pending

resolution of Mr. Windhorst's Motion to Vacate the Deposition Order and/or the ICDR Arbitration

between Mr. Windhorst and Mr. Sabag, where Mr. Windhorst has filed a Motion to Enforce the

Settlement Agreement.  A stay pending resolution of these motions, including in the arbitration,

---

[7]     *See* Doc. 109 [Ann McCready Notice of Appearance]; Doc. 111 [Lucas V.M. Bento
Motion to Appear *Pro Hac Vice*]; Doc. 110 [Gavin S. Frisch Motion to Appear *Pro Hac Vice*].

will unquestionably simplify the issues in question in this proceeding and reduce the burden of litigation on the parties and the Court while resulting in no prejudice to Mr. Sabag.

a.    The Court should stay the OSC Order pending resolution of Mr. Windhorst's Motion to Vacate the Deposition Order

The Court should stay the OSC Order while the Court adjudicates Mr. Windhorst's Motion to Vacate the Deposition Order because each of the three factors courts consider in determining to issue a stay weigh heavily in favor of a stay. *E.g.*, *Irving Materials*, 2008 WL 1971468, at *1-2 (exercising discretion to grant a motion to stay because the stay "could potentially streamline issues and reduce litigation to the parties and the Court" and the non-moving party "ha[d] not demonstrated undue prejudice").

At the outset, granting the stay will not unduly prejudice or tactically disadvantage Mr. Sabag.  Mr. Sabag already received the full settlement payment, plus interest and attorneys' fees. Windhorst Decl. Ex. 15 at 1, 3.  Therefore, Mr. Sabag will suffer no harm from prolonging the current proceeding which seeks evidence purportedly for use in an allegedly "contemplated" foreign proceeding (that Mr. Sabag has covenanted not to pursue (Windhorst Decl. Ex. 1 ¶ 8(d))).[8] Moreover, even if Mr. Sabag might incur extra costs, at this point any additional litigation expenses are the direct result of Mr. Sabag ignoring his obligation to voluntarily dismiss this 1782 Action under the Settlement Agreement.

---

[8]    Tellingly, Mr. Sabag has allegedly been "contemplating" the foreign proceeding since 2019 when he filed this 1782 action.  To date, there is no evidence—none whatsoever—that any proceeding has commenced or is even being reasonably considered by any of the UK authorities. Mr. Sabag's self-serving and cursory reference to "communications with the SFO" does nothing to change that.  Indeed, anyone can contact the SFO.  *See* https://www.sfo.gov.uk/contact-us/.  It is telling that Mr. Sabag never exhibited any of those "communications" nor provided any evidence that the SFO is even remotely interested in his allegations.

Critically, granting the stay will simplify the issues in question and reduce the burden of litigation on the parties and the Court.  Mr. Windhorst expects the Court will grant his Motion to Vacate the Deposition Order, which provides the basis for Mr. Sabag's Motion for OSC, rendering the OSC Order potentially moot.  *See Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1237 (D. Colo. 2012) (vacating the magistrate judge's order granting Defendant's motion to compel and denying as moot the motion for order to show cause seeking the court to order production of the documents in accordance with the motion to compel).  And even if the Court refuses to vacate the Deposition Order, the Court may separately determine to stay this proceeding pending resolution of the parties' ICDR Arbitration.  Mr. Windhorst expects the Arbitrator to order Mr. Sabag to dismiss this 1782 proceeding pursuant to paragraph 5 of the Settlement Agreement, rendering any further involvement by the Court unnecessary.  And even if the Arbitrator refuses to order Mr. Sabag dismiss this proceeding as required by paragraph 5 of the Settlement Agreement, the Arbitrator may separately determine that the release in paragraph 6 and the covenant not to pursue legal or equitable claims in paragraph 8(d) of the Settlement Agreement bar Mr. Sabag's continuance of this 1782 Proceeding.  Thus, if the Court stays the OSC Order, there is a strong chance it will be able avoid the need to determine whether Mr. Windhorst should be sanctioned.  *See, e.g.*, *Estimating Grp. LLC v. Rickey Conradt, Inc.*, No. 119CV00586RLYDLP, 2019 WL 2869686, at *3 (S.D. Ind. July 3, 2019) (staying merits-based discovery pending court's ruling on defendants' motion to dismiss for lack of jurisdiction because a ruling by the court that it lacks personal jurisdiction over the defendants would render the court's order potentially unenforceable).

In contrast, if the OSC Order is not stayed pending the resolution of Mr. Windhorst's Motion to Vacate the Deposition Order, he could suffer significant hardship and inequity in being

sanctioned for failing to comply with a deposition subpoena issued pursuant to a court order that may end up vacated and that was issued in a case Mr. Sabag is contractually bound to dismiss, particularly where the testimony being sought is purportedly to be used by Mr. Sabag in a criminal proceeding *against* Mr. Windhorst.  In these circumstances, a stay "lend[s] for a more efficient and just result." *Irving Materials*, 2008 WL 1971468, at *1-2 (granting motion to stay where doing so "could potentially streamline issues and reduce litigation to the parties and the Court" and the non-moving party "ha[d] not demonstrated undue prejudice"); *Azar v. Merck & Co.*, No. 3:06CV0579 AS, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) (granting motion to stay because proceeding would have "pose[d] a significant risk of duplicative motions and discovery that could result in needless expense and inequity to [the movant]").

> b.    The Court should stay the OSC Order pending resolution of the ICDR Arbitration

This Court should stay the OSC Order pending resolution of the ICDR Arbitration, which specifically addresses whether this proceeding (i.e., the "1782 Action" as defined by the Settlement Agreement) must be dismissed, as doing so will unquestionably simplify the issues in question in this proceeding and reduce the burden of litigation on the parties and the Court while resulting in no prejudice to Mr. Sabag.

> (i)    There is a valid written agreement to arbitrate and a dispute within the scope of the agreement

This Court should stay this proceeding because there is a pending arbitration in the ICDR in which Mr. Windhorst is seeking to enforce the dismissal and release clauses of the Settlement Agreement so that Mr. Sabag dismisses this proceeding,  (Windhorst Decl. Ex. 1 ¶¶ 5-6), which is an issue covered by a valid arbitration clause in the parties Settlement Agreement.  If the ICDR

Arbitrator grants Mr. Windhorst's Motion to Enforce the Settlement Agreement, Mr. Sabag will be required to dismiss the 1782 Action.  Bento Decl. Ex. D.

At the outset, there is no dispute the parties have a valid written agreement to arbitrate, i.e., the Settlement Agreement.  Under New York law, "an arbitration clause in a written agreement is enforceable . . . when it is evident that the parties intended to be bound by the contract."  *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008).  By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement.  *See, e.g., Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004); *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988) (holding that a party's signature generally creates a presumption that the party assented to the terms of the agreement).  Both Mr. Windhorst and Mr. Sabag have signed the Settlement Agreement.  Windhorst Decl. Ex. 1 ¶ 15.  Indeed, Mr. Sabag has previously arbitrated, in accordance with the Settlement Agreement's arbitration clause, the issue of whether Mr. Windhorst's failure to timely remit payment breached the Settlement Agreement.  *See* Windhorst Decl. Ex. 11.  Therefore, the Settlement Agreement contains a valid agreement to arbitrate.

Likewise, the dispute here falls within the scope of the parties' agreement to arbitrate. Article 13 of the Settlement Agreement sets forth in relevant part: "[t]his [Settlement] Agreement shall be construed and interpreted in accordance with the laws of the State of New York. . . . Any issue or dispute relating to the creation, execution, interpretation, performance, or breach of this [Settlement] Agreement shall be submitted to the American Arbitration Association International Centre for Dispute Resolution under case number 01-20-0003-693."  Windhorst Decl. Ex. 1 ¶ 13.[9]

---

[9]   The ICDR Arbitration was initially commenced by Mr. Sabag in accordance with the SPA's arbitration clause, *see* Doc. 33-3 ¶ 15 (citing SPA § 11.5, Doc. 6-5)), which provides that "any dispute . . . which shall arise out of or in relation to this Agreement, or the breach thereof, shall be settled by binding arbitration.  Any such arbitration shall be held in New York, New York U.S.A. in accordance with the Rules of the International Centre for Dispute Resolution *in*

Under paragraph 5 of the Settlement Agreement, Mr. Sabag was required to file a "Joint Stipulation of Dismissal of the 1782 Action" within five business day of receiving payment. Therefore, the arbitration clause also covers the issue that is directly relevant to the disposition of this proceeding: whether Mr. Sabag is obligated to dismiss the 1782 Action under the Settlement Agreement after he has reaped the benefits from the Settlement Agreement by receiving the full settlement.  Windhorst Decl. Ex. 1 ¶¶ 4-5; Windhorst Decl. Ex. 15 at 1, 3; Windhorst Decl. Ex. 16.  Hence, this Court should grant the motion to stay, and, if Mr. Sabag refuses to arbitrate, compel arbitration in accordance with Section 3 and 4 of the FAA.

(ii)   Even if Mr. Sabag challenges the scope of the agreement, the issue should be referred to the arbitrator

Since the arbitration clause in the Settlement Agreement is broad, covering "any issue or dispute" relating to the Settlement Agreement, the scope of this arbitration agreement should be submitted to the arbitrator to decide.  *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995) ("If the arbitration clause is broad, there arises a presumption of arbitrability", and arbitration of even a collateral matter will be ordered if "the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.").  Therefore, even if Mr. Sabag challenges whether the issue before this Court is covered by the arbitration clause in the Settlement Agreement, this Court should still stay the proceeding and refer the issue to the arbitrator.  *See*

---

*accordance with its international Arbitration Rules (the "Rules"), which Rules are deemed to be incorporated by reference."* Doc. 6-5 § 11.5 (emphasis added).  This provides further evidence of the parties' intent to arbitrate.  *See, e.g.*, *Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, No. 22-CV-2260, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) ("the consensus view among district courts in this circuit and among the other appellate circuits holds that reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator") (collecting cases); *Atl. Specialty Ins. Co. v. Anthem, Inc.*, No. 1:19-cv-03589-JRS-MJD, 2020 WL 2526000, at *6-7 (S. D. Ind. May 18, 2020) (holding arbitration clause at issue, which incorporated the JAMS Rules, "delegate[d] the arbitrability issue to an arbitrator.").

*Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) ("[O]nce an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration"); *see also Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*, 2018 WL 1587601, at *1 (S.D.N.Y. Mar. 29, 2018) ("disputes between the parties concerning the scope and enforceability of the release must be submitted to an arbitrator in the first instance"); *Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.*, 2006 WL 164967, at *1 (S.D.N.Y. Jan. 24, 2006) (requiring dispute to be submitted to arbitration over applicability of release provision "that potentially disposes of Plaintiffs' claims").

        (iii)    Alternatively, the discretionary factors weigh in favor of a stay

Finally, if the Court determines the issue here is not covered by the Settlement Agreement's arbitration clause, the Court should nonetheless exercise discretion to stay this proceeding for essentially the reasons discussed above with respect to staying the OSC Order pending resolution of Mr. Windhorst's Motion to Vacate the Deposition, (*supra*, § IV.2.a), as the same three factors govern the discretionary stay inquiry. *Supra*, § III.3. The key difference here is that, while vacating the Deposition Order moots the OSC Order, Mr. Windhorst's requested relief in the Arbitration, if granted, will render any further involvement by the Court unnecessary. Thus, if the Court stays this proceeding pending resolution of the ICDR Arbitration, there is a strong chance it will be able avoid the need to expend further resources on this case. *See, e.g.*, *Estimating Grp.*, 2019 WL 2869686, at *3 (S.D. Ind. July 3, 2019) (staying merits-based discovery pending court's ruling on defendants' motion to dismiss for lack of jurisdiction because a ruling by the court that it lacks personal jurisdiction over the defendants would render the court's order potentially unenforceable); *Irving Materials*, 2008 WL 1971468, at *1-2 (exercising discretion to grant a

26

motion to stay pending an arbitration proceeding because the arbitration "could potentially streamline issues and reduce litigation to the parties and the Court" and the non-moving party "ha[d] not demonstrated undue prejudice").

WHEREFORE, Mr. Windhorst respectfully requests this Court to issue an order (1) vacating or modifying the Court's Order to Show Cause Why Sanctions Are Not Appropriate (Doc. 108) under Fed. R. Civ. P. 60(b); and, alternatively, (2) staying this the OSC Order pending resolution of Mr. Windhorst's Motion to Vacate the Deposition Order and/or the parties' ICDR Arbitration.

DATED:  March 9, 2023

*/s/ Ann O'Connor McCready*
Ann O'Connor McCready, Atty. No. 32836-53
Taft Stettinius & Hollister LLP
One Indiana Square, Ste. 3500
Indianapolis, IN 46204
(317) 713-3500
ammcready@taftlaw.com

*/s/ Lucas Bento*
Lucas V.M. Bento (New York Bar No. 4907986)
lucasbento@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave. 22d Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

Gavin S. Frisch (Mass. Bar No. 704216)
gavinfrsich@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Ste. 520
Boston, MA 02199
Telephone: (617) 712-7100
Fax: (617) 712-7200
*pro hac application pending*

*Attorneys for Lars Windhorst*