# EXHIBIT 6

**AMERICAN ARBITRATION ASSOCIATION**
**INTERNATIONAL CENTER FOR DISPUTE RESOLUTION**
**CASE NO. 01-20-0003-6931**

| |
|---|
| ELI SABAG <br><br> Claimant, <br><br> v. <br><br> TRACK GROUP, INC., <br> SAPINDA ASIA LIMITED, <br> and LARS WINDHORST, <br><br> Respondents. |

**CLAIMANT ELI SABAG'S MOTION TO ENFORCE**
**SETTLEMENT AGREEMENT AS AMENDED AGAINST**
**RESPONDENTS SAPINDA ASIA LIMITED AND LARS**
**WINDHORST AND FOR IMMEDIATE ENTRY OF SUMMARY AWARD**

Claimant, Eli Sabag ("Mr. Sabag"), moves to enforce a settlement agreement by summary award, dated June 10, 2022, against Sapinda Asia Limited ("Sapinda") and Lars Windhorst ("Mr. Windhorst"), as amended. Mr. Sabag entered into the settlement agreement with Respondents Sapinda, Mr. Windhorst, and Track Group, Inc. ("Track Group") (collectively, "Respondents"), and Track Group has complied fully with its obligations. The amendment to the settlement agreement specifically recognized that Mr. Sabag would be entitled to an immediate summary award for the principal amount owed by Sapinda and Mr. Windhorst.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the acquisition by Track Group of all of the outstanding shares of GPS Global Tracking & Surveillance System Ltd from Mr. Sabag in 2014. As a part of the acquisition, Mr. Sabag was entitled to contingent shares from Track Group pursuant to an earn-out provision contained with the Share Purchase Agreement. Specifically, Mr. Sabag was entitled

to Track Group shares for the lease and sale of GPS tracking devices that occurred through qualifying contracts entered into by Track Group during the earn-out period of April 1, 2014 to April 1, 2017.

As a part of the acquisition, Mr. Sabag also entered into a Put Option Agreement with Sapinda and Mr. Windhorst. This Put Option Agreement allowed Mr. Sabag to put the contingent shares received from Track Group to Sapinda and Mr. Windhorst at $20 per share. Mr. Sabag intended to exercise his Put Option rights against Sapinda and Mr. Windhorst upon receiving the contingent shares from Track Group.

Respondents engaged in actions in an attempt to deny Mr. Sabag the proceeds that he should have received under both the Share Purchase Agreement and the Put Option Agreement. As a result, Mr. Sabag filed this proceeding with the American Arbitration Association International Centre for Dispute Resolution, asserting legal and equitable claims against Respondents.

While this Arbitration was still pending, all parties reached an agreement on all terms of a settlement, including settlement amounts owed to Mr. Sabag. The final written settlement agreement, called the Confidential Settlement Agreement and Mutual Release, was signed on June 10, 2022 (the "Settlement Agreement"). *See* **Ex. A.**

After the parties signed the Settlement Agreement, Track Group satisfied all of its obligations under the Settlement Agreement by making a payment of $1.6 million on June 21, 2022, which was three days before the due date of June 24, 2022. However, as described further

below, Mr. Windhorst and Sapinda failed to make their required payments by the due date of June 24, 2022.[1]

Mr. Sabag and Track Group would later agree, despite the lack of payment from Sapinda and Mr. Windhorst, to dismiss all past claims in arbitration (and other related claims) against each other. *See* **Ex. B**, Agreement to Release Track Settlement Proceeds. Sapinda and Mr. Windhorst consented in writing to this Agreement between Mr. Sabag and Track Group. As the Tribunal is aware, the Tribunal issued an award of dismissal of Track Group on July 13, 2022.

Meanwhile, counsel for Mr. Windhorst and Sapinda repeatedly represented to Mr. Sabag's counsel that Mr. Windhorst intended to pay the amounts he agreed to pay under the Settlement Agreement. After counsel for Mr. Sabag emailed Mr. Calamari on June 22, 2022 regarding the payment, counsel for Sapinda and Mr. Windhorst confirmed that Mr. Windhorst expected to transfer the money two days later on June 24, 2022. *See* **Ex. C**, June 22, 2022 Email from P. Calamari to E. Mullins. When the money never came, counsel for Sapinda and Mr. Windhorst again reiterated their intention to pay, claiming that Mr. Sabag would have the money by July 1, 2022. *See* **Ex. D**, June 28, 2022 Email from P. Calamari to E. Mullins. Sapinda and Mr. Windhorst consistently represented to Mr. Sabag of their intention to pay the money owed under the Settlement Agreement and at no time dispelled the Settlement Agreement.

On July 6, 2022, counsel for Sapinda and Mr. Windhorst alleged that Mr. Windhorst was having administrative issues with his bank and that his account was frozen. Mr. Sabag agreed in writing with Mr. Windhorst to extend the due date of Mr. Windhorst's settlement payment to

---

[1] This is not the first time Mr. Windhorst and one of his companies (Tennor Holdings B.V.) failed to perform their obligations under a settlement agreement. In February 2020, Mr. Windhorst reached a settlement agreement with Heritage Travel and Tourism Limited. *See* **Ex. F**, *Heritage v. Windhorst Judgment*. Mr. Windhorst did not comply with it. When Heritage began proceedings to collect under the settlement agreement, Mr. Windhorst attempted to argue that it was unenforceable because he only agreed to it under economic duress. The High Court dismissed Mr. Windhorst's allegations and ruled in favor of Heritage. *Id.*

August 1, 2022. *See* **Ex. E,** Amendment to Settlement Agreement (the "Amendment"). In return, Mr. Windhorst agreed to increase the settlement amount by $50,000 from $2,800,000 to $2,850,000. *Id*. Two days before the payment was due, counsel for Mr. Windhorst informed counsel for Mr. Sabag that Mr. Windhorst expected "the transfer to be made on Monday [August 1st.]" and that he was "hoping for the best." *See* **Ex. G**, July 30 Email from P. Calamari to E. Mullins. On August 1, 2022, counsel for Mr. Sabag followed up with counsel for Mr. Windhorst that the transfer had been made. *Id*. Counsel for Mr. Sabag never received a response.

As of August 2, 2022, Mr. Sabag has not received this settlement payment, and there is no indication from Mr. Windhorst that he has processed the settlement payment even after additional follow-up emails from Mr. Sabag's counsel. Sapinda and Mr. Windhorst have failed to comply with the terms of the Settlement Agreement, as amended.

Sapinda and Mr. Windhorst have agreed in the Settlement Agreement to the jurisdiction of this Tribunal to resolve the dispute. According to the Settlement Agreement, "[a]ny issue or dispute relating to the creation, execution, interpretation, performance, or breach of this Agreement shall be submitted to the American Arbitration Association International Centre for Dispute Resolution under case number 01-20-0003-693." *See* Ex. A § 13.

Furthermore, in the Amendment, Sapinda and Mr. Windhorst agreed that Mr. Sabag would be entitled to "seek an immediate summary international arbitration award fully enforceable pursuant to the Inter-American and New York Conventions." Ex. E. Sapinda and Mr. Windhorst agreed not to contest whether this settlement payment is due and owing to Mr. Sabag. *See* Ex. E. Mr. Sabag thus is entitled to the immediate entry of summary award in the amount of $2,850,000.

Additionally, Sapinda and Mr. Windhorst are responsible for Mr. Sabag's fees. The Settlement Agreement expressly provides that "the prevailing party shall be entitled to recover

from the non-prevailing party its costs, expenses, and reasonable attorneys' fees" incurred as a result of a dispute relating to the Settlement Agreement. *See* Ex. A § 10. The Amendment further provides Mr. Sabag with the right to seek his reasonable attorneys' fees. *See* Ex. E. Mr. Windhorst reserved only the right to contest the reasonableness of Mr. Sabag's attorneys' fees. *Id*. However, because Mr. Sabag is entitled to a summary award in the amount of $2,850,000, Mr. Sabag does not wish to delay of the issuance of that immediate summary award. Mr. Sabag thus reserves his rights to separately file his request for fees under § 10 of the Settlement Agreement, including his entitlement to and the parameters for the quantification of the same. *See* ICDR, Art. 32(1) ("In addition to making a final award, the arbitral tribunal may make interim, interlocutory, or partial awards, orders, decisions, and rulings.").

## ARGUMENT AND AUTHORITY

Under New York law, settlements are highly favored and will be enforced with rigor "as long as they are 'clear, final and the product of mutual accord.'" *Peralta v. All Weather Tire Sales & Serv.*, 58 A.D.3d 822, 822–23 (App. Div. 2nd Dept.) (citing *Bonnette v. Long Island Coll. Hosp.*, 819 N.E.2d 206, 209 (2004)). A motion to enforce a settlement agreement is fundamentally a claim for breach of contract. *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015). Settlement agreements are "construed according to general principles of contract law." *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018). Thus, "[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." *BCM Dev., LLC v. Oprandy*, No. 12-573-cv, 2013 U.S. App. LEXIS 1326, at *2 (2d Cir. Jan. 17, 2013).

Here, the parties engaged in lengthy discussions and negotiations about the terms of the Settlement Agreement. Counsel for the parties conferred at length via telephone and email in May

and June 2022 to negotiate and discuss the details of the Settlement Agreement. These discussions resulted in all parties executing the Settlement Agreement by June 10, 2022. *See* Ex. A. Mr. Windhorst, through his counsel, has since reaffirmed his intentions to pay by signing the Amendment. *See* Ex. E.

Based on the terms of the Settlement Agreement, "[p]ayment of the Settlement Funds shall be made in U.S. dollars to Sabag within fourteen (14) calendar days of the Effective Date" of the Settlement Agreement. *See* Ex. A § 4(b). The Effective Date - "the date on which last [the] last signature is added" to the Settlement Agreement – was June 10, 2022. Thus, Mr. Windhorst initially had until June 24, 2022 to send payment to Mr. Sabag. *Id*. § 15. Mr. Windhorst breached his obligation to make his payment in a timely manner. After agreeing to the Amendment, Mr. Windhorst's payment was due on August 1, 2022. Because Mr. Windhorst failed once again to comply with this payment obligation, he is in breach of the Settlement Agreement and the Amendment. Therefore, Mr. Sabag respectfully requests this Tribunal summarily enter an immediate award against Mr. Windhorst in Mr. Sabag's favor in the amount of $2,850,000.

As noted above, Mr. Sabag is separately entitled to his fees under § 10 of the Settlement Agreement, but he does not wish to delay the entry of the award for $2,850,000. As such, Mr. Sabag will separately file his request for fees.

## CONCLUSION

Based on the foregoing arguments and controlling authorities, Claimant Eli Sabag respectfully requests that the Tribunal: (1) enforce the terms of the parties' signed Settlement Agreement against Mr. Windhorst, as amended; (2) summarily enter an award against Windhorst and Mr. Sapinda for the amounts set forth in Settlement Agreement and Amendment ($2,850,000); and (3) grant Claimant such further relief as the Tribunal may deem appropriate. Mr. Sabag

reserves his rights and will separately file a request for costs, fees and expenses, including the parameters for the quantification of same under § 10 of the Settlement Agreement.

Dated: August 2, 2022                                           Respectfully submitted,

By: _____
Edward M. Mullins, Esq.
emullins@reedsmith.com
Cristina Cardenas, Esq.
ccardenas@reedsmith.com
Matthew J. McKinnon
mmckinnon@reedsmith.com
**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Phone: 786.747.0200; Fax: 786.747.0299

Courtney Caprio, Esq.
courtney@capriolawgroup.com
**CAPRIO LAW**
40 N.W. 3rd Street, Suite 200
Miami, FL 33128
Tel. (786) 353-5760

*Counsel for Claimant Eli Sabag*

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to ICDR Rule Article 10, I have served the foregoing on all parties to this proceeding via electronic mail.

Edward M. Mullins, Esq.