# EXHIBIT D

**AMERICAN ARBITRATION ASSOCIATION**
**INTERNATIONAL CENTER FOR DISPUTE RESOLUTION**
**CASE NO. 01-20-0003-6931**

ELI SABAG

Claimant,

v.

TRACK GROUP, INC.,
SAPINDA ASIA LIMITED,
and LARS WINDHORST,

Respondents.

**RESPONDENT LARS WINDHORST'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AS AMENDED AGAINST CLAIMANT ELI SABAG AND FOR ENTRY OF AWARD**

Respondent Lars Windhorst ("Mr. Windhorst"), moves to enforce the settlement agreement, dated June 10, 2022, against Claimant Eli Sabag ("Mr. Sabag"), as amended (the "Settlement Agreement"). Mr. Sabag entered into the Settlement Agreement with Mr. Windhorst and the two other Respondents, Sapinda Asia Limited and Track Group, Inc. ("Track Group"),[1] which specifically requires Mr. Sabag to dismiss all actions against Mr. Windhorst within 5 business days of receipt of the settlement payment. When Mr. Windhorst failed to timely remit payment, Mr. Sabag moved to enforce the parties' settlement agreement rather than revive his underlying claims. Now that Mr. Windhorst has made Mr. Sabag whole by making payment of the amounts due under the settlement agreement (totaling $3,099,985, including interest and

---

[1] Track Group has been dismissed from this arbitration. *See* Ex. A [Sabag Mot. to Enforce, dated Aug. 2, 2022] at 3.

1

attorneys' fees), Mr. Sabag has unquestionably reaped the benefits of the Settlement Agreement. Accordingly, Mr. Sabag now must uphold his end of the bargain by dismissing the actions he continues to maintain against Mr. Windhorst.

## FACTUAL AND PROCEDURAL BACKGROUND

1. This dispute stems from a Settlement Agreement between Mr. Sabag and the Respondents executed to resolve, among other actions, an arbitration proceeding initiated by Mr. Sabag on March 11, 2020, against Respondents in connection with an acquisition by Track Group of Mr. Sabag's company and two agreements related to that acquisition: a Share Purchase Agreement ("SPA") and a Put Option Agreement.[2]

2. Shortly before Mr. Sabag initiated the arbitration, Mr. Sabag, on December 31, 2019, also initiated a proceeding in the United States District Court for the Southern District of Indiana requesting discovery under 28 U.S.C. § 1782 from Marion County Community Corrections ("MCCC") and various employees of MCCC and Marion County for use in purportedly contemplated criminal proceedings in the United Kingdom against Mr. Windhorst.[3]

3. The final written settlement agreement, called the Confidential Settlement Agreement and Mutual Release, was signed on June 10, 2022.[4] The Settlement Agreement "is intended to settle and resolve permanently and forever any and all claims" that were asserted by Mr. Sabag against Mr. Windhorst, including the 1782 Action.[5]

---

[2] See Ex. A at 2; see also Ex. B [Sabag Notice of Arbitration, dated Mar. 11, 2020].

[3] See In re Eli Sabag, No. 1:19-mc-0008-JPH-TAB (S.D. Ind.) (the "1782 Action") at Dkts. 1, 6 & 9. Docket entries Nos. 1, 6, and 9 to the 1782 Action are attached as Exhibits RW-001, RW-002, and RW-003, respectively.

[4] See Ex. C [Settlement Agreement, dated June 10, 2022].

[5] Ex. C at § 3.

2

4.       Under the terms of the Settlement Agreement, Mr. Windhorst agreed to pay Mr. Sabag $2,800,000 to resolve all claims, both known and unknown, and to dismiss all actions against Mr. Windhorst.[6] Paragraph 5 of the Settlement Agreement requires Mr. Sabag's counsel "**within five (5) business days [of receiving the settlement payment]**" to "**file a Joint Stipulation of Dismissal of the 1782 Action**."[7]

5.       The Settlement Agreement contains releases which provide that Mr. Sabag is obligated "to "RELEASE AND FOREVER DISCHARGE[]" Windhorst "from any and all past, present or future claims … of any nature whatsoever, whether or not now known, suspected, or claimed, that exist in whole or in part as of the Effective Date of this Agreement," immediately upon the disbursement of the settlement payment.[8]

6.       Further, under the "Covenant not to Pursue Legal or Equitable Claims" of the Settlement Agreement, Mr. Sabag acknowledged that he has "voluntarily given up the right to pursue [all existing claims up to the Settlement Agreement] in any forum or proceedings, and he "expressly WAIVE any right to assert in the future any claims of any kind or nature whatsoever that may have existed up to and including the Effective Date" of the Settlement Agreement.[9]

---

[6] *Id.* at §§ 4, 6.a and Ex. A. The Effective Date of the Settlement Agreement is defined as "the date on which last signature is added to this Agreement, at which time it shall be fully enforceable." *Id.* at § 2.

[7] Ex. C at § 5. The Settlement Agreement defines the "1782 Action" as the "action [filed by Mr. Sabag] in the United States District Court of the Southern District of Indiana under case number 1:19-mc-00084-JPH-TAB, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings." *Id.* at § 3.

[8] *Id.* at § 6.a.

[9] *Id.* at § 8.d.

3

7. Any issue or dispute relating to the creation, execution, interpretation, performance, or breach of the Settlement Agreement is to be submitted for resolution within the above-captioned arbitration.[10]

8. The Settlement Agreement is governed by New York law.[11]

9. On July 6, 2022, counsel for Mr. Windhorst informed Mr. Sabag's counsel that Mr. Windhorst was unable to timely pay his portion of the settlement fund due to administrative issues with his bank and that his account was frozen.[12] As such, the parties subsequently executed an Amendment to the Settlement Agreement on July 11, 2022, pursuant to which the amount of the payment was increased to $2,850,000 and the due date for the payment was extended until August 1, 2022.[13]

10. On August 2, 2022 – the day after Mr. Windhorst's failure to timely remit payment under the Amendment to the Settlement Agreement – Mr. Sabag filed a Motion to **Enforce the Settlement Agreement** ("Mr. Sabag's Motion to Enforce").[14] Mr. Sabag's Motion to Enforce requested that the Tribunal "enforce the terms of the parties' signed Settlement Agreement" and "summarily enter an award against [Mr.] Windhorst . . . for the amounts set forth in the Settlement Agreement and Amendment ($2,850,000)."[15] Mr. Sabag has never sought to rescind the Settlement Agreement following Mr. Windhorst's failure to timely remit payment.[16]

---

[10] *Id.* at § 13 ("submitted to the [AAA-ICDR] under case number 01-20-0003-693").

[11] *Id.* at § 13.

[12] Ex. A at 3.

[13] Ex. D [Amendment to Settlement Agreement, dated July 11, 2022].

[14] Ex. A at 7.

[15] *Id.* at 6.

[16] *See id.*

4

11. Following Mr. Sabag's filing of the Motion to Enforce, Mr. Sabag's counsel regularly contacted Mr. Windhorst's counsel to inquire about obtaining payment.[17]

12. On August 10, 2022, counsel for Mr. Windhorst advised that "Mr. Windhorst intend[ed] to pay the settlement amount owed to Claimant Eli Sabag as soon as possible and we understand that payment of the settlement amount is being arranged."[18]

13. On August 17, 2022, the Arbitrator issued a summary award (the "Settlement Enforcement Award") finding Mr. Windhorst in breach of the Settlement Agreement.[19] The Settlement Enforcement Award required Mr. Windhorst to pay Mr. Sabag the $2,850,000 due under the Settlement Agreement, plus interest.[20] The Settlement Enforcement Award also gave Mr. Sabag the opportunity to submit supporting evidence to the arbitrator to add interest, fees, and costs.[21]

14. On October 11, 2022, Mr. Sabag filed in the 1782 Action a supplementary discovery request seeking a deposition of Mr. Windhorst allegedly for use in purportedly contemplated criminal proceedings in England.[22]

15. On October 20, 2022, Mr. Windhorst's attorneys in the 1782 Action withdrew their appearances due to Mr. Windhorst's delay in paying his attorneys' fees.[23] Mr. Windhorst was

---

[17] *See, e.g.*, Ex. A at 4 (acknowledging "additional follow-up emails from Mr. Sabag's counsel" after August 2, 2022).

[18] Ex. E [Sett. Enf. Award] at ¶8.

[19] *Id.* at ¶15(a).

[20] *Id.* at ¶15(b).

[21] *Id.* at ¶¶15(c)-(d).

[22] *See* 1782 Action at Dkt. 98 (attached as Exhibit RW-004).

[23] *See* 1782 Action at Dkts, 102 & 103 (attached as Exhibit RW-005 and RW-006).

5

therefore not represented by counsel at the time and was not able to file an opposition to the supplementary request in the 1782 Action.

16. While Mr. Windhorst was facing liquidity difficulties, Mr. Windhorst's absolute priority was to fund the settlement payment, which would have triggered the releases of all claims and the dismissals of the actions, including the 1782 Action.

17. On November 7, 2022, the Arbitrator issued a final summary award which added $13,742.94 in attorneys' fees and costs to the amounts owed under the Settlement Enforcement Award.[24]

18. On December 15, 2022, the Court in the 1782 Action granted Mr. Sabag's supplementary discovery request, ordering Mr. Windhorst to appear for a deposition at a mutually acceptable time within 45 days of the order.[25]

19. On February 1, 2023, and while Mr. Windhorst's counsel was in communications with Mr. Sabag's counsel regarding arrangements for the payment,[26] Mr. Sabag filed in the 1782 Action a motion requesting the Court to order Mr. Windhorst to show cause for his failure to appear for the deposition.[27]

20. On February 8, 2023, Mr. Windhorst wired Mr. Sabag's counsel $3,099,985 (more than the amount of the award after adjustments).[28] On February 9, 2023, Mr. Sabag's counsel confirmed by email that they received Mr. Windhorst's wire transfer.[29] On February 10, 2023,

---

[24] Ex. F [Final Award] at ¶12(d).

[25] *See* 1782 Action at Dkt. 105 (attached as Exhibit RW-007).

[26] *See* RW-008 [Email correspondence between S. Rau and Conyers Dill & Pearman LLP, dated Jan. 2023 – Feb. 2023].

[27] *See* 1782 Action at Dkt. 107 (attached as Exhibit RW-009).

[28] RW-010 [Wire transfer receipt].

[29] RW-008 at 3 [Email from A. Johns to S. Rau, dated Feb. 9, 2023].

Mr. Sabag's counsel again confirmed receipt of the wire transfer by email, and stated that they would remit the amount of the overpayment ($55,353).[30]

21. Following Mr. Windhorst's payment to Mr. Sabag, Mr. Sabag was required under the Settlement Agreement to dismiss the 1782 Action by no later than February 15, 2023.[31] On the same day, U.S. counsel for Mr. Windhorst called Mr. Sabag's attorney in Indiana, informing him of the payment and requesting that the 1782 Action be dismissed per the Settlement Agreement.[32]

22. Mr. Sabag has not dismissed the 1782 Action despite Mr. Windhorst's counsel reminding Mr. Sabag's counsel of Mr. Sabag's obligation under the Settlement Agreement to dismiss the 1782 Action. Mr. Sabag, despite his obligation, has stated he intends to maintain the 1782 Action and proceed with the deposition of Mr. Windhorst.[33]

23. On March 2, 2023, Mr. Windhorst's counsel sent a letter to Mr. Sabag's counsel demanding Mr. Sabag to dismiss the 1782 Action and reserving Mr. Windhorst's rights, including his rights to enforce the parties' Settlement Agreement ("March 2 Letter").[34] In the letter, Mr.

---

[30] RW-008 at 1 [Email from A. Johns to S. Rau, dated Feb. 10, 2023].

[31] Ex. C at § 5.

[32] On this call, Mr. Windhorst's US counsel was informed by Mr. Sabag's Indiana counsel that he would need some time to confer with his client because, inter alia, Mr. Sabag's mother had recently passed. In an effort to respect what must undoubtedly been a difficult time for Mr. Sabag (and in observance of the Jewish Shiva 7-day period), Mr. Windhorst's US counsel agreed to confer back the following week. On February 22, 2023, Mr. Sabag, through Indiana counsel, repeated his intention to depose Mr. Windhorst in the 1782 Action, thus refusing to dismiss the 1782 Action. On February 23, 2023, Mr. Windhorst's U.S. counsel spoke to Mr. Sabag's Indiana counsel over the telephone to better understand Mr. Sabag's position in an effort to avoid further litigation or arbitration. On February 27, 2023, Mr. Sabag, through Indiana counsel, stated that he is "committed to depose Mr. Windhorst."

[33] RW-011 [Correspondence from Offer Korin to Lucas Bento, dated Feb. 27, 2023 and Feb. 22, 2023] at 1&2.

[34] RW-012 [Letter from Lucas Bento to Offer Korin, dated Mar. 2, 2023].

Windhorst's counsel requested to review a draft of the Joint Stipulation of Dismissal (i.e., a one-page document) of the 1782 Action by March 3, 2023.[35]

24. Mr. Sabag has not responded to Mr. Windhorst's March 2 Letter.

25. Mr. Sabag has been made whole and has reaped the benefits of the Settlement Agreement, but now refuses to comply with his obligations thereunder.

26. Mr. Windhorst reserves his rights and will separately file a request for costs, fees and expenses, including the parameters for the quantification of same under § 10 of the Settlement Agreement.

## ARGUMENT AND AUTHORITY

27. Mr. Sabag's refusal to dismiss the 1782 Action is a textbook case of the proverbial phrase "hav[ing] one's cake and eating it too."[36] On the one hand (and with the cake in his mouth), Mr. Sabag has repeatedly affirmed the Settlement Agreement, including moving to enforce the Settlement Agreement following Mr. Windhorst's breach and accepting payment from Mr. Windhorst. Yet on the other hand (and with the cake on his plate), Mr. Sabag now refuses to abide by the very Settlement Agreement he sought to enforce. Fortunately, the law precludes Mr. Sabag from having his cake and eating it too, and now that Mr. Sabag has reaped significant benefits from the Settlement Agreement, including netting a multi-million dollar settlement payment and resolving arbitration and legal proceedings (including those related to the SPA, Put Option Agreement, and the 1782 Action), he cannot disavow his obligations under the Settlement Agreement and must dismiss his 1782 Action.

---

[35] *Id.*

[36] Merriam-Webster Dictionary, "Have One Cake and Eat It Too", https://www.merriam-webster.com/dictionary/have%20one%27s%20cake%20and%20eat%20it%20too.

8

28. Settlement agreements are "construed according to general principles of contract law."[37]

29. Under New York law, which governs the Settlement Agreement,[38] the election of remedies doctrine provides "one may not both affirm and disaffirm a contract . . . or take a benefit under an instrument and repudiate it."[39] "The election of remedies rule bars the pursuit of alternative relief after a party has 'chosen one of two or more co-existing inconsistent remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment.'"[40] The non-breaching party must "make an election and cannot at the same time treat the contract as broken and subsisting. One course of action excludes the other."[41]

30. In other words, "[w]hen a party . . . breaches a contract, the nonbreaching party must choose between two remedies: it can elect to terminate the contract or continue it."[42] If the non-breaching party "chooses to go on [with the contract], he loses his right to terminate the contract because of the default."[43]

---

[37] RWLA-001: *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018) (citation omitted).

[38] *See* Ex. C at § 13.

[39] RWLA-002: *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 238 (S.D.N.Y. 2006) (quoting RWLA-003: *Lumber Mut. Casualty Ins. Co. of N.Y. v. Friedman*, 28 N.Y.S.2d 506, 506 (N.Y. Sup. Ct. 1941)).

[40] *Id.* (quoting RWLA-004: *331 East 14th St. LLC v. 331 East Corp.*, 740 N.Y.S.2d 327 (App. Div. 1st Dep't 2002)).

[41] RWLA-005: *Inter–Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 686 N.Y.S.2d 911, 913 (App. Div. 3d Dep't 1999) (internal quotation marks omitted).

[42] RWLA-006: *Awards.com, LLC v Kinko's, Inc.*, 42 A.D. 3d 178, 188 (N.Y. App. Div. 2010), *aff'd*, 14 N.Y. 3d 791 (2010).

[43] RWLA-007: *Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969) (citation omitted).

31. Here, Mr. Sabag has unequivocally and repeatedly affirmed the validity of the Settlement Agreement by, *inter alia*, (i) amending the Settlement Agreement to provide Mr. Windhorst additional time to remit payment;[44] (ii) filing Mr. Sabag's Motion to Enforce the terms of the Settlement Agreement;[45] (iii) filing Mr. Sabag's Motion to Enforce the Settlement Agreement under the dispute resolution clause of the Settlement Agreement as opposed to a new arbitration regarding the underlying SPA and Put Option Agreement;[46] (iv) chasing payment after filing his Motion to Enforce the Settlement Agreement and obtaining the summary award;[47] and (v) accepting Mr. Windhorst's payment in full.[48]

32. Mr. Sabag's decision to file Mr. Sabag's Motion to Enforce rather than revive his underlying claims is clear evidence he has affirmed the Settlement Agreement.[49] *Sofi Classic S.A. de C.V. v. Hurowitz* is particularly instructive, as the U.S. District Court for the Southern District of New York held the election of remedies doctrine barred underlying claims because the "Plaintiffs elected to affirm the continued validity of the Settlement Agreement by bringing an

---

[44] Ex. D at § 2.

[45] Ex. A.

[46] *Id.*; Ex. C at §13; Ex. D at § 3.

[47] Ex. A at 4; RW-008 at 8, 10, 22, 25-26.

[48] RW-008 at 1, 3; RW-010.

[49] *See, e.g.*, RWLA-008: *Lemus v. Manhattan Car Wash, Inc.*, 2010 WL 4968182, at *11 (S.D.N.Y. Dec. 9, 2010) (summarizing New York cases finding an election of remedies made by the filing of a potentially dispositive motion, in particular a motion for summary judgment or judgment as a matter of law); RWLA-002: *Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d at 238 (holding plaintiff's affirmed the parties' settlement agreement by bringing an action for breach of the settlement agreement, obtaining a judgment, and seeking to enforce the judgment); RWLA-009: *Best W. Int'l Inc. v. NM Hosp. Roswell LLC*, No. CV-17-01274-PHX-DJH, 2019 WL 2492252, at *4-5 (D. Ariz. June 14, 2019) ("Plaintiff's choice to seek and obtain a judgment on its the breach of Settlement Agreement claim—in this litigation effected a binding election between Plaintiff's choice of remedies. . . . [T]he Court finds that Plaintiff's claims. . . are subject to dismissal based on Plaintiff's election to pursue and obtain a judgment for breach of the Settlement Agreement, which resolved those claims.").

action for breach of the Settlement Agreement against the Corporations, obtaining a judgment, and seeking to enforce that judgment against the Corporations."[50] By doing so, the Court held the "Plaintiffs have 'gained an advantage' through this course of action, in that they hold judgments against the Corporations."[51]

33.  Likewise, Mr. Sabag's decision to accept payment from Mr. Windhorst further evidences Mr. Sabag's decision to affirm the validity of the Settlement Agreement and thereby release his claims against Mr. Windhorst.[52]

34.  Mr. Sabag's other conduct further demonstrates he has elected to affirm the Settlement Agreement, including abiding by the Settlement Agreement's provisions for arbitrating disputes and, in particular, the summary award procedure following Mr. Windhorst's failure to pay the settlement funds by August 1, 2022.[53] Moreover, after Mr. Sabag filed his Motion to

---

[50] RWLA-002: 444 F. Supp. 2d at 238.

[51] *Id.*

[52] *See, e.g.*, RWLA-010: *Fontanez v. Sanchez,* No. 19-1735, 2021 WL 3556932, at *2 (2d Cir. Aug. 12, 2021) (affirming district court's dismissal of plaintiff's complaint after the plaintiff and the defendant signed a release agreement because the plaintiff "never moved to vacate or void the release in the district court . . ., nor did he repay the settlement funds; rather, he reaped the benefits of the settlement but seeks to avoid its consequences."); RWLA-011: *Westbrooke v. Bellevue Hosp. Ctr.*, No. 16-CV-9845 (RA), 2018 WL 4189514, at *6 (S.D.N.Y. Aug. 31, 2018) (citation omitted) ("Where, as here, a plaintiff challenging a release has made no attempt to 'return the money she received from [Defendants] in consideration for the Release,' the plaintiff is 'deemed to have ratified the Release and is thereby barred from challenging its validity.'"); RWLA-008: *Lemus v. Manhattan Car Wash, Inc.*, 2010 WL 4968182, at *10 (S.D.N.Y. Dec. 9, 2010) (citations omitted) ("[plaintiff]'s motion to enforce the settlement agreement presumes that the agreement will remain in effect; it will therefore bind him according to its terms, requiring him to release defendants from his prior claims upon payment of the settlement sum.").

[53] Ex. C at § 13; Ex. D at § 3.

Enforce, his counsel continued his attempts to secure payment from Mr. Windhorst under the Settlement Agreement.[54]

35. If Mr. Sabag wished to maintain the 1782 Action, he could have instead elected to disavow the Settlement Agreement and proceed on his underlying claims and actions following Mr. Windhorst's failure to remit payment in the time provided by the Settlement Agreement.[55]

36. Since Mr. Sabag elected to affirm the validity of the Settlement Agreement through, inter alia, seeking to enforce it, he cannot deny his obligations thereunder.[56]

37. The Tribunal's award in this dispute should require Mr. Sabag to abide by and specifically perform his obligations under the Settlement Agreement.

38. Article 34 of the ICDR Rules, Applicable Laws and Remedies, provides in relevant part "[i]n arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract."[57]

39. The Settlement Agreement does not expressly limit the remedies available to either party in the event of a breach.[58]

---

[54] *See, e.g.*, Ex. A at 4 (acknowledging follow-up emails from Mr. Sabag's counsel regarding the settlement payment); RW-008 (correspondence between Conyers and S. Rau).

[55] *See, e.g.*, RWLA-012: *Cherniak v. Trans-High Corp.*, No. 18 CIV. 7734 (AT), 2020 WL 1047884, at *5 (S.D.N.Y. Mar. 4, 2020) ("by commencing [] litigation Plaintiffs elected to proceed on their underlying claims instead of seeking the money owed under the Agreement").

[56] *See, e.g.*, RWLA-002: *Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d at 238.

[57] RWLA-013: ICDR Art. 34, § 2.

[58] *See generally* Ex. C.

40. Under New York law, the Tribunal has authority to grant relief in the form of specific performance.[59]

41. Specific performance is an appropriate remedy where "money damages would be inadequate to protect the expectation interest of the injured party."[60]

42. Under New York law, specific performance is an appropriate remedy where the injured party seeks enforcement of a contractual release.[61]

43. Here, money damages are inadequate to protect Mr. Windhorst's expectation interest. Mr. Windhorst reasonably expected Mr. Sabag to dismiss the 1782 Action and release his claims against Mr. Windhorst in connection with the parties' Settlement Agreement.[62] No

---

[59] *See, e.g.*, RWLA-014: *NTT DoCoMo, Inc. v. Ultra d.o.o.*, No. 10 CIV. 3823 RMB JCF, 2010 WL 4159459, at *3 (S.D.N.Y. Oct. 12, 2010) (citations omitted) (granting motion to confirm arbitration award where the tribunal ordered "specific performance, which was grounded in New York case law"); RWLA-015: *Coopertex Inc. v. Rue de Reves Inc.*, No. 89 Civ. 5748, 1990 WL 6548, at *2-4 (S.D.N.Y. Jan. 22, 1990) (confirming an arbitration award that called for specific performance of a sale agreement where the contract did not explicitly preclude an award of specific performance); RWLA-016: *Lavington v. Edgell*, 512 N.Y.S.2d 817 (App. Div. 1st Dep't 1987) (affirming district court's grant of specific performance of agreement to direct sale property where contract was breached).

[60] RWLA-017: *Maestro W. Chelsea SPE LLC v. Pradera Realty Inc.*, 954 N.Y.S.2d 819, 828 (Sup. Ct. 2012) (holding plaintiff adequately alleged that money damages would be inadequate where defendant breached the parties' contract); RWLA-018: *JMG Custom Homes, Inc. v. Ryan*, 844 N.Y.S.2d 817, 819–20 (App. Div. 4th Dep't 2007) (citation omitted) (granting specific performance of an oral agreement to exchange two all-terrain vehicles and a snowmobile for a discount on the purchase price of a home because of the difficulty of calculating the value of the vehicles).

[61] *See, e.g.*, RWLA-019: *Enel Green Power N. Am., Inc. v. Geronimo Energy, LLC*, No. 18-CV-5882 (AJN), 2019 WL 4805659, at *8 (S.D.N.Y. Sept. 30, 2019) (denying motion to dismiss breach of contract claims where it was "plausible that Plaintiffs [we]re entitled to specific performance of indemnity obligations" and where it was similarly "plausible" that the contractual release barred the defendant's counterclaim); RWLA-020: *RKO Properties Ltd. v. Boymelgreen*, 878 N.Y.S.2d 197, 198 (App. Div. 2nd Dep't 2009) (affirming district court's grant of specific performance where court directed party to provide general releases because the district court "properly enforced the [contract] according to its terms.").

[62] *See* Ex. C.

amount of money damages can return Mr. Windhorst to the same position he would have occupied if Mr. Sabag had abided by the Settlement Agreement and dismissed the 1782 Action because monetary damages cannot remedy the fact that Mr. Windhorst is being compelled to sit for a deposition in a proceeding that should be dismissed. That deposition, if it occurs, simply cannot be undone.

44. To be sure, there are certain harms caused by Mr. Sabag's breach that can be remedied by monetary damages, i.e., Mr. Windhorst's legal fees incurred after Mr. Sabag was obligated to dismiss the 1782 Action.[63] The Tribunal can award both these monetary damages and specific performance as "[i]t is well established in New York law that there is no inconsistency between an action for specific performance and an action for breach of contract."[64] Indeed, "where a party seeks specific performance of a contract, New York courts will award, 'in addition to specific performance of the contract, such items of damage as naturally flow from the breach, are within the contemplation of the parties, and can be proven to a reasonable degree of certainty.'"[65]

45. Mr. Windhorst reserves his rights and will separately file, if the Tribunal finds Mr. Sabag to have breached the parties' Settlement Agreement, documentation establishing the amount of legal fees incurred by Mr. Windhorst after Mr. Sabag was obligated to dismiss the 1782 Action.

---

[63] RWLA-021: *A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 386 (S.D.N.Y. 1996) (holding party's expenses in litigating another proceeding resulting from the opposing party's refusal to comply with parties' contract were "part and parcel of the damages stemming from the alleged breach"); RWLA-022: *Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*, 766 F. Supp. 138, 157 (S.D.N.Y. 1991) (awarding attorneys' fees as damages for breach of contract where breach directly caused an arbitration proceeding).

[64] RWLA-023: *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011) (internal quotations omitted).

[65] *Id.* (quoting RWLA-024: *Freidus v. Eisenberg*, 510 N.Y.S.2d 139, 142 (1986)).

## **CONCLUSION**

For the aforementioned reasons, Mr. Windhorst respectfully requests the Arbitrator find Mr. Sabag in breach of the parties' Settlement Agreement and issue an award (i) requiring Mr. Sabag to file a joint stipulation to dismiss his § 1782 Action in accordance with the Settlement Agreement; (ii) awarding Mr. Windhorst monetary damages caused by Mr. Sabag's breach, including but not limited to Mr. Windhorst's attorneys' fees and costs incurred in the 1782 Action after February 15, 2023; and (iii) any other relief as the Tribunal deems appropriate. Mr. Windhorst reserves his rights and will separately file a request for costs, fees and expenses, including the parameters for the quantification of same under § 10 of the Settlement Agreement.

Dated: March 6, 2023                                    Respectfully submitted,

By: /s/ Lucas Bento
Lucas Bento FCIArb FRSA
Jingfei Lu
lucasbento@quinnemanuel.com
jingfeilu@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Ave., Floor 22
New York, New York 10010
Phone: 212.849.7000
Fax: 212.849.7100

Gavin. S. Frisch, Esq.
gavinfrisch@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
111 Huntington Ave., Suite 520
Boston, Massachusetts 02199
Phone: 617.712.7100
Fax: 617.712.7200

*Counsel for Respondent Lars Windhorst*

## **CERTIFICATE OF SERVICE**

I hereby certify that, pursuant to ICDR Rule Article 10, I have served the foregoing on all parties to this proceeding via electronic email.

/s/ Lucas Bento

Lucas Bento FCIArb FRSA