Welcome to File Online

# FILE ONLINE

 AMERICAN ARBITRATION ASSOCIATION®

Home

# THANK YOU!
## YOUR AAA CASE NUMBER : 01-23-0001-0936

Thank you for choosing American Arbitration Association.
Please print a copy of this page for your record.

Print

Ba ic Filing Information

Lucas Bento
2128497000
lucasbento@quinnemanuel.com
Arbitration

On behalf of Mr. Lars Windhorst please find attached, (1) a Notice of Arbitration and Statement of Claim, (2) an Application for Emergency Relief, (3) select exhibits including the arbitration agreement. The remaining exhibits will be sent via email

| Filing Fee Charged | $8625.00 | Documents received on 2023-03-16 12:52:06.0 Eastern Time |
|---|---|---|

## What's Next

• This acknowledges receipt of your documentation on 2023-03-16 12:52:06.0 Eastern Time. This notice does not constitute the AAA's initiation of the case or satisfaction of all AAA administrative filing requirements. An email copy of this receipt will be sent to lucasbento@quinnemanuel.com shortly.

• <u>DON'T FORGET</u> to send a copy of the completed form and any attachments to all parties and retain a copy of the form for your record.

• Your documentation will be reviewed and, if all filing requirements are met, assigned to a case manager who will be in contact with all parties. Should additional information or clarification be required you will be contacted by our case filing department.

• Once a case manager has been assigned, you will have access to the case at WebFile. If you do not see your case at that time, please contact customerservice@adr.org

EXHIBIT
B

- If you need assistance with your case before being contacted by your case manager, please contact our Case Filing Office at casefiling@adr.org

- Please be sure to reference your AAA case Number, as provided above.

- For additional information, please see the    applicable rules



**AMERICAN ARBITRATION ASSOCIATION**
**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**CASE NO. 01-20-0003-6931**

LARS WINDHORST

Claimant,

v.

ELI SABAG,

Respondent.

**APPLICATION FOR**
**EMERGENCY RELIEF**

March 16 2023

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 3

II.     PARTIES AND COUNSEL ................................................................................... 3

   A.   The Claimant ..................................................................................................... 3

   B.   The Respondent ................................................................................................. 4

III.   GROUNDS FOR EMERGENCY RELIEF .................................................. 5

   A.   Summary of Emergency Relief ........................................................................ 5

   B.   Jurisdiction of the Emergency Arbitrator ....................................................... 6

   C.   Legal Standard .................................................................................................. 9

   D.   The Test as Applied to the Facts of the Present Case ................................... 10

      (1)   Mr. Windhorst will suffer irreparable injury if the interim relief is withheld. .... 10

      (2)   Mr. Windhorst has a prima facie case and probability of success on the merits. 13

      (3)   The equities weighs in Mr. Windhorst's favor .................................................... 15

      (4)   The underlying circumstances possess the required degree of urgency ............. 17

      (5)   Mr. Windhorst does not seek a prejudgment of the merits ................................. 17

   E.   Delivery of this Application ........................................................................... 18

   F.   Confirmation of Payment of the Filing Fee .................................................. 19

IV.   RELIEF SOUGHT ........................................................................................ 19

## I.   INTRODUCTION

1.   This application for emergency relief (the "**Application**") is submitted by Mr. Lars Windhorst (the "**Claimant**" / "**Mr. Windhorst**") pursuant to Article 7 of the International Centre for Dispute Resolution's ("**ICDR**") International Arbitration Rules (amended and effective Mar. 1, 2021) (the "**ICDR Rules**").

2.   This Application is accompanied by the Claimant's Notice of Arbitration and Statement of Claim dated March 16, 2023 (the "**Notice**"), that is filed together with this Application and which provides the background and details of the underlying claims brought by the Claimant, on which this Application is based. Unless otherwise defined herein, all capitalized terms shall be defined as they were defined in the Notice.

## II.   PARTIES AND COUNSEL

### A.   The Claimant

3.   Claimant Lars Windhorst is a German citizen and Swiss resident who primarily conducts business from his offices in the United Kingdom. Mr. Windhorst's contact details are:

> Lars Windhorst
> 6th Floor, 23 Savile Row
> London W1S 2ET
> United Kindom
> **Tel**: +44 (0) 207 087 7590
> **Fax:** +44 (0) 207 629 2016
> **Email Address:** Lars.Windhorst@tennor.com

4.   Mr. Windhorst's legal representatives in the current proceeding are Quinn Emanuel Urquhart & Sullivan LLP. All notifications and communications intended for the Claimant in this Application should be sent to his legal representatives using the contact details set out below:

> **Quinn Emanuel Urquhart & Sullivan LLP**
> 51 Madison Ave., 22nd Floor

3

New York, New York 10010

**Attn**: Lucas V.M. Bento / Gavin S. Frisch / Jingfei Lu

**Tel**: +1 (212) 849 7000

**Fax:** +1 (212) 849 7100

**Email Address:**

lucasbento@quinnemanuel.com          /          gavinfrisch@quinnemanuel.com          /

jingfeilu@quinnemanuel.com

### B.  <u>The Respondent</u>

5.      Respondent Mr. Sabag is an Israeli citizen who is now a U.S. permanent resident. Upon
information and belief, Mr. Sabag's contact details are:

 Eli Sabag

204 NW 4th Ave

Hallandale Beach, Florida, 33009



Alternatively:

Eli Sabag

Hamaapilim 14

Kfar Saba, Israel



6.      Respondent is represented by Reed Smith LLP and AXS Law PLLC. Their contact
details are as follows:

**Reed Smith LLP**

200 S. Biscayne Blvd.

Ste. 2600

Miami, Florida, 33131

**Attn:** Edward Mullins / Cristina Cardenas / Matthew McKinnon

**Tel**: +1 (786) 747 0200

**Fax:** +1 (786) 747 0299

**Email Address:**

emullins@reedsmith.com          /          ccardenas@reedsmith.com          /

mmckinnon@reedsmith.com

**AXS Law PLLC**

2121 NW 2nd Avenue, Suite 201

Miami, FL 33128

**Attn:** Courtney Capiro

**Tel**: +1 (305) 297 1878

**Fax:** +1 (786) 747 0299

**Email Address:** courtney@axslawgroup.com

## III.   GROUNDS FOR EMERGENCY RELIEF

### A.   Summary of Emergency Relief[1]

7.     Mr. Windhorst incorporates by reference the allegations in his Notice, including the exhibits cited therein.[2]

8.     Mr. Windhorst seeks an award of emergency relief directing Mr. Sabag to jointly stipulate with Mr. Windhorst to stay in the 1782 Action the Court's March 1, 2023 Order to Show Cause (and related April 11, 2023 hearing) pending adjudication on the merits by the tribunal to be constituted in due course.  In the alternative, Mr. Windhorst seeks an award of emergency relief directing Mr. Sabag to hold in abeyance the deposition subpoena in the 1782 Action until adjudication on the merits by the tribunal to be constituted in due course.[3]

9.     If the relief sought is not granted by April 3, 2023,[4] there is a significant risk that Mr.

---

[1]     *See also* CLA-004: ICDR International Arbitration Rules, Amended and Effective March 1, 2021 ("ICDR Rules"), Article 7(1)(a)-(b).

[2]     The Notice will be filed simultaneously with this Application.

[3]     Mr. Windhorst reserves all rights to further relief outside of this Application.

[4]     While the Order to Show Cause hearing is scheduled on April 11, 2023, emergency relief before April 3, 2023 is necessary to avoid irreparable harm to Mr. Windhorst, because after the Tribunal issues the interim award, Mr. Sabag will need another week to prepare and file a joint stipulation in the 1782 Action.

Windhorst will suffer the irreparable harm of being sanctioned and/or held in contempt of Court based on Mr. Windhorst's failure to sit for a deposition in the 1782 Action – an action that Mr. Sabag should have dismissed one month ago pursuant to the parties' Settlement Agreement following Mr. Sabag's receipt of the full settlement payment of $3,099,985.

B. **Jurisdiction of the Emergency Arbitrator**

10. As set out at paragraph 2 of the Notice, Mr. Windhorst's claims are brought pursuant to the arbitration clause contained in the Settlement Agreement which provides for "*[a]ny issue or dispute relating to the creation, execution, interpretation, performance, or breach of this Agreement shall be submitted to the American Arbitration Association International Centre for Dispute Resolution under case number 01-20-0003-693*".[5] ICDR case number 01-20-0003-693 was the prior arbitration between, *inter alia*, Mr. Sabag and Mr. Windhorst, seated in New York City,[6] that resulted in the Settlement Agreement and was administratively closed on November 7, 2022 with the arbitrator issuing a final award in Mr. Sabag's favor.

11. Accordingly, the Parties have thereby elected to resolve their disputes involving the Settlement Agreement in arbitration under the ICDR Rules. There is no opt-out from Emergency Relief provisions contained in the arbitration agreement.

12. The ICDR Rules relevantly provide, at Article 7:[7]

*7.1 ...[A party may apply for emergency relief before the constitution of the arbitral tribunal by submitting a written application to the Administrator and to all other parties setting forth:*

---

[5] Notice ¶ 2; C-001 [Settlement Agreement] ¶ 13.

[6] C-011 [Procedural Order 1 of ICDR Arbitration No. 01-20-0003-6931, dated December 14, 2020] ¶ 25.

[7] To the extent the 2014 ICDR Rules apply (as they did in Case No. 01-20-0003-693), Emergency Measures of Protection under Article 6 of the 2014 ICDR Rules is substantively similar to Article 7 of the current ICDR Rules. The main difference is Article 7 of the current ICDR Rules, unlike Article 6 of the 2014 ICDR Rules, does not require the applicant to set forth "what injury or prejudice the party will suffer if relief is not provided." *Compare* CLA-004: ICDR Rules, Article 7, *with* CLA-005: ICDR International Arbitration Rules, Amended and Effective on June 1, 2014 ("ICDR Rules 2014"), Article 6.

6

*a. the nature of the relief sought;*

*b. the reasons why such relief is required on an emergency basis before the tribunal is appointed;*

*c. the reasons why the party is likely to be found to be entitled to such relief; and*

*d. what injury or prejudice the party will suffer if relief is not provided.*

*The application shall be submitted concurrent with or following the submission of a Notice of Arbitration. Such application may be filed by email, or as otherwise permitted by Article 11, and must include payment of any applicable fees and a statement certifying that all parties have been notified or an explanation of the steps taken in good faith to notify all parties.*

*[…]*

*7.4 […]* ***The emergency arbitrator shall have the power to order or award any interim or conservatory measures that the emergency arbitrator deems necessary,*** *including injunctive relief and measures for the protection or conservation of property. Any such measures may take the form of an interim award or an order. The emergency arbitrator shall give reasons in either case. The emergency arbitrator may modify or vacate the interim award or order. Any interim award or order shall have the same effect as an interim measure made pursuant to Article 27 and shall be binding on the parties when rendered. The parties shall undertake to comply with such an interim award or order without delay.*

(Emphasis added).

13.    Moreover, Article 34 of the ICDR Rules – Applicable Laws and Remedies – provides:[8]

*1. The arbitral tribunal shall apply the substantive law(s) or rules of law agreed by the parties as applicable to the dispute. Failing such an agreement by the parties, the tribunal shall apply such law(s) or rules of law as it determines to be appropriate.*

---

[8]    Article 31(1)-(2) of the 2014 ICDR Rules is identical to the corresponding subparts of Article 34 of the current ICDR Rules. *Compare* CLA-004: ICDR Rules, Article 34, *with* CLA-005: ICDR Rules 2014, Article 31.

*2. In arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract.*

14. Here, paragraph 13 of the Settlement Agreement provides that New York law applies to the parties' dispute.  No provision in the Settlement Agreement expressly limits the available remedies for breaches of the Settlement Agreement.

15. The question of what power a tribunal has to grant relief is determined by the law of the seat of the arbitration.[9] In the present case, with the Arbitration presumably to be held in New York, that is New York law.  Arbitrations seated in New York are governed either by the New York Civil Practice Law and Rules or by the Federal Arbitration Act ("FAA"), with the latter applying whenever the matter in dispute qualifies as either a maritime transaction or one involving interstate or foreign commerce.[10]

16. Under the FAA and governing case law, the scope of the tribunal's authority is bound by the parties' Settlement Agreement.[11]

17. Neither the FAA nor the Settlement Agreement expressly provide limitations on the powers of the arbitrator to issue emergency relief.

18. "[I]n arbitration proceedings [governed under the FAA], 'arbitrators normally have the power to grant interim relief unless the parties specify otherwise in the contract' and that arbitration clauses 'requiring the parties to use the Commercial Arbitration Rules

---

[9]   *See* CLA-006: Gary B. Born, International Commercial Arbitration (Third Edition) (© Kluwer Law International 2021), Chapter 17 (updated November 2022) ("*Born* on International Commercial Arbitration") § 17.02[F] at 15: "*The law governing the arbitral proceedings (almost always that of the arbitral seat) is the most natural legal system governing the powers of an arbitral tribunal. It is the law of the arbitral seat that applies to other issues concerning a tribunal's authority, including competence-competence, disclosure and other taking of evidence issues, remedial powers and corrections or interpretations of awards. Absent express contrary statements, it is the law of the arbitral seat that was most likely intended by the parties to define the powers of the tribunal. In principle, therefore, the law governing the tribunal's power to grant interim relief is that of the arbitral seat.*"

[10]   CLA-007: 9 U.S.C.A. § 2.

[11]   *See* CLA-008: *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("Only if the arbitrator act[s] outside the scope of his contractually delegated authority—issuing an award that simply reflect[s] [his] own notions of [economic] justice rather than draw[ing] its essence from the contract—may a court overturn his determination.") (alterations in original) (internal quotation marks and citation omitted).

8

of the American Arbitration Association ... empower an arbitrator to take whatever interim measures he or she deems necessary, including injunctive relief.'"[12]

19.    An Emergency Arbitrator appointed pursuant to Article 7 of the ICDR Rules (or Article 6 of the 2014 ICDR Rules) will accordingly have the power to order interim prohibitory injunctive relief (i.e. "*to order a party to do or refrain from doing anything*") that the Claimant seeks in this Application.

### C.  <u>Legal Standard</u>

20.    Claimant maintains that, in accordance with the Settlement Agreement, New York law governs the substantive inquiry.

21.    Under New York law, the substantive requirements for interim relief that must be satisfied are typically:[13]

    21.1    A danger of "irreparable" injury in the absence of interim relief;

    21.2    A probability of success on the merits; and

    21.3    A balance of the equities in the movant's favor.

22.    If the Tribunal instead turns to international sources to provide the applicable standards for granting interim relief in international arbitration,[14] the inquiry is relatively similar, particularly with respect to the first two requirements.

23.    Drawn from international sources and as considered by the editors of the leading practitioner text, the substantive requirements for interim relief in international arbitration that must be satisfied are typically:

    23.1    A risk of "irreparable" or "serious" injury unless interim relief is granted;

---

[12]    CLA-009: *PB Life & Annuity Co. v. Universal Life Ins. Co.*, 2020 WL 4369443, at *9 (S.D.N.Y. July 30, 2020) (quoting CLA-010: *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 70 (1st Cir. 2010); *see also* CLA-011: American Arbitration Association ("AAA") Commercial Arbitration Rules, Amended and Effective October 1, 2013 ("AAA Rules"), Rule-38 ("[t]he arbitrator may take whatever interim measures he or she deems necessary.").

[13]    CLA-012: *Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (N.Y. 1990).

[14]    *See* CLA-006: *Born* on International Commercial Arbitration § 17.02[G][2] at 16-18.

23.2    A *prima facie* case or probability of success on the merits;

23.3    Urgency; and

23.4    No prejudgment of the merits. [15]

24.    This test is generally considered to be the same standard that should be applied by an emergency arbitrator.[16]

### D. <u>The Test as Applied to the Facts of the Present Case</u>

**(1) *Mr. Windhorst will suffer irreparable injury if the interim relief is withheld.*[17]**

25.    Mr. Windhorst faces the potential for irreparable harm if the Emergency Arbitrator does not provide emergency relief.

26.    Under New York law, "[i]rreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient."[18]

27.    Likewise, where there is some debate amongst commentators as to the level of irreparability or seriousness of harm that the party seeking relief must show under international law, in summary, the best interpretation of the criterion is that:

"...*the appropriate requirement, generally applied by arbitral tribunals, is that the applicant establish the existence of a sufficient risk or threat that grave or serious harm will occur if provisional measures are not granted.*"[19]

[…]

"...*the relevant standard does not require mechanical application of particular levels of probability. Rather, tribunals properly adopt a pragmatic inquiry that subsumes the*

---

[15]    *Id.* § 17.02[G][3][b] at 19.

[16]    *Id.* § 17.02[G][3][c] at 24; CLA-013: *Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310, 318 (S.D.N.Y. 2013) (affirming an AAA emergency arbitrator's award that issued an injunction and applied the general Second Circuits standard in granting an injunction, namely "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor.").

[17]    *See also* CLA-004: ICDR Rules, Article 7(1)(b), (d).

[18]    CLA-014: *DiFabio v. Omnipoint Commc'ns, Inc.*, 887 N.Y.S.2d 168, 170 (N.Y. App. Div. 2009).

[19]    *See* CLA-006: *Born* on International Commercial Arbitration § 17.02[G][3][b][i] at 20.

*likelihood of harm, the degree and character of harm, the balance of hardships and other factors. The issue is not so much whether, on a balance of probabilities, serious harm will occur but whether the risks of grave harm are sufficiently substantial to justify the burden (if any) that provisional measures would impose on the respondent.*"[20]

28.    New York courts have broadly recognized that reputational harm constitutes irreparable harm.[21]   Likewise, New York courts have specifically found irreparable harm where the party seeking preliminary relief faced the threat of court-ordered sanctions.[22]

29.    In the 1782 Action, Mr. Sabag, on October 11, 2022, filed his Supplementary Request seeking Court approval to serve a subpoena ad testificandum on Mr. Windhorst that Mr. Sabag claims he intends to use in foreign criminal proceedings against Mr. Windhorst.[23]

30.    In the 1782 Action, on December 15, 2022, the Court issued the Deposition Order, which allowed Mr. Sabag to serve the subpoena on Mr. Windhorst and required the parties to agree to a "mutually acceptable time" for the deposition of Mr. Windhorst within 45 days of the Deposition Order.[24]

31.    Mr. Windhorst and Mr. Sabag never agreed on a "mutually acceptable time" for the deposition within time allotted by the Court.[25]

32.    In the 1782 Action, Mr. Sabag, on February 1, 2023, filed a Motion for and order to

---

[20]    *Id.* § 17.02[G][3][b][i] at 21.

[21]    CLA-015: *Carey v. Ripp*, 77 N.Y.S.3d 863, 864 (N.Y. Sup. Ct. 2018) (granting the preliminary injunction, by finding irreparable harm in the form of reputational harm); CLA-016: *James v. Nat'l Arts Club*, 2011 WL 4975275, at *4, 11 (N.Y. Sup. Ct. September 28, 2011) (enjoining defendant from removing plaintiff from the board, finding plaintiff facing irreparable injury in the form of professional and reputational harm).

[22]    CLA-017: *Merrill Lynch, Pierce, Fenner v. Doe*, 868 F. Supp. 532, 540 (S.D.N.Y. 1994) (granting preliminary injunctive relief and finding irreparable harm where moving party "risk[ed] state contempt sanctions"); CLA-018: *In re Accent Delight Int'l Ltd.*, 2018 WL 7473109, at *1 (S.D.N.Y. June 27, 2018) (staying discovery to "maintain the status quo" because "the proverbial bell cannot be unrung" once information is disclosed"); CLA-019: Order, *Kiobel v. Cravath, Swaine & Moore, LLP*, No. 1: 16-cv-7922(AKH), Dkt. No. 29 (March 2, 2017), at 1 ("If [Respondent] produces the documents at issue, and the Court of Appeals subsequently holds that I committed legal error or abused my discretion in granting [applicant's] petition, [applicant's] use of the documents during the interim cannot be undone.  Thus, absent a stay, [respondent] will be denied a meaningful opportunity to appeal my January 24 order.").

[23]    Notice ¶ 37; C-023 [1782 Action Dkt. 98].

[24]    Notice ¶ 42; C-028 [1782 Action Dkt. 105].

[25]    Notice ¶ 45; C-023 [1782 Action Dkt. 98].

show cause ("OSC") requesting the Court to order Mr. Windhorst to show cause as to why he should not be sanctioned for his failure to appear for the deposition.[26]

33. On February 8, 2023, Mr. Windhorst wired the settlement funds to Mr. Sabag.[27]

34. Pursuant to paragraph 5 of the Settlement Agreement, Mr. Sabag was obligated to dismiss the 1782 Action by no later than February 15, 2023.

35. Pursuant to paragraph 6 of the Settlement Agreement, Mr. Sabag released the 1782 Action on or around February 9, 2023.

36. Pursuant to paragraph 8 of the Settlement Agreement, Mr. Sabag covenanted not to pursue any claims that existed or could have existed at the Effective Date of the Settlement Agreement.

37. Mr. Sabag has refused and continues to refuse to dismiss and/or release the 1782 Action within the time provided by the Settlement Agreement.

38. As a direct and proximate result of Mr. Sabag's refusal to perform in accordance with the Settlement Agreement, Mr. Windhorst faces a likelihood of irreparable harm in the absence of emergency relief. Such irreparable harm results if Mr. Windhorst is either sanctioned and/or held in contempt by a U.S. District Court for failing to appear for a deposition in a proceeding that should have already been dismissed. Specifically, on March 1, 2023 – two weeks after Mr. Sabag was obligated to dismiss the 1782 Action – the Court issued the OSC Order which requires Mr. Windhorst personally to show cause at a hearing scheduled for April 11, 2023.[28]

39. Moreover, as a direct and proximate result of Mr. Sabag's refusal to perform in accordance with the Settlement Agreement, Mr. Windhorst faces a likelihood of irreparable harm in the absence of emergency relief. Such irreparable harm results from

---

[26] Notice ¶ 45; C-030 [1782 Action Dkt. 107].

[27] Notice ¶ 47; C-031 [Wire Transfer Receipt]; C-029 [[Correspondence between Mr. Rau and Conyers Dill & Pearman LLP, dated Jan. 2023 – Feb. 2023] at 3 (Email from Ms. Johns to Mr. Rau on February 9, 2023).

[28] Mr. Windhorst similarly seeks a stay from the court in the 1782 Action, with briefing scheduled to be completed by March 30, 2023. As such, it is presently unclear whether the court in the 1782 Action will rule on Mr. Windhorst's motions before April 11, 2023, which results in urgency here for the Emergency Arbitrator to award relief.

Mr. Windhorst being compelled to sit for a deposition (in a legal proceeding that should be dismissed) that will be purportedly used against him in foreign criminal proceedings.

40.   If the deposition proceeds, Mr. Windhorst will be asked to testify in a proceeding that should have been dismissed.   Mr. Sabag claims that the testimony will then be used against Mr. Windhorst in contemplated *criminal* proceedings in England—proceedings that Mr. Sabag plans to initiate.   It would be highly unjust for Mr. Sabag be to obtain Mr. Windhorst's testimony in a case that Mr. Sabag was specifically obligated to dismiss under the parties' Settlement Agreement—an agreement that Mr. Sabag has already enforced via the Preceding Arbitration.

41.   Accordingly, the harm caused by Mr. Sabag's refusal to timely dismiss the 1782 Action cannot be fully remedied by monetary damages.

42.   In conclusion, if the interim relief sought by Mr. Windhorst were not granted by April 11, 2023, then there is a risk that Mr. Windhorst will suffer the irreparable harm of being compelled to sit for a deposition or sanctioned and/or held in contempt of Court based on Mr. Windhorst's failure to sit for a deposition, in a case Mr. Sabag agreed to dismiss.

### (2) *Mr. Windhorst has a prima facie case and probability of success on the merits.*[29]

43.   Mr. Windhorst has a prima facie case and probability of success on the merits.

44.   Under New York law, this requirement considers whether the party seeking preliminary relief has shown "a likelihood of ultimate success on the merits."[30]   This standard does not require Mr. Windhorst "to show a certainty of success, but, rather, must make a *prima facie* showing of [his] right to relief."[31]

45.   Similarly, under international standards, the prevailing interpretation of the "*prima facie*" case requirement is that:

---

[29]   *See also* CLA-004: ICDR Rules, Article 7(1)(c).

[30]   CLA-020: *Destiny USA Holdings, LLC v. Citigroup Glob. Markets Realty Corp.*, 889 N.Y.S.2d 793, 797-98 (N.Y. App. Div. 2009).

[31]   CLA-21: 3 N.Y. Prac., Com. Litig. in New York State Courts § 20:8 (5th ed.) (titled "[t]hree-part test-likelihood of success on the merits) (collecting cases).

"*The better view is [...] that an arbitral tribunal should consider the prima facie strength of the parties' respective claims and defenses in deciding whether to grant provisional measures. [...] [A]n assessment of the existence of a prima facie case does not prejudge the merits of the case: it is a purely provisional assessment based upon incomplete submissions and evidence, without preclusive effects.*

*[...]*

*...an inquiry into the merits of the parties' claims and defenses is solely on a prima facie basis, without any detailed or binding assessment of the evidence or the merits of the parties' legal arguments.*

*[...]*

*Indeed, only in rare cases, where a claimant has failed to advance any plausible basis for its claims will tribunals deny provisional relief based on a prima facie view of the merits.*"[32]

46.    Under New York law, it is well settled that "the interpretation of an unambiguous contractual provision is a function for the [tribunal]."[33]  Likewise, even if "a contract is ambiguous, its interpretation is still a matter for the court unless determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."[34]

47.    When Mr. Windhorst failed to meet his obligation to remit settlement payment on time, Mr. Sabag never sought to rescind the Settlement Agreement following Mr. Windhorst's failure to timely remit payment.[35]

48.    Furthermore, Mr. Sabag filed a motion to enforce the Settlement Agreement and obtained a summary award of the Settlement Agreement requiring Mr. Windhorst to pay the settlement funds, thereby affirming the Settlement Agreement pursuant to the "election of remedies" doctrine under New York law, the governing law of the Settlement Agreement. [36]

---

[32]    *See* CLA-006: *Born* on International Commercial Arbitration § 17.02[G][3][b][iv] at 24.

[33]    CLA-020: *Destiny USA Holdings, LLC v. Citigroup Glob. Markets Realty Corp.*, 889 N.Y.S.2d at 798-99.

[34]    *Id.* at 199 (citation and internal quotations omitted).

[35]    Notice ¶¶ 29-33, 36, 41, 43.

[36]    CLA-002: *Cherniak v. Trans-High Corp.*, No. 18 CIV. 7734 (AT), 2020 WL 1047884, at *5 (S.D.N.Y. Mar. 4, 2020) ("by commencing [] litigation Plaintiffs elected to proceed on their underlying claims instead of seeking the money owed under the Agreement"); CLA-003: *Sofi Classic S.A. de C.V*, 444 F.

49.     Mr. Sabag also affirmed the Settlement Agreement by repeatedly reaching out to Mr. Peter Calamari (general counsel of one of Mr. Windhorst's companies) for payment from July 2022 to February 2023.[37]

50.     Because Mr. Sabag has affirmed the Settlement Agreement, pursuant to the "election of remedies" doctrine under New York law,[38] Mr. Sabag needs to comply with the Settlement Agreement to 1) dismiss the 1782 Action by February 15, 2023, five business days after receiving the settlement payment;[39] 2) refrain from pursuing any claims that existed or could have existed at the Effective Date of the Settlement Agreement.[40]

51.     To this date, Mr. Sabag has refused and continues to refuse to dismiss and/or release the 1782 Action, thereby breaching the Settlement Agreement.

52.     To sum up, Mr. Windhorst has set out the law and facts on which he relies, which on their face disclose <u>a plausible (if not strong) claim</u> that Mr. Sabag has breached the Settlement Agreement.  This is sufficient to meet the threshold criterion of a *prima facie* case.

### (3) *The equities weighs in Mr. Windhorst's favor*

53.     Mr. Windhorst has shown the balance of the equities weighs in favor of granting emergency relief.

---

Supp. 2d 231, 238 (S.D.N.Y. 2006) ("Plaintiffs elected to affirm the continued validity of the Settlement Agreement by bringing an action for breach of the Settlement Agreement against the Corporations, obtaining a judgment, and seeking to enforce that judgment against the Corporations."); CLA-001: *331 East 14th St. LLC v. 331 East Corp.*, 740 N.Y.S.2d 327 (N.Y. App. Div. 2002) ("The election of remedies rule bars the pursuit of alternative relief after a party has 'chosen one of two or more co-existing inconsistent remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment.'"); CLA-022: *Awards.com, LLC v Kinko's, Inc.*, 42 A.D. 3d 178, 188 (N.Y. App. Div. 2010), *aff'd*, 14 N.Y. 3d 791 (2010) ("[w]hen a party . . . breaches a contract, the nonbreaching party must choose between two remedies: it can elect to terminate the contract or continue it.").

[37]     Notice ¶¶ 29-33, 36, 41, 43.

[38]     *See, e.g.*, CLA-003: *Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d at 238 (the court dismissed the underlying claim as set forth in the settlement agreement after finding plaintiffs had elected to affirm the settlement agreement by bringing an action for breach of the settlement agreement, obtaining a judgment, and seeking to enforce that judgment).

[39]     C-001 [Settlement Agreement] ¶ 5.

[40]     C-001 [Settlement Agreement], ¶ 8.d.

54.   Under New York law, this requirement requires "weigh[ing] the harm that each side will suffer in the absence or face of injunctive relief."[41]  To prevail, the party seeking preliminary relief "must show that the irreparable injury it will sustain absent the injunction is more burdensome than the harm that would be caused to the [non-moving party] if the injunction is granted."[42]

55.   Here, Mr. Windhorst has made this showing.  As described above, he faces a significant risk of irreparable harm, including by being compelled to provide deposition testimony and reputational harm associated with being sanctioned by and/or held in contempt of court, if emergency relief is not granted.[43] These harms cannot be remedied by monetary damages.

56.   In contrast, Mr. Sabag will sustain no harm if preliminary relief is granted.   As explained above, Mr. Sabag was contractually obligated to dismiss the 1782 Action by February 15, 2023.[44]  Requiring Mr. Sabag to perform his obligation results in no harm to him, and weighs the equities in Mr. Windhorst's favor.[45]

57.    Likewise, to the extent the Tribunal is inclined to grant Mr. Windhorst's alternative request(s) by requiring Mr. Sabag to either, in the 1782 Action, move to stay the OSC Order or hold the deposition subpoena in abeyance pending full adjudication of the merits by the Tribunal, the equities weigh in Mr. Windhorst's favor because ordering Mr. Sabag to stay the 1782 Action and/or hold the deposition subpoena in abeyance will minimize repetitive litigation that could result in inconsistent decisions.[46]

58.   To sum up, Mr. Windhorst has shown the balance of the equities weighs in his favor.

---

[41]   CLA-023: 3 N. Y. Prac., Com. Litig. in New York State Courts § 20:10 (titled "[t]hree-part test—Balancing the equities and other considerations").

[42]   *Id.* (collecting cases).

[43]   *Supra* ¶¶ 29-42.

[44]   *Supra* ¶ 34, 50; *see also supra* ¶¶ 35-36.

[45]   *See, e.g.*, CLA-024: *Suttongate Holdings Limited v. Laconm Management N.V.*, 72 N.Y.S.3d 70, 71-72 (N.Y. App. Div. 2018) (court held balance of equities favored plaintiff, lender, in action against borrowers where plaintiff sought an injunction requiring defendants to take all actions necessary to establish and register mortgages in plaintiff's name on certain designated properties since plaintiff sought to enforce contractually bargained for rights guaranteed by both the individual and corporate defendants).

[46]   CLA-025: *Ameriprise Ins. Co. v. Hampton*, 60 Misc.3d 1222(A), 2018 WL 3963521, at *5 (N.Y. Sup. Aug. 14, 2018) ("A [movant] demonstrates irreparable harm and a balancing of the equities in its favor when injunctive relief would minimize repetitive litigation with the same claims, defense, and inconsistent judicial or arbitral decisions.").

Accordingly, Mr. Windhorst has met his burden to establish all three factors required to obtain preliminary relief under New York law.

**(4) *The underlying circumstances possess the required degree of urgency***

59.    Mr. Windhorst has shown, under the international legal standard for emergency relief if the Emergency Arbitrator deems it to apply instead of New York law, the requisite level of urgency.

60.    The best interpretation of the requirement is urgency is that:

*"...the tribunal must be persuaded that immediate, or at least prompt, interlocutory action is necessary in order to prevent serious or irreparable damage to the applicant.*

*[...]*

*Most authorities consider whether there is a risk that serious injury will occur prior to the issuance of the tribunal's final award: "The degree of 'urgency' which is required ... may be satisfied where a party can prove that there is a need to obtain the requested measure at a certain point in the procedure before the issuance of an award.*

*[...]*

*As with the requirement of "irreparable" harm, the "urgency" requirement is not interpreted literally or mechanically, but instead based upon pragmatic assessments of likelihood and risks. As one award explained, "[a] measure is urgent where action prejudicial to the rights of either party is likely to be taken before such final decision is taken."*[47]

61.    There is clear <u>urgency</u> in the present case.  The Court in the 1782 Action has scheduled a hearing for April 11, 2023 where Mr. Windhorst is required to show cause as to why he should not be sanctioned.  Mr. Windhorst should not have to attend this hearing, let alone face the possibility of being sanctioned and/or held in contempt of court, due to Mr. Sabag's contractual obligation to dismiss the 1782 Action.

**(5) *Mr. Windhorst does not seek a prejudgment of the merits***

62.    Mr. Windhorst has shown, under the international legal standard for emergency relief, if the Emergency Arbitrator deems it to apply instead of New York law, that he does

---

[47]    *See* CLA-006: *Born* on International Commercial Arbitration § 17.02[G][3][b][ii] at 22.

not seek a prejudgment of the merits.

63.   The "no prejudgment of the merits" criterion requires that:

"*Properly analyzed, the "no prejudgment" requirement stands for the fairly basic, but nonetheless important, propositions that (a) a grant of provisional measures may not preclude the tribunal from ultimately deciding the arbitration in any particular manner after the parties have presented their cases (e.g., provisional measures should not prevent nor make it more difficult for the tribunal to render a decision in favor of one party or the other); (b) provisional measures have no res judicata or similar preclusive effect with regard to a decision on the merits; (c) a tribunal must take care to ensure that it does not, in considering and deciding an application for provisional measures, prejudge the outcome of the arbitration or even partially close its mind to one party's submissions or deny one party an opportunity to be heard in subsequent proceedings; and (d) the same relief that is sought as final relief may ordinarily be issued on a provisional basis, subject to later revision (although that relief might in some cases also be issued as partial final relief prior to a final award).*"[48]

64.   Here**,** Mr. Windhorst confirms that he seeks <u>no prejudgment</u> on the merits and understands and accepts that provisional measures have no *res judicata* or similar preclusive effect with regard to a decision on the merits.

65.   As stated above, Mr. Windhorst seeks an award of emergency relief directing Mr. Sabag to jointly stipulate to stay in the 1782 Action the Court's March 1, 2023 Order to Show Cause (and related April 11, 2023 hearing) pending adjudication on the merits by the tribunal to be constituted in due course or, alternatively, directing Mr. Sabag to hold in abeyance the deposition subpoena in the 1782 Action until adjudication on the merits by the tribunal to be constituted in due course.[49]   This relief does not require the Emergency Arbitrator to render judgment on the merits – i.e., whether Mr. Sabag breached the Settlement Agreement.

   E.   <u>Delivery of this Application</u>

66.   Mr. Windhorst confirms that this Application will be served on Mr. Sabag at the addresses indicated in Section II(B) above.  The Request will be served by email to (i) Mr. Sabag; and (ii) Mr. Sabag's counsel.  Documentary confirmation of this delivery will be provided to the ICDR as soon as possible.

---

[48]   *Id.*

[49]   *Supra* ¶ 8.

**F.** **Confirmation of Payment of the Filing Fee**

67.     Pursuant to of the ICDR Rules, Article 2(4), Article 7(1),[50] and the ICDR International Arbitration Fee Schedule, Amended and Effective October 1, 2017,[51] the Claimant has made an advance payment of USD 8625 with this Application and the Notice.  The Claimant acknowledges that this payment is subject to the refund policy of the ICDR Standard Fee Schedule, and shall be credited to its portion of the advance on costs.

**IV.     RELIEF SOUGHT**

68.     Mr. Windhorst accordingly requests on an emergency basis, and for the reasons set out above, that an Emergency Arbitrator order, on an interim basis:

68.1    Until further order by the Emergency Arbitrator or a tribunal duly constituted in these proceedings, Mr. Sabag shall execute and file a joint stipulation by April 3, 2023 in the 1782 Action with Mr. Windhorst to stay the Court's March 1, 2023 Order to Show Cause (and for a continuance of the related April 11, 2023 hearing) pending adjudication of this dispute by a tribunal duly constituted in these proceedings;

68.2    Alternatively, until further order by the Emergency Arbitrator or a tribunal duly constituted in these proceedings, Mr. Sabag shall execute and file a joint stipulation by April 3, 2023 in the 1782 Action with Mr. Windhorst to hold the deposition subpoena directed at Mr. Windhorst in abeyance pending adjudication of this dispute by a tribunal duly constituted in these proceedings; and

68.3    Order that the costs of this Application be reserved to the tribunal to be constituted in due course.

Respectfully submitted,

---

[50]    CLA-004: ICDR Rules, Article 2(4), Article 7(1).

[51]    International_Dispute_Resolution_Procedures_Fee_Schedule.pdf (icdr.org).

/s/ Lucas V.M. Bento

QUINN EMANUEL URQUHART &
SULLIVAN LLP

51 MADISON AVE., 22ND FLOOR
NEW YORK, NEW YORK 10010

*COUNSEL FOR LARS WINDHORST*