# EXHIBIT 4

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION

CASE NO. 01-20-0003-6931

ELI SABAG

Claimant,

v.

TRACK GROUP, INC.,
SAPINDA ASIA LIMITED,
and LARS WINDHORST,

Respondents.

**CLAIMANT ELI SABAG'S PETITION FOR AN AWARD OF FEES,
COSTS AND INTEREST AGAINST SAPINDA ASIA AND LARS WINDHORST**

Pursuant to the Tribunal's instructions dated August 15, 2022 and the Award dated August 17, 2022, Mr. Eli Sabag submits his petition for an award against Respondents Sapinda Asia Limited ("Sapinda") and Lars Windhorst ("Mr. Windhorst") for fees, costs, and expenses that he incurred in connection with this Arbitration in the amount of **$834,297.57**.[1]  Mr. Sabag also seeks an award of interest on the principal sum of $2,8500,000 to be calculated starting on August 2, 2022 at the rate of 9% until paid in full.

This arbitration represents a five-year painful and traumatic chapter in Mr. Sabag's life, which started when Sapinda and Mr. Windhorst (in conjunction with Track Group) refused to pay Mr. Sabag the amount they agreed to acquire Mr. Sabag's life's work—GPS Global.  During this time, Sapinda and Mr. Windhorst engaged in contumacious conduct and delay-gamesmanship designed to needlessly increase Mr. Sabag's expenses in an effort to win through attrition.  As if

---

[1] *See* the Attached **"Exhibit A"** for a summary of the individual fees, costs and expenses that make up that amount.

the long delays were not enough, having agreed to a final settlement of this case with numerous promises to pay, Sapinda and Mr. Windhorst have failed to honor the Settlement Agreement.  In doing so, they have forced Mr. Sabag to incur even more fees and costs, as well as the trauma of having to deal with the uncertainty of ever receiving a payment.

At the same time, Mr. Windhorst has flaunted the success of his investments so far in 2022.  Mr. Windhorst told the *Financial Times* that he increased his liquid assets to over €500mn across his various businesses, and to mitigate some German criminal inquiries, he "has pledged to hand over more than €500mn to H2O Asset Management [to repay his debts to them] in a matter of weeks."[2]   On the other hand, Mr. Windhorst flagrantly failed to comply with his contractual obligations to Mr. Sabag.

Sapinda and Mr. Windhorst should be held responsible for their actions.  In support of this Petition, Mr. Sabag submits the Affidavits of Cristina Cárdenas (Reed Smith LLP)[3] and Courtney Caprio (AXS LAW PLLC),[4] and states as follows:

**A.  <u>Relevant Procedural Background</u>**

Sapinda and Mr. Windhorst could never defend the legal obligations that they created for themselves under the Put Option Agreement. Instead, they looked to procedural and delay tactics to avoid liability.

As early as 2017, Mr. Windhorst refused to honor his Put Option Agreement with Mr. Sabag for the Restricted Stock that Track Group awarded to Mr. Sabag at the time of the Acquisition.  To secure payment from Mr. Windhorst, Mr. Sabag was forced to incur legal fees

---

[2] C-265, August 2022 Financial Times Article.
[3] C-266, Declaration of C. Cárdenas.
[4] C-267, Declaration of C. Caprio.

and file documents to place Sapinda into involuntary liquidation in the British Virgin Islands.[5]  Mr. Windhorst only paid Mr. Sabag because the proposed liquidation proceedings would have clawed-back certain assets that Mr. Windhorst had already promised to another creditor as a part of a $625 million settlement deal.[6]

Mr. Windhorst has been running similar put option schemes (often using Track Group stock) with other unrelated investors for years.  For example, in 2007, Mr. Windhorst caused his German subsidiary (similar to Sapinda) to enter into a put option agreement with an unrelated party to buy their Track Group stock (formerly known as RemoteMDx).[7]  Mr. Windhorst refused to honor this obligation.  Again in 2008, Mr. Windhorst settled another dispute with an unrelated party by agreeing to a put option, which Mr. Windhorst subsequently did not honor.[8]  Mr. Windhorst and Sapinda made the same bogus put option deals in 2014 using the shares of a Dutch publicly traded company, Fyber NV, that they owned and controlled.[9]  Now, Mr. Windhorst is facing another lawsuit for 27 million euro regarding his failure to honor his obligations when he disposed of the stock of Fyber.[10]

As the Tribunal is aware, after the dispute arose regarding the Contingent Shares, Mr. Sabag sued Sapinda and Mr. Windhorst in the Superior Court of Marion County, Indiana.[11]

---

[5] Mr. Windhorst waited until one business day before the first hearing to agree to pay the full $3.047 million owed to Mr. Sabag (plus legal fees) for the Restricted Shares under the Put Option Agreement.  *See* C-042, November 1, 2017 Filing in BVI; C-102, May 28, 2021 Eli Sabag Witness Statement ¶¶ 37-38.
[6] *See* C-071, July 21, 2017 ADS Schedule 13D.
[7] C-061, Amorim Holding Financeira, S.G.P.S. v. C. P. Baker & Co., No. 1:09-cv-10641-NG (D. Mass), D.E. 58; C-186, December 16, 2015 Article.
[8] C-062; *Amorim Holding Financeira, S.G.P.S. v. C. P. Baker & Co.*, No. 1:09-cv-10641-NG (D. Mass), D.E. 58.
[9] *See* C-058, 2018 Fyber N.V. Report.
[10] *See* C-268, August 9, 2022 Law 360 Article.
[11] *See* C-008, Complaint for Damages and Declaratory Judgment in Indiana Court.

Sapinda and Mr. Windhorst responded by seeking, among other things, to compel this Arbitration.[12] The Indiana court would later order this Arbitration based on their own arguments.[13]

Mr. Sabag subsequently commenced this Arbitration in 2020; however, Sapinda refused to appear and Mr. Windhorst separately argued that the arbitrator had no jurisdiction over him.[14] Thus, Mr. Sabag was forced to file a motion in the Indiana court to reinstate the litigation against both Sapinda and Mr. Windhorst.[15]  Sapinda and Mr. Windhorst eventually admitted to the Indiana court that they would be participating in the Arbitration.

Indeed, even once Sapinda and Mr. Windhorst both appeared in this Arbitration, they initially claimed during an early hearing that they were "agnostic" about the jurisdictional issues in the case,[16] but then they then subsequently took the position that the Tribunal should bifurcate this proceeding by first deciding whether Track Group breached the contract before considering Sapinda and Mr. Windhorst's liability under the interrelated Put Option Agreement.[17] This Tribunal rejected their request and allowed the parties to proceed with the Arbitration.[18]

After more than 2 years of extensive discovery and substantial briefings—all at an unbearably high personal and financial cost to Mr. Sabag—the parties entered into a Settlement Agreement, which was signed on June 10, 2022 (the "Settlement Agreement").[19]

---

[12] C-007, September 12, 2018 Memorandum of Law in Support of Sapinda Asia Limited's and Lars Windhorst's Motion to Dismiss the Complaint, at 8-15, 26-29.
[13] C-005, April 1, 2019 Order Denying Motion to Dismiss and Granting Motion to Compel Arbitration, at 2-3.
[14] C-016, Mr. Sabag's Memorandum in Support of Motion to Show Cause Against Sapinda for Failure to Appear in Arbitration.
[15] Ex. C-017, Mr. Sabag's Memorandum in Support of Motion to Reinstate Litigation Against Sapinda and Windhorst; Ex. C-018, Sapinda and Windhorst's Response in Opposition to Reinstate Litigation; Ex. C-019, Order Denying Motion to Reinstate Litigation.
[16] *See* Procedural Order No. 1 ¶ 1.
[17] *See* Procedural Order No. 2 ¶ 1.
[18] *Id*. ¶¶ 12–16.
[19] *See* C-252, June 10, 2022 Settlement and Mutual Release.

Unfortunately for Mr. Sabag, the fight would not end there. After the parties signed the Settlement Agreement, Track Group satisfied all of its obligations by making a payment of $1.6 million on June 21, 2022, which was three days before the due date of June 24, 2022. However, Mr. Windhorst and Sapinda failed to make their settlement payment by the June 24th due date, breaching their obligations under the Settlement Agreement.[20]

Mr. Windhorst and Sapinda's behavior has been particularly abusive in this Arbitration. As set forth more fully in Mr. Sabag's Motion to Enforce and Reply in support, Mr. Windhorst and Sapinda, through personal counsel Peter Calamari ("Mr. Calamari"), repeatedly represented that Mr. Windhorst intended to pay the amounts owed under the Settlement Agreement.[21] That all proved to be untrue.

On July 6, 2022, Mr. Calamari alleged that Mr. Windhorst was having administrative issues with his bank and that his account was frozen. As a compromise, Mr. Sabag agreed in writing with Mr. Windhorst to extend the due date of the settlement payment to August 1, 2022.[22] In return, Mr. Windhorst agreed to increase the settlement amount by $50,000 from $2,800,000 to $2,850,000. Two days before the payment was due, Mr. Calamari informed counsel for Mr. Sabag that Mr. Windhorst expected "the transfer to be made on Monday [August 1st.]" and that he was "hoping for the best."[23]

---

[20] For Mr. Windhorst, entering into Settlement Agreements seems to represent (to him) only the beginning of a new stage of the litigation that he is settling. For example, in February 2020, Mr. Windhorst reached a settlement agreement with Heritage Travel and Tourism Limited. *See* C-257, *Heritage v. Windhorst Judgment.* Mr. Windhorst did not comply with it. When Heritage began proceedings to collect under the settlement agreement, Mr. Windhorst attempted to argue that it was unenforceable because he only agreed to it under economic duress. The High Court dismissed Mr. Windhorst's allegations and ruled in favor of Heritage. *Id.*

[21] *See* Motion to Enforce Settlement Agreement as Amended; August 11, 2022 Letter to Arbitrator re Settlement Agreement.

[22] C-256, Amendment to Settlement Agreement (the "Amendment").

[23] C-258, July 30 Email from P. Calamari to E. Mullins.

On August 1, 2022, counsel for Mr. Sabag followed up with Mr. Calamari about whether the transfer had been made.  Counsel for Mr. Sabag never received a response, which prompted Mr. Sabag to file his motion to enforce the Settlement Agreement as amended against Respondents Sapinda and Mr. Windhorst.[24]

Even after that motion was filed, Mr. Sabag continued to try to obtain confirmation of payment through Mr. Calamari.  Mr. Sabag fully briefed the excuses and apologies he received from Mr. Calamari in his August 11, 2022 letter to the Arbitrator.[25]  Needless to say, Sapinda and Mr. Windhorst's August 10, 2022 claim that payment was being "arranged"—without providing any proof or date by which payment would be received[26]—was quite simply incredible and has in any event *yet* to occur.

### B.  Awarding Mr. Sabag an Apportioned Percentage of All of His Fees, Costs and Expenses Is Reasonable Given the Circumstances of this Case

The 2014 International Rules of the ICDR[27] provide that:

The arbitral tribunal shall fix the costs of arbitration in its award(s).The tribunal may allocate such costs among the parties if it determines that allocation is reasonable, taking into account the circumstances of the case.
Such costs may include:
    a. the fees and expenses of the arbitrators;
    b. the costs of assistance required by the tribunal, including its experts;
    c. the fees and expenses of the Administrator;
    d. the reasonable legal and other costs incurred by the parties;
    e. any costs incurred in connection with a notice for interim or emergency relief pursuant to Articles 6 or 24
    f. any costs incurred in connection with a request for consolidation pursuant to Article 8; and
    g. any costs associated with information exchange pursuant to Article 21.

---

[24] *See* Motion to Enforce Settlement Agreement as Amended.
[25] *See* C-259, August 3, 2022 Email from P. Calamari to E. Mullins; C-260, August 5, 2022 Email from P. Calamari to E. Mullins; C-261, August 8, 2022 Email from P. Calamari to E. Mullins; C-262, August 9, 2022 Email from P. Calamari to E. Mullins; C-263, August 10, 2022 Email from P. Calamari to E. Mullins; C-264, Windhorst's EURAM Settlement Payment to Sabag.
[26] C-269, August 10, 2022 Sapinda and Mr. Windhorst Response to Motion to Enforce.
[27] *See* Procedural Order No. 3.

According to that rule, the Tribunal thus has the authority to fix the costs of arbitration in its award.[28]  ICDR Article 34 gives the Tribunal the authority to apportion costs among the parties if it determines that the apportionment is reasonable in the circumstances of the case.[29]  It may also grant costs, including: the fees and expenses of the arbitrators; the fees and expenses of the administrator; and the reasonable costs for legal representation of a successful party.[30]

Here, the Settlement Agreement as amended does not prevent Mr. Sabag from seeking, or this Tribunal from awarding, the costs and fees incurred during this arbitration.  In the Settlement Agreement, each party only agreed to pay "its own costs, attorneys' fees, and taxes incurred in connection with [the Settlement Agreement] and the completion of any transactions contemplated by [the Settlement Agreement]."[31]  Thus, that provision applies only to the fees incurred from the negotiating and drafting of the settlement agreement.  It does not apply to the rest of the costs and fees incurred throughout the rest of the arbitration.

Furthermore, Mr. Sabag reserved his rights to seek the full fees and costs in the event Sapinda and Mr. Windhorst failed to pay the settlement amount.  The Settlement Agreement specifically provides that, in the event Sapinda and Mr. Windhorst failed to honor the obligations under the Settlement Agreement, Mr. Sabag would be "entitled to recover from" Sapinda and Mr. Windhorst his "costs, expenses, and reasonable attorneys' fees incurred **in the dispute**."[32]  This

---

[28] ICDR 2014 Rules, Art. 34; *see* CLA-117, *Stemcor USA, Inc. v. Miracero, SA de CV*, 2014 U.S. Dist. LEXIS 118504, at *29-32 (S.D.N.Y. Aug. 22, 2014; CLA-126, *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641 (M.D.N.C. 2016) ("Courts have held . . . that [Article 34] grants arbitrators independent authority to award attorneys' fees.") (citing CLA-127, *DigiTelCom, Ltd. v. Tele2 Sverige AB*, 2012 U.S. Dist. LEXIS 105896, at *5 (S.D.N.Y. July 25, 2012); CLA-128, *F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 330-31 (S.D.N.Y. 2010)).
[29] *Id*.
[30] *Id*.
[31] C-252, June 10, 2022 Settlement and Mutual Release.
[32] *Id*. (emphasis added).

caveat in the "Costs, Attorneys' Fees, Taxes" section applies to all costs incurred in the dispute, not just the costs incurred in relation to the Settlement Agreement.

In the subsequent Amendment, Mr. Sabag reserved "all rights and remedies available to him in the event the required payment is not made by the extended due date including, but not limited to, the right to seek interest on the amount owed, [and] reasonable attorneys' fees."[33] Sapinda and Mr. Windhorst, on the other hand, reserved only "the right to contest the reasonableness of any attorneys' fees or interest sought."[34]  Sapinda and Mr. Windhorst did not reserve the right to dispute the scope of the fees and costs sought by Mr. Sabag.  Therefore, Mr. Sabag is fully within his rights to request this Tribunal award Mr. Sabag his full fees and costs incurred throughout this Arbitration, apportioned only in connection with respect to their percentage of liability.

While the Settlement Agreement does have a release, the Agreement is clear—the Release is not effective until *after* payment is made.  To that end, Section 6 of the Settlement Agreement provides that "[t]he following releases are effective immediately **upon the disbursement of the Settlement Funds out of the Reed Smith Trust Account** pursuant to paragraph 4.c. . . ."[35]  Thus, any release by Mr. Sabag is only effective upon receipt of the settlement funds.  Since Sapinda and Mr. Windhorst have failed to comply with their settlement obligations, Mr. Sabag's release is not effective.    For that reason, Mr. Sabag has not claimed fees and costs from Track Group because Track Group complied with its settlement obligations; thus, any claim for fees and costs against Track Group has been released—unlike the fees claimed as to Sapinda and Mr. Windhorst.

---

[33] C-256, Amendment to Settlement Agreement.
[34] *Id*.
[35] C-252, June 10, 2022 Settlement and Mutual Release § 6.

Further, this Tribunal found that the amendment to the Settlement Agreement had a time of the essence clause and thus Sapinda and Mr. Windhorst are in material breach.[36]

As noted, ICDR Article 34 gives the Tribunal the authority to apportion costs among the parties if it determines that the apportionment is reasonable in the circumstances of the case. Here, each parties' respective percentage of liability has already been agreed to in proportion to what each party agreed to pay in the Settlement Agreement. As Amended, Track Group paid Mr. Sabag $1.6 million, while Sapinda and Mr. Windhorst agreed to pay him $2.850 million, for a total settlement payment of $4,450,000. Thus, the parties already agreed that Sapinda and Mr. Windhorst are 64% responsible in connection with overall liability to Mr. Sabag. Sapinda and Mr. Windhorst should thus be required to pay 64% of Mr. Sabag's fees and costs in this arbitration up until the Settlement Payment due date of June 24, 2022. Sapinda and Mr. Windhorst should be 100% liable for all fees and costs incurred by Mr. Sabag from June 25, 2022 forward given that any fees and costs incurred after that date are 100% attributable to their material breach of the Settlement Agreement.

The fees requested by Mr. Sabag's are reasonable.[37] Indeed, several New York courts have found attorneys' fees to be reasonable for rates greater than $700 for partners and $525 for associates.[38] By comparison, the rates charged to Mr. Sabag by Reed Smith are comparatively much lower than the rates of Sidley Austin, as seen in the following chart of Sidley Austin's rates in a Texas bankruptcy case:[39]

---

[36] August 17, 2022 Award, ¶14.
[37] C-266, Affidavit of C. Cárdenas, ¶¶ 11-12; C-267, Affidavit of C. Caprio ¶¶9-10.
[38] CLA-118, *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 2021 U.S. Dist. LEXIS 208639, at *9–10 (S.D.N.Y. Oct. 27, 2021) (accepting as reasonable $700/hour and $800/hour for two partners); CLA-119, *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321, at *9 (S.D.N.Y. Dec. 10, 2020) (accepting as reasonable $787.50/hour; and $715.50/hour for partners and $420/hour, $460/hour, $515/hour, and $535/hour for associates).
[39] CLA-120, Summary Cover Sheet for Fee Application of Sidley Austin LLP for Compensation and Reimbursement of Expenses, GVS Texas Holdings I, LLC, et al., No. 21-31121-MVL (May 5, 2022).

| Name | Position Area of Expertise | Year of Admission / Years of Experience | Hourly Billing Rate[2] | Total Hours Billed[3] | Total Compensation |
|------|----------------------------|------------------------------------------|-------------------------|------------------------|---------------------|
| Edward W. Sharon | Counsel Antitrust | 2002 | $1,225 | 14.50 | $17,762.50 |
| Allison R. Stromberg | Counsel Restructuring | 2008 | $1,075 | 1.50 | $1,612.50 |
| Mustafa Abdul-Jabbar | Associate Litigation | 2016 | $1,100 | 66.00 | $72,600.00 |
| Allen S. Braddock | Associate Environmental | 2020 | $775 | 14.80 | $9,275.50 |
| Sophia Green | Associate Litigation | 2020 | $775 | 99.10 | $76,802.50 |
| Ellen Heighten | Associate Corporate | 2019 | $895 | 106.30 | $89,756.50 |
| Juliana Hoffman | Associate Restructuring | 2017 | $990 | 579.80 | $549,939.50 |
| Hannah L. Marshall | Associate Corporate | 2016 | $1,100 | 304.40 | $323,144.00 |
| Morgan R. Mendicino | Associate IP Litigation | 2021 | $650 | 1.00 | $650.00 |
| Jeri Leigh Miller | Associate Restructuring | 2016 | $1,100 | 260.50 | $270,349.00 |
| Will Otter | Associate Real Estate | 2021 | $775 | 58.40 | $44,880.50 |
| Amanda M. Patterson | Associate Corporate | 2020 | $775 | 79.00 | $57,760.00 |
| Adrienn T. Portnoy | Associate Corporate | 2021 | $650 | 59.70 | $38,149.00 |
| Maegan Quejada | Associate Restructuring | 2017 | $1,050 | 288.90 | $291,151.50 |
| Michael Sabino | Associate Restructuring | 2012 | $990 | 274.90 | $264,521.00 |
| Joe Schomberg | Associate Restructuring | 2017 | $1,050 | 2.70 | $2,835.00 |
| Kelsey M. Taylor | Associate Litigation | 2015 | $1,100 | 65.90 | $72,490.00 |

[40]

The tasks billed to Mr. Sabag were necessary to protect Mr. Sabag's interests in this Arbitration. For example, Reed Smith was involved in preparing pleadings, preparing and responding to procedural motions, performing legal research, reviewing document production, attending hearings, and communicating with counsel.   More specifically, that work included addressing the jurisdictional issues that were raised at the inception of the case, as well as preparing and attending the hearing on the requests for bifurcation; filing an 83-page memorial addressing Mr. Sabag's claims against three different parties (which raised separate and distinct issues for

---

[40] The rates highlighted in yellow are comparative rates in terms of seniority to timekeepers on this matter.

each party); drafting and responding to the Redfern schedules; translating and reviewing thousands of pages in preparation of producing responsive documents to Respondents' discovery requests; reviewing tens of thousands of pages of documents produced to Mr. Sabag by Respondents; reviewing these documents while simultaneously fighting the Respondents over their deficient production and drafting Mr. Sabag's 153-page reply memorial; drafting and attending two different hearings on a motion to compel; preparing for the final hearing; engaging in settlement discussions with the other parties; filing a motion to enforce the settlement agreement; and filing a motion for costs. Indeed, given that settlement took place on the eve of the final hearing, Mr. Sabag was in full final hearing preparation at the time of settlement.

For the reasons noted above, it is within the Tribunal's power and discretion to allocate the total costs and fees incurred by Mr. Sabag throughout this proceeding against Sapinda and Mr. Windhorst—even more so in a case such as this, given the bad faith, gamesmanship, and dilatory tactics shown by Sapinda and Mr. Windhorst.[41]

### C. Mr. Sabag is Entitled to an Award of Interest

New York's rate of interest is 9% for both pre and post award interest. *See* N.Y. C.P.L.R. § 5004.[42] Interest is "computed from the earliest ascertainable date the cause of action existed."[43]

---

[41] CLA-121, *Luzar Trading, S.A. v. Tradiverse Corp.*, No. 20-CV-623 (KMW), 2021 U.S. Dist. LEXIS 58177 (S.D.N.Y. Mar. 25, 2021) (holding that the panel did not exceed its authority in awarding fees and costs because ICDR Article 34 gave the tribunal the discretion; the panel shifted costs for Tradiverse because "Tradiverse has sought to suspend or delay this arbitration, commenced court actions to avoid compliance with both court and arbitral rulings, and has generally presented themselves as unwilling participants."); CLA-122, *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 87 (2d Cir. 2009) (holding that sanctions, including attorneys' fees, are appropriately viewed as a remedy within an arbitrator's authority when one party lacked good faith throughout the arbitration).

[42] *See* CLA-123, N.Y. C.P.L.R. § 5004; *see also* CLA-124, *Merch. Cash & Capital v. Eve's Food Court*, No. 603573/2015, 2015 N.Y. Misc. LEXIS 6236 (Sup. Ct. Oct. 23, 2015) (applying the 9% rate of interest for both pre- and postjudgment interest).

[43] *See* CLA-125, N.Y. C.P.L.R. § 5003.

Based on the terms of the Settlement Agreement, "[p]ayment of the Settlement Funds [in the amount of $2,800,0000] shall be made in U.S. dollars to Sabag within fourteen (14) calendar days of the Effective Date" of the Settlement Agreement.[44]   The Effective Date, "the date on which last [the] last signature is added" to the Settlement Agreement, was June 10, 2022.   Thus, Mr. Windhorst initially had until June 24, 2022 to send payment to Mr. Sabag.[45]   Sapinda and Mr. Windhorst breached their obligation to make their payment in a timely manner.

 After agreeing to the Amendment, Mr. Windhorst's payment (of the increased amount of $2,850,000) was due on August 1, 2022.[46]  Mr. Windhorst and Sabag failed once again to comply with this payment obligation.

In the interest of simplicity, Mr. Sabag claims interest on the $2,850,000 that was due on August 1, 2022 per the Amendment.  Mr. Windhorst was in breach of the settlement agreement as amended on August 2, 2022.  Therefore, Mr. Sabag is entitled to interest at the rate of 9% starting as August 2, 2022, until paid in full.

### D.  Conclusion

Mr. Sabag respectfully requests this Tribunal enter an order granting the Petition for Fees and Costs and directing Sapinda and Mr. Windhorst to reimburse Mr. Sabag the amount of **$834,297.57** for fees, costs, and expenses that he incurred in connection with this Arbitration.[47]

In addition, Mr. Sabag requests this Tribunal direct Sapinda and Mr. Windhorst to pay 9% interest on the $2,850,000, starting as of August 2, 2022, until paid in full.

---

[44] *See* C-252, June 10, 2022 Settlement and Mutual Release § 4(b).
[45] *Id*. § 15.
[46] *See* C-256, Amendment to Settlement Agreement § 2.
[47] See the Attached **"Exhibit A"** for a summary of the individual costs and expenses that make up that amount.

Dated: August 31, 2022                              Respectfully submitted,


By:_____
     Edward M. Mullins, Esq.
     emullins@reedsmith.com
     Cristina Cárdenas, Esq.
     ccardenas@reedsmith.com
     Matthew J. McKinnon
     mmckinnon@reedsmith.com
     **REED SMITH LLP**
     1001 Brickell Bay Drive, 9th Floor
     Miami, FL 33131
     Phone: 786.747.0200; Fax: 786.747.0299

     Courtney Caprio, Esq.
     **AXS LAW PLLC**
     2121 NW 2nd Avenue, Suite 201
     Miami, FL 33128
     Phone: 305.297.1878

     ***Counsel for Claimant Eli Sabag***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to ICDR Rule Article 10, I have served the foregoing on all parties to this proceeding via electronic mail.

Edward M. Mullins, Esq.

# EXHIBIT A

| ATTORNEY FEES | |
| --- | --- |
| Reed Smith Fees Invoiced Through July 2022 | $909,715.30 |
| Reed Smith Fees Not Yet Invoiced for August 2022 | $58,683.10 |
| Courtney Caprio Fees Invoiced | $149,448.00 |
| Courtney Caprio Fees Not Yet Invoiced for August 2022 | $5,321.00 |
| **Total Attorney Fees** | $1,123,167.40 |
| **COSTS AND EXPENSES** | |
| Reed Smith Costs | $17,087.01 |
| Expert – Gustavo Perez Fees | $21,595.00 |
| ICDR and Arbitrator Fees | $94,510.01 |
| Courtney Caprio Costs | $6,847.12 |
| **Total Costs and Expenses** | $140,039.14 |
| **TOTAL FEES, COSTS AND EXPENSES** | **$1,263,206.54** |
| **64% OF TOTAL FEES, COSTS AND EXPENSES THROUGH JUNE 24, 2022** | **$762,504.85** |
| **100% OF TOTAL FEES, COSTS AND EXPENSES AFTER JUNE 24, 2022** | **$71,792.72** |
| **FEES, COSTS AND EXPENSES ATTRIBUTABLE TO SAPINDA AND MR. WINDHORST** | **$834,297.57** |

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION

CASE NO. 01-20-0003-6931

ELI SABAG

Claimant,

v.

TRACK GROUP, INC.,
SAPINDA ASIA LIMITED,
and LARS WINDHORST,

Respondents.

**CLAIMANT ELI SABAG'S PETITION FOR AN AWARD OF FEES,
COSTS AND INTEREST AGAINST SAPINDA ASIA AND LARS WINDHORST**

Pursuant to the Tribunal's instructions dated August 15, 2022 and the Award dated August 17, 2022, Mr. Eli Sabag submits his petition for an award against Respondents Sapinda Asia Limited ("Sapinda") and Lars Windhorst ("Mr. Windhorst") for fees, costs, and expenses that he incurred in connection with this Arbitration in the amount of **$834,297.57**.[1]  Mr. Sabag also seeks an award of interest on the principal sum of $2,8500,000 to be calculated starting on August 2, 2022 at the rate of 9% until paid in full.

This arbitration represents a five-year painful and traumatic chapter in Mr. Sabag's life, which started when Sapinda and Mr. Windhorst (in conjunction with Track Group) refused to pay Mr. Sabag the amount they agreed to acquire Mr. Sabag's life's work—GPS Global.  During this time, Sapinda and Mr. Windhorst engaged in contumacious conduct and delay-gamesmanship designed to needlessly increase Mr. Sabag's expenses in an effort to win through attrition.  As if

---

[1] *See* the Attached **"Exhibit A"** for a summary of the individual fees, costs and expenses that make up that amount.

the long delays were not enough, having agreed to a final settlement of this case with numerous promises to pay, Sapinda and Mr. Windhorst have failed to honor the Settlement Agreement.  In doing so, they have forced Mr. Sabag to incur even more fees and costs, as well as the trauma of having to deal with the uncertainty of ever receiving a payment.

At the same time, Mr. Windhorst has flaunted the success of his investments so far in 2022. Mr. Windhorst told the *Financial Times* that he increased his liquid assets to over €500mn across his various businesses, and to mitigate some German criminal inquiries, he "has pledged to hand over more than €500mn to H2O Asset Management [to repay his debts to them] in a matter of weeks."[2]   On the other hand, Mr. Windhorst flagrantly failed to comply with his contractual obligations to Mr. Sabag.

Sapinda and Mr. Windhorst should be held responsible for their actions.  In support of this Petition, Mr. Sabag submits the Affidavits of Cristina Cárdenas (Reed Smith LLP)[3] and Courtney Caprio (AXS LAW PLLC),[4] and states as follows:

## A.  Relevant Procedural Background

Sapinda and Mr. Windhorst could never defend the legal obligations that they created for themselves under the Put Option Agreement. Instead, they looked to procedural and delay tactics to avoid liability.

As early as 2017, Mr. Windhorst refused to honor his Put Option Agreement with Mr. Sabag for the Restricted Stock that Track Group awarded to Mr. Sabag at the time of the Acquisition.  To secure payment from Mr. Windhorst, Mr. Sabag was forced to incur legal fees

---

[2] C-265, August 2022 Financial Times Article.
[3] C-266, Declaration of C. Cárdenas.
[4] C-267, Declaration of C. Caprio.

and file documents to place Sapinda into involuntary liquidation in the British Virgin Islands.[5]  Mr. Windhorst only paid Mr. Sabag because the proposed liquidation proceedings would have clawed-back certain assets that Mr. Windhorst had already promised to another creditor as a part of a $625 million settlement deal.[6]

Mr. Windhorst has been running similar put option schemes (often using Track Group stock) with other unrelated investors for years.  For example, in 2007, Mr. Windhorst caused his German subsidiary (similar to Sapinda) to enter into a put option agreement with an unrelated party to buy their Track Group stock (formerly known as RemoteMDx).[7]  Mr. Windhorst refused to honor this obligation.  Again in 2008, Mr. Windhorst settled another dispute with an unrelated party by agreeing to a put option, which Mr. Windhorst subsequently did not honor.[8]  Mr. Windhorst and Sapinda made the same bogus put option deals in 2014 using the shares of a Dutch publicly traded company, Fyber NV, that they owned and controlled.[9]  Now, Mr. Windhorst is facing another lawsuit for 27 million euro regarding his failure to honor his obligations when he disposed of the stock of Fyber.[10]

As the Tribunal is aware, after the dispute arose regarding the Contingent Shares, Mr. Sabag sued Sapinda and Mr. Windhorst in the Superior Court of Marion County, Indiana.[11]

---

[5] Mr. Windhorst waited until one business day before the first hearing to agree to pay the full $3.047 million owed to Mr. Sabag (plus legal fees) for the Restricted Shares under the Put Option Agreement.  *See* C-042, November 1, 2017 Filing in BVI; C-102, May 28, 2021 Eli Sabag Witness Statement ¶¶ 37-38.

[6] *See* C-071, July 21, 2017 ADS Schedule 13D.

[7] C-061, Amorim Holding Financeira, S.G.P.S. v. C. P. Baker & Co., No. 1:09-cv-10641-NG (D. Mass), D.E. 58; C-186, December 16, 2015 Article.

[8] C-062; *Amorim Holding Financeira, S.G.P.S. v. C. P. Baker & Co.*, No. 1:09-cv-10641-NG (D. Mass), D.E. 58.

[9] *See* C-058, 2018 Fyber N.V. Report.

[10] *See* C-268, August 9, 2022 Law 360 Article.

[11] *See* C-008, Complaint for Damages and Declaratory Judgment in Indiana Court.

Sapinda and Mr. Windhorst responded by seeking, among other things, to compel this Arbitration.[12] The Indiana court would later order this Arbitration based on their own arguments.[13]

Mr. Sabag subsequently commenced this Arbitration in 2020; however, Sapinda refused to appear and Mr. Windhorst separately argued that the arbitrator had no jurisdiction over him.[14] Thus, Mr. Sabag was forced to file a motion in the Indiana court to reinstate the litigation against both Sapinda and Mr. Windhorst.[15] Sapinda and Mr. Windhorst eventually admitted to the Indiana court that they would be participating in the Arbitration.

Indeed, even once Sapinda and Mr. Windhorst both appeared in this Arbitration, they initially claimed during an early hearing that they were "agnostic" about the jurisdictional issues in the case,[16] but then they then subsequently took the position that the Tribunal should bifurcate this proceeding by first deciding whether Track Group breached the contract before considering Sapinda and Mr. Windhorst's liability under the interrelated Put Option Agreement.[17] This Tribunal rejected their request and allowed the parties to proceed with the Arbitration.[18]

After more than 2 years of extensive discovery and substantial briefings—all at an unbearably high personal and financial cost to Mr. Sabag—the parties entered into a Settlement Agreement, which was signed on June 10, 2022 (the "Settlement Agreement").[19]

---

[12] C-007, September 12, 2018 Memorandum of Law in Support of Sapinda Asia Limited's and Lars Windhorst's Motion to Dismiss the Complaint, at 8-15, 26-29.

[13] C-005, April 1, 2019 Order Denying Motion to Dismiss and Granting Motion to Compel Arbitration, at 2-3.

[14] C-016, Mr. Sabag's Memorandum in Support of Motion to Show Cause Against Sapinda for Failure to Appear in Arbitration.

[15] Ex. C-017, Mr. Sabag's Memorandum in Support of Motion to Reinstate Litigation Against Sapinda and Windhorst; Ex. C-018, Sapinda and Windhorst's Response in Opposition to Reinstate Litigation; Ex. C-019, Order Denying Motion to Reinstate Litigation.

[16] *See* Procedural Order No. 1 ¶ 1.

[17] *See* Procedural Order No. 2 ¶ 1.

[18] *Id*. ¶¶ 12–16.

[19] *See* C-252, June 10, 2022 Settlement and Mutual Release.

Unfortunately for Mr. Sabag, the fight would not end there.  After the parties signed the Settlement Agreement, Track Group satisfied all of its obligations by making a payment of $1.6 million on June 21, 2022, which was three days before the due date of June 24, 2022.  However, Mr. Windhorst and Sapinda failed to make their settlement payment by the June 24th due date, breaching their obligations under the Settlement Agreement.[20]

Mr. Windhorst and Sapinda's behavior has been particularly abusive in this Arbitration. As set forth more fully in Mr. Sabag's Motion to Enforce and Reply in support, Mr. Windhorst and Sapinda, through personal counsel Peter Calamari ("Mr. Calamari"), repeatedly represented that Mr. Windhorst intended to pay the amounts owed under the Settlement Agreement.[21]  That all proved to be untrue.

On July 6, 2022, Mr. Calamari alleged that Mr. Windhorst was having administrative issues with his bank and that his account was frozen.  As a compromise, Mr. Sabag agreed in writing with Mr. Windhorst to extend the due date of the settlement payment to August 1, 2022.[22]  In return, Mr. Windhorst agreed to increase the settlement amount by $50,000 from $2,800,000 to $2,850,000.  Two days before the payment was due, Mr. Calamari informed counsel for Mr. Sabag that Mr. Windhorst expected "the transfer to be made on Monday [August 1st.]" and that he was "hoping for the best."[23]

---

[20] For Mr. Windhorst, entering into Settlement Agreements seems to represent (to him) only the beginning of a new stage of the litigation that he is settling.  For example, in February 2020, Mr. Windhorst reached a settlement agreement with Heritage Travel and Tourism Limited. *See* C-257, *Heritage v. Windhorst Judgment.*  Mr. Windhorst did not comply with it. When Heritage began proceedings to collect under the settlement agreement, Mr. Windhorst attempted to argue that it was unenforceable because he only agreed to it under economic duress. The High Court dismissed Mr. Windhorst's allegations and ruled in favor of Heritage. *Id.*

[21] *See* Motion to Enforce Settlement Agreement as Amended; August 11, 2022 Letter to Arbitrator re Settlement Agreement.

[22] C-256, Amendment to Settlement Agreement (the "Amendment").

[23] C-258, July 30 Email from P. Calamari to E. Mullins.

On August 1, 2022, counsel for Mr. Sabag followed up with Mr. Calamari about whether the transfer had been made.  Counsel for Mr. Sabag never received a response, which prompted Mr. Sabag to file his motion to enforce the Settlement Agreement as amended against Respondents Sapinda and Mr. Windhorst.[24]

Even after that motion was filed, Mr. Sabag continued to try to obtain confirmation of payment through Mr. Calamari.  Mr. Sabag fully briefed the excuses and apologies he received from Mr. Calamari in his August 11, 2022 letter to the Arbitrator.[25]  Needless to say, Sapinda and Mr. Windhorst's August 10, 2022 claim that payment was being "arranged"—without providing any proof or date by which payment would be received[26]—was quite simply incredible and has in any event *yet* to occur.

### B.  Awarding Mr. Sabag an Apportioned Percentage of All of His Fees, Costs and Expenses Is Reasonable Given the Circumstances of this Case

The 2014 International Rules of the ICDR[27] provide that:

The arbitral tribunal shall fix the costs of arbitration in its award(s).The tribunal may allocate such costs among the parties if it determines that allocation is reasonable, taking into account the circumstances of the case.
Such costs may include:
    a. the fees and expenses of the arbitrators;
    b. the costs of assistance required by the tribunal, including its experts;
    c. the fees and expenses of the Administrator;
    d. the reasonable legal and other costs incurred by the parties;
    e. any costs incurred in connection with a notice for interim or emergency relief pursuant to Articles 6 or 24
    f. any costs incurred in connection with a request for consolidation pursuant to Article 8; and
    g. any costs associated with information exchange pursuant to Article 21.

---

[24] *See* Motion to Enforce Settlement Agreement as Amended.
[25] *See* C-259, August 3, 2022 Email from P. Calamari to E. Mullins; C-260, August 5, 2022 Email from P. Calamari to E. Mullins; C-261, August 8, 2022 Email from P. Calamari to E. Mullins; C-262, August 9, 2022 Email from P. Calamari to E. Mullins; C-263, August 10, 2022 Email from P. Calamari to E. Mullins; C-264, Windhorst's EURAM Settlement Payment to Sabag.
[26] C-269, August 10, 2022 Sapinda and Mr. Windhorst Response to Motion to Enforce.
[27] *See* Procedural Order No. 3.

According to that rule, the Tribunal thus has the authority to fix the costs of arbitration in its award.[28]  ICDR Article 34 gives the Tribunal the authority to apportion costs among the parties if it determines that the apportionment is reasonable in the circumstances of the case.[29]  It may also grant costs, including: the fees and expenses of the arbitrators; the fees and expenses of the administrator; and the reasonable costs for legal representation of a successful party.[30]

Here, the Settlement Agreement as amended does not prevent Mr. Sabag from seeking, or this Tribunal from awarding, the costs and fees incurred during this arbitration.  In the Settlement Agreement, each party only agreed to pay "its own costs, attorneys' fees, and taxes incurred in connection with [the Settlement Agreement] and the completion of any transactions contemplated by [the Settlement Agreement]."[31]  Thus, that provision applies only to the fees incurred from the negotiating and drafting of the settlement agreement.  It does not apply to the rest of the costs and fees incurred throughout the rest of the arbitration.

Furthermore, Mr. Sabag reserved his rights to seek the full fees and costs in the event Sapinda and Mr. Windhorst failed to pay the settlement amount.  The Settlement Agreement specifically provides that, in the event Sapinda and Mr. Windhorst failed to honor the obligations under the Settlement Agreement, Mr. Sabag would be "entitled to recover from" Sapinda and Mr. Windhorst his "costs, expenses, and reasonable attorneys' fees incurred **in the dispute**."[32]  This

---

[28] ICDR 2014 Rules, Art. 34; *see* CLA-117, *Stemcor USA, Inc. v. Miracero, SA de CV*, 2014 U.S. Dist. LEXIS 118504, at *29-32 (S.D.N.Y. Aug. 22, 2014; CLA-126, *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641 (M.D.N.C. 2016) ("Courts have held . . . that [Article 34] grants arbitrators independent authority to award attorneys' fees.") (citing CLA-127, *DigiTelCom, Ltd. v. Tele2 Sverige AB*, 2012 U.S. Dist. LEXIS 105896, at *5 (S.D.N.Y. July 25, 2012); CLA-128, *F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 330-31 (S.D.N.Y. 2010)).
[29] *Id*.
[30] *Id*.
[31] C-252, June 10, 2022 Settlement and Mutual Release.
[32] *Id*. (emphasis added).

caveat in the "Costs, Attorneys' Fees, Taxes" section applies to all costs incurred in the dispute, not just the costs incurred in relation to the Settlement Agreement.

In the subsequent Amendment, Mr. Sabag reserved "all rights and remedies available to him in the event the required payment is not made by the extended due date including, but not limited to, the right to seek interest on the amount owed, [and] reasonable attorneys' fees."[33] Sapinda and Mr. Windhorst, on the other hand, reserved only "the right to contest the reasonableness of any attorneys' fees or interest sought."[34]  Sapinda and Mr. Windhorst did not reserve the right to dispute the scope of the fees and costs sought by Mr. Sabag.  Therefore, Mr. Sabag is fully within his rights to request this Tribunal award Mr. Sabag his full fees and costs incurred throughout this Arbitration, apportioned only in connection with respect to their percentage of liability.

While the Settlement Agreement does have a release, the Agreement is clear—the Release is not effective until *after* payment is made.  To that end, Section 6 of the Settlement Agreement provides that "[t]he following releases are effective immediately **upon the disbursement of the Settlement Funds out of the Reed Smith Trust Account** pursuant to paragraph 4.c. . . ."[35]  Thus, any release by Mr. Sabag is only effective upon receipt of the settlement funds.  Since Sapinda and Mr. Windhorst have failed to comply with their settlement obligations, Mr. Sabag's release is not effective.   For that reason, Mr. Sabag has not claimed fees and costs from Track Group because Track Group complied with its settlement obligations; thus, any claim for fees and costs against Track Group has been released—unlike the fees claimed as to Sapinda and Mr. Windhorst.

---

[33] C-256, Amendment to Settlement Agreement.
[34] *Id*.
[35] C-252, June 10, 2022 Settlement and Mutual Release § 6.

Further, this Tribunal found that the amendment to the Settlement Agreement had a time of the essence clause and thus Sapinda and Mr. Windhorst are in material breach.[36]

As noted, ICDR Article 34 gives the Tribunal the authority to apportion costs among the parties if it determines that the apportionment is reasonable in the circumstances of the case. Here, each parties' respective percentage of liability has already been agreed to in proportion to what each party agreed to pay in the Settlement Agreement. As Amended, Track Group paid Mr. Sabag $1.6 million, while Sapinda and Mr. Windhorst agreed to pay him $2.850 million, for a total settlement payment of $4,450,000. Thus, the parties already agreed that Sapinda and Mr. Windhorst are 64% responsible in connection with overall liability to Mr. Sabag. Sapinda and Mr. Windhorst should thus be required to pay 64% of Mr. Sabag's fees and costs in this arbitration up until the Settlement Payment due date of June 24, 2022. Sapinda and Mr. Windhorst should be 100% liable for all fees and costs incurred by Mr. Sabag from June 25, 2022 forward given that any fees and costs incurred after that date are 100% attributable to their material breach of the Settlement Agreement.

The fees requested by Mr. Sabag's are reasonable.[37] Indeed, several New York courts have found attorneys' fees to be reasonable for rates greater than $700 for partners and $525 for associates.[38] By comparison, the rates charged to Mr. Sabag by Reed Smith are comparatively much lower than the rates of Sidley Austin, as seen in the following chart of Sidley Austin's rates in a Texas bankruptcy case:[39]

---

[36] August 17, 2022 Award, ¶14.
[37] C-266, Affidavit of C. Cárdenas, ¶¶ 11-12; C-267, Affidavit of C. Caprio ¶¶9-10.
[38] CLA-118, *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 2021 U.S. Dist. LEXIS 208639, at *9–10 (S.D.N.Y. Oct. 27, 2021) (accepting as reasonable $700/hour and $800/hour for two partners); CLA-119, *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321, at *9 (S.D.N.Y. Dec. 10, 2020) (accepting as reasonable $787.50/hour; and $715.50/hour for partners and $420/hour, $460/hour, $515/hour, and $535/hour for associates).
[39] CLA-120, Summary Cover Sheet for Fee Application of Sidley Austin LLP for Compensation and Reimbursement of Expenses, GVS Texas Holdings I, LLC, et al., No. 21-31121-MVL (May 5, 2022).

| Name | Position Area of Expertise | Year of Admission / Years of Experience | Hourly Billing Rate[2] | Total Hours Billed[3] | Total Compensation |
|---|---|---|---|---|---|
| Edward W. Sharon | Counsel Antitrust | 2002 | $1,225 | 14.50 | $17,762.50 |
| Allison R. Stromberg | Counsel Restructuring | 2008 | $1,075 | 1.50 | $1,612.50 |
| Mustafa Abdul-Jabbar | Associate Litigation | 2016 | $1,100 | 66.00 | $72,600.00 |
| Allen S. Braddock | Associate Environmental | 2020 | $775 | 14.80 | $9,275.50 |
| Sophia Green | Associate Litigation | 2020 | $775 | 99.10 | $76,802.50 |
| Ellen Heighten | Associate Corporate | 2019 | $895 | 106.30 | $89,756.50 |
| Juliana Hoffman | Associate Restructuring | 2017 | $990 | 579.80 | $549,939.50 |
| Hannah L. Marshall | Associate Corporate | 2016 | $1,100 | 304.40 | $323,144.00 |
| Morgan R. Mendicino | Associate IP Litigation | 2021 | $650 | 1.00 | $650.00 |
| Jeri Leigh Miller | Associate Restructuring | 2016 | $1,100 | 260.50 | $270,349.00 |
| Will Otter | Associate Real Estate | 2021 | $775 | 58.40 | $44,880.50 |
| Amanda M. Patterson | Associate Corporate | 2020 | $775 | 79.00 | $57,760.00 |
| Adrienn T. Portnoy | Associate Corporate | 2021 | $650 | 59.70 | $38,149.00 |
| Maegan Quejada | Associate Restructuring | 2017 | $1,050 | 288.90 | $291,151.50 |
| Michael Sabino | Associate Restructuring | 2012 | $990 | 274.90 | $264,521.00 |
| Joe Schomberg | Associate Restructuring | 2017 | $1,050 | 2.70 | $2,835.00 |
| Kelsey M. Taylor | Associate Litigation | 2015 | $1,100 | 65.90 | $72,490.00 |

[40]

The tasks billed to Mr. Sabag were necessary to protect Mr. Sabag's interests in this Arbitration. For example, Reed Smith was involved in preparing pleadings, preparing and responding to procedural motions, performing legal research, reviewing document production, attending hearings, and communicating with counsel.  More specifically, that work included addressing the jurisdictional issues that were raised at the inception of the case, as well as preparing and attending the hearing on the requests for bifurcation; filing an 83-page memorial addressing Mr. Sabag's claims against three different parties (which raised separate and distinct issues for

---

[40] The rates highlighted in yellow are comparative rates in terms of seniority to timekeepers on this matter.

each party); drafting and responding to the Redfern schedules; translating and reviewing thousands of pages in preparation of producing responsive documents to Respondents' discovery requests; reviewing tens of thousands of pages of documents produced to Mr. Sabag by Respondents; reviewing these documents while simultaneously fighting the Respondents over their deficient production and drafting Mr. Sabag's 153-page reply memorial; drafting and attending two different hearings on a motion to compel; preparing for the final hearing; engaging in settlement discussions with the other parties; filing a motion to enforce the settlement agreement; and filing a motion for costs. Indeed, given that settlement took place on the eve of the final hearing, Mr. Sabag was in full final hearing preparation at the time of settlement.

For the reasons noted above, it is within the Tribunal's power and discretion to allocate the total costs and fees incurred by Mr. Sabag throughout this proceeding against Sapinda and Mr. Windhorst—even more so in a case such as this, given the bad faith, gamesmanship, and dilatory tactics shown by Sapinda and Mr. Windhorst.[41]

### C.  Mr. Sabag is Entitled to an Award of Interest

New York's rate of interest is 9% for both pre and post award interest.  *See* N.Y. C.P.L.R.  § 5004.[42]  Interest is "computed from the earliest ascertainable date the cause of action existed."[43]

---

[41] CLA-121, *Luzar Trading, S.A. v. Tradiverse Corp.*, No. 20-CV-623 (KMW), 2021 U.S. Dist. LEXIS 58177 (S.D.N.Y. Mar. 25, 2021) (holding that the panel did not exceed its authority in awarding fees and costs because ICDR Article 34 gave the tribunal the discretion; the panel shifted costs for Tradiverse because "Tradiverse has sought to suspend or delay this arbitration, commenced court actions to avoid compliance with both court and arbitral rulings, and has generally presented themselves as unwilling participants."); CLA-122, *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 87 (2d Cir. 2009) (holding that sanctions, including attorneys' fees, are appropriately viewed as a remedy within an arbitrator's authority when one party lacked good faith throughout the arbitration).

[42] *See* CLA-123, N.Y. C.P.L.R. § 5004; *see also* CLA-124, *Merch. Cash & Capital v. Eve's Food Court*, No. 603573/2015, 2015 N.Y. Misc. LEXIS 6236 (Sup. Ct. Oct. 23, 2015) (applying the 9% rate of interest for both pre- and postjudgment interest).

[43] *See* CLA-125, N.Y. C.P.L.R.  § 5003.

Based on the terms of the Settlement Agreement, "[p]ayment of the Settlement Funds [in the amount of $2,800,0000] shall be made in U.S. dollars to Sabag within fourteen (14) calendar days of the Effective Date" of the Settlement Agreement.[44]  The Effective Date, "the date on which last [the] last signature is added" to the Settlement Agreement, was June 10, 2022.  Thus, Mr. Windhorst initially had until June 24, 2022 to send payment to Mr. Sabag.[45]  Sapinda and Mr. Windhorst breached their obligation to make their payment in a timely manner.

After agreeing to the Amendment, Mr. Windhorst's payment (of the increased amount of $2,850,000) was due on August 1, 2022.[46]  Mr. Windhorst and Sabag failed once again to comply with this payment obligation.

In the interest of simplicity, Mr. Sabag claims interest on the $2,850,000 that was due on August 1, 2022 per the Amendment.  Mr. Windhorst was in breach of the settlement agreement as amended on August 2, 2022.  Therefore, Mr. Sabag is entitled to interest at the rate of 9% starting as August 2, 2022, until paid in full.

### D.  Conclusion

Mr. Sabag respectfully requests this Tribunal enter an order granting the Petition for Fees and Costs and directing Sapinda and Mr. Windhorst to reimburse Mr. Sabag the amount of **$834,297.57** for fees, costs, and expenses that he incurred in connection with this Arbitration.[47]

In addition, Mr. Sabag requests this Tribunal direct Sapinda and Mr. Windhorst to pay 9% interest on the $2,850,000, starting as of August 2, 2022, until paid in full.

---

[44] *See* C-252, June 10, 2022 Settlement and Mutual Release § 4(b).
[45] *Id*. § 15.
[46] *See* C-256, Amendment to Settlement Agreement § 2.
[47] See the Attached **"Exhibit A"** for a summary of the individual costs and expenses that make up that amount.

Dated: August 31, 2022                    Respectfully submitted,


By:_____
Edward M. Mullins, Esq.
emullins@reedsmith.com
Cristina Cárdenas, Esq.
ccardenas@reedsmith.com
Matthew J. McKinnon
mmckinnon@reedsmith.com
**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Phone: 786.747.0200; Fax: 786.747.0299

Courtney Caprio, Esq.
**AXS LAW PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33128
Phone: 305.297.1878

***Counsel for Claimant Eli Sabag***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to ICDR Rule Article 10, I have served the foregoing on all parties to this proceeding via electronic mail.

_____
Edward M. Mullins, Esq.

# EXHIBIT A

| ATTORNEY FEES | |
| --- | --- |
| Reed Smith Fees Invoiced Through July 2022 | $909,715.30 |
| Reed Smith Fees Not Yet Invoiced for August 2022 | $58,683.10 |
| Courtney Caprio Fees Invoiced | $149,448.00 |
| Courtney Caprio Fees Not Yet Invoiced for August 2022 | $5,321.00 |
| **Total Attorney Fees** | $1,123,167.40 |
| COSTS AND EXPENSES | |
| Reed Smith Costs | $17,087.01 |
| Expert – Gustavo Perez Fees | $21,595.00 |
| ICDR and Arbitrator Fees | $94,510.01 |
| Courtney Caprio Costs | $6,847.12 |
| **Total Costs and Expenses** | $140,039.14 |
| **TOTAL FEES, COSTS AND EXPENSES** | **$1,263,206.54** |
| **64% OF TOTAL FEES, COSTS AND EXPENSES THROUGH JUNE 24, 2022** | **$762,504.85** |
| **100% OF TOTAL FEES, COSTS AND EXPENSES AFTER JUNE 24, 2022** | **$71,792.72** |
| **FEES, COSTS AND EXPENSES ATTRIBUTABLE TO SAPINDA AND MR. WINDHORST** | **$834,297.57** |

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION

CASE NO. 01-20-0003-6931

ELI SABAG

Claimant,

v.

TRACK GROUP, INC.,
SAPINDA ASIA LIMITED,
and LARS WINDHORST,

Respondents.

**CLAIMANT ELI SABAG'S PETITION FOR AN AWARD OF FEES,
COSTS AND INTEREST AGAINST SAPINDA ASIA AND LARS WINDHORST**

Pursuant to the Tribunal's instructions dated August 15, 2022 and the Award dated August

17, 2022, Mr. Eli Sabag submits his petition for an award against Respondents Sapinda

Limited ("Sapinda") and Lars Windhorst ("Mr. Windhorst") for fees, costs, and expenses that he

incurred in connection with this Arbitration in the amount of **$834,297.57**.[1]  Mr. Sabag also seeks

an award of interest on the principal sum of $2,8500,000 to be calculated starting on August 2,

2022 at the rate of 9% until paid in full.

This arbitration represents a five-year painful and traumatic chapter in Mr. Sabag's life,

which started when Sapinda and Mr. Windhorst (in conjunction with Track Group) refused to pay

Mr. Sabag the amount they agreed to acquire Mr. Sabag's life's work—GPS Global.  During this

time, Sapinda and Mr. Windhorst engaged in contumacious conduct and delay-gamesmanship

designed to needlessly increase Mr. Sabag's expenses in an effort to win through attrition.  As if

---

[1] *See* the Attached **"Exhibit A"** for a summary of the individual fees, costs and expenses that make up that amount.

the long delays were not enough, having agreed to a final settlement of this case with numerous promises to pay, Sapinda and Mr. Windhorst have failed to honor the Settlement Agreement.  In doing so, they have forced Mr. Sabag to incur even more fees and costs, as well as the trauma of having to deal with the uncertainty of ever receiving a payment.

At the same time, Mr. Windhorst has flaunted the success of his investments so far in 2022. Mr. Windhorst told the *Financial Times* that he increased his liquid assets to over €500mn across his various businesses, and to mitigate some German criminal inquiries, he "has pledged to hand over more than €500mn to H2O Asset Management [to repay his debts to them] in a matter of weeks."[2]  On the other hand, Mr. Windhorst flagrantly failed to comply with his contractual obligations to Mr. Sabag.

Sapinda and Mr. Windhorst should be held responsible for their actions.  In support of this Petition, Mr. Sabag submits the Affidavits of Cristina Cárdenas (Reed Smith LLP)[3] and Courtney Caprio (AXS LAW PLLC),[4] and states as follows:

### A.  <u>Relevant Procedural Background</u>

Sapinda and Mr. Windhorst could never defend the legal obligations that they created for themselves under the Put Option Agreement. Instead, they looked to procedural and delay tactics to avoid liability.

As early as 2017, Mr. Windhorst refused to honor his Put Option Agreement with Mr. Sabag for the Restricted Stock that Track Group awarded to Mr. Sabag at the time of the Acquisition.  To secure payment from Mr. Windhorst, Mr. Sabag was forced to incur legal fees

---

[2] C-265, August 2022 Financial Times Article.
[3] C-266, Declaration of C. Cárdenas.
[4] C-267, Declaration of C. Caprio.

and file documents to place Sapinda into involuntary liquidation in the British Virgin Islands.[5]  Mr. Windhorst only paid Mr. Sabag because the proposed liquidation proceedings would have clawed-back certain assets that Mr. Windhorst had already promised to another creditor as a part of a $625 million settlement deal.[6]

Mr. Windhorst has been running similar put option schemes (often using Track Group stock) with other unrelated investors for years.  For example, in 2007, Mr. Windhorst caused his German subsidiary (similar to Sapinda) to enter into a put option agreement with an unrelated party to buy their Track Group stock (formerly known as RemoteMDx).[7]  Mr. Windhorst refused to honor this obligation.  Again in 2008, Mr. Windhorst settled another dispute with an unrelated party by agreeing to a put option, which Mr. Windhorst subsequently did not honor.[8]  Mr. Windhorst and Sapinda made the same bogus put option deals in 2014 using the shares of a Dutch publicly traded company, Fyber NV, that they owned and controlled.[9]  Now, Mr. Windhorst is facing another lawsuit for 27 million euro regarding his failure to honor his obligations when he disposed of the stock of Fyber.[10]

As the Tribunal is aware, after the dispute arose regarding the Contingent Shares, Mr. Sabag sued Sapinda and Mr. Windhorst in the Superior Court of Marion County, Indiana.[11]

---

[5] Mr. Windhorst waited until one business day before the first hearing to agree to pay the full $3.047 million owed to Mr. Sabag (plus legal fees) for the Restricted Shares under the Put Option Agreement.  *See* C-042, November 1, 2017 Filing in BVI; C-102, May 28, 2021 Eli Sabag Witness Statement ¶¶ 37-38.
[6] *See* C-071, July 21, 2017 ADS Schedule 13D.
[7] C-061, Amorim Holding Financeira, S.G.P.S. v. C. P. Baker & Co., No. 1:09-cv-10641-NG (D. Mass), D.E. 58; C-186, December 16, 2015 Article.
[8] C-062; *Amorim Holding Financeira, S.G.P.S. v. C. P. Baker & Co.*, No. 1:09-cv-10641-NG (D. Mass), D.E. 58.
[9] *See* C-058, 2018 Fyber N.V. Report.
[10] *See* C-268, August 9, 2022 Law 360 Article.
[11] *See* C-008, Complaint for Damages and Declaratory Judgment in Indiana Court.

Sapinda and Mr. Windhorst responded by seeking, among other things, to compel this Arbitration.[12] The Indiana court would later order this Arbitration based on their own arguments.[13]

Mr. Sabag subsequently commenced this Arbitration in 2020; however, Sapinda refused to appear and Mr. Windhorst separately argued that the arbitrator had no jurisdiction over him.[14] Thus, Mr. Sabag was forced to file a motion in the Indiana court to reinstate the litigation against both Sapinda and Mr. Windhorst.[15] Sapinda and Mr. Windhorst eventually admitted to the Indiana court that they would be participating in the Arbitration.

Indeed, even once Sapinda and Mr. Windhorst both appeared in this Arbitration, they initially claimed during an early hearing that they were "agnostic" about the jurisdictional issues in the case,[16] but then they then subsequently took the position that the Tribunal should bifurcate this proceeding by first deciding whether Track Group breached the contract before considering Sapinda and Mr. Windhorst's liability under the interrelated Put Option Agreement.[17] This Tribunal rejected their request and allowed the parties to proceed with the Arbitration.[18]

After more than 2 years of extensive discovery and substantial briefings—all at an unbearably high personal and financial cost to Mr. Sabag—the parties entered into a Settlement Agreement, which was signed on June 10, 2022 (the "Settlement Agreement").[19]

---

[12] C-007, September 12, 2018 Memorandum of Law in Support of Sapinda Asia Limited's and Lars Windhorst's Motion to Dismiss the Complaint, at 8-15, 26-29.

[13] C-005, April 1, 2019 Order Denying Motion to Dismiss and Granting Motion to Compel Arbitration, at 2-3.

[14] C-016, Mr. Sabag's Memorandum in Support of Motion to Show Cause Against Sapinda for Failure to Appear in Arbitration.

[15] Ex. C-017, Mr. Sabag's Memorandum in Support of Motion to Reinstate Litigation Against Sapinda and Windhorst; Ex. C-018, Sapinda and Windhorst's Response in Opposition to Reinstate Litigation; Ex. C-019, Order Denying Motion to Reinstate Litigation.

[16] *See* Procedural Order No. 1 ¶ 1.

[17] *See* Procedural Order No. 2 ¶ 1.

[18] *Id*. ¶¶ 12–16.

[19] *See* C-252, June 10, 2022 Settlement and Mutual Release.

Unfortunately for Mr. Sabag, the fight would not end there. After the parties signed the Settlement Agreement, Track Group satisfied all of its obligations by making a payment of $1.6 million on June 21, 2022, which was three days before the due date of June 24, 2022. However, Mr. Windhorst and Sapinda failed to make their settlement payment by the June 24th due date, breaching their obligations under the Settlement Agreement.[20]

Mr. Windhorst and Sapinda's behavior has been particularly abusive in this Arbitration. As set forth more fully in Mr. Sabag's Motion to Enforce and Reply in support, Mr. Windhorst and Sapinda, through personal counsel Peter Calamari ("Mr. Calamari"), repeatedly represented that Mr. Windhorst intended to pay the amounts owed under the Settlement Agreement.[21] That all proved to be untrue.

On July 6, 2022, Mr. Calamari alleged that Mr. Windhorst was having administrative issues with his bank and that his account was frozen. As a compromise, Mr. Sabag agreed in writing with Mr. Windhorst to extend the due date of the settlement payment to August 1, 2022.[22] In return, Mr. Windhorst agreed to increase the settlement amount by $50,000 from $2,800,000 to $2,850,000. Two days before the payment was due, Mr. Calamari informed counsel for Mr. Sabag that Mr. Windhorst expected "the transfer to be made on Monday [August 1st.]" and that he was "hoping for the best."[23]

---

[20] For Mr. Windhorst, entering into Settlement Agreements seems to represent (to him) only the beginning of a new stage of the litigation that he is settling. For example, in February 2020, Mr. Windhorst reached a settlement agreement with Heritage Travel and Tourism Limited. *See* C-257, *Heritage v. Windhorst Judgment.* Mr. Windhorst did not comply with it. When Heritage began proceedings to collect under the settlement agreement, Mr. Windhorst attempted to argue that it was unenforceable because he only agreed to it under economic duress. The High Court dismissed Mr. Windhorst's allegations and ruled in favor of Heritage. *Id.*

[21] *See* Motion to Enforce Settlement Agreement as Amended; August 11, 2022 Letter to Arbitrator re Settlement Agreement.

[22] C-256, Amendment to Settlement Agreement (the "Amendment").

[23] C-258, July 30 Email from P. Calamari to E. Mullins.

On August 1, 2022, counsel for Mr. Sabag followed up with Mr. Calamari about whether the transfer had been made.  Counsel for Mr. Sabag never received a response, which prompted Mr. Sabag to file his motion to enforce the Settlement Agreement as amended against Respondents Sapinda and Mr. Windhorst.[24]

Even after that motion was filed, Mr. Sabag continued to try to obtain confirmation of payment through Mr. Calamari.  Mr. Sabag fully briefed the excuses and apologies he received from Mr. Calamari in his August 11, 2022 letter to the Arbitrator.[25]  Needless to say, Sapinda and Mr. Windhorst's August 10, 2022 claim that payment was being "arranged"—without providing any proof or date by which payment would be received[26]—was quite simply incredible and has in any event *yet* to occur.

### B.  Awarding Mr. Sabag an Apportioned Percentage of All of His Fees, Costs and Expenses Is Reasonable Given the Circumstances of this Case

The 2014 International Rules of the ICDR[27] provide that:

The arbitral tribunal shall fix the costs of arbitration in its award(s).The tribunal may allocate such costs among the parties if it determines that allocation is reasonable, taking into account the circumstances of the case.
Such costs may include:
    a. the fees and expenses of the arbitrators;
    b. the costs of assistance required by the tribunal, including its experts;
    c. the fees and expenses of the Administrator;
    d. the reasonable legal and other costs incurred by the parties;
    e. any costs incurred in connection with a notice for interim or emergency relief pursuant to Articles 6 or 24
    f. any costs incurred in connection with a request for consolidation pursuant to Article 8; and
    g. any costs associated with information exchange pursuant to Article 21.

---

[24] *See* Motion to Enforce Settlement Agreement as Amended.
[25] *See* C-259, August 3, 2022 Email from P. Calamari to E. Mullins; C-260, August 5, 2022 Email from P. Calamari to E. Mullins; C-261, August 8, 2022 Email from P. Calamari to E. Mullins; C-262, August 9, 2022 Email from P. Calamari to E. Mullins; C-263, August 10, 2022 Email from P. Calamari to E. Mullins; C-264, Windhorst's EURAM Settlement Payment to Sabag.
[26] C-269, August 10, 2022 Sapinda and Mr. Windhorst Response to Motion to Enforce.
[27] *See* Procedural Order No. 3.

According to that rule, the Tribunal thus has the authority to fix the costs of arbitration in its award.[28]  ICDR Article 34 gives the Tribunal the authority to apportion costs among the parties if it determines that the apportionment is reasonable in the circumstances of the case.[29]  It may also grant costs, including: the fees and expenses of the arbitrators; the fees and expenses of the administrator; and the reasonable costs for legal representation of a successful party.[30]

Here, the Settlement Agreement as amended does not prevent Mr. Sabag from seeking, or this Tribunal from awarding, the costs and fees incurred during this arbitration.  In the Settlement Agreement, each party only agreed to pay "its own costs, attorneys' fees, and taxes incurred in connection with [the Settlement Agreement] and the completion of any transactions contemplated by [the Settlement Agreement]."[31]  Thus, that provision applies only to the fees incurred from the negotiating and drafting of the settlement agreement.  It does not apply to the rest of the costs and fees incurred throughout the rest of the arbitration.

Furthermore, Mr. Sabag reserved his rights to seek the full fees and costs in the event Sapinda and Mr. Windhorst failed to pay the settlement amount.  The Settlement Agreement specifically provides that, in the event Sapinda and Mr. Windhorst failed to honor the obligations under the Settlement Agreement, Mr. Sabag would be "entitled to recover from" Sapinda and Mr. Windhorst his "costs, expenses, and reasonable attorneys' fees incurred **in the dispute**."[32]  This

---

[28] ICDR 2014 Rules, Art. 34; *see* CLA-117, *Stemcor USA, Inc. v. Miracero, SA de CV*, 2014 U.S. Dist. LEXIS 118504, at *29-32 (S.D.N.Y. Aug. 22, 2014; CLA-126, *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641 (M.D.N.C. 2016) ("Courts have held . . . that [Article 34] grants arbitrators independent authority to award attorneys' fees.") (citing CLA-127, *DigiTelCom, Ltd. v. Tele2 Sverige AB*, 2012 U.S. Dist. LEXIS 105896, at *5 (S.D.N.Y. July 25, 2012); CLA-128, *F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 330-31 (S.D.N.Y. 2010)).

[29] *Id*.

[30] *Id*.

[31] C-252, June 10, 2022 Settlement and Mutual Release.

[32] *Id*. (emphasis added).

caveat in the "Costs, Attorneys' Fees, Taxes" section applies to all costs incurred in the dispute, not just the costs incurred in relation to the Settlement Agreement.

In the subsequent Amendment, Mr. Sabag reserved "all rights and remedies available to him in the event the required payment is not made by the extended due date including, but not limited to, the right to seek interest on the amount owed, [and] reasonable attorneys' fees."[33] Sapinda and Mr. Windhorst, on the other hand, reserved only "the right to contest the reasonableness of any attorneys' fees or interest sought."[34]  Sapinda and Mr. Windhorst did not reserve the right to dispute the scope of the fees and costs sought by Mr. Sabag.  Therefore, Mr. Sabag is fully within his rights to request this Tribunal award Mr. Sabag his full fees and costs incurred throughout this Arbitration, apportioned only in connection with respect to their percentage of liability.

While the Settlement Agreement does have a release, the Agreement is clear—the Release is not effective until *after* payment is made.  To that end, Section 6 of the Settlement Agreement provides that "[t]he following releases are effective immediately **upon the disbursement of the Settlement Funds out of the Reed Smith Trust Account** pursuant to paragraph 4.c. . . ."[35]  Thus, any release by Mr. Sabag is only effective upon receipt of the settlement funds.  Since Sapinda and Mr. Windhorst have failed to comply with their settlement obligations, Mr. Sabag's release is not effective.   For that reason, Mr. Sabag has not claimed fees and costs from Track Group because Track Group complied with its settlement obligations; thus, any claim for fees and costs against Track Group has been released—unlike the fees claimed as to Sapinda and Mr. Windhorst.

---

[33] C-256, Amendment to Settlement Agreement.
[34] *Id*.
[35] C-252, June 10, 2022 Settlement and Mutual Release § 6.

Further, this Tribunal found that the amendment to the Settlement Agreement had a time of the essence clause and thus Sapinda and Mr. Windhorst are in material breach.[36]

As noted, ICDR Article 34 gives the Tribunal the authority to apportion costs among the parties if it determines that the apportionment is reasonable in the circumstances of the case.  Here, each parties' respective percentage of liability has already been agreed to in proportion to what each party agreed to pay in the Settlement Agreement.  As Amended, Track Group paid Mr. Sabag $1.6 million, while Sapinda and Mr. Windhorst agreed to pay him $2.850 million, for a total settlement payment of $4,450,000.   Thus, the parties already agreed that Sapinda and Mr. Windhorst are 64% responsible in connection with overall liability to Mr. Sabag.  Sapinda and Mr. Windhorst should thus be required to pay 64% of Mr. Sabag's fees and costs in this arbitration up until the Settlement Payment due date of June 24, 2022.    Sapinda and Mr. Windhorst should be 100% liable for all fees and costs incurred by Mr. Sabag from June 25, 2022 forward given that any fees and costs incurred after that date are 100% attributable to their material breach of the Settlement Agreement.

The fees requested by Mr. Sabag's are reasonable.[37]  Indeed, several New York courts have found attorneys' fees to be reasonable for rates greater than $700 for partners and $525 for associates.[38] By comparison, the rates charged to Mr. Sabag by Reed Smith are comparatively much lower than the rates of Sidley Austin, as seen in the following chart of Sidley Austin's rates in a Texas bankruptcy case:[39]

---

[36] August 17, 2022 Award, ¶14.
[37] C-266, Affidavit of C. Cárdenas, ¶¶ 11-12; C-267, Affidavit of C. Caprio ¶¶9-10.
[38] CLA-118, *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 2021 U.S. Dist. LEXIS 208639, at *9–10 (S.D.N.Y. Oct. 27, 2021) (accepting as reasonable $700/hour and $800/hour for two partners); CLA-119, *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321, at *9 (S.D.N.Y. Dec. 10, 2020) (accepting as reasonable $787.50/hour; and $715.50/hour for partners and $420/hour, $460/hour, $515/hour, and $535/hour for associates).
[39] CLA-120, Summary Cover Sheet for Fee Application of Sidley Austin LLP for Compensation and Reimbursement of Expenses, GVS Texas Holdings I, LLC, et al., No. 21-31121-MVL (May 5, 2022).

| Name | Position Area of Expertise | Year of Admission / Years of Experience | Hourly Billing Rate[2] | Total Hours Billed[3] | Total Compensation |
|---|---|---|---|---|---|
| Edward W. Sharon | Counsel Antitrust | 2002 | $1,225 | 14.50 | $17,762.50 |
| Allison R. Stromberg | Counsel Restructuring | 2008 | $1,075 | 1.50 | $1,612.50 |
| Mustafa Abdul-Jabbar | Associate Litigation | 2016 | $1,100 | 66.00 | $72,600.00 |
| Allen S. Braddock | Associate Environmental | 2020 | $775 | 14.80 | $9,275.50 |
| Sophia Green | Associate Litigation | 2020 | $775 | 99.10 | $76,802.50 |
| Ellen Heighten | Associate Corporate | 2019 | $895 | 106.30 | $89,756.50 |
| Juliana Hoffman | Associate Restructuring | 2017 | $990 | 579.80 | $549,939.50 |
| Hannah L. Marshall | Associate Corporate | 2016 | $1,100 | 304.40 | $323,144.00 |
| Morgan R. Mendicino | Associate IP Litigation | 2021 | $650 | 1.00 | $650.00 |
| Jeri Leigh Miller | Associate Restructuring | 2016 | $1,100 | 260.50 | $270,349.00 |
| Will Otter | Associate Real Estate | 2021 | $775 | 58.40 | $44,880.50 |
| Amanda M. Patterson | Associate Corporate | 2020 | $775 | 79.00 | $57,760.00 |
| Adrienn T. Portnoy | Associate Corporate | 2021 | $650 | 59.70 | $38,149.00 |
| Maegan Quejada | Associate Restructuring | 2017 | $1,050 | 288.90 | $291,151.50 |
| Michael Sabino | Associate Restructuring | 2012 | $990 | 274.90 | $264,521.00 |
| Joe Schomberg | Associate Restructuring | 2017 | $1,050 | 2.70 | $2,835.00 |
| Kelsey M. Taylor | Associate Litigation | 2015 | $1,100 | 65.90 | $72,490.00 |

[40]

The tasks billed to Mr. Sabag were necessary to protect Mr. Sabag's interests in this Arbitration. For example, Reed Smith was involved in preparing pleadings, preparing and responding to procedural motions, performing legal research, reviewing document production, attending hearings, and communicating with counsel.  More specifically, that work included addressing the jurisdictional issues that were raised at the inception of the case, as well as preparing and attending the hearing on the requests for bifurcation; filing an 83-page memorial addressing Mr. Sabag's claims against three different parties (which raised separate and distinct issues for

---

[40] The rates highlighted in yellow are comparative rates in terms of seniority to timekeepers on this matter.

each party); drafting and responding to the Redfern schedules; translating and reviewing thousands of pages in preparation of producing responsive documents to Respondents' discovery requests; reviewing tens of thousands of pages of documents produced to Mr. Sabag by Respondents; reviewing these documents while simultaneously fighting the Respondents over their deficient production and drafting Mr. Sabag's 153-page reply memorial; drafting and attending two different hearings on a motion to compel; preparing for the final hearing; engaging in settlement discussions with the other parties; filing a motion to enforce the settlement agreement; and filing a motion for costs. Indeed, given that settlement took place on the eve of the final hearing, Mr. Sabag was in full final hearing preparation at the time of settlement.

For the reasons noted above, it is within the Tribunal's power and discretion to allocate the total costs and fees incurred by Mr. Sabag throughout this proceeding against Sapinda and Mr. Windhorst—even more so in a case such as this, given the bad faith, gamesmanship, and dilatory tactics shown by Sapinda and Mr. Windhorst.[41]

### C.  Mr. Sabag is Entitled to an Award of Interest

New York's rate of interest is 9% for both pre and post award interest.  *See* N.Y. C.P.L.R.  § 5004.[42]  Interest is "computed from the earliest ascertainable date the cause of action existed."[43]

---

[41] CLA-121, *Luzar Trading, S.A. v. Tradiverse Corp.*, No. 20-CV-623 (KMW), 2021 U.S. Dist. LEXIS 58177 (S.D.N.Y. Mar. 25, 2021) (holding that the panel did not exceed its authority in awarding fees and costs because ICDR Article 34 gave the tribunal the discretion; the panel shifted costs for Tradiverse because "Tradiverse has sought to suspend or delay this arbitration, commenced court actions to avoid compliance with both court and arbitral rulings, and has generally presented themselves as unwilling participants."); CLA-122, *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 87 (2d Cir. 2009) (holding that sanctions, including attorneys' fees, are appropriately viewed as a remedy within an arbitrator's authority when one party lacked good faith throughout the arbitration).

[42] *See* CLA-123, N.Y. C.P.L.R. § 5004; *see also* CLA-124, *Merch. Cash & Capital v. Eve's Food Court*, No. 603573/2015, 2015 N.Y. Misc. LEXIS 6236 (Sup. Ct. Oct. 23, 2015) (applying the 9% rate of interest for both pre- and postjudgment interest).

[43] *See* CLA-125, N.Y. C.P.L.R.  § 5003.

Based on the terms of the Settlement Agreement, "[p]ayment of the Settlement Funds [in the amount of $2,800,0000] shall be made in U.S. dollars to Sabag within fourteen (14) calendar days of the Effective Date" of the Settlement Agreement.[44]   The Effective Date, "the date on which last [the] last signature is added" to the Settlement Agreement, was June 10, 2022.   Thus, Mr. Windhorst initially had until June 24, 2022 to send payment to Mr. Sabag.[45]   Sapinda and Mr. Windhorst breached their obligation to make their payment in a timely manner.

After agreeing to the Amendment, Mr. Windhorst's payment (of the increased amount of $2,850,000) was due on August 1, 2022.[46]   Mr. Windhorst and Sabag failed once again to comply with this payment obligation.

In the interest of simplicity, Mr. Sabag claims interest on the $2,850,000 that was due on August 1, 2022 per the Amendment.   Mr. Windhorst was in breach of the settlement agreement as amended on August 2, 2022.   Therefore, Mr. Sabag is entitled to interest at the rate of 9% starting as August 2, 2022, until paid in full.

### D.  Conclusion

Mr. Sabag respectfully requests this Tribunal enter an order granting the Petition for Fees and Costs and directing Sapinda and Mr. Windhorst to reimburse Mr. Sabag the amount of **$834,297.57** for fees, costs, and expenses that he incurred in connection with this Arbitration.[47]

In addition, Mr. Sabag requests this Tribunal direct Sapinda and Mr. Windhorst to pay 9% interest on the $2,850,000, starting as of August 2, 2022, until paid in full.

---

[44] *See* C-252, June 10, 2022 Settlement and Mutual Release § 4(b).
[45] *Id*. § 15.
[46] *See* C-256, Amendment to Settlement Agreement § 2.
[47] See the Attached **"Exhibit A"** for a summary of the individual costs and expenses that make up that amount.

Dated: August 31, 2022                    Respectfully submitted,


By:_____
Edward M. Mullins, Esq.
emullins@reedsmith.com
Cristina Cárdenas, Esq.
ccardenas@reedsmith.com
Matthew J. McKinnon
mmckinnon@reedsmith.com
**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Phone: 786.747.0200; Fax: 786.747.0299

Courtney Caprio, Esq.
**AXS LAW PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33128
Phone: 305.297.1878

***Counsel for Claimant Eli Sabag***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to ICDR Rule Article 10, I have served the foregoing on all parties to this proceeding via electronic mail.

_____
Edward M. Mullins, Esq.

# EXHIBIT A

| ATTORNEY FEES | |
|---|---|
| Reed Smith Fees Invoiced Through July 2022 | $909,715.30 |
| Reed Smith Fees Not Yet Invoiced for August 2022 | $58,683.10 |
| Courtney Caprio Fees Invoiced | $149,448.00 |
| Courtney Caprio Fees Not Yet Invoiced for August 2022 | $5,321.00 |
| **Total Attorney Fees** | $1,123,167.40 |
| **COSTS AND EXPENSES** | |
| Reed Smith Costs | $17,087.01 |
| Expert – Gustavo Perez Fees | $21,595.00 |
| ICDR and Arbitrator Fees | $94,510.01 |
| Courtney Caprio Costs | $6,847.12 |
| **Total Costs and Expenses** | $140,039.14 |
| **TOTAL FEES, COSTS AND EXPENSES** | **$1,263,206.54** |
| **64% OF TOTAL FEES, COSTS AND EXPENSES THROUGH JUNE 24, 2022** | **$762,504.85** |
| **100% OF TOTAL FEES, COSTS AND EXPENSES AFTER JUNE 24, 2022** | **$71,792.72** |
| **FEES, COSTS AND EXPENSES ATTRIBUTABLE TO SAPINDA AND MR. WINDHORST** | **$834,297.57** |