UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) |
| The Application of: | ) |
| | ) Case 1:19-mc-00084-JPH-TAB |
| ELI SABAG, for an Order Pursuant to 28 | ) |
| U.S.C. § 1782 to Conduct Discovery for Use | ) |
| in Foreign Proceedings. | ) |

**APPLICANT ELI SABAG'S RESPONSE TO**
**THIRD DECLARATION OF LUCAS BENTO**

Applicant Eli Sabag, by counsel, hereby responds to the Third Declaration of Lucas Bento ("Third Declaration") to clarify the record regarding the findings of the Emergency Arbitrator. In support of this response, Mr. Sabag states as follows:

1. The Third Declaration focuses this Court's attention on the Emergency Arbitrator's Interim Order, but that declaration does not accurately present the full outcome of the Emergency Arbitrator's findings. The Interim Order denied <u>all</u> of Mr. Windhorst's requests for emergency relief based on Mr. Windhorst's failure to "bear his burdens of [showing] irreparable injury and urgency." (Doc. 135-1, ¶ 58). The material findings of the Interim Order are presented immediately below:

    a. Based on existing Section 1782 case law, Mr. Windhorst would not suffer irreparable harm if he is required to sit for a deposition in this Section 1782 Proceeding.

> 69. Creating or producing evidence that perhaps should not exist or be produced has been argued as irreparable injury by the New York courts on several occasions. The argument is

> never or rarely successful. *See, e.g., In re Cierco Noguer*, 2019 U.S. Dist. LEXIS 35072, 2019 WL 1034190 (S.D.N.Y.) ("It is true, as the Court has previously observed, that in many respects, 'the proverbial bell cannot be unrung' once information has been disclosed…but that is true in most, if not all, Section §1782 cases (not to mention ordinary discovery orders). The mere fact that information, once disclosed, cannot be 'undisclosed' is therefore not enough by itself to warrant a finding or irreparable harm." *See also In re SPS I Fundo De Investimento De Acoes – Investimento No Exterior*, 2023 U.S. Dist. 12230, 2023 WL 375555 (S.D.N.Y.), and cases cited therein, especially at footnote 4.
>
> 70. Despite my request, Mr. Windhorst's counsel cannot identify any case in which irreparable injury was thought to arise from deposition taken pursuant to Section §1782.

(Doc. 135-1, ¶¶ 69-70).

    b. The possibility that Mr. Windhorst might choose to exercise his right against self-incrimination in a deposition would not cause irreparable harm to Mr. Windhorst:

> 74. Specifically, Mr. Windhorst argues that "since the deposition is purportedly for use in foreign criminal proceedings against Mr. Windhorst, Mr. Windhorst will be forced to exercise his right against self-incrimination, which may carry legal consequences." (Reply at 6)
>
> 75. Speculation as to whether a deposition "may carry legal consequences" is not proof of irreparable injury, though, and Mr. Windhorst provides no authority, from New York or the United Kingdom or anywhere, that "taking the Fifth" during a deposition is sufficient risk of irreparable injury to justify a stay.

(Doc. 135-1, ¶¶ 74-75).

    c. This Court has full control over the use of any discovery that it orders and suggests that Mr. Windhorst's deposition could be taken:

> 72. Several of the New York cases cited by the parties on this issue emphasize that the Court can both order discovery and control access to that discovery by protective orders directed to the parties over whom the Court has jurisdiction. In this instance, if the Court orders Mr. Windhorst to testify, the Court could order – if the Court thought it appropriate – Mr. Sabag and his counsel not to disclose the transcript to anyone until it is decided whether the §1782 Litigation that enabled the deposition should have been dismissed before the deposition was taken.

(Doc. 135-1, ¶ 72).

    d. An ICDR arbitrator has no right to interfere with this Court's Section 1782 Orders:

> 63. All parties acknowledge that neither an order from me nor a stipulation between Mr. Windhorst and Mr. Sabag would prevent the Court from proceeding with the Order to Show Cause hearing that the Court has scheduled for April 11, 2023. As I understand it, Mr. Windhorst hopes that the odds the Court would stay the April 11 hearing would go up if the parties stipulated that it should be stayed.
>
> 64. I am not convinced that a Fed. R. Civ. P. 37(b)(2)(A) sanction rises to the level of irreparable injury that could justify emergency arbitral relief. In any event, consistent with my desire to "stay in my lane," I do not think it appropriate for me to comment upon or involve myself or the ICDR in any way in a federal judge's judgment as to whether or when a failure to comply with that judge's order should be sanctioned or not.

(Doc. 135-1, ¶¶ 63-64).

2. The Emergency Arbitrator also made findings regarding the Settlement Agreements solely to establish <u>his own</u> arbitral jurisdiction for Mr. Windhorst's emergency request. Those findings will be reargued, reheard, and reviewed by a new, plenary arbitrator on a *de novo* basis.[1]

3. Mr. Sabag disagrees with the Emergency Arbitrator's jurisdictional finding that the Settlement Agreements were not terminated. As stated by the Southern District Court of New York in *Nas Electronics v. Transtech Electronics Pte*, 262 F.Supp.2d 134, 145 (S.D. N.Y. 2003) (Doc. 126, p. 24-26), "[u]nder New York law, when one party has committed a material breach of a contract, <u>the non-breaching party is discharged from performing any further obligations under the contract</u>, and the non-breaching party may elect to terminate the contract and sue for damages."[2]

---

[1] ICDR 7(5) ("The emergency arbitrator shall have no further power to act after the arbitral tribunal is constituted. Once the tribunal has been constituted, the tribunal may affirm, reconsider, modify, or vacate the interim award or order of emergency relief by the emergency arbitrator. The emergency arbitrator may not serve as a member of the tribunal unless the parties agree otherwise.").

[2] Mr. Windhorst argues that Mr. Sabag elected (under the New York "election of remedies" doctrine) to retain the Settlement Agreements rather than to terminate them, but these Settlement Agreements had (1) an uncurable "time is of the essence" cause (requiring payment to Reed Smith while the arbitration was still open) and (2) a

4. The Emergency Arbitrator ultimately declined to make any findings on the merits of the case and instead established that "[i]t is neither necessary nor appropriate for me to offer any view, even at the prima facie level, as to whether Mr. Sabag breached the Settlement Agreements by failing to dismiss the §1782 Litigation." (Doc. 135-1, ¶ 54) (*see also* Doc. 135-1, ¶ 68) (refusing to decide or comment on whether the §1782 should have been dismissed after Mr. Windhorst paid the awards).

5. As a result, the Emergency Arbitrator's Interim Order should not affect this Court's future determinations with respect to the rescheduling of Mr. Windhorst's deposition and an award of fees for Mr. Windhorst's contempt of its Orders. The Seventh Circuit considered a case with very similar facts and held, "no district judge has to put up with" a litigant who (1) fails to respond to the opposing party's motions while deciding to "march to a beat of its own drum," (2) files a Rule 60(b) motion with the excuse that it unilaterally thought believed that it would settle the matter out of court, and (3) thereafter, invokes a right to arbitration in an attempt to escape the Court's orders.[3]

6. This Court should deny Mr. Windhorst's Motions to Vacate (Doc, 115; Doc. 116) and order sanctions, including the rescheduling of Mr. Windhorst's deposition and awarding reasonable attorneys' fees, for failing to comply with this Court's Orders at the hearing set for April

---

specific clause (like in *NAS Electronics*) to allow Mr. Sabag to obtain a fixed damages award, <u>without</u> an obligation of counter-performance, if Mr. Windhorst failed to pay. Mr. Sabag elected contract termination and damages. *See also INTL FCStone Mkts. v. Intercambio Mexicano de Comercio S.A. de C.V.*, 2022 WL 2132686 (S.D. N.Y. Jun. 14, 2022) (after defendant materially breached its obligation to pay for a margin call, plaintiff was not required to hold defendant's margin account open indefinitely to allow defendant to liquidate its position on the most favorable terms to it); *Belsito Commc'ns, Inc. v. Dell, Inc*., 2013 WL 4860585, *7 (S.D.N.Y. Sept. 12, 2013) ("Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach") (citation omitted).

[3] *Central Illinois Carpenters Health & Welfare Trust Fund v. Con-Tech Carpentry, LLC*, 806 F.3d 935, 936-37 (7th Cir. 2015).

4

11, 2023.

                                Respectfully submitted,

                                */s/Offer Korin*
                                Offer Korin, No.: 14014-49
                                Brooke Smith, No. 32427-03
                                STOLL KEENON OGDEN PLLC
                                334 N. Senate Avenue
                                Indianapolis, IN  46204
                                Office:  317-464-1100; Fax:  317-464-1111
                                offer.korin@skofirm.com
                                brooke.smith@skofirm.com

                                Courtney Caprio [Admitted *pro hac vice*]
                                AXS LAW GROUP, PLLC
                                2121 NW Second Avenue, Suite 201
                                Miami, FL  33127
                                Office:  305-297-1873; Fax:  305-397-2336
                                courtney@axslawgroup.com

                                *Counsel for Applicant Eli Sabag*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on **April 10, 2023**, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's ECF.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Sean Tyler Dewey | sean.dewey@icemiller.com |
| Michael A. Wukmer | michael.wukmer@icemiller.com |
| ICE MILLER LLP | |
| *Counsel for Track Group* | |
| | |
| Ann O'Connor McCready | amccready@taftlaw.com |
| TAFT STETTINIUS & HOLLISTER LLP | |
| *Counsel for Lars Windhorst* | |
| | |
| Gavin S. Frisch [PHV] | gavinfrsich@quinnemanuel.com |
| Lucas V.M. Bento [PHV] | lucasbento@quinnemanuel.com |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | |
| *Counsel for Lars Windhorst* | |

                                */s/Offer Korin*
                                Offer Korin