UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| APPLICATION OF ELI SABAG, FOR AN ) | No. 1:19-mc-00084-JPH-TAB |
| ORDER PURSUANT TO 28 U.S.C. § 1782 TO ) | |
| CONDUCT DISCOVERY FOR USE IN ) | |
| FOREIGN PROCEEDINGS ) | |
| ) | |

**ORDER ON SHOW CAUSE HEARING
AND PENDING MOTIONS**

**I.    Introduction**

On April 11, 2023, the parties appeared by counsel for a show cause hearing. At the hearing, the Court heard arguments from Intervenor Lars Windhorst and Applicant Eli Sabag regarding: (1) the appropriateness of sanctions for Windhorst ignoring Court orders and failing to communicate with the Court and Sabag regarding the scheduling of his deposition, and (2) Windhorst's pending motions to vacate the Court's order granting Sabag's supplementary discovery request [Filing No. 115] and the Court's order setting this show cause hearing [Filing No. 116]. For reasons explained below, Windhorst's motion to vacate the Court's order to show cause and setting the show cause hearing is denied. Windhorst ignored multiple orders from this Court. Thus, sanctions are appropriate. In addition, the Court denies Windhorst's motion to vacate the Court's order granting Sabag's supplementary discovery request. However, the Court grants Windhorst's alternative request to stay enforcement of the deposition order pending resolution of the arbitration litigation in New York. The arbitration proceedings should clarify whether Sabag elected to enforce or terminate the underlying settlement agreement and was obligated to dismiss these proceedings in February after receiving payment from Windhorst.

**II.     Background**

This miscellaneous matter began in December 2019 with Sabag's application for discovery under 28 U.S.C. § 1782.  [Filing No. 1.]  In October 2022, Sabag filed a supplementary request, seeking to depose Windhorst.  [Filing No. 98.]  In that supplemental request, Sabag noted that he had reached a settlement agreement with Track Group, Sapinda Asia Limited (BVI), and Windhorst to resolve the arbitration proceedings between the parties in the International Center for Dispute Resolution in New York.  The settlement agreement, which was first signed in June 2022, expressly included references to this § 1782 action, noting that the agreement was intended to settle and resolve permanently all claims, including the § 1782 action.  [Filing No. 124-1, at ECF p. 3.]  The agreement further noted that once all settlement funds had been deposited, "Sabag's counsel shall within five (5) business days file a joint dismissal with prejudice of Sabag's Arbitration claims and file a Joint Stipulation of Dismissal of the 1782 Action."  [Filing No. 124-1, at ECF p. 4.]    However, Windhorst/Sapinda Asia breached the settlement agreement (and an amended version of that agreement signed in July 2022) by failing to make their promised payment on time.  [Filing No. 98, at ECF p. 3.]  As a result, Sabag sought and received an initial award on August 17, 2022, and a final award in November 2022, from the ICDR arbitrator against Windhorst/Sapinda Asia in the amount of $2.85 million, plus costs and interest.  [Filing No. 98, at ECF p. 3; Filing No. 118-11, at ECF p. 2; Filing No. 118-12, at ECF p. 3.]

During that same time, on October 11, 2022, Sabag (who still had not been paid) filed his supplementary request for discovery in this Court, seeking to depose Windhorst.  [Filing No. 98.]  Shortly after Sabag filed his supplemental request, Windhorst's counsel filed motions to withdraw.  [Filing No. 100; Filing No. 101.]  Both filings indicated that counsel relayed to

Windhorst and Peter Calamari, general counsel for one of Windhorst's companies, that Sabag had filed the supplementary request for discovery and a response would be due. The Court granted the motions to withdraw. [Filing No. 102; Filing No. 103.] In addition, the Court granted Windhorst's unopposed motion for extension of time to respond to the supplementary request, giving him until November 22, 2022, to do so. [Filing No. 104.] However, Windhorst never responded to Sabag's motion.

Thus, on December 15, 2022, the Court granted Sabag's supplementary discovery request and ordered Windhorst to cooperate with Sabag in scheduling his deposition. [Filing No. 105.] Windhorst failed to cooperate in scheduling or appearing for the deposition, which resulted in Sabag filing a motion for order to show cause on February 1, 2023. [Filing No. 107.] On March 1, 2023, after no response from Windhorst once again, the Court set this matter for a hearing on April 11, 2023, and ordered Windhorst to show cause why sanctions are not appropriate for his violation of the Court's order in Filing No. 105. [Filing No. 108.]

One week later, new counsel for Windhorst filed their appearances before the Court. [Filing No. 109; Filing No. 110; Filing No. 111.] On March 9, 2023, Windhorst filed motions to vacate the Court's orders at Filing No. 105 [Filing No. 115] and Filing No. 108 [Filing No. 116], which now pend. In the motions, Windhorst informed the Court for the first time that he had (belatedly) finally compensated Sabag on February 8, 2023. [Filing No. 115, at ECF p. 8.] Thus, Windhorst argued that Sabag should have voluntarily dismissed this action mid-February, before the Court's order setting the show cause hearing was entered, because he was obligated to do so pursuant to the settlement agreement. Alternatively, Windhorst moved to stay this proceeding pending resolution of the ICDR arbitration. [Filing No. 115; Filing No. 116.]

3

Sabag's response [Filing No. 126] offered a different interpretation of Windhorst's late payment. Sabag contended that the parties agreed to a new liquidated damages clause that permitted Sabag to terminate the settlement agreement and seek a pre-determined liquidated damages award in the ICDR case. [Filing No. 126, at ECF p. 14.] Sabag further argued that Windhorst "is well-known around the world for evading debts and breaching payment terms of settlement agreements." [Filing No. 126, at ECF p. 14.][1] Sabag noted that in October 2022, after he still had not received payment from Windhorst, he initiated an involuntary liquidation proceeding against Windhorst's company, Sapinda Asia, in the British Virgin Islands. Sabag argued to this Court that he did so not to enforce the settlement agreements, but to enforce the ICDR Awards. [Filing No. 126, at ECF p. 17.] Sabag also pointed to a quote from an email written by Windhorst's BVI counsel as evidence that Windhorst did not actually believe he had legal rights to terminate the § 1782 proceedings if he made a payment, which allegedly[2] states:

> Further to my email below, I understand the Indiana proceedings do not involve a claim for the payment of money against our client but only a deposition. As mentioned, our client asks whether your client is willing to withdraw the Indiana proceedings once the sums claimed in the BVI (as discussed below) have been paid. For the avoidance of doubt, our client is also prepared to satisfy your client's legal costs in the Indiana proceedings (even though he does not believe he has any legal obligation to do so).

[Filing No. 127-9, at ECF p.1.]

In reply, Windhorst doubled down on his belief that Sabag should have voluntarily dismissed this proceeding after receiving payment. [Filing No. 132-1, at ECF p. 10.] Windhorst argued that Sabag is now claiming, for the first time, that he elected to terminate the settlement agreement, but that this has no basis in fact or law. [Filing No. 132-1, at ECF p. 14.] Windhorst

---

[1] Windhorst's counsel adamantly denied this allegation during the Court's April 11 hearing.
[2] Counsel filed this exhibit in redacted form, so the Court is unable to confirm the accuracy of this quote in Sabag's response.

argues that Sabag continually chose to enforce the settlement agreement, such that he is still subject to his end of the bargain—dismissal of this § 1782 action. On April 11, 2023, the Court held a hearing and heard arguments from both sides related to the order to show cause and to Windhorst's pending motions and took the matter under advisement.

### III.   Discussion

#### A. Show Cause Hearing and Motion to Vacate Order to Show Cause

The Court initially addresses the April 11 hearing and Windhorst's motion [Filing No. 116] to vacate the Court's order to show cause [Filing No. 108]. Windhorst argued in his motion and at the hearing that the Court should vacate the show cause order under Rule 60(b) for multiple reasons. "[R]elief under [Rule 60(b)] has been described as an extraordinary remedy. . . granted only in exceptional circumstances[.]" *Davis v. Moroney*, 857 F.3d 748, 751 (7th Cir. 2017) (internal citation and quotation marks omitted).

First, Windhorst claims he had good cause for delay due to excusable neglect. "At least for the purposes of Rule 60(b), excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 394 (1993) (internal quotation marks omitted). The Seventh Circuit "has held before that neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (internal citation and quotation marks omitted).

Windhorst highlights the fact that he was unrepresented by counsel at the time of Sabag's supplementary request and the deposition order. He also stated in a declaration in support of his motion that he could not afford new counsel. [Filing No. 118, at ECF p. 4.] His claim regarding an inability to obtain legal counsel strains credulity. Windhorst has always been well

5

represented by counsel and continued to employ general counsel Calamari, who also received communications regarding the supplementary request. Furthermore, Windhorst is a sophisticated businessman and was more than capable of appearing *pro se*, as is expected of other unrepresented petitioners appearing before this Court. At the very least, Windhorst could have explained to the Court that he needed more time to secure legal counsel or communicated in some way regarding his intentions and actions. Instead, he purposefully ignored this matter. His purposeful evasion is evident from his claim that another reason for his delay was that he was focusing his efforts "towards making Mr. Sabag whole," and providing payment under the settlement agreement. [Filing No. 116, at ECF p. 13.] This demosntrates that Windhorst intentionally chose to set this matter aside and ignore the Court's orders. He cannot now claim excusable neglect as a result of his deliberate actions.

      Next, Windhorst argues that the Court's order to show cause may be vacated due to the fact that it has been released. [Filing No. 116, at ECF p. 13.] The Court addresses Windhorst's arguments regarding release in more detail below. However, whether Sabag elected to enforce the settlement agreement and now has an obligation to dismiss this § 1782 litigation had no bearing on Windhorst's obligations with this Court from October 2022 through February 2023, when he intentionally stopped responding to orders and filings. That was the focus of the Court's show cause hearing and is the impetus for potential sanctions now.

      Windhorst's arguments regarding the totality of the circumstances, quick action he took to correct the delay, and a meritorious defense are similarly unavailing. [Filing No. 116, at ECF p. 14-20.] Simply put, Windhorst has not shown cause for why he should not be sanctioned for his conduct. Windhorst ignored the Court's orders and Sabag's attempts to set his deposition, and he did not provide any information to the Court until March 9, 2023. He had no excuse for doing

6

so. Thus, sanctions are appropriate for Windhorst's violation of the Court's order in Filing No. 105. Specifically, Windhorst shall pay Sabag's attorneys' fees and costs related to the filing of that motion, the time and effort spent in connection with the deposition, and attending the April 11 hearing. The parties shall attempt to resolve these costs on their own. However, if they are unable to do so, Sabag may file a motion for fees with the Court within 21 days of this order.

### B. Motion to Vacate Order on Supplementary Request for Discovery

The Court next addresses Windhorst's motion [Filing No. 115] to vacate the Court's order [Filing No. 105] granting Sabag's supplementary request for discovery, in which Sabag requested to depose Windhorst. Windhorst raises nearly identical arguments in this motion as he did in his motion to vacate the Court's order to show cause. Thus, for the same reasons noted above, Windhorst's arguments regarding excusable neglect and other justifiable reasons are unsuccessful.

Windhorst also claims that he had good cause for his delay based on newly discovered evidence under Fed. R. Civ. P. 60(b)(2). Rule 60(b)(2) provides that the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Windhorst argues that the deposition order could be vacated due to newly discovered evidence that did not exist at the time of the order—the fact that Windhorst paid the amount he owed under the parties' settlement agreement after the date of the deposition order. [Filing No. 115, at ECF p. 15.] Windhorst further claims this evidence is both proof that Sabag has now released Windhorst from his obligation to sit for a deposition and also evidence that Sabag cannot satisfy the requirements of § 1782.

7

However, the "evidence" that Windhorst relies on is not newly discovered evidence that was in existence at the time the Court entered its December 15, 2022, order on Sabag's supplementary request for discovery. In fact, it is not newly *discovered* evidence at all, or evidence that could have been discovered at that time. Rather, these are factual updates that occurred in the time since the Court issued that order. This is not what Rule 60(b)(2) is intended to address. *See, e.g., Lajim, LLC v. General Electric Co.*, 917 F.3d 933 (7th Cir. 2019) ("Newly discovered evidence must have been in existence at the time of the original judgment or pertain to facts in existence at the time of the judgment.").

When the Court granted Sabag's request to depose Windhorst, Sabag had not breached the underlying settlement agreement. Windhorst could not raise an argument about breach or release until two months later, after February 8, when he finally provided Sabag with payment. At the time the Court issued the deposition order, Windhorst was still in breach of the settlement agreement; Sabag was not. At a minimum, Windhorst could have responded to the Court or provided an update. Instead, he simply ignored the Court. He had no good cause for his shortcomings and lack of communication with the Court before March 9. Moreover, in failing to timely respond to the Court's orders, Windhorst waived any arguments he had related to the underlying motion seeking to take his deposition and whether Sabag met the jurisdictional requirements of § 1782 at that time.

However, the Court's analysis today does not end here. Time has passed, and additional facts have developed. The Court is now aware of the updated factual and procedural history in this matter, and questions remain related to Windhorst's arguments regarding release and whether Sabag became obligated to dismiss this action in mid-February 2023 after receiving Windhorst's

8

payment. This is a question for the arbitrator, not the Court, as it relates to interpretation of the settlement agreement reached in that proceeding.

The last update the Court received from the parties related to the Emergency Arbitrator's interim order denying Windhorst's Application for Emergency Relief. [Filing No. 135, at ECF p. 2.] While the emergency arbitrator denied Windhorst's request for emergency relief, his order suggested the remaining arbitration proceedings are likely to result in a finding that Sabag should dismiss this proceeding. Specifically, the emergency arbitrator noted that under New York law, upon breach, a non-breaching party can elect to either (1) terminate the contract and sue; or (2) stand on the contract and seek to enforce it. [Filing No. 135-1, at ECF p. 9.] The arbitrator found that Sabag chose to enforce the contract when he brought a "Motion to Enforce Settlement Agreement As Amended…" on August 2, 2022. [Filing No. 135-1, at ECF p. 9.] The emergency arbitrator further elaborated that in electing to enforce the settlement agreements, Sabag's "obligations under those same agreements remained." [Filing No. 135-1, at ECF p. 10.] And "[a]mong Mr. Sabag's obligations were his obligations to have disputes arising from alleged breach of the Settlement Agreements resolved in arbitration, not litigation, and to withdraw his § 1782 Litigation." [Filing No. 135-1, at ECF p. 10.]

The emergency arbitrator goes to great lengths to emphasize that his order is limited in scope. However, his findings support the conclusion that the remaining arbitration proceedings should resolve the question of whether Sabag elected to enforce or terminate the underlying settlement agreement, as well as the related question of whether he is now in breach of it by failing to file a dismissal in this § 1782 action. The Court, like the emergency arbitrator, intends to "stay in its lane." [*See* Filing No. 135-1, at ECF p. 5.] Therefore, the Court stays enforcement

9

of its order granting Sabag's supplementary request for discovery pending resolution of the arbitration proceedings.[3]

### IV. Conclusion

For the reasons explained above, Windhorst's motions to vacate [Filing No. 115; Filing No. 116] are denied.[4]  Sabag is entitled to fees and costs related to the filing of Sabag's motion for an order to show cause and the time and effort expended attempting to set Sabag's deposition and attending the April 11 hearing.  However, the Court stays enforcement of its order granting Sabag's supplementary discovery request [Filing No. 105] pending resolution of the arbitration proceedings.  The parties are instructed to provide the Court with an update on the outcome of the remaining arbitration proceedings within seven days of any final ruling.

Date: 4/21/2023

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

---

[3] The Court does not intend for this ruling to downplay Windhorst's actions that have largely created the present situation.  As noted in Sabag's response to Windhorst's motions, there is reason to believe Windhorst has engaged in gamesmanship with the way he has handled and caused delayed in these proceedings.

[4] Windhorst's prior motions included Rule 72(a) objections as well that are not addressed here.  To the extent Windhorst still wants to raise a Rule 72(A) objection to either of those orders, that objection is preserved, and he has 14 days to re-assert them.