UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: | ) |
| The Application of: | ) |
| | ) Case No.: 1:19-mc-00084-JPH-TAB |
| ELI SABAG, for an Order Pursuant to | ) |
| 28 U.S.C. § 1782 to Conduct Discovery | ) |
| for Use in Foreign Proceedings. | ) |

**APPLICANT ELI SABAG'S MEMORANDUM IN SUPPORT OF HIS OBJECTIONS TO
ORDER ON SHOW CAUSE HEARING AND PENDING MOTIONS [DOC. 141]**

Courtney Caprio, PHV
Florida Bar No. 933961
Caprio Law, P.A.
40 N.W. 3rd Street, Suite 200
Miami, Florida 33128
T: (786) 353-5760
F: (305) 381-6869
courtney@capriolawgroup.com

Offer Korin, Atty. No. 14014-49
Brooke Smith, Atty. No. 32427-03
Stoll Keenon Ogden, PLLC
334 North Senate Avenue
Indianapolis, Indiana 46204
T: (317) 464-1100
F: (317) 464-1111
offer.korin@skofirm.com
brooke.smith@skofirm.com

*Attorneys for Applicant Eli Sabag*

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and Local Rule 72-1, Applicant Eli Sabag ("Mr. Sabag") respectfully makes the following objections to Order on Show Cause Hearing and Pending Motions (the "Sanctions Order").  [Doc. 141].

I.  **The Magistrate Judge Improperly Stayed the Enforcement of its Order Requiring Mr. Windhorst's Deposition so that Mr. Windhorst Could Pursue an Arbitration Without First Considering Whether Windhorst Waived His Claims to Arbitration**

A.  **Introduction**

Although Mr. Sabag agrees with nearly every factual finding of the Magistrate Judge in the Sanctions Order regarding the contemptuous litigation conduct of Intervenor Lars Windhorst ("Mr. Windhorst"), Mr. Sabag objects to Magistrate Judge's legal conclusion that Mr. Windhorst's deposition should be stayed pending the resolution of Mr. Windhorst's arbitration proceedings. Based on the legal findings of numerous Seventh Circuit precedents, Mr. Windhorst waived his claims to arbitration in this Section 1782 Proceeding as a result of his own litigation conduct.  The Magistrate Judge committed reversible error when he failed to analyze, as required by the U.S. Supreme Court and the Seventh Circuit, whether such an arbitration waiver occurred.

The Sanctions Order specifically details that Mr. Windhorst first raised his arbitration claims only after he intentionally ignored:  (1) Mr. Sabag's Section 1782 Application to depose him, (2) the Court's Order providing him with 45 days to sit for his own deposition, (3) the scheduled date for his own deposition, (4) Mr. Sabag's notice to the Court explaining that Mr. Windhorst had ignored his attempts to schedule a deposition, and (5) Mr. Sabag's Motion for Order to Show Cause, leading to the Court's Show Cause Order and its subsequent Sanctions Order.[1]

_____

[1] Mr. Sabag filed his supplementary request under Section 1782 to depose Mr. Windhorst in October 2022.  Mr. Windhorst ignored this Court and its orders compelling his deposition, and in March 2023, he filed his first motions with this Court claiming arbitration rights from a purported settlement agreement from June 2022.  Mr. Windhorst had intervened in this Section 1782 Proceeding back in May 2020, so he fully understood his obligations to respond to motions and court orders in a timely manner.

Upon analyzing these facts, Magistrate Judge concluded that "there is reason to believe Windhorst has engaged in gamesmanship with the way he has handled and caused delayed in these proceedings." (Doc. 141, p. 10). Notwithstanding these factual findings, the Magistrate Judge failed to consider whether Mr. Windhorst legally waived his claims to arbitration based on his own conduct.

The U.S. Supreme Court recently ruled in the arbitration waiver case of *Morgan v. Sundance Inc.,* 212 S.Ct. 1708, 1713 (2022), that "a court may not devise novel rules to favor arbitration over litigation…The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." Based on this precedent, the Magistrate Judge was not permitted to delegate the issue of arbitration waiver (based on litigation conduct) to an arbitrator unless he first determined that the parties had agreed to arbitrate the issue. They had not.

The Fifth Circuit recently observed in *International Energy Ventures v. United Energy Group*, 999 F.3d 257, 263 (5th Cir. 2021) that almost every Circuit in the country has ruled that arbitration waivers based on litigation conduct <u>must be</u> decided by a court and not an arbitrator. In the Seventh Circuit, the Northern District of Illinois observed that "[t]here is no Seventh Circuit authority to the contrary," and in the "several instances the Seventh Circuit has reviewed a district-court decision deciding the waiver issue[, it] has not noted any problem with the district court being the decision-maker."[2]

In *International Energy Ventures*, the Fifth Circuit reversed the district court for (1) failing to thoroughly consider an arbitration waiver claim (based on the defendant's litigation conduct)

---

[2] *HTG Capital Partners, LLC v. John Doe*, 2016 WL 612861 (N.D. Ill. Feb. 16, 2016) (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 996 (7th Cir. 2011); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); and *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)).

and (2) improperly leaving the arbitration waiver issue (through a lack of factfinding effort) to an arbitrator. The Fifth Circuit held in no uncertain terms that "[c]ourts cannot delegate to an arbitrator in violation of a contract any more than Congress can delegate to an agency in violation of the Constitution"[3]

The Fifth Circuit criticized the lower court's attempt to evade the litigation waiver issue and ruled that the Fifth Circuit "owed no deference to [the district court's] conclusory assertions" which "contain[ed] no factfinding" on the waiver issue.[4] The Fifth Circuit ultimately concluded that the AAA arbitrators, operating under AAA rules, exceeded their authority when they ultimately decided the arbitration waiver issue "on the theory that the district court had left it open."[5]

In *Central Illinois Carpenters Health & Welfare Trust Fund v. Con-Tech Carpentry, LLC*, 806 F.3d 935, 936-37 (7th Cir. 2015), the Seventh Circuit directly addressed whether a defendant's litigation conduct through intentional "silence" (*i.e.*, the failure to respond to a complaint and scheduled hearing) caused a waiver of the defendant's future arbitration claims. The Seventh Circuit ruled, based on the very similar facts to this case, that the "[defendant] was not free to keep silent and hope that the equivalent of a stay would be afforded retroactively."[6] The Seventh Circuit ruled that defendant's arguments to retroactively invoke an arbitration stay, after first presenting meritless Rule 60(b) excuses for his silence (like Mr. Windhorst presented here), were "nonsense."[7] In that case, the "silence" occurred over the same approximate number of months as in this case,

---

[3] *International Energy Ventures*, 999 F.3d at 265 (footnote 2).

[4] *Id*. at 268.

[5] *Id*. at 265 (footnote 2).

[6] *Id.* at 937.

[7] *Id.*

except that the defendant in that case had only failed to respond to an initial complaint and initial court hearing.

When presented with a question of whether this Court or an arbitrator should control discovery in this Section 1782 Proceeding, this Court previously ruled that because this Court has "authorized the legal process under § 1782 that required production of discovery to Mr. Sabag, the Court [not the ICDR arbitrator] retains authority over how and where that discovery may be used." (Doc. 97, p. 6) (parenthetical added).  That holding still bears true today.

Mr. Windhorst has yet to prove that he is even jurisdictionally entitled to pursue new arbitration in light of the facts and circumstances in the case.[8]  Notwithstanding, even if, *arguendo*, an ICDR arbitrator were to later find that Mr. Sabag had agreed to arbitrate claims regarding this Section 1782 Proceeding, the Magistrate Judge was still first required to address the arbitration waiver issue before staying the enforcement of the Court's order permitting Mr. Windhorst's deposition.  As a result, this Court should reverse its holding related to a stay and instead enforce its order requiring Mr. Windhorst to appear for a deposition.  This Court should also permanently stay that arbitration.

**B.** **Standard of Review**

This Court has previously ruled in this Section 1782 Proceeding that a Rule 72 objection to address a Section 1782 discovery dispute is subject to a "clearly erroneous" standard of review

---

[8] The determinations reached by the ICDR Emergency Arbitrator on an expedited basis, referenced in the Sanctions Order (Doc. No. 141, p. 9), were non-binding.  The ICDR Emergency Arbitrator found an agreement to arbitrate solely for purposes of establishing the arbitrator's own jurisdiction to rule on whether Mr. Windhorst would be irreparably harmed by his deposition.  *See* ICDR Rule 7(5) ("The emergency arbitrator shall have no further power to act after the arbitral tribunal is constituted. Once the tribunal has been constituted, the tribunal may affirm, reconsider, modify, or vacate the interim award or order of emergency relief by the emergency arbitrator. The emergency arbitrator may not serve as a member of the tribunal unless the parties agree otherwise.").  The ICDR Emergency Arbitrator did, however, rule dispositively that Mr. Windhorst would <u>not</u> be irreparably harmed by having to immediately sit for a deposition in compliance with the Sanctions Order.  (Doc. 135-1, ¶¶ 69-70).

because Section 1782 rulDocings are non-dispositive.  ([Doc. 80](), p. 3-4).  However, this Rule 72 objection involves an order that, while granting a stay of this Section 1782 Proceeding, denied a stay to Mr. Sabag for Mr. Windhorst's ICDR arbitration.  In *Atl. Specialty Ins. Co. v. Anthem, Inc*., 2020WL2526000 (S.D. Ind. May 18, 2020), this Court held that a motion that denies a stay of arbitration may represent a dispositive motion subject to *de novo* review because it is appealable under 9 U.S.C. § 16.[9]  Notwithstanding which standard of review is applied, Mr. Sabag draws attention to abundant precedents that show that the Sanctions Order presented "clear error" in failing to hold that Mr. Windhorst waived his claims to arbitration through his litigation conduct.

"Federal courts of appeals, including the Seventh Circuit, usually apply federal law when deciding whether a party has waived its right to arbitrate."[10]  The Seventh Circuit has provided, just like the Fifth Circuit in *International Energy Ventures*, that for purposes of appellate review, the "[t]he factual determinations [for] a finding of [arbitration] waiver are reviewed for clear error, while the legal question of whether the conduct amounts to waiver is reviewed *de novo*."[11]

Based on the holding in *International Energy Ventures* which strongly suggests that this Court (and not an ICDR arbitrator) must decide whether Mr. Windhorst waived his claims to arbitration based on his litigation conduct, Mr. Sabag must present his objections in a timely manner to prevent his own waiver of the issue.

---

[9] *See also Nextgear Capital, Inc. v. Premier Grp. Autos*, 2020WL7777949 (S.D. Ind. Dec. 30, 2020) (treating the Magistrate Judge's order on "motion to stay proceedings to compel arbitration" as "dispositive" and subject to *de novo* review).

[10] *Fowler & Hammer, Inc. v. Relyant Glob*., 2022WL2176337 (W.D. Wis. June 16, 2022) (citing *Morgan v. Sundance, Inc.*, 212 S.Ct. at 1712 and *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co*., 969 F.2d 585, 590 (7th Cir. 1992)).

[11] *Ernst & Young LLP v. Baker O'Neal Holdings, Inc*., 304 F.3d 753, 756 (7th Cir. 2002); *See also Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495 (7th Cir. 2018).

C.    **Factual Summary**

This Court granted Mr. Sabag's Section 1782 Application to seek discovery from Marion County Community Corrections in January 2020. (Doc. 13).  Mr. Sabag's discovery was intended to support various U.K. criminal claims against Mr. Windhorst including the bribery of a local Indiana official, securities fraud, and fraud. (Doc. 9, pp. 8-9).  Mr. Windhorst sought to intervene in this Section 1782 Proceeding on March 18, 2020 (Doc. 20) with a motion to vacate the Magistrate Judge's Order (Doc. 24).  Mr. Windhorst's motion to intervene was granted on May 22, 2020 (Doc. 54).  The Magistrate Judge would later vacate its initial Order granting Section 1782 discovery to Mr. Sabag after finding that Mr. Sabag did not "reasonably contemplate" his U.K. criminal investigation of Mr. Windhorst. (Doc. 69, p. 4-5).  This Court, however, sustained Mr. Sabag's Rule 72 objections and restored his Section 1782 discovery rights. (Doc. 80).  In response, Mr. Windhorst sought and received a protective order from the Magistrate Judge to limit the use of the Section 1782 discovery to the U.K. criminal proceedings. (Doc. 86; Doc. 89).  Mr. Windhorst also obtained the right to participate in the discovery as an intervening party. (Doc. 89).

By choosing to intervene in this Section 1782 Proceeding, Mr. Windhorst placed himself within the jurisdiction of this Court to be deposed.  On October 11, 2022, Mr. Sabag filed a Supplementary Request for Discovery in Accordance with 28 U.S.C. § 1782 ("Supplementary Request") to seek Mr. Windhorst's deposition. (Doc. 98).  At that time, Mr. Sabag explained to the Court in his Supplementary Request that (1) the merits of the outside ICDR arbitration between Mr. Sabag and Mr. Windhorst/Sapinda had now been settled, and (2) Mr. Sabag had been engaged in direct communications with the U.K. Serious Fraud Office regarding Mr. Windhorst since October 2021 despite the ending of the ICDR arbitration. (Doc. 98).

In Mr. Sabag's Supplementary Request, he informed this Court of the initial settlement

agreement between Mr. Sabag and Mr. Windhorst (and Mr. Windhorst's BVI entity) in which Mr. Sabag acknowledged that, in June 2022, he had previously agreed to dismiss his ICDR arbitration claims, as well as this Section 1782 Proceeding, if Mr. Windhorst (or his BVI entity) made a payment to Mr. Sabag of $2.8 million to satisfy the ICDR arbitration claims.  (Doc. 98, p. 2-3)[12]. Mr. Sabag further explained to the Court in his Supplementary Request that Mr. Windhorst never made his payment, so Mr. Sabag was proceeding with his Section 1782 claims against Mr. Windhorst.  (Doc. 98, p. 3-4).

After Mr. Sabag filed his Supplementary Request, Mr. Windhorst's counsel, both Sidley Austin LLP and Hoover Hull Turner LLP, withdrew from representing him.  (Doc. 100; Doc. 101). Mr. Windhorst was provided 30 additional days to respond to Mr. Sabag's Supplementary Request (Doc. 104).  If Mr. Windhorst had any claims, he needed to assert them at that time or waive them.[13]  The *Central Illinois* case provides that Windhorst "was not free to keep silent and hope that the equivalent of a stay would be afforded retroactively."[14]

Nonetheless, Mr. Windhorst chose to remain silent and not respond to the Court despite his substantial prior participation in the proceeding dating back to March 2020.  Mr. Windhorst's silence was apparent gamesmanship, as he appears to have believed that he could disregard the Court's orders and pay Mr. Sabag at any time of his choosing, while later arguing that he retained arbitration claims that could lead to the dismissal of this Section 1782 Proceeding.

The Magistrate Judge granted Mr. Sabag's Supplemental Request after providing a

---

[12] At the time, Mr. Sabag could not discuss the full facts regarding the Settlement Agreement (and the subsequent ICDR Award) to this Court due to an existing confidentiality order that Mr. Windhorst had sought in the ICDR arbitration.  He could only explain the facts that were already in the public domain.

[13] *See Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 638 (7th Cir. 2002) (holding that the breach of a contract containing an arbitration clause does not remove the right to invoke arbitration).

[14] *Central Illinois Carpenters Health & Welfare Tr. Fund*, 806 F.3d at 936-37.

substantial analysis of the Section 1782 "*Intel* factors," and he ordered Mr. Windhorst to sit for his deposition in Indiana within 45 days.  (Doc. 105).  Mr. Windhorst ignored the Order and ignored Mr. Sabag's counsel's attempts to schedule the deposition.  (Doc. 141, p. 3).  Near the end of Mr. Windhorst's 45-day period to sit for his deposition, Mr. Sabag provided a notice to this Court that showed the various ways Mr. Sabag had reached out to Mr. Windhorst to gain his cooperation in complying with the Court's Order.  (Doc. 106).  Once again, Mr. Windhorst did not respond to Mr. Sabag's notice or Mr. Sabag's counsel's correspondence to assert any claims to the arbitrability of this Section 1782 Proceeding.

Shortly after Mr. Windhorst failed to appear for his scheduled deposition, Mr. Sabag filed a Motion for Order to Show Cause.  (Doc. 107).  Mr. Windhorst did not respond to that motion or raise any claims regarding arbitrability.  The Magistrate Judge issued an Order to Show Cause Why Sanctions are not Appropriate and set an in-person hearing for April 11, 2023.  (Doc. 108).

Back in August 2022, after Mr. Windhorst failed to make a payment in accordance with his settlement agreement (and an amended settlement agreement with a "time is of the essence" clause for payment), Mr. Sabag took steps to terminate the settlement agreement(s) and obtain an ICDR award against Mr. Windhorst and his BVI entity, as authorized under the specific terms of the amended settlement agreement.  (Doc. 118-6).  The ICDR arbitrator would thereafter issue a partial and final ICDR Award (the "Final ICDR Awards") against Mr. Windhorst and his BVI entity.  (Doc. 118-11; Doc. 118-12).

In October 2022, Mr. Sabag brought an involuntary judicial liquidation proceeding in the British Virgin Islands ("BVI") against Mr. Windhorst's BVI entity to obtain a satisfaction of the ICDR Final Awards.  (Doc. 127-6).  Two members from Ernst & Young were appointed as co-liquidators in the BVI liquidation proceedings.  (Doc. 127-7).  Mr. Windhorst did not raise any

claims to arbitration in the BVI proceedings even though Mr. Windhorst now claims to this Court that all issues related to Mr. Windhorst's payments to Mr. Sabag under the terminated settlement agreement(s) should have been arbitrated.  On or around February 8, 2023, in the middle of the BVI liquidation proceedings, Mr. Windhorst finally decided to pay the full amounts that Mr. Sabag was owed (per the Final ICDR Awards).

Because Mr. Sabag did not dismiss this Section 1782 Proceeding after receiving payment from Mr. Windhorst to satisfy the ICDR Final Awards and avoid the liquidation of his BVI entity, Mr. Windhorst would thereafter claim that Mr. Sabag was now himself breaching the long-terminated settlement agreement(s).  (Doc. 122-2, ¶ 51).  In his motions to vacate, Mr. Windhorst pointed to the terminated settlement agreement(s) as containing an arbitration clause for dispute resolution, and argued that this Court is bound by the future decision of an ICDR arbitrator as to whether Mr. Sabag agreed to dismiss this Section 1782 Proceeding.  (Doc. 115, p. 1; Doc. 116, p. 1-2).  Mr. Windhorst did not mention to this Court, however, that the original ICDR arbitrator who reviewed and enforced the settlement agreement(s) ruled in his Final ICDR Awards that (1) the settlement agreement(s) contained a "time is of the essence clause" which Mr. Windhorst had breached and (2) all claims and counterclaims found under those settlement agreement(s) were now "dismissed."[15]  (Doc. 118-12).

The Sanctions Order, which found that Mr. Windhorst presented no Rule 60(b) justification

---

[15] Mr. Windhorst could have also raised his Section 1782 arbitrability arguments with the original ICDR arbitrator, but he did not.  The original ICDR arbitrator did not issue his final ICDR award until a month *after* Mr. Sabag filed his Supplementary Request with this Court to depose Mr. Windhorst.  Mr. Windhorst chose instead to remain silent because he did not want the original ICDR arbitrator to address the issue (and deny his request due to his breach of a "time is of the essence" requirement for payment).  As the Seventh Circuit has made clear in several rulings, a litigant "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging." *Dean v. Sullivan*, 118 F.3d 1170 (7th Cir. 1997) (citing *Nat'l Wrecking Co. v. Int'l Board Teamsters*, 990 F.2d 957, 960 (1993)).  The same principles of "sandbagging" through silence also apply in the opposite direction, which has occurred in this case.

for his contemptuous conduct, failed to consider whether Mr. Windhorst waived his arbitration claims and instead states that, "[t]he Court, like the emergency arbitrator, intends to 'stay in its lane.' Therefore, the Court stays enforcement of its order granting Sabag's supplementary request for discovery pending resolution of the arbitration proceedings." (Doc. 141, pp. 9-10) (internal citations removed). However, the determination of whether Mr. Windhorst waived his claims to arbitration was solely within this Court's purview, and it was reversible error for this Court to delegate a purely judicial function to an arbitrator.

### D. The Law of Waiver of Arbitration Claims in the Seventh Circuit

"A contractual right to arbitrate may be waived, either expressly or implicitly."[16] The policy underlying implied waiver "prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration, prevents the duplicative adjudication of disputes, and prevents the undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve a case."[17]

Mr. Windhorst's decision to: (1) wait and see how the Court would rule on Mr. Sabag's Supplementary Request (while thereafter violating this Court's order), (2) cause an obvious duplicate adjudication of disputes (which is still ongoing), and (3) waste this Court's and Mr. Sabag's resources presents all of the indicia of a waiver of arbitration.

In the case of *Kawasaki Heavy Indus., Ltd.,* 660 F.3d at 994-995, the Seventh Circuit provided an extensive summary on when a litigant waives a claim to arbitrate:

> Despite the federal policy favoring arbitration, a contractual right to arbitration can be waived. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, Inc., 969 F.2d 585, 587 (7th Cir. 1992). That waiver can be either explicit or inferred from a party's actions. *Id.* . . . .

---

[16] *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 587 (7th Cir. 1992).

[17] *Kawasaki Heavy Indus., Ltd.*, 660 F.3d at 994-95.

For waiver of the right to arbitrate to be inferred, we must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate. *Sharif v. Wellness Int'l Network, Ltd*., 376 F.3d 720, 726 (7th Cir. 2004). While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision. *Cabinetree of Wisconsin v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995). Other factors that we consider include whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery. *St. Mary's*, 969 F.2d at 589–91. Some circuits require a showing that the non-waiving party was prejudiced by its reliance on the litigious behavior of the waiving party in order to find waiver. *See, e.g., J & S Const. Co., Inc. v. Travelers Indem. Co*., 520 F.2d 809, 809–10 (1st Cir. 1975). Though we do not require a showing of prejudice to find waiver, it is a relevant factor in the totality-of-the-circumstances analysis. *St. Mary's*, 969 F.2d at 590. . . .

The key determination when considering this factor, therefore, is whether a party manifested an intent to proceed with litigation. *Cabinetree,* 50 F.3d at 390. We have held that when a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate. *Id.*

In *Central Illinois* (discussed above), the Seventh Circuit explored a case with very similar circumstances to the present case.  There, the defendant did not respond to plaintiff's complaint and did not show up for the initial hearing.[18]  Upon receiving a default judgment, the defendant unsuccessfully tried to present Rule 60(b) excuses for his prior silence before reverting to claims of arbitrability.  *Id.* at 937.  The Court held, "no district judge has to put up with" a litigant who (1) fails to respond to the opposing party's motions while deciding to "march to a beat of its own drum," (2) files a Rule 60(b) motion with the excuse that it unilaterally thought believed that it would settle the matter out of court, and (3) thereafter, invokes a claim to arbitration in an attempt to escape the Court's orders.[19]

The defendant in *Central Illinois* had argued that it was "legally required to spurn the

---

[18] *Central Illinois Carpenters Health & Welfare Tr. Fund*, 806 F.3d at 936.

[19] *Id.*

judicial process" because "if it had filed an answer or any other substantive paper, it would have waived its right to arbitrate. . . ."[20]  The Seventh Circuit ruled:

> Nonsense. True, a litigant cannot attempt to prevail in court, then seek arbitration only as a fallback. *See, e.g.,* *Sharif v. Wellness International Network, Ltd.*, 376 F.3d 720, 726 (7th Cir.2004); *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir.1995); *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products* Co., 969 F.2d 585, 589 (7th Cir.1992). But nothing prevents a defendant from filing an answer that demands arbitration and offers other reasons why plaintiffs should not receive judicial relief. *See, e.g., Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 993–98 (7th Cir.2011).[21]

Just like in *Central Illinois*, Mr. Windhorst decided to "march to the beat of his own drum." Mr. Windhorst "was not free to keep silent and hope that the equivalent of a stay would be afforded retroactively,"[22] but that is exactly what he did.

In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390-91 (7th Cir. 1995), the Seventh Circuit held:

> [A]n election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate. . . .
>
> Neither in its briefs nor at oral argument did [Appellee] give any reason for its delay in filing the stay besides needing time "to weigh its options." That is the worst possible reason for delay. It amounts to saying that [Appellee] wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose. Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution. This policy is reflected not only in the thirty-day deadline for removing a suit from state to federal court but also in the provision waiving objections to venue if not raised at the earliest opportunity. Fed. R. Civ. P. 12(h)(1). Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election--against arbitration. Except in extraordinary circumstances not here presented, they should be bound by

---

[20] *Id.*

[21] *Id.* at 937-938.

[22] *Id.* at 937.

their election.

Mr. Windhorst clearly wanted to play "heads I win-tails you lose." When Mr. Windhorst chose not to respond to Mr. Sabag's Supplementary Request in October 2022 (without a valid excuse), he elected "to proceed before a nonarbitral tribunal for the resolution of a contractual dispute," and he presumptively waived any future claims to arbitration. Not only did Mr. Windhorst fail to "economize on the resources" of this Court by not responding to Mr. Sabag's Supplementary Request "at the earliest possible opportunity," but he would thereafter present an extreme act of defiance by violating this Court's Order which compelled him to appear for his deposition within 45 days.[23] Only after this Court issued its Order to Show Cause in March 2023 did Mr. Windhorst finally abandon his months of silence and announce his intention to arbitrate his claims.

The Sanctions Order emphasizes that "in failing to timely respond to the Court's orders, Windhorst waived any arguments he had related to the underlying motion seeking to take his deposition and whether Sabag met the jurisdictional requirements of § 1782 at that time."[24] (Doc. 141, p. 8). However, the Sanctions Order orders a stay without addressing why its finding of Mr. Windhorst's "waiver" did not result in his "arbitration waiver." The Sanctions Order also states that Mr. Windhorst's later payments of the amounts owed to Mr. Sabag did not constitute newly discovered evidence to warrant Rule 60(b) relief, but that same Sanctions Order finds that Mr. Windhorst's later payment changed the facts to justify a stay in favor of arbitration. (Doc. 141, p. 7-9).

---

[23] Mr. Windhorst was warned about the consequences of failing to respond to Mr. Sabag's Supplementary Request when his previous counsel sought to withdraw from this matter. (Doc. 100-1).

[24] *See e.g., Bonte v. U.S. Bank, NA*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in a waiver of that argument).

The Court's finding of "changed facts" (*i.e.*, Mr. Windhorst's subsequent payment) to justify a stay is contradicted by Seventh Circuit case law which provides that a party who breaches a contract with an arbitration clause does not forfeit the right (or requirement) to invoke arbitration due to the breach.[25]  Mr. Windhorst was not entitled to intentionally delay his claims to arbitration until a time that <u>Mr. Windhorst</u> unilaterally thought to be appropriate.

In *Grumhaus v. Comerica Securities Inc.*, 223 F.3d 648, 653 (7th Cir. 2000), the Seventh Circuit reversed a district court for its failure to consider the Appellees waiver arguments holding that the Appellants "did not do all they reasonably should have been expected to do to make the 'earliest feasible determination' of which forum to elect."  Mr. Windhorst did nothing that he reasonably should have been expected to do to avoid waiving his arbitration claims.

As stated above, the U.S. Supreme Court is no longer amenable to "novel rules" presented by district courts that suggest that courts should always favor arbitration over litigation to accomplish equitable outcomes.  In *Morgan vs. Sundance*, the U.S. Supreme Court ruled, when determining whether a party must show "personal prejudice" when making arbitration waiver arguments:

> The text of the FAA makes clear that courts are not to create arbitration-specific procedural rules like the one we address here. Section 6 of the FAA provides that any application under the statute—including an application to stay litigation or compel arbitration—"shall be made and heard in the manner provided by law for the making and hearing of motions" (unless the statute says otherwise). A directive to a federal court to treat arbitration applications "in the manner provided by law" for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness.[26]

Focusing on Mr. Windhorst's litigation conduct as the U.S. Supreme Court requires, this

---

[25] *See Welborn Clinic,* 301 F.3d at 638 ("breach of a contract containing an arbitration clause does not amount to a waiver of arbitration.").

[26] *Morgan*, 142 S.Ct. at 1714.

Court should have made a judicial determination on the wavier issue rather than deferring its own jurisdiction to an arbitrator.  Mr. Sabag and Mr. Windhorst had no legal agreement to arbitrate "litigation conduct" issues in arbitration, and as a matter of contract law, Mr. Sabag cannot be forced into arbitration.[27]

Finally, Mr. Windhorst also waived his arbitration claims by voluntarily asking this Court to grant him the exact same substantive relief in this Section 1782 Proceeding.  In *Magallanes Inv., Inc. v. Circuit Systems, Inc*., 994 F.2d 1214, 1218 (7th Cir. 1993), the Seventh Circuit held that "[h]ere the parties have waived any right to arbitrate the existence of this contract in England by choosing to contest the issue under Illinois law in federal court. Since they now prefer Illinois litigation to English arbitration, so be it."  From the moment that Mr. Windhorst initiated the same claims in this Section 1782 Proceeding that he identically raised in the arbitration, he waived his right to pursue the arbitration to seek the same exact relief.

Mr. Sabag brought his Supplementary Request in this Section 1782 Proceeding to obtain a deposition of Mr. Windhorst.  Mr. Windhorst had intervened as a party and he was (and is) litigating claims in this Section 1782 Proceeding. Mr. Windhorst's gamesmanship in this matter has been reprehensible, and Mr. Sabag has been seriously prejudiced.  Mr. Windhorst will not be able to find any judicial precedents that hold that the violation of a time-sensitive court order in the middle of a litigation can be cured through silence and a retroactive claim to arbitration.   Had Mr. Windhorst sat for his deposition within the Court-ordered period of 45 days, his deposition would have been finished <u>before</u> Mr. Windhorst even satisfied the ICDR Final Awards that he now asserts

---

[27] *See Smith v. GC Servs.*, 907 F.3d at 499 (finding that "[l]ike any other contractual right, the right to arbitrate can be waived."); *See also Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (finding that, "[l]ike other contractual rights, though, the right to arbitrate is waivable.").

retroactively provided him with his arbitration claims.

The Sanctions Order, while finding that Mr. Windhorst waived his arguments against the Supplementary Request, failed to adequately address whether Mr. Windhorst waived his arbitration claims based on his litigation conduct, and in doing so, has incorrectly ceded this Court's authority to an arbitrator to make that legal determination.

**II.** **The Sanctions Order Failed to Address the Standard Required for Granting a Stay Thereby Ignoring the Holding of an ICDR Emergency Arbitrator Who Found that No Irreparable Harm Would Occur if Mr. Windhorst's Deposition Were Immediately Held**

Mr. Sabag requested, in his response to Mr. Windhorst's Motions to Vacate and Stay, that the Magistrate Judge stay the ICDR arbitration proceedings because, *inter alia*, Mr. Windhorst had waived his claims to arbitration. (Doc. 126, p. 39). In the Sanctions Order, Mr. Sabag's request for a stay was denied, and instead, the Magistrate Judge stayed this Section 1782 Proceeding in favor of the arbitration. The Sanctions Order, however, provides no appropriate legal grounds to stay the Section 1782 discovery in this matter pending the outcome of the arbitration.

"A party has no inherent right to a stay; thus, the moving party bears the burden of proving that the Court should exercise its discretion in staying the case."[28] In determining whether to order a stay of discovery, courts review the following factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether the stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the [C]ourt."[29]

---

[28] *Id*. (citing *Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009)).

[29] *United Leasing, Inc. v. Xcelerate Auto, LLC*, 2022 WL 18540544, at *2 (S.D. Ind. Nov. 18, 2022) (citing *Madbak v. Anthem Ins. Co. Inc.*, No. 1:16-cv-03197-SEB-MPB, 2017 WL 5075262, at *1 (S.D. Ind. May 23, 2017)).

First, the stay has, and will, unduly prejudice Mr. Sabag.  Had Mr. Windhorst complied with the Court's orders, his deposition would have already occurred.  Instead, because of Mr. Windhorst's decision to stay silent, violate this Court's orders, and raise retroactive claims to arbitration, Mr. Sabag has incurred substantial costs litigating on two fronts, here and in the arbitration.  Mr. Windhorst had waived all of his rights to arbitration.

Separately, Mr. Windhorst has made numerous arguments about the prejudice he will experience if he is required to sit for a deposition.  The Section 1782 case law, however, provides that Mr. Windhorst will not legally suffer any irreparable harm if his deposition were required to immediately take place in Indiana.  In *In re Noguer*, 2019 WL 1034190, *4-5 (S.D.N.Y. Mar. 5, 2019), the Southern District of New York made clear findings to explain why Section 1782 discovery targets cannot generally sustain "irreparable harm" arguments to stay Section 1782 proceedings even if the "proverbial bell cannot be unrung" once the information has been disclosed.  The Court held as follows:

> JCF fails to establish that it will be irreparably injured if it is forced to disclose the requested [Section 1782 discovery] material before it has a chance to appeal the Court's decision. It is true, as the Court has previously observed, that, in many respects, "the proverbial bell cannot be unrung" once information has been disclosed. *In re Accent Delight Int'l Ltd*., Nos. 16-MC-125, 16-MC-50 (JMF), 2018 WL 7473109, at *1 (S.D.N.Y. June 27, 2018). But that is true in most, if not all, Section 1782 cases (not to mention ordinary discovery orders). The mere fact that information, once disclosed, cannot be "undisclosed" is therefore not enough by itself to warrant a finding of irreparable harm. *See, e.g., In re Platinum Partners Value Arbitrage Fund LP*, No. 18-CV-5176 (DLC), 2018 WL 3207119, at *6 (S.D.N.Y. June 29, 2018) ("[A] requirement to produce documents, at least absent a claim of privilege or sensitivity, is not generally the type of injury that is irreparable."); *In re Gushlak*, No. 11-MC-0218 (NGG) (JO), 2012 WL 2564466, at *7 (E.D.N.Y. Jan. 30, 2012) (noting that "the compelled production of non-privileged discovery material, standing alone, does not constitute irreparable injury warranting a stay pending appeal" and collecting cases), report and recommendation adopted, No. 11-MC-218 (NGG), 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012); *see also, e.g., Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) (holding that, even where the disclosure of trade secrets is at issue, irreparable harm is not to be presumed absent a showing that "a

misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets"). And, in light of the Protective Order — which severely curtails what Petitioners may do with any materials they obtain — JCF fails to establish the likelihood of harms, let alone irreparable harms, other than mere disclosure. See Protective Order ¶ 2 (providing that any confidential material cannot be used beyond the Andorran proceedings, including to bring any claims against JCF, absent further order of the Court); id. ¶ 6 (restricting access to confidential material and requiring Petitioners to seek leave to file the material under seal in the Andorran proceedings); id. ¶ 12 (requiring Petitioners to return all material produced in response to the subpoena and requiring any person who has received electronic copies of such material to destroy them, within fourteen days of the conclusion of the Andorran proceedings).

If anything, it is Petitioners who may suffer irreparable harm — and thus be "substantially injure[d]," *Nken*, 556 U.S. at 434 — if a stay is granted. That is because, with a stay pending appeal here, Petitioners may lose altogether any chance to use the materials they seek in the Andorran appellate proceedings.

The *Noguer* case specifically pointed out that "irreparable harm" arguments in 1782 cases are even more difficult to sustain when the discovery target has obtained a protective order regarding the use of the discovery (like Mr. Windhorst obtained for himself). Other district courts have followed the holding of *Noguer*.[30] The Sanctions Order did not refer to any of the governing Section 1782 jurisprudence to show that Mr. Windhorst would incur "irreparable harm" to warrant a stay of the enforcement of the Court's order permitting Mr. Windhorst's deposition.

Moreover, the Sanction Order ignores the interim findings of the ICDR Emergency Arbitrator which held that Mr. Windhorst would not suffer any irreparable harm if his deposition were to immediately take place in Indiana (Doc. 135-1, pp. 11-13). Mr. Windhorst sought emergency relief with the ICDR to cause the stay of the enforcement of the Court's order permitting Mr. Windhorst's deposition. (Doc. 122-2). The ICDR Emergency Arbitrator made

---

[30] *See In re Hansainvest Hanseatische Inv.-GmbH*, 2019 WL 5939860, *3 (S.D.N.Y. Oct. 4, 2019) ("Courts [...] have been adamant in stating that the mere fact that information, once disclosed, cannot be 'undisclosed' is . . . not enough by itself to warrant a finding of irreparable harm."); *In re Ex parte SPS I Fundo de Investimento de Acoes - Investimento No Exterior*, 2023 WL 375555, (S.D. N.Y. 2023) (same).

several non-binding findings regarding the validity of the arbitration clause in a terminated settlement agreement solely to find jurisdiction to hear Mr. Windhorst's request for an emergency stay. Those non-binding findings, which were relied upon in the Sanctions Order, will be reviewed *de novo* by a new arbitrator on the issues of (1) jurisdiction and (2) the merits of Mr. Windhorst's claims. Mr. Sabag believes he will be meritorious on both points.[31]

With respect Mr. Windhorst's request to the ICDR Emergency Arbitrator for an emergency stay of the Section 1782 Proceedings (which duplicated Mr. Windhorst's request to the Magistrate Judge for the same stay), the ICDR Emergency Arbitrator made the dispositive finding, citing to the *Noguer* case, to deny Mr. Windhorst's claim for emergency relief after holding that Mr. Windhorst would not suffer any irreparable harm if the deposition of Mr. Windhorst takes place in Indiana. (Doc. 135-1, pp. 11-13). The ICRD Emergency Arbitrator specifically rejected Mr. Windhorst's arguments raised in the case of *In re Martinez Sampedro*, 2020 WL 1158701 (D. Conn. 2020) to suggest that Mr. Windhorst would suffer irreparable harm if his deposition transcript were, in fact, immediately provided to the U.K. criminal authorities. (Doc. 135-1).

As the *Noguer* case points out, it is Mr. Sabag who is likely being irreparably harmed by the stay because he may lose the chance to use the materials that this Court determined, after a careful Section 1782 analysis, he was entitled to obtain.

Second, as to the issues of whether the stay will (1) simplify this Section 1782 Proceeding, (2) streamline the issues, or (3) reduce the burden of litigation on the parties, the primary issue in

---

[31] *See* ICDR Rule 7(5). Mr. Sabag did not provide any material briefing to the Emergency Arbitrator regarding Mr. Windhorst's litigation conduct in this Section 1782 Proceeding because the focus of the tribunal was "irreparable harm." Notwithstanding, the ICDR Emergency Arbitrator decided to volunteer a non-binding emergency finding on "waiver" (to ensure his own jurisdiction) by presenting the conclusory remark that Mr. Windhorst did not waive his right to make claims in ICDR arbitration because "Mr. Windhorst did what he had to do in Court." (Doc. 135-1, pp. 9-10). The ICDR Emergency Arbitrator exceeded his authority when making those statements, and those statements were unfounded considering the factual findings of this Court regarding Mr. Windhorst's litigation conduct.

this Section 1782 Proceeding is whether Mr. Sabag is entitled to take Mr. Windhorst's deposition under Section 1782. The Court already analyzed the Section 1782 *Intel* factors and determined that the deposition should occur.

The ICDR Emergency Arbitrator found that this Court is well within its authority to enforce its order allowing for the deposition of Mr. Windhorst and that Mr. Windhorst would not suffer any irreparable harm as a result. This Court should sustain Mr. Sabag's objection and enforce its Order on Supplementary Request for Discovery under Docket Entry 105, and require Mr. Windhorst to sit for a deposition in Indiana.

## III.   Conclusion

The Sanctions Order's holding to stay the enforcement of its order for Mr. Windhorst's deposition was clearly erroneous and should be reversed.

The Court should sustain Mr. Sabag's objections and order Mr. Windhorst's deposition to take place in Indiana within 30 days. This Court should also order a stay of the ICDR arbitration to prevent any further irreparable harm to Mr. Sabag based on Mr. Windhorst's gamesmanship, which included the violation of this Court's orders.

Respectfully submitted,

*Offer Korin*
Offer Korin, No.: 14014-49
Brooke Smith, No. 32427-03
STOLL KEENON OGDEN PLLC
334 N. Senate Avenue
Indianapolis, IN 46204
Office: 317-464-1100; Fax: 317-464-1111
offer.korin@skofirm.com
brooke.smith@skofirm.com

21

Courtney Caprio [Admitted *pro hac vice*]
AXS LAW GROUP, PLLC
2121 NW Second Avenue, Suite 201
Miami, FL 33127
Office: 305-297-1873; Fax: 305-397-2336
courtney@axslawgroup.com

*Counsel for Applicant Eli Sabag*


## CERTIFICATE OF SERVICE

I hereby certify that on **May 8, 2023**, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's ECF. Parties may access this filing through the Court's system.

| | |
|---|---|
| Sean Tyler Dewey<br>Michael A. Wukmer<br>ICE MILLER LLP<br>*Counsel for Track Group* | sean.dewey@icemiller.com<br>michael.wukmer@icemiller.com |
| Ann O'Connor McCready<br>TAFT STETTINIUS & HOLLISTER LLP<br>*Counsel for Lars Windhorst* | amccready@taftlaw.com |
| Gavin S. Frisch [PHV]<br>Lucas V.M. Bento [PHV]<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>*Counsel for Lars Windhorst* | gavinfrsich@quinnemanuel.com<br>lucasbento@quinnemanuel.com |

*Offer Korin*
Offer Korin