**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: <br> The Application of: <br><br><br> ELI SABAG, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Case No.: 1:19-mc-00084-JPH-TAB |

**LARS WINDHORST'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON SHOW CAUSE HEARING AND PENDING MOTIONS (DOC. 141), ORDER ON SUPPLEMENTARY REQUEST FOR DISCOVERY IN ACCORDANCE WITH 28 U.S.C. § 1782 (DOC. 105), AND ORDER TO SHOW CAUSE WHY SANCTIONS ARE NOT APPROPRIATE (DOC. 108)**

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(a), and Local Rule 72-1, Lars Windhorst ("Mr. Windhorst"), by counsel, respectfully makes the following objections to the Magistrate Judge's Order on Show Cause Hearing and Pending Motions ("Sanctions Order," Doc. 141), Order on Supplementary Request for Discovery in Accordance with 28 U.S.C. § 1782 ("Deposition Order," Doc. 105), and Order to Show Cause Why Sanctions Are Not Appropriate ("OSC Order," Doc. 108) (collectively, the "Orders").

Mr. Windhorst respectfully states that the Magistrate Judge's 1) Sanctions Order to the extent it denied Mr. Windhorst's motion to vacate the Deposition Order (Doc. 115) and motion to vacate the OSC Order (Doc. 116) (collectively, "Motions to Vacate") and imposed sanctions on Mr. Windhorst; 2) Deposition Order; and 3) OSC Order are clearly erroneous and/or contrary to law.

**I.      PRELIMINARY STATEMENT**

Mr. Sabag should have voluntarily dismissed this action nearly three months ago. Mr. Windhorst and Mr. Sabag have a settlement agreement pursuant to which both parties agreed to

1

release their claims against each other and to jointly dismiss this § 1782 proceeding.  The releases and dismissal clauses of the parties' settlement agreement were triggered when Mr. Windhorst tendered a payment in excess of $3 million (inclusive of interest, legal fees, and other costs) to Mr. Sabag in accordance with the settlement agreement and an arbitral award enforcing the terms of that agreement obtained by Mr. Sabag following Mr. Windhorst's delay in completing the payment. But while that delay was regrettable (and caused entirely by circumstances outside of Mr. Windhorst's control, including his account being frozen and the liquidity issues that entailed), it *should be* now entirely academic: Mr. Windhorst has unquestionably made Mr. Sabag whole under the settlement agreement, which has triggered Mr. Sabag's obligation to jointly dismiss this action.

Unfortunately, Mr. Sabag, having greatly benefitted from the parties' settlement, now seeks to have his cake and eat it too by pocketing more than $3 million dollars while simultaneously refusing to dismiss this proceeding.  His failure to dismiss this proceeding and his counsel's request for additional time to respond to Mr. Windhorst's counsel directly led to the Magistrate Judge issuing the OSC Order, which in turn led to the Sanctions Order.  Mr. Windhorst has thus been unduly burdened by having to 1) oppose Mr. Sabag's efforts to depose Mr. Windhorst in this proceeding and 2) commence an arbitration proceeding before ICDR to seek an award requesting Mr. Sabag to comply with the terms of the parties' settlement agreement, including his obligation to dismiss this proceeding.

Although the Magistrate Judge correctly recognized that the pending arbitration between Mr. Windhorst and Mr. Sabag should occur prior to any deposition of Mr. Windhorst, the Magistrate Judge nevertheless denied Mr. Windhorst's Motions to Vacate and sanctioned Mr. Windhorst as a result of his delay in responding to Mr. Sabag's Supplementary Request and the Court's Deposition Order.  In doing so, the Magistrate Judge clearly erred in several ways,

including by (1) holding Mr. Windhorst waived all of his § 1782 arguments; (2) rejecting Mr. Windhorst's argument that the Deposition Order should be vacated under Rule 60(b)(5); and (3) summarily rejecting several of Mr. Windhorst's other arguments, including those related to quick action and extraordinary circumstances.  As a result of these errors, the Magistrate Judge made another error – he sanctioned Mr. Windhorst for his failure to comply with a deposition order the Court should not have issued.

To this date—almost three and a half years passed since Mr. Sabag initiated this 1782 proceeding—none of Contemplated Proceedings have actually commenced nor have there been any developments that suggest the Contemplated Proceedings will commence within a reasonable time.  Coupled with the fact that Mr. Sabag is obligated to dismiss this proceeding, there is simply no basis for Mr. Sabag to insist on taking Mr. Windhorst's deposition as the deposition cannot be "for use" in Mr. Sabag's Contemplated Proceedings.  Even if Mr. Sabag's Contemplated Proceedings were within reasonable contemplation, the Magistrate Judge did not contend with the fact that the Supplementary Request sought privileged information and had no basis to conclude in his Deposition Order that Mr. Windhorst is found in this District or that the *Intel* factors weigh in favor of discovery.  Ultimately, Mr. Sabag's requested deposition, which fails to comply with § 1782 several times over, is nothing but an effort at revenge, and the Magistrate Judge's orders granting the deposition, denying Mr. Windhorst's Motions to Vacate, and sanctioning Mr. Windhorst must be overruled.

## II.     FACTS AND PROCEDURAL BACKGROUND

### 1.     Mr. Sabag Initiated the 1782 Action Targeting MCCC and the ICDR Arbitration Against Mr. Windhorst

This case stems from a Share Purchase Agreement ("SPA") entered into between Mr. Sabag and Track Group, Inc. ("Track Group"), then indirectly controlled by Mr. Windhorst, for

Track Group to acquire Mr. Sabag's Israeli company in March 2014.  Doc. 6-5 [SPA]; Doc. 9 [Sabag Mem. Initial App.] at 5-6.  In connection with the SPA, Mr. Windhorst and Mr. Sabag signed a Put Option Agreement.  Doc. 6-15 [Put Option Agreement].

On December 31, 2019, Mr. Sabag initiated this proceeding ("1782 Action") by filing under seal an *ex parte* application with the Court for an order pursuant to 28 U.S.C. § 1782.  Doc. 1.  Mr. Sabag sought discovery from  Marion County Community Corrections ("MCCC"), an agency of Marion County[1], and various employees of MCCC and Marion County.  *Id.* at 1.  Mr. Sabag claimed the discovery sought is "for use in an anticipated criminal investigation" (*id.*)  in the United Kingdom in relation to the negotiation and performance of the SPA and Put Option Agreement ("Contemplated Proceedings").  *See* Doc. 9 at 5-8.

On January 31, 2020, the Court granted Mr. Sabag's *ex parte* application.  Doc. 13 ("*Ex Parte* Order").  Shortly after obtaining the *Ex Parte Order*, Mr. Sabag filed a notice of arbitration in the International Centre for Dispute Resolution ("ICDR") in New York on March 11, 2020, alleging mainly breach of the SPA and Put Option Agreement by Mr. Windhorst and Track Group.  Doc. 33-3 .

On March 18, 2020, Mr. Windhorst moved to intervene in this 1782 Action (Docs. 20, 21) for the sole purpose of vacating the *Ex Parte* Order and quashing the subpoenas issued to MCCC and its employees.  Doc. 21 at 1; *see also* Doc. 25 [Windhorst Motion to Vacate the *Ex Parte* Order].  On May 22, 2020, the Magistrate Judge granted Mr. Windhorst's motion to intervene as a permissive intervenor under Fed. R. Civ. P. 24(b)(1)(B).  Doc. 54.

On August 18, 2020, the Magistrate Judge vacated the *Ex Parte* Order and denied Mr. Sabag's *ex parte* application, finding Mr. Sabag failed to show the application was "for use" in a

---

[1]   *See* https://www.indy.gov/agencies.

foreign proceeding, as § 1782 required.  Doc. 69, at 1.  This Court then sustained Mr. Sabag's objection to the Magistrate Judge's order to vacate, finding the "for use" requirement has been satisfied.  Doc. 80 at 1, 8.

On July 28, 2021, the Magistrate Judge denied Mr. Windhorst's motion to vacate and allowed Mr. Sabag's § 1782 application to proceed.  Doc. 89 at 1.  The Magistrate Judge also granted Mr. Windhorst's motion for a protective order to limit the use of documents obtained from MCCC and related employees to the contemplated criminal proceeding.  *Id.*  In particular, the Magistrate Judge found that the discretionary factors weighed in favor of granting the § 1782 application as 1) the discovery target, i.e., MCCC and its related employees, would not be an "***expected party*** in any proceedings in the United Kingdom," (emphasis added) and therefore is a non-participant in the foreign proceeding; and 2) Mr. Windhorst was not the target of the discovery requests.  *See id.* at  6-8.

On July 14, 2022, in its order overruling Mr. Sabag's objection to the Magistrate Judge's protective order, this Court ordered "[t]he clerk shall close this case on the docket."  Doc. 97 at 10.

## 2.    Settlement Agreement Between Mr. Sabag and Mr. Windhorst and Mr. Sabag's Affirmation of the Settlement Agreement

As detailed in Mr. Windhorst's Motions to Vacate, Mr. Sabag and Mr. Windhorst entered into a settlement agreement that was effective on June 10, 2022 ("Settlement Agreement"), under which Mr. Sabag is required to dismiss this 1782 Action "within five (5) business days [of receiving the settlement payment]."  Doc. 118-1 [Settlement Agreement] ¶ 5.  Under Paragraph 6.a of the Settlement Agreement, Mr. Sabag is also obligated to "RELEASE AND FOREVER DISCHARGE[]" Mr. Windhorst "from any and all past, present or future claims … of any nature whatsoever, whether or not now known, suspected, or claimed, that exist in whole or in part as of

the Effective Date of this Agreement," immediately upon the disbursement of the settlement payment. *Id.* ¶ 6.a.

The Settlement Agreement also contained an arbitration clause that required parties to submit "any issue or dispute relating to the creation, execution, interpretation, performance, or breach" of the Settlement Agreement to the ICDR. *Id.* ¶ 13. The Settlement Agreement was later amended to extend the deadline for Mr. Windhorst to make the settlement payment to August 2, 2022. Doc. 118-3 [Settlement Agreement Amendment].

Due to administrative issues with the bank, Mr. Windhorst was not able to wire a payment by August 1, 2022. Doc. 118 [Windhorst Decl.] ¶ 8. Yet Mr. Sabag never stated he was terminating or intended to terminate the Settlement Agreement. *See* Doc. 118 ¶¶ 9-18. Rather, Mr. Sabag continuously affirmed the agreement by, for instance, enforcing the Settlement Agreement to obtain the full settlement in the ICDR and chasing the full settlement payment. *Id.*; Doc. 118-6 [Sabag Motion to Enforce]; Doc. 118-11 [Settlement Enforcement Award].

### 3.    Mr. Sabag's Supplementary Request Targeting Mr. Windhorst and Related Motions and Orders

On October 11, 2022, Mr. Sabag filed a supplementary request for discovery purportedly under 28 U.S.C. § 1782, to depose Mr. Windhorst "for use" in the same allegedly contemplated criminal investigation of Mr. Windhorst in the UK ("Supplementary Request"). Doc. 98 at 1, 6, 14. All of Mr. Windhorst's counsel in this 1782 Action withdrew their appearances on October 20, 2022 as Mr. Windhorst's liquidity issues precluded him from paying his counsel. Docs. 100, 101, 102, 103; Doc. 118 ¶¶ 12, 13.

On December 15, 2022, the Magistrate Judge granted Mr. Sabag's Supplementary Request. Doc. 105. In particular, on the jurisdictional requirements of § 1782, the Magistrate Judge found that Mr. Windhorst satisfied the jurisdictional requirement of "resides or be found" in this district

because Mr. Windhorst "waived his right to object" to this requirement "by mo[ving] to intervene in this 1782 Action." *Id.* at 4.

On the discretionary factors, the Magistrate Judge concluded without elaborating on the reason that "each discretionary factor weighs in favor of granting Sabag's request to depose Windhorst." *Id.* at 5.  Although the discovery target has changed from MCCC to Mr. Windhorst, the putative defendant in the Contemplated Proceedings, the Magistrate Judge found (contrary to his own "expected party" analysis only a few months prior, Doc. 89 at 6) that 1) "Windhorst is not a participant in the reasonably contemplated foreign proceeding, but rather is the non-participant target of those investigations," *id.* at 5; and 2) Mr. Sabag's Supplementary Request is "not unduly intrusive or overly burdensome" "given Windhorst has sought to intervene and the Court already has a protective order in place that will apply to his deposition." *Id.* at 6.  The Court then ordered that the deposition "shall occur at a mutually acceptable time within 45 days". *Id.*

In January 2023, counsel for Mr. Sabag and Mr. Windhorst communicated multiple times to discuss the payment of the settlement payment.  Doc. 118-15 at 14-42.  Toward the end of January, the parties agreed to a two-tranche payment, which was wired by Mr. Windhorst on January 30 and 31, 2023.  *Id.* at 14, 17.[2]  On February 1, 2023, Mr. Sabag's bank account was unable to receive the funds because it was not able to convert the payment, which had originated in Euros, into U.S. dollars.  *Id.* at 12.  The payment therefore bounced.  *Id.*  On the same day, Mr. Sabag filed a Motion for Order to Show Cause on Civil Contempt ("Motion for OSC").  Doc. 107.

**4.    Mr. Windhorst's Motions to Vacate and/or Stay and the Magistrate Judge's Order Denying Mr. Windhorst's Motions to Vacate**

---

[2]    Around this time, Mr. Sabag's counsel unilaterally set the date and time of the deposition, and chose to attend that deposition without Mr. Windhorst's participation, despite Mr. Windhorst still being *pro se* in Indiana.  *See* Doc. 118 ¶ 17.

On February 8, 2023, Mr. Windhorst re-wired the payment of the full $ 2,850,000 owed under the Settlement Agreement, plus interest and all attorneys' fees incurred by Mr. Sabag to enforce the Settlement Agreement (totaling $3,099,985).  Doc. 118-16 [Wire Transfer Receipt]. Mr. Sabag's counsel confirmed receipt of the payment on February 10, 2023.  Doc. 118-15 at 1, 3.  Mr. Windhorst retained the undersigned U.S. counsel from Quinn Emanuel Urquhart & Sullivan LLP the same day.  Doc. 118 ¶ 19.

From February 15 to 27, 2023, Mr. Windhorst's counsel has repeatedly contacted Mr. Sabag's Indiana counsel via phone or email requesting Mr. Sabag dismiss this 1782 Action in light of the Settlement Agreement and Mr. Windhorst's February 8, 2023 payment.  Doc. 119 [Bento Decl.] ¶¶ 4-9. During this period, Mr. Windhorst did not directly move before this Court to vacate the Deposition Order in an effort to resolve the disputes amicably, and in particular because Mr. Sabag's counsel requested time to confer with Mr. Sabag given, *inter alia*, the recent passing of Mr. Sabag's mother.  Doc. 119 ¶¶ 5-6.  Furthermore, and while Mr. Windhorst's counsel proposed to Mr. Sabag's counsel that they should file a joint letter to the Court to inform it that the parties were conferring on the issue, Mr. Sabag's counsel refused on the ground that he needed time to confer with his client and that the filing of letters are not permitted in this district.  *Id.* ¶ 6.

On February 27, 2023, Mr. Sabag, through his Indiana counsel, stated that "[a]t this time" he is "committed to depose Mr. Windhorst."  Doc. 119-2.  On that same day, Mr. Windhorst's counsel therefore prepared a letter, sent March 2, 2023, outlining in writing Mr. Windhorst's request for Mr. Sabag's dismissal of this action, including the specific contractual basis for his request.  Doc. 119-3.

On March 1, 2023, the Magistrate Judge entered the OSC Order to require Mr. Windhorst to personally attend the Show Cause hearing on April 11, 2023.  Doc. 108.  Five days after the

OSC Order was issued, on March 6, 2023, Mr. Windhorst filed a motion to enforce the Settlement Agreement ("Mr. Windhorst's Motion to Enforce") in the ICDR ("ICDR Arbitration"), asking the arbitrator to order Mr. Sabag to specifically perform his contractual obligation to dismiss the 1782 Action.  Doc. 119-4.  Immediately following this, on March 9, 2023, Mr. Windhorst moved to 1) vacate the Deposition Order and the OSC Order, or, in the alternative, 2) leave to file the Rule 72(a) objections to the Deposition Order, or, in the alternative, 3) stay the Deposition Order and the OSC Order pending resolution of the ICDR Arbitration, and 4) interim administrative stay of the Deposition Order and the OSC Order ("Motions to Vacate and/or Stay").  Docs. 115, 116, 117.  To support the Motions to Vacate and/or Stay, Mr. Windhorst annexed a proposed opposition to Mr. Sabag's Supplementary Request ("Proposed Opposition").  Doc. 115-3.

On March 16, 2023, after the ICDR informed Mr. Windhorst that the prior proceeding has been closed, Mr. Windhorst, following the ICDR's instruction (Doc. 123-1 [Correspondence from ICDR]), filed a Notice of Arbitration and Statement of Claim and an Application for Emergency Relief, again requesting the arbitrator to order Mr. Sabag to dismiss this 1782 Action.  Doc. 123 [Supp. Bento Decl.] ¶ 8; Doc. 123-5; Doc. 123-6.

On March 20, 2023, Mr. Sabag filed an emergency motion to stay the ICDR Arbitration, claiming, for the first time, the Settlement Agreement (pursuant to which he has already received his multi-million payment) is void.  Doc. 122 at 2.  On March 23, 2023, Mr. Sabag filed his combined opposition to Mr. Windhorst's Motions to Vacate.  Doc. 126.

On March 28, 2023, the Magistrate Judge denied Mr. Sabag's emergency motion to stay the arbitration and Mr. Windhorst's motion for an interim administrative stay.  Doc. 131.  The Magistrate Judge  also reinstated that the show cause hearing would take place on April 11, 2023 (though Mr. Windhorst could appear by counsel), thereby denying in practical terms Mr.

Windhorst's motion to stay the OSC Order pending the ICDR Arbitration.  *Id.*  On the same day, Mr. Sabag filed his Response to Mr. Windhorst's Application for Emergency Relief in the ICDR Arbitration.  Doc. 135-1 [ICDR Emergency Arbitrator Interim Order] ¶ 4.

On March 30, 2023, Mr. Windhorst filed his combined reply brief in support of his Motions to Vacate and/or Stay.  Doc. 132-1.  On March 31, 2023, Mr. Windhorst submitted his Reply of the Application for Emergency Relief in the ICDR Arbitration.  Doc. 135-1 ¶ 4.

On April 4, 2023, the emergency arbitrator in the ICDR Arbitration held a hearing on Mr. Windhorst' Application for Emergency Relief.  Doc. 135-1 ¶ 4.  On April 7, 2023, the Emergency Arbitrator issued an interim order (the "Interim Order") denying Mr. Windhorst's Application for Emergency Relief because Mr. Windhorst did not meet his burden to show irreparable harm and urgency.  Doc. 135-1 ¶ 58.  However, the Interim Award held "paragraph 13 of the Settlement Agreement establishe[d] arbitral jurisdiction over" Mr. Windhorst's breach of the Settlement Agreement claim against Mr. Sabag.  Doc. 135-1 ¶ 17.  Further,  the Interim Award provided that Mr. Sabag "elected to enforce the Settlement Agreements and, under New York law, his obligations under those same agreements remained."  Doc. 135-1 ¶ 43.

On April 11, 2023, the Magistrate Judge held a hearing on the OSC Order and Mr. Windhorst's Motions to Vacate and/or Stay.  Doc. 137.  On April 24, 2023,[3] the Court served via ECF the Sanctions Order (Doc. 141), which denied Mr. Windhorst's Motions to Vacate but granted Mr. Windhorst's alternative motion to stay the Deposition Order pending resolution of the ICDR Arbitration.  The Magistrate Judge stayed enforcement of the Deposition Order as it is for the arbitrator to decide whether "Sabag became obligated to dismiss this action in mid-February 2023

---

[3]   The Sanctions Order is dated April 21, 2023, but it was not uploaded to PACER until April 24, 2023, so the parties were not served with a copy until that date.

after receiving Windhorst's payment," and that the emergency arbitrator's Interim Order "suggested the remaining arbitration proceeding are likely to result in a finding that Sabag should dismiss this proceeding." Doc. 141 at 8-9.[4]

Although the Magistrate Judge's Sanctions Order stayed enforcement of the Deposition Order, the Magistrate Judge otherwise denied Mr. Windhorst's Motions to Vacate and sanctioned Mr. Windhorst by ordering him to pay "Sabag's attorneys' fees and costs related to the filing of that motion, the time and effort spent in connection with the deposition, and attending the April 11 hearing." Doc. 141 at 7. In denying Mr. Windhorst's Motions to Vacate, the Magistrate Judge disposed of Mr. Windhorst's arguments "regarding the totality of the circumstances, quick action he took to correct the delay, and a meritorious defense" based solely on the finding that "Windhorst ignored the Court's orders and Sabag's attempts to set his deposition, and he did not provide any information to the Court until March 9, 2023." Doc. 141 at 6-7. Further, the Magistrate Judge did not address in substance any of Mr. Windhorst's § 1782 arguments in his Proposed Opposition, rejecting them with a single sentence without further analysis that "in failing to the timely respond to the Court's orders, Windhorst waived any arguments he had related to the underlying motion seeking to take his deposition and whether Sabag met the *jurisdictional requirements* of § 1782 at that time." *Id.* at 8 (emphasis added).

Despite the Magistrate Judge's waiver finding, the Magistrate Judge expressly permitted Mr. Windhorst to object to not only the Sanctions Order but also the Deposition Order and the OSC Order. Doc. 141 at 10, n.4 ("[t]o the extent Windhorst still wants to raise a Rule 72(A) objection to either of those orders, that objection is preserved, and he has 14 days to re-assert

---

[4] The ICDR Arbitration is still ongoing to determine if Mr. Sabag has breached his obligations under the Settlement Agreement and should dismiss the 1782 Action.

them.").   Mr. Windhorst, through these Objections, now objects to the Deposition Order, OSC Order, and Sanctions Order.

## III.   LEGAL STANDARDS

### 1.   Rule 72(a)

Federal Rule of Civil Procedure 72(a) provides that a party may "serve and file objections" to a magistrate judge's order and the district court "must … modify or set aside any part of [a magistrate judge's] order that is clearly erroneous or is contrary to law." *Id.*

The clear error standard, which "has little practical difference" from the abuse of discretion standard, *U.S. v. Hill*, 196 F.3d 806, 808 (7th Cir. 1999),  "means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997); Doc. 97 at 3 (same).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 4458903, at *1 (S.D. Ind. July 21, 2015).   The district court reviews question of law *de novo*. *Milwaukee Carpenter's Dist. Coun. v. Philip Morris*, 70 F. Supp. 2d 888, 895 (E.D. Wis. 1999) (determining to conduct a "plenary" review of the Magistrate Judge's determination under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) because the disputed issue "is a legal one").

The district court judge may review the magistrate judge's non-dispositive order even if the objection was not made within fourteen days.  *Welch v. Eli Lilly & Co.*, 2013 WL 4413323, at *11 (S.D. Ind. Aug. 15, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760-61 (7th Cir. 2009)).  Here, the Magistrate Judge expressly extended the fourteen-day time period with respect to the Deposition Order and the OSC Order.  Doc. 141 at 10, n.4.

### 2.   28 U.S.C. § 1782

"Section 1782 contains three jurisdictional requirements: (1) the person from whom discovery is sought must reside or be found in the district where the application is made; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign tribunal or an interested person." *Venequip, S.A. v. Caterpillar, Inc.*, 2022 WL 823856, at *1 (N.D. Ill. Mar. 18, 2022), *appeal filed* (No. 22-1463) (citing 28 U.S.C. § 1782); *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (similar).  In addition to the aforementioned jurisdictional requirements, § 1782 "also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege.'" *In re Guo*, 965 F.3d 96, 102 n.3 (2d Cir. 2020).

Even if a district court finds § 1782's jurisdictional requirements are met, the court must still consider whether any discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) weigh in favor or against the application.  Doc. 89 at 5; *Venequip, S.A.*, 2022 WL 823856 at *2.  Those factors are:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the  receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
>
> (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> (4) whether the request is unduly intrusive or burdensome.

Doc. 89 at 5 (citing *Intel*, 542 U.S. at 264-54).

### 3.        Federal Rules of Civil Procedure 55, 60(b)(5) and 60(b)(6)

Under Rule 55(c) of the Federal Rules of Civil Procedure "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Rule 60(b) in turn authorizes relief from a final judgment or order in enumerated circumstances,

including "(5) the judgment has been satisfied, released, or discharged …; and (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

"Under Federal Rule of Civil Procedure 60(b)(5), the Court may, in its discretion and on terms that are just, relieve a party from a final judgment, order or proceeding if the judgment has been satisfied or if it is no longer equitable to apply the judgment prospectively." *Glisson v. U.S. Forest Service*, 2008 WL 5156274, at *2 (S.D. Ill. Dec. 8, 2008). "The Court has flexibility to exercise its Rule 60(b)(5) power in light of changes that occur during the life of the judgment." *Id.* (citing *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 380-81 (1992)).

Relief under "Rule 60(b)(6) is available in 'extraordinary circumstances.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Id.* (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)). Although the judge's Rule 60(b)(6) decisions enjoy deference, they give rise to "error" when the judge "leaves something important out of his analysis." *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831 (7th Cir. 1985).

## IV.   ARGUMENT

The Magistrate Judge's Sanctions Order denied both Mr. Windhorst's Motion to Vacate the Deposition Order and Motion to Vacate the OSC Order, and sanctioned Mr. Windhorst for his "violation of the Court's order in Filing No. 105." Doc. 141 at 7, 10. The denials of Mr. Windhorst's Motions to Vacate and the related sanctions are premised on several clear errors of law. These errors include (1) holding Mr. Windhorst waived his arguments related to Mr. Sabag's Supplementary Request, including his § 1782 arguments; (2) granting Mr. Sabag's Supplementary Request; (3) rejecting Mr. Windhorst's arguments for vacatur pursuant to Rule 60 of the Federal

14

Rules of Civil Procedure and/or the court's inherent authority, and (4) sanctioning Mr. Windhorst for his failure to comply with the Deposition Order.

**1.     The Magistrate Judge clearly erred in holding Mr. Windhorst waived his arguments related to Mr. Sabag's Supplementary Request, including his § 1782 arguments.**

In a single sentence, the Magistrate Judge held that "in failing to timely respond to the Court's orders, Windhorst waived any arguments he had related to the underlying motion seeking to take his deposition and whether Sabag met the jurisdictional requirements of § 1782 at that time." Doc. 141 at 8. This finding, unsupported by any legal authority, is clearly erroneous.

At the outset, it is not possible for Mr. Windhorst to waive his § 1782 arguments because the statutory requirements of § 1782 are, as courts have routinely recognized, jurisdictional. *See, e.g.*, *In re TJAC Waterloo, LLC*, 2016 WL 1700001, at *2 (N.D. Ind. Apr. 27, 2016) (holding court lacked jurisdiction to order § 1782 discovery where requested evidence was not "for use in a proceeding in a foreign or international tribunal."); *Guo v. Deutsche Bank Sec. Inc. (In re Guo)*, 965 F.3d 96, 102 (2d Cir. 2020) (describing the statutory requirements of § 1782 as "jurisdictional"); *Kiobel*, 895 F.3d at 243-44 (same); *Venequip, S.A.*, 2022 WL 823856, at *1 (same). Since the statutory requirements for § 1782 discovery are jurisdictional, the court does not possess subject matter jurisdiction if the applicant cannot satisfy them. *See, e.g.*, *In re Al Fayed*, 91 F. Supp. 2d 137, 141-42 (D.D.C. 2000), *aff'd*, 229 F.3d 272 (D.C. Cir. 2000) (holding court lacked subject matter jurisdiction over § 1782 application seeking discovery from governmental agency because the term "person" in § 1782 does not include an agency of a sovereign); *In re Terra Invest, LLC*, 2022 WL 18662732, at *4 (S.D. Fla. Nov. 7, 2022) ("Because [Respondent] neither resides nor is found in the Southern District of Florida, the Court lacks subject matter jurisdiction over [applicant]'s Ex Parte [§ 1782] Application and the case is subject to dismissal."), *report and recommendation adopted in part*, 2023 WL 21014, at *7 (S.D. Fla. Jan. 3, 2023); *In Re*

*Gazprom*, 2016 WL 3654590, at *12 (S.D. Tex. July 6, 2016) (denying § 1782 application for lack of subject matter jurisdiction where respondent did not reside and was not likely to be found in the district at any reasonable time in the future); *c.f. In re Sumar*, 123 F.R.D. 467, 471 (S.D.N.Y. 1988) (holding that because "the evidence is sought for use" in a foreign proceeding, "th[e] [c]ourt has subject matter jurisdiction under 28 U.S.C. § 1782").   In light of black letter law that "[j]urisdictional objections cannot be forfeited or waived," *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) (affirming dismissal where district court lacked subject matter jurisdiction); *Johnson v. Sullivan*, 922 F.2d 346, 352 (7th Cir. 1991) ("[A] jurisdictional requirement [] may not be waived."), the Magistrate Judge clearly erred by finding Mr. Windhorst waived his arguments with respect to the jurisdictional requirements of § 1782.  Indeed, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  Thus, the Court should at minimum entertain Mr. Windhorst's objections set forth in Sections IV.2.a-IV.2.c below.

To be clear, the Magistrate Judge's finding of waiver is erroneous in its entirety.  "Waiver is the intentional relinquishment of a known right or such conduct as warrants in inference of such relinquishment."  *Home Indem. Co. of N. Y. v. Allen*, 190 F.2d 490, 491 (7th Cir. 1951).  The Magistrate Judge's finding of implied waiver – there is no question Mr. Windhorst has not expressly waived anything – is solely based on Mr. Windhorst's "failing to timely respond to the Court's orders."[5]  Doc. 141 at 8.  How Mr. Windhorst's delay results in implied waiver is not

---

[5]   Mr. Windhorst's March 9, 2023 Motion to Vacate the OSC Order was timely, so Mr. Windhorst in fact only was untimely in responding to the Deposition Order.  Thus, Mr. Windhorst objects to the extent the Sanctions Order incorrectly asserts Mr. Windhorst untimely responded to more than one court order.

supported by any explanation or rationale, which alone is an abuse of discretion and clear error. *See Brown v. Hertz*, 437 F. App'x 496, 499-500 (7th Cir. 2011) (reversing magistrate judge's decision for abuse of discretion because the magistrate judge's decision "lacked sufficient rationale," as "nowhere did [magistrate judge] substantiate" his conclusions and he "glossed over the inquiry"); *Wall v. Rasnick*, 42 F.4th 214, 220-22 (4th Cir. 2022) (finding the district court abused its discretion by denying the party's Rule 72(a) objection when the magistrate judge's order provided no explanation of how she reached her decision).

Nor does such a delay make any sense for a finding of waiver in this context. As the target of Mr. Sabag's Supplementary Request, Mr. Windhorst is functionally akin to a defendant in a civil action, and a defendant who fails to timely oppose a civil complaint generally does not waive his waivable defenses. *See Swanson v. City of Hammond, Ind.*, 411 F. App'x 913, 916 (7th Cir. 2011) (a party "must create the expectation that [it] will defend the suit on the merits" to waive waivable defenses). For example, courts are consistent in holding that several months' delay is insufficient to support a finding of a waiver of personal jurisdiction. *See, e.g.*, *Lishman v. Air & Liquid Sys.*, 2022 WL 1085163, at *2 (N.D. Ill. Apr. 11, 2022) (finding a four-month delay did not waive personal jurisdiction when defendant "did not actively participate in the litigation during these four months"); *Pardo v. Mecum Auction, Inc.*, 2014 WL 627690, at *3 (N.D. Ill. Feb. 18, 2014) (granting Rule 55(c) motion where personal jurisdiction defense was raised ten months after the entry of default); *Dawson v. Bruce Teleky, Inc.*, 2019 WL 13066868, at *3 (M.D. Fla. Nov. 19, 2019) (holding eight-month delay in filing motion to dismiss "d[id] not support finding an implicit waiver of personal jurisdiction" and collecting cases finding delays of similar length did not result in waiver); *see also Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt.*, 364 F.3d 884, 887-88 (7th Cir. 2004) (holding a nine-month delay between the filing of the complaint and motion to dismiss

did not constitute waiver of improper venue defense where the defendant engaged in settlement negotiations and responded to discovery requests during the nine-month period).

In any event, the evidence in the record at the time Mr. Sabag filed his Supplementary Request made it clear that Mr. Windhorst had taken the position that, *inter alia*, § 1782 discovery is improper if the evidence sought is within the jurisdictional reach of the foreign tribunal.  *See* Doc. 65 at 11, n. 9 (citing *Advanced Micro Devices v. Intel Corp.*, 2004 WL 2282320 (N.D. Cal. Oct. 4, 2004 and explaining that in this case, § 1782 application was denied because the § 1782 target "was a party to the E.U. proceedings, thus the European commission could obtain discovery directly from [the § 1782 target]").  Here, it is undisputed Mr. Windhorst is within the jurisdictional reach of the U.K. authorities, and it is also uncontested that he is the target of Mr. Sabag's contemplated foreign proceedings (and, if any foreign proceeding actually commences, an actual defendant).  Doc. 9 at 8 ("Mr. Sabag intends to file a criminal complaint *against Messrs. Windhorst* . . . with various British government offices."); Doc. 6-1 [Bibby Decl.] at 21-22 (Mr. Sabag's U.K. law counsel stating the U.K. authorities will have jurisdiction over Mr. Sabag's allegations against Mr. Windhorst); *id.* ¶ 98 (stating people or entities that committed the alleged offences or wrongdoing will be parties in the U.K. proceedings); Docs. 106-1; 106-3 (Mr. Sabag serving the deposition subpoena at Mr. Windhorst's U.K. address).  Indeed, the Magistrate Judge in his July 28, 2021 order granting Mr. Sabag's initial application recognized this *Intel* factor turns on whether the § 1782 discovery target would be "outside of any foreign tribunal's jurisdictional reach" and "an expected party in any proceedings in the United Kingdom." Doc. 89 at 6 (citing Bibby's Declaration).  As such, Mr. Windhorst's argument that the first *Intel* factor turns on whether the discovery target is an expected party in the foreign proceeding has not been waived.

On the other hand, subsequent developments, particularly Mr. Windhorst's undisputed payment to Mr. Sabag on February 8, 2023, confirm the Magistrate Judge's waiver finding is contrary to law.  As described below, *infra* §IV.3.a, Mr. Windhorst's Rule 60(6)(5) release argument was not waived as Rule 60(b)(5) is expressly aimed at modifying and vacating orders and judgments based on settlements and releases executed after entry of the order or judgment.

In sum, the Magistrate Judge glossed over the waiver inquiry and, in doing so, found Mr. Windhorst waived arguments he simply did not waive – indeed, some of these arguments could not be waived as a matter of law.  Mr. Windhorst accordingly objects to the Magistrate Judge's waiver finding as clearly erroneous and contrary to law.

**2.      The Magistrate Judge clearly erred in granting Mr. Sabag's Supplementary Request and the Deposition Order should be vacated.**

Mr. Sabag's Supplementary Request fails to satisfy several statutory requirements of § 1782, and the Magistrate Judge's decisions to issue the Deposition Order and to refuse to vacate that order are contrary to law.

As an initial matter, the Deposition Order should never have been issued because the Court lacked subject-matter jurisdiction.  Further, Mr. Sabag, more than three years after filing his Original Application, still has not commenced any of his contemplated foreign proceedings.  It is evident his requested deposition is not "for use" in a foreign proceeding.  Moreover, even if it was, Mr. Windhorst is not "found" in this District based on his mere status as an intervenor.  Similarly, Mr. Sabag's requested deposition seeks to compel testimony in violation of U.S. and U.K. privileges, which is prohibited by the plain language of § 1782.  And even if Mr. Sabag could overcome all of these statutory requirements, the *Intel* factors decisively weighed (and still weigh) against granting the Supplementary Request.  Mr. Windhorst accordingly objects to these findings as clearly erroneous and contrary to law.

a.    The Court lacked subject-matter jurisdiction.

The Magistrate Judge did not have jurisdiction to issue the Orders. As described below, *infra*, §§IV.2.b-IV.2.d, the Supplementary Request fails to satisfy at least three jurisdictional requirements of § 1782. Because this failure goes to the heart of the Court's subject matter jurisdiction, *see supra*, §IV.1 (citing cases), the Orders are clearly erroneous and contrary to law.

The lack of subject matter jurisdiction here is underscored by Mr. Sabag's Supplementary Request being premised on the notion that Mr. Windhorst intervened in this proceeding to oppose Mr. Sabag's Original 1782 Application. *See* Doc. 98 at 6-8 (Mr. Sabag arguing "[w]hen Windhorst moved to intervene in this Section 1782 proceeding … he waived his right to object to personal jurisdiction or whether he 'is found' in this district"). Yet this Court lacked subject-matter jurisdiction from the outset: the Original 1782 Application did not seek discovery from a "person." *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a ***person*** resides or is found may order him to give his testimony…") (emphasis added). Section 1782 does not expressly define "person," *see id.*, so a "person" under § 1782 shall be presumed ***not*** to include governmental agencies. *E.g.*, *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1861–62 (2019) ("In the absence of an express statutory definition, the Court applies a longstanding interpretive presumption that 'person' does not include the sovereign"); *In re Al Fayed*, 91 F. Supp. 2d at 141-42 (holding that the term "person" in § 1782 does not include a federal agency). Here, Mr. Sabag, in his Original 1782 Application, sought discovery from Respondents MCCC and certain individual MCCC and Marion County employees. Doc. 1 at 1. As the Respondents to the Original 1782 Application, a governmental agency and its agents, do not qualify as "persons" under § 1782, the Court should not have entertained this proceeding at the outset, and there is no basis for it to

exercise jurisdiction over Mr. Windhorst as an "intervenor" in that proceeding or in any other capacity.

Because the Court lacked jurisdiction to issue the Orders, Mr. Windhorst objects to the Orders as contrary to law and clearly erroneous.

        b.    <u>Mr. Sabag's Supplementary Request is not "for use" in a foreign proceeding.</u>

Mr. Sabag does not seek discovery that is "for use" in any foreign proceeding.  As explained in detail in Mr. Windhorst's Proposed Opposition (Doc. 115-3 at 18-20), Mr. Sabag cannot establish this jurisdictional requirement of § 1782 because his Contemplated Proceedings have been released and he has also covenanted not to pursue *any* claims against Mr. Windhorst pursuant the Settlement Agreement such that there is no foreign proceeding for which he can use his requested § 1782 evidence.

Moreover, the significant passage of time since Mr. Sabag filed his Original 1782 Application further demonstrates Mr. Sabag's Supplementary Request does not seek evidence that is "for use" in a reasonably contemplated foreign proceeding.  Doc. 139 [Apr. 11, 2023 Hr'g Tr.] at 22:3-4 (THE COURT: "It has been years. Still, still nothing to report on any, any investigation.");  *BANOKA S.a.r.l. v. Alvarez & Marsal, Inc.*, 2023 WL 1433681, at *6–7 (S.D.N.Y. Feb. 1, 2023) (denying § 1782 discovery because the "passage of time [] suggests that the suit is not reasonably contemplated" and "nearly two years have passed since the [foreign] suit was first threatened").  Here, Mr. Sabag waited more than three years since his Original 1782 Application to file the Supplementary Request, and, based on Mr. Sabag's interpretation of the "found" requirement pursuant to which Mr. Windhorst became "found" in this District upon intervening, Mr. Sabag could have filed his Supplementary Request to depose Mr. Windhorst as early as May 22, 2020 – nearly two and a half years before he actually filed his Supplementary

Request.[6]  *See* Doc. 54 (granting Mr. Windhorst's motion to intervene).  As "[t]here is no reason [Mr. Sabag] could not have pursued discovery . . . during the past two [and a half] years," it is clear his requested discovery is not "for use" in a foreign proceeding.  *BANOKA S.a.r.l.*, 2023 WL 1433681, at *6–7.[7]

Mr. Sabag's counsel all but confirmed this as recently as the April 11, 2023 show cause hearing:

> The Court: . . . Is, is [the foreign proceeding] reasonably contemplated?  I mean, it has been going on for three years.
>
> Mr. Korin:  There are conversations, but we also obviously pointed out that this is pending, and so I am sure they are waiting to … see what happens here.

Doc. 139 [Apr. 11, 2023 Hr'g Tr.] at 31:5 – 31:10.

Mr. Sabag's counsel's statements at the hearing are telling: he is simply speculating that the U.K. authorities may commence a criminal investigation against Mr. Windhorst depending on whether Mr. Sabag can obtain evidence here.  But a speculative proceeding contingent upon § 1782 discovery taking place does not satisfy § 1782's requirement that evidence be sought "for use" in a foreign proceeding.  For example, in *Mangouras v. Squire Patton Boggs*, the Second Circuit held an applicant failed to provide objective indicia that a foreign criminal proceeding was within reasonable contemplation based on statements made at oral argument by the applicant's

---

[6]  To be clear, as discussed below, *infra*, §IV.2.c, and in his Proposed Opposition, Doc. 115-3 at 20-25, Mr. Windhorst is not "found" in this District.

[7]  Moreover, this Court has already recognized the foreign proceeding must be pursued within "a reasonable amount of time."  Doc. 80; *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270-1271 (11th Cir. 2014) ("The future proceedings must be more than speculative, however, and a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time" and noting that foreign proceeding was not initiated because applicant was awaiting § 1782 discovery).  Here, despite having already obtained discovery in this 1782 action, Petitioner has not initiated his "foreign proceeding."  *See* Doc. 98 at 13 (Petitioner identifying the evidence it obtained via this 1782 proceeding).

attorney illustrating the anticipated proceedings were merely speculative.  980 F.3d 88, 101 (2d Cir. 2020).  Specifically, the applicant's counsel told the district court the commencement of the foreign proceeding would "depend[] on what the evidence shows."  *Id.*  The circumstances here are virtually indistinguishable, further evidencing no foreign proceeding is within reasonable contemplation.

For at least the foregoing reasons the requested discovery is not "for use" in any foreign proceeding and the Magistrate Judge's Orders should be vacated.

      c.    <u>Mr. Windhorst is not "found" in this District, and Mr. Sabag's Supplementary Request seeks privileged information.</u>

Mr. Sabag also cannot establish that Mr. Windhorst is "found" in this District, nor can he avoid the fact his requested deposition seeks to compel Mr. Windhorst to testify in violation of his U.S. and U.K. privileges against self-incrimination.  Mr. Windhorst hereby incorporates the arguments set forth in his Proposed Opposition (Doc. 115-3 at 12-18, 20-25) on these jurisdictional § 1782 requirements.

With respect to the "found" requirement, the Magistrate Judge's determination was based on Mr. Windhorst's status as an intervenor.  Doc. 105 at 4-5.  But the "found" requirement does not turn on intervenor status – it turns on whether the § 1782 discovery target is subject to general or specific personal jurisdiction in the District.  *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).  As a matter of law, the Court does not have personal jurisdiction over Mr. Windhorst based on his limited intervention for the purpose of "request[ing] that this Court vacate its [Ex Parte Order]."  Doc. 21 at 1; *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (holding intervenor does not automatically consent to jurisdiction).[8]

---

[8]   Indeed, the Magistrate Judge previously observed "intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power

With respect to the privilege requirement, Mr. Sabag seeks to compel Mr. Windhorst to testify in contravention of both his U.S. Fifth Amendment right against self-incrimination and the English common law privilege to remain silent.  There is simply no dispute these privileges would be contravened if Mr. Sabag takes Mr. Windhorst's deposition, as Mr. Sabag readily admits he intends to pursue criminal charges in the United Kingdom against Mr. Windhorst.  Doc. 9 at 55 ("Mr. Sabag … intends to file a criminal complaint against Mr. Windhorst with the FCA, NCA, and SFO, as well as the U.K. Police."); Doc. 98 at 6 (claiming the evidence will be "for use" in the criminal investigation of Mr. Windhorst); Doc. 6-1 ¶ 5 ("The requested discovery is for evidence for use in Mr Sabag's intended criminal complaint in the UK against Mr Lars Windhorst.").

Ultimately, Mr. Sabag has failed to satisfy several statutory requirements of § 1782.  Therefore, Mr. Windhorst objects to the Magistrate Judge's Orders as being clearly erroneous and contrary to law.

      d.     <u>The *Intel* factors weigh against Mr. Sabag's Supplementary Request.</u>

Even if the statutory factors of § 1782 are satisfied, the Court is not obligated to grant § 1782 discovery.  *E.g.*, *Kiobel*, 895 F.3d at 242 ("Section 1782 states that a court 'may order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary.").  Although the Magistrate Judge briefly addressed the discretionary *Intel* factors in the Deposition Order, (Doc. 105 at 5-6), his weighing of those factors in favor of discovery was an abuse of discretion and contrary to law.  *See In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 341-42 (E.D. Va. 2022), *aff'd*, 37 F. 4th 160 (4th Cir. 2022) (vacating magistrate judge's

---

that it already has, namely the power to modify a previously entered confidentiality order."  Doc. 68 at 4.

order granting § 1782 application as contrary to law even "setting aside § 1782 requirements," because "the discretionary factors relevant in § 1782 applications weigh in favor of denying Eli Lilly's expansive discovery request"). Moreover, the Magistrate Judge exceeded his allowable discretion in weighing the *Intel* factors because his consideration on the *Intel* factors was tainted by his erroneous view of § 1782's statutory requirements. *See, e.g.*, *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 84 (2d Cir. 2012) (holding "the District Court exceeded its allowable discretion by basing its ruling on an erroneous view of § 1782's 'for use' requirement.") (citation omitted).

Here, each of the four *Intel* factors weigh against discovery. As explained in the Proposed Opposition, (Doc. 115 at 25-28), the first *Intel* factor plainly weighs against discovery because the requested evidence—testimony from Mr. Windhorst—is within the jurisdictional reach of the relevant U.K. authorities because Mr. Windhorst, as the putative defendant, is a participant in Mr. Sabag's contemplated foreign proceedings. Likewise, the Proposed Opposition explains that the remaining *Intel* factors weigh against discovery because (i) the Contemplated Proceedings are criminal in nature and entirely speculative (*id.* at 28-30); (ii) the Supplementary Request seeks to circumvent the U.K. authorities' ability to compel Mr. Windhorst's testimony, U.K. and U.S. privileges against self-incrimination, and U.S. policy favoring enforcement of contracts and settlement agreements (*id.* at 30-32); and (iii) the requested deposition is unduly burdensome, overly intrusive, and solely intended to harass Mr. Windhorst. *Id.* at 32-33.

Ultimately, Mr. Sabag has weaponized § 1782 in a manner that undermines the "twin aims" of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2020 WL 208825, at *3 (N.D. Ill. Jan. 14, 2020) (internal

quotation marks and citations omitted).  There is simply nothing "efficient" in permitting Mr. Sabag to depose Mr. Windhorst where it is undisputed Mr. Windhorst is within the jurisdiction of the U.K. and the U.K. authorities have the ability to compel Mr. Windhorst to sit for an interview if they had any interest in investigating Mr. Sabag's allegation.  Likewise, it is dubious at best to believe Congress intended to "encourag[e]" reciprocal treatment in this scenario:  Allowing a foreign private individual to depose, prior to any interview by U.S. law enforcement (including protections and investigation safeguards attached to such interview), a person within the jurisdiction of the U.S. regarding an alleged U.S. crime committed by that person for purposes of prosecuting a crime in the U.S.

For at least the foregoing reasons, Mr. Windhorst objects to the Magistrate Judge's weighing of the *Intel* factors in favor of discovery as an abuse of discretion and contrary to law.

**3.    The Magistrate Judge clearly erred in rejecting Mr. Windhorst's arguments for vacatur under Rules 55, 60(b) and/or the court's inherent authority.**

Mr. Windhorst, in his Motions to Vacate, advanced several arguments in support of vacating the Deposition Order and the OSC Order.  The Magistrate Judge's decision to reject (or ignore) many of these arguments was clearly erroneous and/or contrary to law.  Specifically, the Magistrate Judge erred by rejecting Mr. Windhorst's arguments for vacatur based on Rule 60(b)(5), Rule 60(b)(6), Rule 55(c), and/or the Court's inherent authority.

a.    The Magistrate Judge clearly erred in applying Rule 60(b)(5).

The Magistrate Judge clearly erred in applying Rule 60(b)(5) and, as a result, rejected Mr. Windhorst's release arguments in both of his Motions to Vacate, *see* Doc. 115 at 15; Doc. 116 at 13.

Rule 60(b)(5) provides that a judgment or order may be vacated where it "has been satisfied, **released**, or discharged; it is based on an earlier judgment that has been reversed or

vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5) (emphasis added). As explained in Mr. Windhorst's Motion to Vacate the Deposition Order, (Doc. 115 at 15-16), Rule 60(b)(5) applies because Mr. Windhorst has indisputably made Mr. Sabag whole under the Settlement Agreement which triggered, *inter alia*, the release provision in Paragraph 6.a of the Settlement Agreement.

The Magistrate Judge, however, rejected Mr. Windhorst's Rule 60(b)(5) argument, essentially deeming it waived since it was not available at the time the Deposition Order was made. Specifically, the Magistrate Judge stated "[w]hen the Court granted Sabag's request to depose Windhorst, Sabag had not breached the underlying settlement agreement. Windhorst could not raise an argument about breach or release … when he finally provided Sabag with payment." Doc. 141 at 8. This rationale, however, is simply not a valid reason to deny release under a Rule 60(b)(5) motion because, unlike other Rule 60(b) grounds such as excusable neglect, Rule 60(b)(5) focuses on post-judgment developments. Indeed, the Seventh Circuit has recognized "[m]odification of judgments to take account of developments such as [post-judgment] payment is the domain of Rule 60(b)(5)." *Central States, Se. & Sw. Areas Pension Fund v. Central Cartage*, 69 F.3d 1312, 1314 (7th Cir. 1995); *see also Torres-Troche v. Municipality of Yauco*, 873 F.2d 499, 501 n.7 (1st Cir. 1989) ("Rule 60(b)(5) should serve as the basis for a motion to correct, regardless of the time at which a judgment is satisfied. The Rule should not be interpreted so strictly that it forecloses a litigant from alerting a court to the prior satisfaction of a final judgment."). Unsurprisingly, courts have found that agreements entered into after the entry of the final judgment can result in a release of the judgment pursuant to Rule 60(b)(5). *See, e.g.*, *CLP Res., Inc. v. Ky. Bluegrass Contracting, LLC*, 2013 WL 749639, at *2 (W.D. Okla. Feb. 27, 2013) (granting the Rule 60(b)(5) motion, finding the binding settlement agreement entered into after the entry of the final judgment released

27

that judgment); *CHS/Cmty. Health Sys., Inc. v. Med. Univ. Hosp. Auth.*, 2022 WL 1658418, at *1 (M.D. Tenn. Mar. 18, 2022) (granting motion to vacate under Rule 60(b)(5) because "vacatur of the Order and Memorandum Opinion would be consistent with the settlement reached between the parties in this matter," which included a release provision); *Perrigo Co. v. Merial Ltd.*, 2021 WL 3560950, at *1 (N.D. Ga. Apr. 5, 2021) (holding "[p]arties' settlement agreement justifie[d] relief under Rule 60(b) because it releases and discharges [the movant's] obligations"). Accordingly, the Magistrate Judge clearly erred in rejecting Mr. Windhorst's Rule 60(b)(5) argument on the basis that Mr. Windhorst could not have asserted it until February 2023.

By the same token, as pre-judgment events are irrelevant to the Rule 60(b)(5) determination, the Magistrate Judge should not have relied on the fact that Mr. Windhorst did not respond to the Court before the Deposition Order and the OSC Order were issued in rejecting Mr. Windhorst's Rule 60(b)(5) motion regarding the two Orders. *Id.* (discussing solely post-judgment events in deciding on the Rule 60(b)(5) motion). Indeed, the Magistrate Judge's rationale is contradictory as he simultaneously concluded (i) "Windhorst could not raise an argument about breach or release" "[a]t the time the Court issued the deposition order," and (ii) "Windhorst waived any arguments he had related to the underlying motion seeking to take his deposition." Doc. 141 at 8. But waiver is the "intentional relinquishment of a *known right*." *Home Indem. Co. of N.Y.*, 190 F.2d at 491 (emphasis added). Since, as the Magistrate Judge correctly recognized (Doc. 141 at 8), the release argument was not available to Mr. Windhorst before the Deposition Order was issued, the Magistrate Judge erred in holding Mr. Windhorst waived this argument. *See Ganton Techs. V. Int'l Union, United Auto, Aerospace & Agric. Implement Workers of Am., U.A.W., Loc.*, 358 F.3d 459, 462 (7th Cir. 2004) ("failure to pose an *available* argument … waives that argument.") (emphasis added).

Additionally, the release in the Settlement Agreement covers the "1782 Action," which certainly includes both the Deposition Order and the OSC Order.  Doc. 116 at 5 (citing Doc. 118-1 ¶¶ 5; 6.a).  In any event, a finding of the vacatur of the Deposition Order based on release by the Settlement Agreement would render baseless the OSC Order.  *See Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1237 (D. Colo. 2012) (vacating the magistrate judge's order granting motion to compel discovery and denying as moot the motion for order to show cause stemming from non-compliance with the motion to compel); *see also infra* § IV.4.  Therefore, the Magistrate Judge erred in concluding that "whether Sabag elected to enforce the settlement agreement and now has an obligation to dismiss this § 1782 litigation had no bearing on Windhorst's obligations with this Court from October 2022 through February 2023," which "is the impetus for potential sanctions now."  Doc. 141 at 6.

Since the Magistrate Judge misapplied the waiver doctrine and Rule 60(b)(5) by concluding that 1) arguments not available before the Deposition Order was issued can still be waived; 2) Rule 60(b)(5) only applies to release available before the Deposition Order was issued; 3) courts should consider pre-judgment party conduct in deciding a Rule 60(b)(5) motion; and 4) release is irrelevant to the OSC Order, the Magistrate Judge's denial of Mr. Windhorst's Motions to Vacate should be overruled as contrary to law and clearly erroneous.

Alternatively, at minimum, the Magistrate Judge should have stayed adjudication of the Motions to Vacate pending the parties' ICDR Arbitration instead of denying the Motions to Vacate in their entirety because whether the release in paragraph 6 of the Settlement Agreement applies is a question of contract interpretation that the parties agreed to resolve in arbitration.  Doc. 118-1 ¶ 13.  Indeed, the Magistrate Judge recognized "questions remain related to Windhorst's arguments regarding release" which "is a question for the arbitrator, not the Court, as it relates to interpretation

of the settlement agreement reached in that proceeding." Doc. 141 at 8-9. Mr. Windhorst therefore

also objects to the denial of his the Motions to Vacate to the extent Mr. Windhorst's Rule 60(b)(5)

argument depends on the arbitrator's decision.

> b. <u>The Magistrate Judge clearly erred in summarily rejecting several of Mr. Windhorst's other arguments for vacatur.</u>

The Magistrate Judge also clearly erred in rejecting several of Mr. Windhorst's other

arguments in support of his Motions to Vacate. Specifically, the Magistrate Judge concluded,

without any analysis whatsoever, that "Mr. Windhorst's arguments regarding the totality of the

circumstances, quick action he took to correct the delay, and a meritorious defense are similarly

unavailing." Doc. 141 at 6. Not only are each of these findings clearly erroneous and/or contrary

to law, the Sanctions Order does not mention let alone address Mr. Windhorst's arguments that

the Court should vacate the Deposition Order and OSC Order under Rule 55(c) and/or pursuant to

the Court's inherent authority.

First, Mr. Windhorst has shown vacatur of the two orders is warranted under Rule 60(b)(6).

As explained in Mr. Windhorst's Motion to Vacate the Deposition Order (Doc. 115 at 16-17), the

totality of the circumstances warrants vacating the two orders because Mr. Sabag has been made

whole and refuses to comply with his obligations under the Settlement Agreement, including

refusing to dismiss this very proceeding (which has now resulted in Mr. Windhorst being

sanctioned), and seeks to take a deposition of Mr. Windhorst solely for purposes of harassment

and in violation of Mr. Windhorst's privileges. Additionally, allowing the Deposition Order and

the OSC Order to stand in light of Mr. Sabag's contractual obligation to dismiss this proceeding

risks undermining the public's confidence in the judicial process because if parties, like Mr. Sabag

here, are allowed to eschew their settlement obligations by maintaining litigation of claims they

agreed to dismiss or release, the court will be fostering the circumvention of well-established

federal and state policies favoring the enforcing contractual agreements and, in particular, settlement agreements. *See, e.g., St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992) (recognizing U.S. federal "policy favoring enforcement of contracts"); *Denburg v. Parker Chapin Flattau & Klimpl*, 624 N.E.2d 995, 1000 (N.Y. App. 1993) (recognizing New York's "[s]trong policy considerations favor the enforcement of settlement agreements"). On top of that, the circumstances here are particularly extraordinary as the Court lacked jurisdiction in the first place to order any deposition of Mr. Windhorst by Mr. Sabag. *See supra*, §IV.2.a.

Second, Mr. Windhorst took quick action to remedy the delay. As explained in detail in Mr. Windhorst's Motions to Vacate (Doc. 115 at 17-20; Doc. 116 at 16-18), Mr. Windhorst prioritized making Mr. Sabag whole, for the very purpose of resolving the pending litigation between the parties. The Magistrate Judge's finding that Mr. Windhorst intended to ignore the Court's orders fails to consider the fact that under the parties' Settlement Agreement payment of the settlement monies would have terminated this very proceeding. Moreover, Mr. Windhorst would have timely opposed Mr. Sabag's Motion for Order to Show Cause but for Mr. Sabag's counsel requesting additional time to confer with his client following the passing of Mr. Sabag's mother, and in fact offered to file a joint letter to keep the Court apprised on the parties' conferral, only to be rebuffed on the grounds that this District does not permit the filing of letters. *See* Doc. 119 ¶ 6 (explaining offer to file a joint letter and delay due to Mr. Sabag's mother passing). The Magistrate Judge did not address these crucial facts, which, along with Mr. Windhorst tendering payment, retaining counsel, initiating arbitration, and moving to vacate the Orders, plainly demonstrates that Mr. Windhorst acted quickly in light of the circumstances. Likewise, the Magistrate Judge did not address Mr. Windhorst's cases showing that significantly longer delays

have been excused on the basis of quick action.  *See* Doc. 115 at 18.  The record simply does not support the Magistrate Judge's finding that Mr. Windhorst's actions to correct his delay were not quick, and the Court should sustain Mr. Windhorst's objections at least on that basis.

Third, the Magistrate Judge clearly erred in holding Mr. Windhorst lacks a meritorious defense.  Indeed, the Magistrate Judge never addresses the merits of Mr. Windhorst's § 1782 arguments on the basis that Mr. Windhorst waived them.  *See* Doc. 141 at 8.  But as explained above, *supra*, §IV.1, that finding of waiver is a textbook example of clear error.  And as discussed above, *supra*, §IV.2, and explained in detail in Mr. Windhorst's Proposed Opposition (Doc. 115-3), Mr. Windhorst has shown the Supplementary Request fails to satisfy § 1782's statutory requirements and discretionary factors.

Fourth, the Magistrate Judge clearly erred by not addressing Mr. Windhorst's arguments for vacatur pursuant to Rule 55(c) and/or the Court's inherent authority to reconsider its own orders.  The Magistrate Judge's failure to address let alone mention these arguments is clear error. *See supra*, §IV.1 (citing cases).  Indeed, while Mr. Windhorst maintains he has established multiple grounds for vacatur under the more stringent standard of Rule 60(b), Rule 55(c) provides for relief under the same legal test albeit applied more liberally.  *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989) ("The test is the same for relief under either Rule 55(c) or Rule 60(b), but is more liberally applied in the Rule 55(c) context.").  As such, the Magistrate Judge imposed the more stringent Rule 60(b) standard without explaining why Mr. Windhorst was required to meet that heighted burden.

For at least these reasons, Mr. Windhorst objects to the Orders as the Magistrate Judge clearly erred in refusing to vacate the Deposition Order and OSC Order.

**4.     The Magistrate Judge Clearly Erred in Sanctioning Mr. Windhorst.**

The Magistrate Judge clearly erred by imposing sanctions on Mr. Windhorst. Specifically, the Magistrate Judge sanctioned Mr. Windhorst for his "violation of the Court's order in Filing No. 105" (i.e., the Deposition Order). Doc. 141 at 7. But as explained above, *supra*, §IV.2, the Magistrate Judge clearly erred in issuing the Deposition Order. Since that Deposition Order should never have been issued in the first place, the Magistrate Judge erred by sanctioning Mr. Windhorst for a violation of it. *See, e.g.*, *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 860 (7th Cir. 1994) (reversing the district court's imposition of sanctions for violation of the underlying order which the district court did not have authority to issue); *Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1444 (N.D. Ill. 1995) ("The consequence of [the underlying order being reversed] would be the reversal of any sanctions imposed for violating the order now adjudged to be invalid."); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locs. 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1152-53 (D.C. Cir. 1978) (vacating Rule 37 sanctions order based on party's failure to comply with a discovery order that was also to be vacated because "the validity of the sanctions imposed under Rule 37(b)(2)(A) depends, in the first instance, on the validity of the discovery orders on which they were based.").

Independently, the Sanctions Order is contrary to law as the Magistrate Judge did not have authority to impose sanctions. Although the Sanctions Order does not expressly cite Rule 37, it is clear from Mr. Sabag's Motion for OSC that the Magistrate Judge imposed sanctions pursuant to Rule 37. *See* Doc. 107 at 1 ("Sabag requests that this Court order sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii)."). But "[i]n the Seventh Circuit, motions for sanctions under Rule 37 are considered 'dispositive,' thereby requiring a magistrate judge to issue a report and recommendation." *Barmore v. City of Rockford*, 2014 WL 12791639, at *4 (N.D. Ill. Aug. 20,

2014) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 868-69 (7th Cir. 1996)); *see also Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 431 (N.D. Ill. 2012) (holding motion for Rule 37 sanctions "is a dispositive matter under Seventh Circuit precedent" and thus "required [the magistrate judge] to issue a report and recommendation to [the district court] pursuant to Rule 72(b)."). As such, and irrespective of the fact that the Deposition Order should never have been issued, the Magistrate Judge lacked authority to issue an <u>order</u> sanctioning Mr. Windhorst, thereby rendering any sanctions contrary to law.

Accordingly, Mr. Windhorst objects to the imposition of any sanctions resulting from his failure to comply with the Deposition Order.

## V.    CONCLUSION

For the foregoing reasons, Mr. Windhorst respectfully requests that this Court 1) overrule the portions of the Order on Show Cause Hearing and Pending Motions that Mr. Windhorst objects; 2) vacate in part the Sanctions Order to the extent it denied Mr. Windhorst's Motions to Vacate and imposed sanctions on Mr. Windhorst;[9] 3) vacate the Deposition Order; and 4) vacate the OSC Order.


DATED: May 8, 2023                /s/ Ann O'Connor McCready
                                  Ann O'Connor McCready, Atty. No. 32836-53
                                  Taft Stettinius & Hollister LLP
                                  One Indiana Square, Ste. 3500
                                  Indianapolis, IN 46204
                                  (317) 713-3500
                                  ammcready@taftlaw.com

---

[9]  Mr. Windhorst does not object to, and thus does not seek to vacate, the Sanctions Order to the extent it granted Mr. Windhorst's alternative motion to stay the Deposition Order pending resolution of the parties ICDR arbitration.  Doc. 141 at 1, 9-10.

*/s/ Lucas V.M. Bento*
Lucas V.M. Bento (New York Bar No. 4907986)
lucasbento@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave. 22d Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

Gavin S. Frisch (Mass. Bar No. 704216)
gavinfrsich@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Ste. 520
Boston, MA 02199
Telephone: (617) 712-7100
Fax: (617) 712-7200

*Attorneys for Lars Windhorst*

**CERTIFICATION OF SERVICE**

I hereby certify that on May 8, 2023, a copy of the foregoing Objections was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

<u>/s/ Ann O'Connor McCready</u>
Ann O'Connor McCready