UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) |
| The Application of: | ) |
| | ) Case 1:19-mc-00084-JPH-TAB |
| ELI SABAG, for an Order Pursuant to 28 | ) |
| U.S.C. § 1782 to Conduct Discovery for Use | ) |
| in Foreign Proceedings. | ) |

## ELI SABAG'S RESPONSE IN OPPOSITION TO LARS WINDHORST'S EXPEDITED MOTION FOR STAY OF SANCTIONS PENDING RESOLUTION OF OBJECTIONS

Applicant Eli Sabag ("Mr. Sabag"), by counsel, hereby responds in opposition to Lars Windhorst's ("Mr. Windhorst") Expedited Motion for Stay of Sanctions Pending Resolution of Objections ("Motion for Stay").

Mr. Windhorst's Motion to Stay undermines his own credibility, as he now files a new motion to vigorously fight the payment of sanctions that he previously told this Court that he was offering to pay. In his motion, Mr. Windhorst misclassifies what is actually a request for injunctive relief, as a "motion to stay proceedings" in order to ignore the exceptionally high burden that applies to this kind of motion. In short, Mr. Windhorst continues to engage in more gamesmanship which should be further sanctioned, and his request for a stay of his payment obligations under this Court's Order on Show Cause Hearing and Pending Motions ("Sanctions Order") should be denied.

Mr. Windhorst relies on *Joyner v. Tyson Foods, Inc.*, 2007 WL 9751846, * 1 (S.D. Ind. May 3, 2007) for its recitation of the three factors this Court should consider when determining whether a stay is appropriate. *Joyner* involved a stay of a "proceeding" based on this Court's inherent authority to manage its own docket. This Court has already stayed this proceeding with respect to Mr. Sabag's supplemental request for discovery. Mr. Windhorst is actually seeking a stay of a

payment obligation "pending appeal" which requires that Mr. Windhorst show, *inter alia*, that he would likely prevail on appeal.

    **I.**    **Mr. Windhorst's Motion for a Stay of the Sanctions Order is Not Supported by Applicable Case Law.**

In *Whole Woman's Health All. v. Rokita*, 2021 WL 3673785, * 1 (S.D. Ind. 2021), this Court determined that the standard for a stay pending appeal is the following:

> The grant of a motion to stay is an exercise of judicial discretion and it is the moving party's burden to demonstrate that a stay is warranted. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). In deciding whether to grant a motion to stay pending appeal, the Court considers: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. (quotation marks and citation omitted). The first two factors "are the most critical" in this determination. *Id*.

"The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction."[1] "As with a motion for a preliminary injunction, a 'sliding scale' approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa."[2] The purpose of a stay pending appeal "is to minimize the costs of error."[3] Mr. Sabag now addresses all four stay factors which strongly disfavor any stay.

    **A.**    **Mr. Windhorst's Rule 72(a) Objection to Sanctions is Not Likely to Succeed on the Merits**

In *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223-24 (7th Cir. 1992), the Seventh Circuit held:

---

[1] *A&F Enters., Inc. II v. IHOP Franchising LLC*, 742 F.3d 763, 766 (7th Cir. 2014).

[2] *Id*.

[3] *Id*.

> We cannot understate the difficulty of the task litigants face when challenging a district court's choice of sanctions. They must convince us that the district court abused its discretion in sanctioning them--a burden which is met only when it is clear that no reasonable person would agree the trial court's assessment of what sanctions are appropriate. . . . Most are unable to meet so demanding a standard. . .
>
> [T]he Supreme Court has expressly stated that sanctions may be appropriate in any one of three instances--where the noncomplying party acted either with willfulness, bad faith or fault. These three measures of culpability are each wholly distinct from one another. "Bad faith," for instance, is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order. "Fault," by contrast, doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct--or lack thereof--which eventually culminated in the violation.

(citations omitted).

The Sanctions Order has already found Mr. Windhorst's conduct to represent gamesmanship which caused delay in this matter. (Doc. 141, p. 10). Mr. Windhorst has the burden to show that his objections to the Sanctions Order would likely succeed on the merits, and he fails to address the issue. Mr. Windhorst's own affidavit explains that he made a choice to ignore this Court in favor of other proceedings. This Court correctly found that Mr. Windhorst was in contempt of its orders and properly levied sanctions against him.

### B. Mr. Windhorst will Not Suffer Irreparable Injury Absent a Stay

Mr. Windhorst also argues that the enforcement of the portion of this Court's Sanctions Order to pay Mr. Sabag's fees will cause him to suffer "irreparable harm" to his personal reputation. (Doc. 144, p. 2). Mr. Windhorst was well-advised about the potential consequences of his failure to obtain new counsel and participate in this matter. (Doc. 100-1, p. 1; Doc. 101-1, p. 2). Any reputational harm that may arise for Mr. Windhorst when being forced to pay a sanctions award was brought about by Mr. Windhorst's own actions in failing to comply with this Court's order for his deposition. Mr. Windhorst has already stated to this Court that he was willing to pay

Mr. Sabag for his legal fees incurred in preparing for the deposition so he cannot now argue that the payment of those fees would harm him. (Doc. 119, ¶ 8).

Finally, Mr. Windhorst's reputation is not pristine. This case does not represent the first time that Mr. Windhorst has been credibly accused of failing to live up to his obligations and/or engaging in litigation gamesmanship. (Doc. 6-21; Doc. 6-24; Doc. 6-25; Doc. 6-26; Doc. 6-27; Doc. 6-28; Doc. 6-29; Doc. 6-30; Doc. 6-31; Doc. 77-3). Accordingly, this Court's Sanctions Order will not cause Mr. Windhorst irreparable injury.

### C. Mr. Sabag will be Substantially Injured if a Further Stay Granted

Mr. Sabag followed the rules, and Mr. Windhorst's violation of those same rules cost Mr. Sabag substantial legal fees. In Mr. Windhorst's Motion for Stay, Mr. Windhorst baselessly concludes that a "stay will not substantially prejudice Mr. Sabag, especially in light of Mr. Sabag being contractually bound to dismiss, release, and not pursue this proceeding." (Doc. 144, p. 2).

This Court's Sanctions Order resulted from Mr. Windhorst's violation of the Sanctions Order which occurred <u>before</u> Mr. Windhorst could even make his meritless argument that his subsequent payment of an ICDR final award required Mr. Sabag to dismiss this proceeding.[4]

Mr. Windhorst also claims that Mr. Sabag "refused Mr. Windhorst's offer in February 2023 to compensate him for his fees and costs related to the filing of the motion for an order to show cause and the deposition." (Doc. 114, p. 2). Mr. Windhorst's arguments presume that he had

---

[4] Mr. Windhorst (and his BVI entity) and Mr. Sabag entered into a settlement agreement in June 2022, and the parties amended the agreement in July 2022. (Doc. 118-1; Doc. 118-3). Mr. Sabag filed his Supplementary Request for Discovery on October 11, 2022. (Doc. 98). Mr. Sabag sought and received a partial and final ICDR arbitration award which collectively terminated all prior claims under the settlement agreement(s) in November 2022. (Doc. 118-6; Doc. 118-11; Doc. 118-12). This Court granted Mr. Sabag's Supplemental Request for Discovery on December 15, 2022, ordering Mr. Windhorst's deposition on or before January 30, 2023. (Doc. 105). Mr. Windhorst failed to participate in selecting a date for his deposition and failed to appear at his deposition, scheduled for January 27, 2023. (Doc. 107, p. 1-2). Mr. Sabag filed his Motion for Order to Show Cause on February 1, 2023. (Doc. 107). Mr. Windhorst satisfied the ICDR Final Awards on February 8, 2023. (Doc. 118, ¶ 18). Mr. Windhorst filed his Motions to Vacate and Stay to object to Mr. Sabag's Suppelmentary Request to Depose (filed in October 2022) on March 9, 2023. (Doc. 115; Doc. 116).

defined what he would pay and that Mr. Sabag could trust Mr. Windhorst's promise to pay.[5] Mr. Windhorst is now fighting his obligation to pay after previously suggesting a willingness to pay.

Finally, this Court has not ruled, as Mr. Windhorst suggests, that Mr. Sabag was contractually bound to dismiss this Section 1782 Proceeding. Mr. Windhorst now asks this Court should pre-judge an issue which this Court stated in its Sanctions Order that it would not do. Mr. Windhorst is well aware of the fact that his newest ICDR arbitration, which is about to begin with a new ICDR arbitrator, is slated to address his claims.[6] Mr. Sabag has denied, and continues to deny, that he is contractually bound to dismiss this matter at length in other filings pending before this Court.[7]

### D. Public Interest Weighs Against a Stay

This Court has held, citing Seventh Circuit precedent, that "[s]anctions serve two purposes: to penalize parties who do not follow the rules and to deter others tempted that abusive conduct has no consequences." *Freeman v. Ocwen Loan Servicing, Inc.*, 2022 WL 2652098, *3 (S.D. Ind.

---

[5] To date, Mr. Windhorst has breached a number of agreements with Mr. Sabag and, as described in detail by a large group of the most prestigious international financial journals, Mr. Windhorst has a pattern, dating back longer than 15 years, of failing to honor his debts. (Doc. 6-21; Doc. 6-24; Doc. 6-25; Doc. 6-26; Doc. 6-27; Doc. 6-28; Doc. 6-29; Doc. 6-30; Doc. 6-31; Doc. 77-3). The Sanctions Order (Doc. 141) cemented Mr. Windhorst's obligation to pay and only with that Order has Mr. Sabag felt comfortable in attempting to reach an agreement with Windhorst on legal fees.

[6] As set out more fully in Mr. Sabag's Objections to the Sanctions Order (Doc. 142), Mr. Sabag denies that Mr. Windhorst is entitled to arbitral review of his claims because he waived those claims, based on his litigation conduct in this proceeding. Mr. Windhorst and Mr. Sabag did not agree to arbitrate issues of "litigation waiver" (based on his litigation conduct), and the U.S. Supreme Court recently ruled that district courts should not create "novel rules" to stay litigation waiver cases (based on litigation conduct) in favor of arbitration. *See Morgan v. Sundance*, 142 S,Ct. 1708, 1709 (2022). To the extent that there are issues to be arbitrated, Mr. Windhorst will be required to prove to a new ICDR arbitrator (appointed last week) that (1) the tribunal has jurisdiction to hear his claims after the original ICDR arbitrator already dismissed those same claims through a ICDR Final Award in November 2022 and (2) Mr. Sabag had not already terminated the settlement agreement when he sought the ICDR Final Award.

[7] The prior order of the ICDR Emergency Arbitrator, holding that Mr. Windhorst would not suffer irreparable harm if his deposition were to be immediately held, was non-binding. The part of the order of the ICDR Emergency Arbitrator that found an agreement to arbitrate was based solely on jurisdictional grounds, not on the actual merits of a binding agreement. The briefings were emergency-based and focused primarily on "irreparable harm."

5

2022) (citing *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005)). Granting a stay of sanctions to Mr. Windhorst would only encourage Mr. Windhorst (and others) to continue his gamesmanship.

Mr. Windhorst further argues that a stay will conserve judicial resources because Mr. Windhorst is presently fighting Mr. Sabag's claim for legal fees, and that self-manufactured fight will consume judicial resources. As the Seventh Circuit in *Central Illinois Carpenters Health & Welfare Trust Fund v. Con-Tech Carpentry*, LLC, 806 F.3d 935, 937-38 (7th Cir. 2015) noted in a case with similar facts, "it is impossible to handle a suit in which a litigant unilaterally decides to march to the beat of its own drum."

## II. The Sanctions Order is Not a Dispositive Ruling

Mr. Windhorst has argued that this Court erred by not issuing its Sanctions Order as a "report and recommendation." He refers to older cases from the Northern District of Indiana and claims that Rule 37 awards of fees and costs are "dispositive" rulings. This Court's recent ruling in *Annie Oakley Enters. v. Amazon.com, Inc.*, 2021 WL 2373779, *8 (S.D. Ind. June 10, 2021) explains why Mr. Windhorst's arguments are misplaced:

> The Court acknowledges that there is a split of authority among district courts in this Circuit concerning whether awarding fees and costs under Rule 37 is a dispositive or a non-dispositive matter, and the Seventh Circuit Court of Appeals has never squarely addressed the issue. *See Cage v. Harper*, 2020 WL 1248685, at *5 (N.D. Ill. Mar. 16, 2020) (collecting cases). However, "[e]very United States Court of Appeals that has examined the issue directly has held that a Rule 37 award of attorneys' fees and costs is a nondispositive order," *id*. at *1, and this Court is among those that have applied the clearly erroneous or contrary to law standard of review when reviewing a magistrate judge's order relating to fees under Rule 37, *see Alerding Castor Hewitt LLP v. Fletcher*, 2019 WL 1746284, at *1-2 (S.D. Ind. Apr. 18, 2019).

Moreover, in *Davis v. Ind. Packers Corp.*, 2022 WL 15739240, *1 (N.D. Ind. Oct. 28, 2022), the Northern District of Indiana recently reversed its once-held position on Rule 37 awards

6

when holding that, "[t]he balance of authority in this circuit holds that because monetary sanctions imposed by a magistrate judge are 'not case dispositive;' Rule 72(a) supplies the appropriate standard of review."

### Conclusion

Mr. Windhorst's Expedited Motion for Stay of Sanctions Pending Resolution of Objections should be denied and Mr. Sabag should be awarded additional legal fees under Rule 37 which follow from Mr. Windhorst's litigation conduct that led to this Court's initial Order of Sanctions.

Dated:  May 15, 2023

Respectfully submitted,

*Offer Korin*
Offer Korin, No.: 14014-49
Brooke Smith, No. 32427-03
STOLL KEENON OGDEN PLLC
334 N. Senate Avenue
Indianapolis, IN  46204
Office:  317-464-1100; Fax:  317-464-1111
offer.korin@skofirm.com
brooke.smith@skofirm.com

Courtney Caprio [Admitted *pro hac vice*]
AXS LAW GROUP, PLLC
2121 NW Second Avenue, Suite 201
Miami, FL  33127
Office:  305-297-1873; Fax:  305-397-2336
courtney@axslawgroup.com

*Counsel for Movant Eli Sabag*

**CERTIFICATE OF SERVICE**

  I hereby certify that on **May 15, 2023**, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's ECF. Parties may access this filing through the Court's system.

| | |
|---|---|
| Sean Tyler Dewey<br>Michael A. Wukmer<br>ICE MILLER LLP<br>*Counsel for Track Group* | sean.dewey@icemiller.com<br>michael.wukmer@icemiller.com |
| Ann O'Connor McCready<br>TAFT STETTINIUS & HOLLISTER LLP<br>*Counsel for Lars Windhorst* | amccready@taftlaw.com |
| Gavin S. Frisch [PHV]<br>Lucas V.M. Bento [PHV]<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>*Counsel for Lars Windhorst* | gavinfrsich@quinnemanuel.com<br>lucasbento@quinnemanuel.com |

                *Offer Korin*
                Offer Korin