**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re:<br>The Application of:<br><br><br>ELI SABAG, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Case No.: 1:19-mc-00084-JPH-TAB |

**LARS WINDHORST'S RESPONSE TO APPLICANT ELI SABAG'S OBJECTIONS TO
MAGISTRATE JUDGE'S ORDER ON SHOW CAUSE HEARING AND PENDING
MOTIONS (DOC. 141)**

Mr. Lars Windhorst ("Mr. Windhorst"), by and through his counsel, respectfully submits

this Response to Applicant Mr. Eli Sabag's ("Mr. Sabag") Objections to Magistrate Judge's Order

on Show Cause Hearing and Pending Motions (Doc. 141) (Doc. 142, "Mr. Sabag's Objections").

## I.       PRELIMINARY STATEMENT

The facts are simple: Mr. Windhorst owed Mr. Sabag nearly $3 million pursuant to a

Settlement Agreement between the two parties, and that payment gave rise to Mr. Sabag's

obligation to dismiss this § 1782 action and release all claims against Mr. Windhorst.  Mr.

Windhorst, facing significant liquidity issues that even caused Mr. Windhorst's prior counsel to

withdraw from this proceeding, ultimately paid late (but made up for it by paying interest and

fees).  Mr. Sabag, indisputably paid in full, now has expressly disavowed his obligation to dismiss

this proceeding (after refusing to say so during meet and confers with Mr. Windhorst's counsel).

Mr. Sabag continues to refuse to abide by his end of the bargain by continuing his attempts

to compel Mr. Windhorst to sit for a deposition for purported use in purely hypothetical foreign

proceedings that have yet to come to fruition now for more than three years.  To support his quest

for revenge, Mr. Sabag now baselessly claims the parties' Settlement Agreement is null and void.

1

This baseless position, which cannot be squared with New York contract law, is the foundation for Mr. Sabag's attempt to eschew (again) his obligation to arbitrate an arbitrable dispute. The parties' Settlement Agreement unambiguously leaves the question of whether Mr. Sabag breached the Settlement Agreement for the arbitrator. The Magistrate Judge correctly held that arbitration is required and had not been waived.

Mr. Sabag now objects to the Sanctions Order (Doc. 141) on two grounds. He first objects that the Magistrate Judge improperly stayed the enforcement of the Deposition Order pending arbitration of Mr. Windhorst's breach of contract claim without considering whether Mr. Windhorst waived his claims to arbitration. The Magistrate Judge, however, was fully apprised of Mr. Sabag's waiver arguments, rejecting them prior to issuing the Sanctions Order. There was simply no need for a lengthy explanation of a clear-cut case of no waiver: it was not possible for Mr. Windhorst to waive his right to arbitrate his breach claim that arose *after* Mr. Sabag filed (and the Magistrate Judge granted) his Supplementary Request to depose Mr. Windhorst. This objection should be overruled.

Mr. Sabag's second objection fares no better than his first. That objection takes aim at the Sanctions Order for failing to address the standard required for granting a stay and for purportedly ignoring the ICDR Emergency Arbitrator's finding that Mr. Windhorst would not be irreparably harmed if the Magistrate Judge elected to order Mr. Windhorst to sit for a deposition. That Mr. Sabag argues these two issues as one objection is quite perplexing, as there is almost no relation between the Magistrate Judge's purported need to articulate the legal standard for a stay and the ICDR Emergency Arbitrator's decision that Mr. Windhorst had not met his burden to show he would be irreparably harmed absent a stay. Indeed, the three-factor standard applied to determine whether a stay is warranted, which looks at the hardship to the moving party, does not require a

specific showing of irreparable harm, which Mr. Windhorst was required to show only to obtain emergency relief from the emergency arbitrator.  In any event, Mr. Sabag's complaint that the Magistrate Judge's failed to articulate the applicable legal standard for a stay pending arbitration rings hollow, as courts routinely adjudicate (and grant) motions to stay without articulating the applicable legal standard, and have considerable discretion to do so.  The Magistrate Judge was clearly apprised of the relevant legal standard for a stay in Mr. Windhorst's Motions to Vacate, and Mr. Sabag never disputed Mr. Windhorst's articulation of the applicable legal standard.  This objection too should be overruled.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background has been extensively briefed in Mr. Windhorst's Motions to Vacate and/or Stay (Doc. 115 at 3-9, Doc. 116 at 3-9) and Mr. Windhorst's Rule 72(a) Objections (Doc. 143 at 3-11), which Mr. Windhorst incorporates by reference here.  This section briefly addresses inaccuracies in Mr. Sabag's "Factual Summary" section of his Objections brief, much of which is argumentative.

First, Mr. Sabag argues "[b]y choosing to intervene in this Section 1782 Proceeding, Mr. Windhorst placed himself within the jurisdiction of this Court to be deposed."  Doc. 142 at 7.  This is an incorrect legal argument, not a fact.  As Mr. Windhorst explains in his Proposed Opposition (Doc. 115-3 at 20-25), the mere fact Mr. Windhorst chose to intervene in this proceeding to *oppose* Mr. Sabag's Original 1782 Application (on the ground that, *inter alia*, Mr. Sabag had not met the jurisdictional requirements under Section 1782 and for personal service, which is a predicate for jurisdiction, Doc. 25 at 6, 13-20) is insufficient  to establish that Mr. Windhorst is "found" in this District.

Second, Mr. Sabag claims that his Supplementary Request to depose Mr. Windhorst "explained to the Court … that (1) the merits of the outside ICDR arbitration between Mr. Sabag

and Mr. Windhorst/Sapinda had now been settled, and (2) Mr. Sabag had been engaged in direct communications with the U.K. Serious Fraud Office regarding Mr. Windhorst since October 2021 despite the ending of the ICDR arbitration."  Doc. 142 at 7.  Both points are misleading.  With regard to the first point, although Mr. Sabag's Supplementary Request informed the Court the prior arbitration resulted in a final award being issued in Mr. Sabag's favor, Mr. Windhorst's current breach of contract claim arose after the issuance of the final award as he did not (and could not) know Mr. Sabag would refuse to comply with the Settlement Agreement until after Mr. Windhorst tendered payment of the settlement funds.  *Infra*, §IV.2.b. And as to the second point, although Mr. Sabag submitted an affidavit related to purported "communications" with the U.K. Securities Fraud Office ("SFO"), he admits in his declaration that he did not directly participate and that he merely "understand[s] that the communications with SFO have continued into the present period." Doc. 98-2 ¶¶ 4-5.  He provides no evidence whatsoever as to the frequency, nature, and content of his counsel's communication with the SFO, let alone any evidence the SFO has responded to his counsel's communications.  *See id.*[1]  As Mr. Windhorst noted in his Proposed Opposition, (Doc. 115-3 at 20) anyone can send an email to the SFO and thus can claim to be in "communication" with the SFO.

Third, Mr. Sabag contends that "[i]f Mr. Windhorst had any claims, he needed to assert them at [the] time [allotted by the 30-day extension to respond to Mr. Sabag's Supplementary Request] or waive them."  Doc. 142 at 8.  This is also a legal argument, not a fact, as evidenced by the fact Mr. Sabag cites to case law, and will be addressed in section IV.2.b below.

---

[1]  Tellingly, Mr. Bibby (Mr. Sabag's UK counsel), who had submitted multiple filings in this case on the purported English proceedings, (Doc. 6-1, Doc. 40-1), was noticeably absent from Mr. Sabag's Supplementary Request.

Fourth, Mr. Sabag contends "Mr. Windhorst's silence was apparent gamesmanship, as he appears to have believed that he could disregard the Court's orders and pay Mr. Sabag at any time of his choosing, while later arguing that he retained arbitration claims that could lead to the dismissal of this Section 1782 Proceeding."  Doc. 142 at 8.[2]  This too is not a fact.  Indeed, Mr. Windhorst submitted a declaration explaining his significant liquidity issues resulted in his inability to timely pay Mr. Sabag (let alone pay Mr. Windhorst's own prior counsel) and that Mr. Windhorst paid Mr. Sabag in full upon resolving his liquidity issues.  Doc. 118 ¶¶ 12-18.  To be clear, Mr. Windhorst did not believe he could pay Mr. Sabag "at any time of his choosing" as he has consistently argued it was up to Mr. Sabag, not Mr. Windhorst, to elect Mr. Sabag's remedy.  Doc. 115 at 6-7; Doc. 119-4 at 8-14; Doc. 132-1 at 23-34.  Mr. Sabag was free to refuse payment and disavow the Settlement Agreement, but he elected to take the payment and affirm the Settlement Agreement.  Doc. 119-4 at 9-12; Doc. 132-1 at 25-34.[3]

Fifth, Mr. Sabag then describes (Doc. 142 at 8-9) the Magistrate Judge's grant of his Supplementary Request as containing a "substantial analysis of the Section 1782 '*Intel* factors." Mr. Windhorst disputes this characterization of the Magistrate Judge's Deposition Order because, as explained in Mr. Windhorst's Rule 72(a) Objections, (Doc. 143 at 24-26), the Magistrate Judge clearly erred in applying the *Intel* factors.

Sixth, Mr. Sabag asserts that, after he moved for an order to show cause following Mr. Windhorst's failed to schedule a mutually convenient time to sit for a deposition within 45 days,

---

[2]   As noted in Mr. Windhorst's Rule 72(a) Objections (Doc. 143 at 16 n.5), Mr. Windhorst did not violate or disregard the Court's order**s**; Mr. Windhorst only failed to comply with a singular order – the Deposition Order.  Mr. Windhorst complied with the OSC Order, as modified by the March 28, 2023 order, by having counsel attend the April 11, 2023 hearing.

[3]   For this reason, Mr. Sabag's assertion that he "took steps to terminate the settlement agreement(s)" is misleading.  Doc. 142 at 9.  Quite the contrary, Mr. Sabag elected to enforce, not terminate, the Settlement Agreement.

"Mr. Windhorst did not respond to Mr. Sabag's notice or Mr. Sabag's counsel's correspondence to assert any claims to the arbitrability of this Section 1782 Proceeding" and "Mr. Windhorst did not respond to [Mr. Sabag's Motion for Order to Show Cause] or raise any claims regarding arbitrability." Doc. 142 at 9. Once again, Mr. Sabag ignores the fact that Mr. Windhorst did not have a breach of contract claim to arbitrate until February 15, 2023. Moreover, in January 2023, Mr. Windhorst and Mr. Sabag were in fact in touch, including via a direct telephone call between the parties and, separately, through their counsel in the BVI. Doc. 118-15 [Correspondence between Mr. Windhorst and Mr. Sabag's BVI counsel] at 22. Further, on February 15, 2023, Mr. Windhorst's counsel contacted Mr. Sabag's Indiana counsel requesting to confer about jointly stipulating to dismiss this case per the parties' Settlement Agreement. Doc. 119 ¶ 4. Mr. Sabag's Indiana counsel stated that due to the passing of Mr. Sabag's mother he would need some time to confer with his client in order to respond, and when he finally emailed Mr. Windhorst's counsel 7 days later he solely stated "[i]t is Mr. Sabag's intent to conduct the deposition of Mr. Windhorst[.]" Doc. 119-1; Doc. 119 ¶¶ 5-7. Simply put, Mr. Windhorst should not be faulted for asking Mr. Sabag to voluntarily comply with his contractual obligation to dismiss this proceeding (rendering Mr. Sabag's OSC Motion moot and the Deposition Order released) before timely resorting to arbitration.

Seventh, Mr. Sabag makes the same meritless point that "Mr. Windhorst did not raise any claims to arbitration in the BVI proceedings" Mr. Sabag initiated in October 2022. Doc. 142 at 9-10. This one, however, he takes a step further to falsely contend "Mr. Windhorst now claims to this Court that all issues related to Mr. Windhorst's payments to Mr. Sabag under the terminated settlement agreement(s) should have been arbitrated." *Id* at 10. Once again, the Settlement Agreement has not been terminated (which is an issue that will be conclusively decided in the

pending arbitration), and Mr. Windhorst is not claiming "all issues related to Mr. Windhorst's payments to Mr. Sabag . . . should have been arbitrated." Rather, Mr. Windhorst contends (1) he did not waive his right to arbitrate a claim that did not exist at the time of these various events, and (2) the current issue of Mr. Sabag's breach of contract is one subject to arbitration pursuant to the parties' Settlement Agreement. *See* Doc. 115 at 24-25; Doc. 132-1 at 35-37.

Ultimately, Mr. Sabag's characterization of the facts is inaccurate. That the Magistrate Judge has (improperly) sanctioned Mr. Windhorst does not mean Mr. Sabag is entitled to cast attorney argument as fact. What the facts reveal is quite straightforward—an arbitration clause that plainly encompasses Mr. Windhorst's claim that Mr. Sabag breached the Settlement Agreement by refusing to dismiss this proceeding following his acceptance of payment.

## III.   STANDARD OF REVIEW

As Mr. Sabag acknowledges, Doc. 142 at 5, Rule 72 objections in this 1782 Action are subject to the "clearly erroneous" standard of review. Nonetheless, Mr. Sabag attempts to carve out an exception: he argues *de novo* review applies to the Magistrate Judge's denial of "a stay to Mr. Sabag for Mr. Windhorst's ICDR arbitration" because "a motion that denies a stay of arbitration may represent a dispositive motion." *Id.* at 6. Mr. Sabag's assertion, once again, is without merit.

Contrary to Mr. Sabag's position, courts have held both motions to stay litigation pending arbitration and motion to stay arbitration in favor of litigation are non-dispositive motions subject to the "clearly erroneous" review. *See, e.g.*, *Chatman v. Pizza Hut, Inc.*, 2013 WL 2285804, at *2 (N.D. Ill. May 23, 2013) ("[F]ederal court's ruling on a motion to stay litigation pending arbitration is not dispositive," because "the court still retains authority to dissolve the stay or, after the arbitration has run its course, to make orders with respect to the arbitral award.") (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010)); *Virgin Is. Water & Power Auth.*

*v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133-34 (3d Cir. 2014) (agreeing with *PowerShare* that motion to stay litigation pending arbitration is non-dispositive); *Highlands Ins. Grp. v. Perini/Nugent Joint Venture*, 1998 WL 377953, at *3, 9 (D.N.J. June 29, 1998) (holding the magistrate judge's order denying a stay of arbitration constitutes a determination of a non-dispositive matter and applying the clearly erroneous review standard).

Thus, it is no surprise Mr. Sabag's reliance (Doc. 142 at 6) on *Atl. Specialty Ins. Co. v. Anthem, Inc.*, 2020 WL 2526000 (S.D. Ind. May 18, 2020) is misplaced. Contrary to Mr. Sabag's contention (Doc. 142 at 6), *Atl. Specialty Ins. Co.* only discussed the potentially dispositive nature of motion to stay *pending* arbitration, not a stay *of* arbitration pending litigation. Indeed, the court explained "motions to stay and compel arbitration" might be dispositive since "an order denying a stay or a motion to compel arbitration may be appealed under 9 U.S.C. § 16." *Atl. Specialty Ins. Co.*, 2020 WL 2526000 at *3. As such, in relying on *Atl. Specialty Ins. Co.* Mr. Sabag conflates motions to stay litigation *pending* arbitration with motions to stay arbitration pending litigation,[4] and he thus provides no authority for the proposition that a motion to stay arbitration is subject to *de novo* review.

Finally, even assuming *arguendo* that *de novo* review applies to the Magistrate Judge's decision to deny Mr. Sabag's requested stay, it is all for naught. That is because Mr. Sabag has waived his objections to the denial of his request for a stay. Attempting to avoid his clear waiver problem, Mr. Sabag falsely asserts "**[i]n the Sanctions Order, Mr. Sabag's request for a stay was denied**, and instead, the Magistrate Judge stayed this Section 1782 Proceeding in favor of the

---

[4] The same is true of Mr. Sabag's reliance (Doc. 142 at 6 n.9) on *Nextgear Capital, Inc. v. Premier Grp. Autos*, 2020 WL 7777949 (S.D. Ind. Dec. 30, 2020) (treating the magistrate judge's order on "**motion to stay proceedings to compel arbitration**" as "dispositive" and subject to *de novo* review) (emphasis added). *Id.* at *1.

arbitration." Doc. 142 at 17 (emphasis added).   But that is simply not true:  The Magistrate Judge denied Mr. Sabag's emergency motion to stay arbitration (Doc. 122) in an order issued on March 28, 2023, Doc. 131, whereas the Sanctions Order addressed Mr. Windhorst's separate request to stay discovery pending arbitration.  Doc. 141.  As such, under Rule 72, Mr. Sabag, who has been continuously represented by counsel in this proceeding since its inception, was required and able to object to the denial of his motion to stay the arbitration by April 11, 2023, not May 8, 2023.  *See* Fed. R. Civ. P. 72; *cf. Schwartz v. Capital Liquidators, Inc.*, 1988 WL 45624, at *1 (S.D.N.Y. May 2, 1988) ("[B]ecause the plaintiff has appeared *pro se*, I will consider his objections as if they had been timely made."); *Garcia v. Griffin*, 2019 WL 4917183, at *3 (S.D.N.Y. Oct. 4, 2019) (similar); *Becerra v. Doe*, 2008 WL 4999251, at *1 (D. Minn. Nov. 19, 2008) (similar).  Because Mr. Sabag neither filed any objections to the March 28, 2023 order by the April 11, 2023 deadline under Rule 72(a) nor otherwise sought to preserve his objections,[5] he waived any objections to the denial of his motion to stay the arbitration.  *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 n.1 (7th Cir. 2012) (finding failure to timely object under Rule 72(a) can constitute waiver).

Accordingly, the Court should not overrule the Magistrate Judge's stay of the Deposition Order pending arbitration unless it finds the stay is clearly erroneous, i.e., when the "district court is left with the definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997); Doc. 97 at 3 (same).

## IV.   ARGUMENT

As discussed in more detail below, Mr. Sabag's Objections should be overruled.

---

[5]   The Magistrate Judge found that Mr. Windhorst, unlike Mr. Sabag, preserved his objections.  Doc. 141 at 10 n.4.  Indeed, at the April 11 hearing, Mr. Sabag's counsel never once mentioned their request to stay the arbitration, nor indicated his desire to object to the Court's March 28, 2023 order.  *See generally* Doc. 139.

**1.      The Court should overrule Mr. Sabag's attempt to untimely object to the Magistrate Judge's March 28, 2023 Order denying his motion to stay the ICDR arbitration.**

As discussed above, *supra*, §III, and despite being represented by counsel in this proceeding, Mr. Sabag waived and failed to preserve any objections to the March 28, 2023 order denying his motion to stay arbitration.  To the extent Mr. Sabag's objects to that order, the Court should refuse to consider the merits of his objections.

Even if the Court were to consider the merits of Mr. Sabag's argument that the arbitration should be stayed, the result is the same:  Mr. Sabag simply cannot show the Magistrate Judge's refusal to stay the ICDR arbitration was clearly erroneous or contrary to law.  Indeed, Mr. Sabag does not even identify the legal standard the Court should apply to determine whether a stay of the ICDR arbitration is appropriate, *see generally* Doc. 142; Doc. 122, which is noteworthy in light of his arguments in opposition to Mr. Windhorst's motion to stay sanctions that Mr. Windhorst applied the incorrect legal standard for a stay and that a different standard applies for stays of discovery than stays "pending appeal," Doc. 147 at 1-2, not to mention Mr. Sabag's protestations that the Magistrate Judge failed to reference the standard for a stay when staying the Deposition Order.  *Id.* at 17.   Instead, Mr. Sabag rehashes his baseless arguments that Mr. Windhorst waived his right to arbitrate and that the parties do not have a valid arbitration agreement (which is an issue for the arbitrator to decide).  As discussed below, Mr. Windhorst simply did not waive his right to arbitrate his breach of contract claim against Mr. Sabag, *infra*, §IV.2.b, and the parties' Settlement Agreement and the arbitration clause therein, which Mr. Sabag himself has elected to enforce, remains valid and fully applicable to Mr. Windhorst's breach of contract claim currently pending in arbitration.  *Infra*, §IV.2.c.

**2.      The Court should overrule Mr. Sabag's Objection that the Magistrate Judge improperly stayed the Deposition Order pending the ICDR arbitration.**

Turning to Mr. Sabag's timely objections to the Sanctions Order, it is clear his first objection—that the Magistrate Judge improperly granted Mr. Windhorst's motion to stay discovery pending arbitration—lacks merit.  Even if the objection is considered on the merits, much of Mr. Sabag's objection centers on his argument that Mr. Windhorst's conduct in this proceeding between October 2022 and the beginning of February 2023 resulted in waiver of the right to arbitrate a claim that did not exist until February 15, 2023.  Mr. Sabag is not only wrong on the merits of his waiver argument, but he is wrong that the question of waiver is for the Court to decide.

          **a.**        **The Magistrate Judge did not improperly leave the arbitration waiver issue to the arbitrator.**

The crux of Mr. Sabag's objection to the Magistrate Judge's decision to stay the Deposition Order pending the ICDR arbitration is premised on Mr. Sabag's assertion that the Court, not the arbitrator, must decide whether Mr. Windhorst waived his right to arbitrate his breach of contract claim against Mr. Sabag.  *See* Doc. 142 (Sabag arguing "[t]he Magistrate Judge committed reversible error when he failed to analyze, as required by the U.S. Supreme Court and the Seventh Circuit, whether such an arbitration waiver occurred."), *id.* at 3 (Sabag arguing "the Magistrate Judge was not permitted to delegate the issue of arbitration waiver (based on litigation conduct) to an arbitrator unless he first determined that the parties had agreed to arbitrate the issue.").  Mr. Sabag, however, is incorrect.

As explained in Mr. Windhorst's reply brief in support of his Motions to Vacate and/or Stay (Doc. 132-1 at 35), the established principle on waiver of arbitration is "the presumption is that the arbitrator should decide allegations of waiver [and] delay."  *Lumbermens Mut. Cas. v. Broadspire Mgmt. Servs*, 623 F.3d 476, 480 (7th Cir. 2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also Nat'l Am. Ins. Co. v. Transamerica Occidental*

*Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003) (holding all waiver challenges should be submitted to an arbitrator); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) (holding waiver is an issue "presumptively for the arbitrator").[6]

In his Rule 72 Objections, Mr. Sabag tellingly does not address Mr. Windhorst's cases and the well-established presumption that the arbitrator decides issues of waiver and delay.   Instead, he casts the waiver issue here as one of "litigation conduct" waiver, and cites to a number of distinguishable cases for the proposition that litigation-conduct waiver is an issue for the court rather than the arbitrator.  Doc. 142. at 3-4.  This argument falls flat for multiple reasons.

At the outset, this is simply not a case of litigation-conduct waiver.  As courts have recognized, litigation-conduct waiver is "the type of waiver alleged [when] the party seeking arbitration has participated in litigation on the [same] dispute." *Pacelli v. Augustus Intelligence, Inc.*, 459 F. Supp. 3d 597, 614 (S.D.N.Y. 2020) (noting also that "[w]hat goes by the name of 'litigation conduct waiver' is in some ways a form of estoppel"); *see also Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (characterizing the waiver issue in this case as waiver by "choos[ing] a judicial forum for the resolution of a dispute").  Indeed, this is made clear by Mr. Sabag's cited cases, most of which consider a party's affirmative and active participation in the litigation before moving to compel arbitration on the same issues or claims.  For example, in *International Energy Ventures v. United Energy Group*, the movant sought to compel arbitration after it initiated the first litigation more than seven years prior, lost a motion to dismiss in that first

---

[6]  Mr. Sabag (Doc. 142 at 3) mischaracterized the Supreme Court's decision in *Morgan v. Sundance Inc.*, 142 S.Ct. 1708, 1713 (2022) by stating that "[b]ased on this precedent, the Magistrate Judge was not permitted to delegate the issue of arbitration waiver (based on litigation conduct) to an arbitrator unless he first determined that the parties had agreed to arbitrate the issue." *Morgan* did not address under what circumstances the issue of waiver goes to the arbitrator. The Supreme Court in that case only held that to find waiver of arbitration, there is no requirement that the conduct has prejudiced the other side.  *Id.* at 1711.

litigation, and then commenced a second litigation on the same claims.  999 F.3d 257, 260-63 (5th Cir. 2021).  The Fifth Circuit thus found the arbitration movant's "persistent pursuit of litigation" constituted waiver.  *Id.*  Similarly, in *HTG Capital Partners, LLC v. John Doe*, the court considered whether the arbitration movant waived the right to arbitrate the underlying dispute by answering the complaint and arguing that the dispute is subject to the exclusive jurisdiction of the commodity exchange rather than arbitration prior to moving to compel the arbitration.  2016 WL 612861 at *6 (N.D. Ill. Feb. 16, 2016).  The same is true of the Supreme Court and Seventh Circuit cases cited by Mr. Sabag (Doc. 142 at 3 n.2): *Morgan v. Sundance Inc.*, 142 S.Ct. 1708 (2022), *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557 (7th Cir. 2008), and *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720 (7th Cir. 2004) each addressed waiver arguments based on the parties' affirmative conduct in the litigation prior to moving to compel arbitration.  *Halim*, 516 F.3d at 562 (contending the party waived arbitration by removing the case to the federal court); *Sharif*, 376 F.3d at 723 (contending the party waived arbitration by moving to dismiss based on improper venue); *Morgan*, 142 S. Ct. at 1711 (addressing situations when the arbitration movants "engage in months, or even years, of litigation" "before deciding they would fare better in arbitration").

Here, in contrast to the facts in Mr. Sabag's cited cases, Mr. Windhorst, proceeding *pro se* at the time due to his liquidity issues, did not make any response in connection with Mr. Sabag's Supplementary Request prior to moving to arbitrate.  Doc. 142 at 2.  Indeed, Mr. Windhorst has never asked the Court to adjudicate his breach of contract claim against Mr. Sabag and has consistently maintain his claim should be resolved in the ICDR arbitration, including by seeking to arbitrate before moving to vacate the Deposition Order and OSC Order.  *Infra*, § IV.2.b.

Mr. Sabag relies *Central Illinois Carpenters Health & Welfare Trust Fund v. Con-Tech Carpentry, LLC*, 806 F.3d 935, 936-37 (7th Cir. 2015) ("*Central Illinois*"), which he claims

13

"directly addressed whether a defendant's litigation conduct through intentional 'silence' (i.e., the failure to respond to a complaint and scheduled hearing) caused a waiver of the defendant's future arbitration claims." Doc. 142 at 4. But in *Central Illinois*, the Seventh Circuit affirmed a denial of a motion to set aside a default judgment – the Court never addressed litigation conduct waiver of arbitration through intentional silence. 806 F.3d at 935-38. Indeed, the Court rejected an argument by the party moving to set aside the default that the party "would have waived its right to arbitrate" if it had "filed an answer or any other substantive paper," explaining "nothing prevents a defendant from filing an answer that demands arbitration and offers other reasons why plaintiffs should not receive judicial relief." *Id.* at 937-38. Thus, if anything, *Central Illinois* supports Mr. Windhorst's position that he did not waive his right to arbitration by "offer[ing] other reasons why [Mr. Sabag] should not receive judicial relief" (i.e., an order allowing him to depose Mr. Windhorst).

Finally, even assuming litigation conduct waiver is a question for the Court, Mr. Sabag presumes that a Court has no authority to stay proceedings unless it expressly finds no waiver. Yet it is axiomatic that the Court has inherent authority and wide discretion to stay proceedings before it. *Ogungemi v. Omnicare, Inc.*, 2023 WL 2139834, at *1 (S.D. Ind. Feb. 17, 2023) ("District courts have the inherent power to control their docket and, as such, enjoy broad discretion when determining whether to stay proceedings…. The Court's decision whether to enter a stay depends entirely on the circumstances of a particular case.") (citing *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *Joyner v. Tyson Foods, Inc.*, 2007 WL 9751846, at *1 (S.D. Ind. May 3, 2007) (same). As such, the Magistrate Judge was not "first required to address the arbitration waiver issue before staying the enforcement of the Court's order permitting Mr. Windhorst's deposition." Doc. 142 at 5.

14

### b. Mr. Windhorst did not waive his right to arbitrate.

Even if the Court decides the arbitration waiver issue, Mr. Windhorst did not waive his right to arbitration.  As explained in detail in Mr. Windhorst's reply in support of his Motions to Vacate (Doc. 132-1 at 36-37), Mr. Windhorst did not waive his right to arbitrate by failing to oppose the Supplementary Request because he did not have a breach of contract claim at that time.  For the same reason, nor did Mr. Windhorst waive his right to arbitration by failing to raise his then-nonexistent claim with the prior arbitrator.  *Id.* at 20-22, 36-37

The facts leave no room for a finding of waiver as a matter of law.  Mr. Windhorst did not have a breach of contract claim until he paid Mr. Sabag.  That payment occurred on February 8, 2023, which triggered Mr. Sabag's obligation to dismiss this proceeding by February 15, 2023.  Doc. 115 at 8; Doc. 126 at 18; Doc. 142 at 10.  It was only on February 27, 2023 that Mr. Sabag confirmed his intent to proceed with the deposition of Mr. Windhorst.  Doc. 119 ¶¶ 4-9.   From that point, Mr. Windhorst's intent was clear and unambiguous: arbitrate his breach of contract claim.  On March 6 2023, Mr. Windhorst timely moved to enforce the Settlement Agreement under the prior ICDR case number.  Doc. 119 ¶ 12; Doc. 119-4 [Windhorst Motion to Enforce Settlement Agreement]; Doc. 123 [Supp. Bento Decl.] ¶¶ 4-6.   Subsequently, on March 9, 2023, Mr. Windhorst filed in this Court his Motions to Vacate and/or Stay – motions that sought a stay ***pending arbitration***.  Docs. 115-117.  Then, after the ICDR informed Mr. Windhorst on March 10, 2023 that the prior ICDR case would remain closed and that he should submit a new claim, Doc. 123-1, Mr. Windhorst, on March 16, 2023, filed his Notice of Arbitration and Statement of Claim and an Application for Emergency Relief.  Doc. 123 ¶ 8; Doc. 123-5; Doc. 123-6.

In light of these facts, Mr. Sabag's additional cited cases (Doc. 142 at 11-16) have little relevance here.  In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388 (7th

Cir. 1995), for example, the defendant moved to compel arbitration only after it had removed the case to the federal court, litigated the case for 10 months, and had the opposing party produce over two thousand documents in response to its discovery demands.  50 F.3d at 389.  The Seventh Circuit held "there [was] no plausible interpretation of the reason for the delay except that [the arbitration movant] initially decided to litigate its dispute with [the opposing party] in the federal district court, and that later, for reasons unknown and with no shadow of justification, [the arbitration movant] changed its mind and decided it would be better off in arbitration." *Id.* at 391.  Likewise, in *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.,* 969 F.2d 585 (7th Cir. 1992), the party moved for arbitration of the claims at issue in the litigation after litigating for two years and losing both a motion to dismiss and a motion for summary judgment. *Id.* at  588-590.  Similarly, in *Grumhaus v. Comerica Securities Inc*., 223 F.3d 648 (7th Cir. 2000), the Court held the arbitration movants waived their right to arbitrate as they had initiated the litigation, litigated the case for more than a year, and moved to arbitrate only after the court dismissed their claims.  *Id.* at 650, 653.  So too is the case in *Magallanes Inv., Inc. v. Circuit Systems, Inc.*, 994 F.2d 1214 (7th Cir. 1993), which involved the Seventh Circuit finding waiver of the right to arbitrate where the parties deliberately "cho[se] to contest the issue under Illinois law in federal court" instead of under English law in England, as provided by the relevant arbitration clause.   *Id.* at 1218.[7]  Indeed, despite Mr. Sabag's assertion, Doc. 142 at 16, Mr. Windhorst has never "initiated [his breach of contract] claim[] in this Section 1782 Proceeding," so there are no claims here that Mr. Windhorst "identically raised in the arbitration."

---

[7]  Mr. Sabag again cites to *Morgan v. Sundance*, which, as explained above, *supra*, at  12 n.6, has essentially no relevance to the facts here.

Ultimately, nothing Mr. Windhorst did was inconsistent with his right to arbitrate.  Indeed, as the Emergency Arbitrator succinctly and aptly put it, "Mr. Windhorst did what he had to do in Court, while consistently seeking to resolve disputes with Mr. Sabag in arbitration. There was no waiver."  Doc. 135-1 ¶ 52.

### c.    The parties agreed to arbitrate Mr. Windhorst's breach of contract claim.

Mr. Sabag continues to argue there is no agreement to arbitrate Mr. Windhorst's claim that Mr. Sabag breached the Settlement Agreement by, *inter alia*, refusing to dismiss this proceeding. *See, e.g.*, Doc. 142 at 3 ("[T]he Magistrate Judge was not permitted to delegate the issue of arbitration waiver (based on litigation conduct) to an arbitrator unless he first determined that the parties had agreed to arbitrate the issue. They had not."); *Id.* at 9 ("Mr. Sabag took steps to terminate the settlement agreement."); *id.* at 10 ("[T]he original ICDR arbitrator … ruled in his Final ICDR Awards that … all claims and counterclaims found under those settlement agreement(s) were now 'dismissed.'").

This issue has been briefed extensively,[8] so Mr. Windhorst will not rehash all of his arguments here.  But it is noteworthy, as Mr. Sabag acknowledges (Doc. 142 at 19-20), that the Emergency Arbitrator expressly rejected Mr. Sabag's arguments challenging the ICDR's jurisdiction and previewed that Mr. Windhorst is likely to prevail on the merits of his breach of contract claim:

---

[8]   *See* Doc. 115 at 23-25 (showing the Settlement Agreement contains a valid arbitration agreement); Doc. 132-1 at 16-19 (explaining the ICDR's jurisdiction is not affected by the inclusion of case number in the arbitration agreement);  *Id.* at 19-23 (explaining the ICDR still has jurisdiction because the prior arbitration did not and could not have dismissed Mr. Windhorst's breach of contract claim against Mr. Sabag, which arose only after Mr. Windhorst has paid Mr. Sabag); *id.* at 6-7, 23-35 (explaining despite of Mr. Windhorst's breach, Mr. Sabag chose to affirm, rather than terminate the contract and in any event, terminating the Settlement Agreement does not affect the arbitration agreement).

"Paragraph 13 of the Settlement Agreement establishes arbitral jurisdiction over the claim alleged in Mr. Windhorst's Notice of Arbitration and Statement of Claim.... [Regarding Mr. Sabag's argument that parties have only agreed to arbitrate in a case with the case number specified in the arbitration agreement], [t]here is no statement in any document that I saw, and no statement in any document brought to my attention by counsel, that suggested the ICDR case number was to have substantive importance or that the parties had agreed to put a time limit on their broad agreement to arbitrate any disputes about whether their Settlement Agreement had been breached. Rather, the specification of a particular case number at the chosen arbitral institution appears to be a logistical choice, i.e., a choice as to an administrative matter that, under controlling New York law, does not override the parties' fundamental agreement to arbitrate disputes.

…

[Regarding the continued validity of the Settlement Agreement], [i]t was not up to Mr. Windhorst (the breaching party) to elect the remedy; it was up to Mr. Sabag (the nonbreaching party) to elect the remedy. He elected to enforce the Settlement Agreements and, under New York law, his obligations under those same agreements remained.

…

[Regarding Mr. Sabag's argument that the prior arbitrator has dismissed all claims], [t]he prior arbitrator wrote carefully. The 'Settlement Enforcement Award' was incorporated by reference, and the blanket dismissal was limited to "this arbitration,' not 'the Settlement Agreement.' … [Mr. Windhorst's breach of contract claim against Mr. Sabag] cannot have been an issue arising out of the prior arbitration, and it cannot have res judicata effects here, for Mr. Sadag's alleged breach occurred in February 2023 – four months after the prior arbitration ended."

Doc. 135-1 ¶¶ 17, 24-25, 43, 49-50.

In response, all Mr. Sabag says is that the Emergency Arbitrator opinion is nonbinding,[9] and that he "believes he will be meritorious on both points" when the issues are before the merits arbitrator. Doc. 142 at 20. Mr. Sabag's mere hope and speculation that he will ultimately win the arbitration, however, is simply not a legitimate reason to reverse the stay of the Deposition Order

---

[9] As further evidence of Mr. Sabag's "have [his] cake and eat it too" mentality, he baselessly claims the Emergency Arbitrator's finding on irreparable harm is binding while simultaneously arguing everything else the Emergency Arbitrator found is nonbinding. Doc. 142 at 5 n.8. As explained below, *infra*, §IV.3.b, the Emergency Arbitrator's irreparable harm determination does not bar this Court from staying discovery pending arbitration.

pending the resolution of the ICDR arbitration. Accordingly, the Court should overrule Mr. Sabag's first Objection.

> **3. The Court should overrule Mr. Sabag's Objection that the Magistrate Judge failed to address the standard required for granting a stay and provided no legal grounds to stay discovery.**

Mr. Sabag's second objection fares no better than his first. Mr. Sabag's second objection, while captioned "The Sanctions Order Failed to Address the Standard Required for Granting a Stay Thereby Ignoring the Holding of an ICDR Emergency Arbitrator Who Found that No Irreparable Harm Would Occur if Mr. Windhorst's Deposition Were Immediately Held" (Doc. 142 at §II), actually creates a strawman out of a hodgepodge of meritless arguments.

First, Mr. Sabag implies the Magistrate Judge erred by granting Mr. Windhorst's alternative motion for a stay pending arbitration without expressly stating the legal standard for granting a stay. But he provides no basis whatsoever that this warrants reversal of the Magistrate Judge's decision.

Second, Mr. Sabag objects on the basis that the Magistrate Judge granted Mr. Windhorst's alternative motion for a stay despite the Emergency Arbitrator's findings on irreparable harm. This argument is belied by his own articulation of the applicable legal standard, which does not require a showing of irreparable harm.

Third, Mr. Sabag baselessly claims "The Sanctions Order [] provide[d] no appropriate legal grounds to stay the Section 1782 discovery in this matter pending the outcome of the arbitration." Doc. 142 at 17; *see also id.* at 1 ("Mr. Sabag objects to Magistrate Judge's legal conclusion that Mr. Windhorst's deposition should be stayed pending the resolution of Mr. Windhorst's arbitration proceedings."). That statement could not be further from the truth, as the Magistrate Judge had ample reasons to stay discovery pending arbitration.

Ultimately, as described in further detail below, Mr. Sabag's second objection should be overruled.

> ### a. The Magistrate Judge did not clearly err by not articulating the legal standard governing a motion to stay inquiry.

Mr. Sabag's first attempts to reverse the Magistrate Judge's decision to stay the Deposition Order pending resolution of the parties' arbitration on the basis that the Magistrate Judge did not articulate the legal standard applicable for granting a stay. This argument cannot withstand scrutiny.

In a single heading, Mr. Sabag implies the Magistrate Judge erred by "fail[ing] to address the standard required for granting a stay." Doc. 142 at §II. But courts, which have inherent authority to stay proceedings to manage their own dockets, *e.g.*, *Joyner*, 2007 WL 9751846, at *1, routinely grant motions to stay without articulating the legal standard they are applying. *See, e.g.*, *Heckler & Koch, Inc. v. German Sport Guns Gmbh*, 2014 WL 900915, at *3 n.4 (S.D. Ind. Mar. 6, 2014); *Herff Jones, LLC v. Flippin*, 2017 WL 9856740, at *1 (S.D. Ind. Dec. 8, 2017) (same).

Mr. Sabag's complaint about the Magistrate Judge's failure to articulate the legal standard for a stay is contradicted by the briefing in this case. In the short time between Mr. Windhorst's new counsel appearing in this case and the Magistrate Judge's Sanctions Order, both parties have filed motions for a stay: Mr. Sabag filed an "emergency" motion to stay the parties' arbitration (Doc. 122) whereas Mr. Windhorst has filed his Motions to Vacate and/or Stay (Doc. 115, Doc. 116) and an Administrative Interim Stay Motion (Doc. 117).[10] With respect to Mr. Windhorst's Motions to Vacate and/or Stay, Mr. Windhorst cited the legal standard from *Joyner* (and a substantially similar three-factor standard from *Irving Materials*). Doc. 115 at 12; Doc. 116 at 10.

---

[10]   After the Sanctions Order, Mr. Windhorst also filed an Expedited Motion to Stay Sanctions (Doc. 144).

In his opposition to Mr. Windhorst's Motions to Vacate and/or Stay, Mr. Sabag did not take issue with Mr. Windhorst's articulation of the applicable legal standard for a stay. *See* Doc. 126 at 37 (agreeing that "[d]istrict courts have inherent power to control their docket and enjoy broad discretion when determining whether to stay proceedings" and citing to the same three-factor standard articulated in *Irving Materials*). And in Mr. Sabag's own emergency motion for a stay of the arbitration, Mr. Sabag never cited any legal standard for a stay. *See generally* Doc. 126. Moreover, Mr. Sabag's Objections cite to a three-factor standard that does not require a showing of irreparable harm. Doc. 142 at 17. Mr. Sabag cannot credibly criticize the Magistrate Judge for not articulating the applicable legal standard (for an issue entirely within the Court's discretion) when not only Mr. Sabag failed to do so himself but also apparently agreed with Mr. Windhorst's articulation of the applicable legal standard.

> **b.** **The Emergency Arbitrator's findings on irreparable harm, which Mr. Sabag overstates, do not preclude the Court from staying this proceeding pending arbitration.**

Mr. Sabag spends several pages of his Objections discussing the Emergency Arbitrator's finding that Mr. Windhorst did not establish in the emergency ICDR arbitration that he would definitively suffer irreparable harm if this Court permitted Mr. Sabag to immediately depose Mr. Windhorst. Doc. 142 at 5, 19-21. Although Mr. Windhorst disagrees with the Emergency Arbitrator, who failed to appreciate the unique circumstances posed by permitting a § 1782 applicant to take a deposition of the putative target of a foreign criminal investigation, Mr. Sabag's argument that a stay of the arbitration was erroneous due to the Emergency Arbitrator's irreparable harm determination is legally baseless and should be rejected by this Court.

As noted below, *infra* § IV.3.c, courts are required to enter a stay pending arbitration of an arbitrable dispute under section 3 of the FAA and, even if mandatory arbitration is not required, the court may still enter a stay in its discretion. Irrespective of which standard applies, neither

standard requires the party seeking to stay litigation in favor of arbitration to establish irreparable harm. A stay under 9 U.S.C. § 3 is mandatory if there is an arbitrable dispute, and whether a dispute is arbitrable does not turn on whether the moving party is irreparably harmed. *See, e.g.*, *Am. Laser Skincare, LLC v. Morgan*, 2013 WL 1679518, at *3 (N.D. Ill. Apr. 17, 2013) ("Once the court is satisfied that the dispute before it is arbitrable, the court must stay the claim pending arbitration."). Likewise a discretionary stay considers, but does not require, *inter alia*, "the hardship and inequity to the moving party if the action is not stayed," *Joyner*, 2007 WL 9751846, at *1. As such, courts routinely grant discretionary stays without considering irreparable harm. *See, e.g.*, *Nelson v. Bayer Healthcare Pharms., Inc.*, 2015 WL 5098904, at *1 (N.D. Ind. Aug. 31, 2015) (granting motion to stay where "there [was] no suggestion that a stay would prejudice either party," "[a] stay will conserve judicial resources by avoiding duplicative litigation of common issues, and it also may prevent inconsistent rulings on the common issues."); *Azar v. Merck & Co.*, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) (granting motion to stay because "considerations of judicial economy weigh[ed] in favor of granting the requested stay.")

In any event, Mr. Sabag's reliance on the Emergency Arbitrator's irreparable harm analysis is misplaced and readily distinguishable. At the outset, the Emergency Arbitrator stated he was "not convinced that a federal judge's order to sit for a deposition can be the basis for an irreparable injury finding *on an emergency application for relief in an arbitration*." Doc. 135-1 ¶ 67 (emphasis added). Thus, the Emergency Arbitrator did not hold, as Mr. Sabag suggests (Doc. 142 at 18-20), Mr. Windhorst cannot establish irreparable harm in any context (e.g., in a motion to stay "pending appeal").

Moreover, the Emergency Arbitrator considered two forms of irreparable harm to Mr. Windhorst arising from a potential deposition here: "a) by providing testimony that itself harms

his reputation, or that increases the possibility of that UK prosecutors will commence or win conviction in the as-yet non-existent UK criminal proceeding; or b) by invoking his right against self-incrimination and refusing to answer questions, which itself will irreparably injure his reputation." Doc. 135-1 ¶ 66. The Emergency Arbitrator's analysis of both points was the unfortunate weak area of his otherwise well-reasoned Interim Award.

With respect to first point, the Emergency Arbitrator relied on *In re Cierco Noguer*, 2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) (cited by Mr. Sabag at Doc. 142 at 18-19) and other cases for the proposition that "[c]reating or producing evidence that perhaps should not exist or be produced" is not irreparable harm. Doc. 135-1 ¶ 69. Yet the Emergency Arbitrator overlooked Mr. Windhorst's argument that all of the cases holding there is no irreparable harm are in the context of producing *documents*. *See, e.g.*, *In re Cierco Noguer*, 2019 WL 1034190, at *4 (holding respondent "fail[ed] to establish that it will be irreparably injured if it is forced to disclose the requested material before it has a chance to appeal the Court's decision" and citing cases involving production of documents); *In re SPS I Fundo De Investimento De Acoes – Investimento No Exterior*, 2023 WL 375555, at *1 n.4 (S.D.N.Y. Jan. 24, 2023) (finding no irreparable harm where § 1782 request only sought documents and citing cases similarly finding no irreparable harm in the context of document production). Producing documents, however, is distinct from sitting for a deposition (let alone a deposition with multi-jurisdictional privilege implications) because documents can generally be clawed back if later deemed to have been wrongly produced. *See, e.g.*, *Scott v. State Farm Fire & Cas. Co.*, 2016 WL 10459790, at *1 (S.D. Ind. Sept. 12, 2016) (granting motion to claw back produced documents); *but see In re Martinez Sampedro*, 2020 WL 1158701, at *3 (D. Conn. Jan. 16, 2020) (granting in part motion to stay § 1782 document discovery pending appeal insofar as applicant was prohibited from disclosing documents to the

foreign tribunal as "irreparable harm [] [wa]s likely to occur from disclosure of documents . . . which [could not] be clawed back.") (emphasis added).[11]

Turning to the second assertion of irreparable harm (the irreparable injury to reputation associated with invoking the right against self-incrimination and refusing to answer questions), the Emergency Arbitrator did not reach the correct legal conclusion, likely because (a) it was possible that the Court would stay the Deposition Order, and (b) he issued an opinion within 3 days of the hearing on Mr. Windhorst's Emergency Application such that he did not have the benefit of the record before this Court. Specifically, the Emergency Arbitrator held "[s]peculation as to whether a deposition 'may carry legal consequences' is not proof of irreparable injury, though, and Mr. Windhorst provides no authority, from New York or the United Kingdom or anywhere, that 'taking the Fifth' during a deposition is sufficient risk of irreparable injury to justify a stay." Doc. 135-1 ¶ 75. But Mr. Sabag's requested deposition of Mr. Windhorst almost certainly will carry legal consequences. Indeed, Mr. Sabag expressly acknowledges so in his Supplementary Request. *See* Doc. 98 at 12 ("[T]he British courts (and/or prosecutor) may, in various circumstances, infer guilt against a suspect who refuses to answer questions."). This is further confirmed by the Declaration of Julianne Hughes Jennett, Doc. 115-4 ¶ 21, which Mr. Windhorst did not submit in the Emergency Arbitration. Ms. Hughes Jennett explains not only the legal consequences associated with the invocation of the English privilege against self-incrimination, *id.* ¶¶ 21-22, 25, but also

---

[11]   To be sure, the Emergency Arbitrator was correct that "Mr. Windhorst's counsel cannot identify any case in which irreparable injury was thought to arise from deposition taken pursuant to Section §1782," Doc. 135-1 ¶ 70, but that is because there appears to be no court decision since the enactment of § 1782 where a court has permitted an applicant to depose the putative target/defendant of a foreign criminal proceeding. This simply underscores Mr. Windhorst's arguments (Doc. 143 at 24-26) that the Magistrate Judge committed significant legal error in granting the Supplementary Request.

how the U.K. authorities identified by Mr. Sabag could, if they wished, compel Mr. Windhorst's testimony. *Id.* ¶¶ 5-15.

Ultimately, although not required for the Court to enter a stay, Mr. Windhorst has established he will be irreparably harmed if Mr. Sabag is allowed to depose him.

### c.   The Magistrate Judge correctly stayed the Deposition Order pending arbitration.

The Magistrate Judge did not clearly err in granting Mr. Windhorst's alternative motion to stay the Deposition Order pending the parties' ICDR arbitration.  Indeed, even if the Court were to review *de novo* the Magistrate Judge's decision, the result would be the same:  a stay pending arbitration.

In Mr. Windhorst's Motion to Vacate and/or Stay, Mr. Windhorst identified the following legal test to determine whether a stay is warranted pending arbitration:

> Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory"). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).
>
> …
>
> Whether to stay the litigation for claims not covered by the arbitration agreement is a matter of the court's discretion. *Irving Materials, Inc. v. Zurich Am. Ins. Co., et al.*, No. 1:03-cv-0361-SEB-TAB, 2008 WL 1971468, at *2 (S.D. Ind. May 5, 2008) (exercising discretion to grant a motion to stay pending an arbitration proceeding). This Court uses three factors to determine if a stay is warranted: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court." *Id.; see also Joyner v. Tyson Foods, Inc.*, No. 1:07-CV-0141-LJM-TAB, 2007 WL 9751846, at *1 (S.D. Ind. May 3, 2007) (considering "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving

party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation" in granting a stay).

Doc. 115 at 11-12.

Applying either the three-part test in *Zurich Am. Ins.* to stay litigation and compel arbitration or the discretionary three-factor inquiries set forth in *Irving Materials* or *Joyner*, it is clear a stay pending resolution of arbitration is warranted.

*Zurich Am. Ins.* **Test:** As explained in detail in Mr. Windhorst's Motions to Vacate and/or Stay (*see* Doc. 115 at 23-26, Doc. 116 at 23-26); *see also* Doc. 132-1 at 39-40), compelling Mr. Sabag to arbitrate and entering a stay pending arbitration is warranted because (1) the Settlement Agreement includes a written agreement to arbitrate (Doc. 118-1 ¶ 13); (2) Mr. Windhorst's claim for breach of the Settlement Agreement plainly falls within the Settlement Agreement's arbitration clause, which applies to "[a]ny issue or dispute relating to the creation, execution, interpretation, performance, or breach of this [Settlement] Agreement" (*id.*); and (3) Mr. Sabag continues to resist arbitration by continuing to litigate and contesting the arbitrator's jurisdiction.

*Irving Materials / Joyner* **Test:** As explained in detail in Mr. Windhorst's Motions to Vacate and/or Stay (*see* Doc. 115 at 26-28, Doc. 116 at 26-27), even if the Court applies the standard for a discretionary stay, each of the discretionary stay factors weigh in favor of stay here: (1) Mr. Sabag is not disadvantaged by a stay;[12] (2) Mr. Windhorst will face hardship if forced to litigate a case and sit for a deposition in a proceeding he contends Mr. Sabag is contractually

---

[12] Mr. Sabag claims for the first time he has been prejudiced by the stay because "Mr. Sabag has incurred substantial costs litigating on two fronts, here and in the arbitration." Doc. 142 at 18. Any prejudice to Mr. Sabag from dual-front litigation is because of his refusal to dismiss this case in accordance with his contractual obligations, not because of any stay. If anyone is prejudiced by simultaneous litigation and arbitration, it is Mr. Windhorst. Indeed, in the arbitration Mr. Windhorst specifically seeks his attorneys' fees spent in this case post-February 15, 2023 as damages for Mr. Sabag's breach of contract. Doc. 123-5 ¶¶ 76, 90-92.

obligated to dismiss; and (3) the ICDR arbitration may resolve this proceeding, thereby streamlining the issues and reducing the burden on the parties and the Court.

Ultimately, the Magistrate Judge's decision to stay discovery pending the ICDR arbitration was the correct decision. Whether this Court reviews that decision *de novo* or for clear error the result is the same: The Deposition Order should remain stayed pending the resolution of the ICDR arbitration, and Mr. Sabag's Objections should be overruled.

DATED:  May 22, 2023

*/s/ Ann O'Connor McCready*
Ann O'Connor McCready, Atty. No. 32836-53
Taft Stettinius & Hollister LLP
One Indiana Square, Ste. 3500
Indianapolis, IN 46204
(317) 713-3500
amccready@taftlaw.com

*/s/ Lucas V.M. Bento*
Lucas V.M. Bento (New York Bar No. 4907986)
lucasbento@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave. 22d Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

Gavin S. Frisch (Mass. Bar No. 704216)
gavinfrsich@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Ste. 520
Boston, MA 02199
Telephone: (617) 712-7100
Fax: (617) 712-7200

*Attorneys for Lars Windhorst*

**CERTIFICATION OF SERVICE**

I hereby certify that on May 22, 2023, a copy of the foregoing Lars Windhorst's Response to Applicant Eli Sabag's Objections to Magistrate Judge's Order on Show Cause Hearing and Pending Motions (Doc. 141) was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.


*/s/* Ann O'Connor McCready
Ann O'Connor McCready