**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re:<br>The Application of:<br><br>ELI SABAG, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Case No.: 1:19-mc-00084-JPH-TAB |

**LARS WINDHORST'S REPLY IN SUPPORT OF HIS EXPEDITED MOTION FOR STAY OF SANCTIONS PENDING RESOLUTION OF OBJECTIONS**

**I.  Mr. Windhorst identified the applicable legal standard.**

In his Motion (Doc. 144 at 2,4), Mr. Windhorst cited to *Joyner v. Tyson Foods, Inc.*, 2007 WL 9751846, at *1 (S.D. Ind. May 3, 2007) for the three factors courts consider to determine whether a stay is warranted. Those factors are "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation[.]" *Id.*[1]

In his Opposition (Doc. 147 at 1-2), Mr. Sabag argues the aforementioned legal standard does not apply because "*Joyner* involved a stay of a 'proceeding' based on this Court's inherent authority to manage its own docket" whereas Mr. Windhorst "seek[s] a stay of a payment obligation 'pending appeal' which requires that Mr. Windhorst show, *inter alia*, that he would likely prevail on appeal." Setting aside the fact Mr. Windhorst seeks a stay pending his Objections rather than an appeal,[2] this argument fails for several reasons.

---

[1]  Mr. Windhorst also cited to *Joyner* for this three-factor inquiry in the legal standard sections of his Motions to Vacate related to his alternative motion for a stay pending resolution of the ICDR arbitration.  *See* Doc. 115 at 12; Doc. 116 at 10.

[2]  Mr. Sabag provides no explanation as to why Rule 72 objections should be treated like an appeal.  That is presumably because they should not be so treated – a notice of appeal, unlike

1

Mr. Sabag has acknowledged that the Court has already exercised its inherent authority to stay Mr. Sabag's supplemental request for discovery. *See id.* at 1. That Mr. Windhorst is requesting this Court to enter an interim stay of sanctions pending resolution of his Rule 72(a) Objections, as opposed to a deposition pending the resolution of a related arbitration proceeding, has no bearing on whether this Court has inherent authority to enter a stay.

Moreover, Mr. Sabag's argument regarding the applicable legal standard elevates form over substance. Mr. Sabag's proposed legal standard is, for all intents and purposes, relatively similar to the standard articulated in *Joyner* insofar as both standards consider (i) the prejudice to the non-moving party, (ii) the harm to the moving party, and (iii) the public interest.[3] Thus, it is no surprise courts have applied the factors cited by Mr. Windhorst to determine whether a stay is warranted pending an appeal. *See, e.g.*, *Woodman's Food Mkt., Inc. v. Clorox Co.*, 2015 WL 4858396, at *2 (W.D. Wis. Aug. 13, 2015) (in adjudicating motion to stay pending interlocutory appeal of a Magistrate Judge's final decisions to the Seventh Circuit, considering: (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the

---

objections, divests the district court of jurisdiction. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 731 (7th Cir. 2001). A stay pending resolution of Rule 72 objections is squarely and wholly within the district court's purview and inherent authority to manage its docket.

[3] Specifically, the three stay factors set forth in *Joyner* generally track the non-likelihood of success on the merits factors required for a preliminary injunction. One important distinction is that, with respect to the harm to the moving party, the preliminary injunction standard requires a showing of irreparable harm, *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) ("A finding of irreparable harm absent an injunction 'is a threshold requirement for granting a preliminary injunction.'"), whereas the motion for a stay standard more broadly considers, but does not require, hardship and inequity. *See, e.g.*, *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 992 (C.D. Ill. 2011) (granting a stay where the parties did not "present much of an argument as to the potential hardships they might face" because the Court founds "considerations of judicial economy favor granting a stay of proceedings"); *Varnado v. W. Liberty Foods*, 2021 WL 545628, at *1-2 (N.D. Ill. Jan. 5, 2021) (citing the three-factor standard and granting the stay without finding harm by the movant).

trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court). Moreover, some courts have even granted stays pending resolution of objections without identifying either the three-factor *Joyner* standard or the four-factor preliminary injunction standard. *See, e.g.*, *Heckler & Koch, Inc. v. German Sport Guns Gmbh*, 2014 WL 900915, at *3 n.4 (S.D. Ind. Mar. 6, 2014) (granting motion to stay discovery pending resolution of Rule 72 objections without articulating the applicable legal standard for a stay); *Herff Jones, LLC v. Flippin*, 2017 WL 9856740, at *1 (S.D. Ind. Dec. 8, 2017) (same).[4]  Thus, this Court should apply the three-factor standard articulated in *Joyner* to determine whether a stay is warranted here.

**II.     Mr. Windhorst has established a stay is appropriate under Mr. Sabag's proposed legal standard.**

Assuming *arguendo* Mr. Sabag is correct that the four-factor test for a preliminary injunction applies here, Mr. Windhorst readily meets that showing.

First, Mr. Windhorst has made a strong showing he is likely to succeed on the merits. Mr. Windhorst's merits arguments are explained in detail in Mr. Windhorst's Rule 72(a) Objections. *See* Doc. 143. Tellingly, Mr. Sabag does not argue Mr. Windhorst is not likely to prevail on the issues actually raised in Mr. Windhorst's Rule 72(a) Objections—he solely argues Mr. Windhorst cannot show a likelihood of success because Mr. Windhorst "made a choice to ignore this Court in favor of other proceedings." Doc. 147 at 3. First, Mr. Sabag's uncited statement is factually incorrect—Mr. Windhorst's declaration explains he did not ignore this Court in favor of other proceedings but rather focused on resolving his liquidity issues to pay Mr. Sabag (Doc. 118 [Windhorst Decl.] ¶¶12-19), which would have resolved this proceeding. But more importantly,

---

[4] Indeed, *Herff Jones*, despite not identifying the applicable legal standard, granted a stay based on the factors articulated in *Joyner*. *See* 2017 WL 9856740, at *1 (S.D. Ind. Dec. 8, 2017) (granting motion to stay discovery pending resolution of Rule 72 objections where moving party argued a stay was "necessary to avoid undue burden or expense").

Mr. Windhorst did not object to the Magistrate Judge's Sanctions Order (Doc. 141) insofar as it denied Mr. Windhorst's excusable neglect argument under Rule 60(b)(1). Mr. Windhorst's Rule 72(a) Objections focus on the Magistrate Judge's determinations related to waiver, subject matter jurisdiction, sanctions, and Mr. Windhorst's arguments for vacatur under Rules 55, 60(b)(5), and 60(b)(6). As such, Mr. Windhorst has made a strong showing he is likely to prevail on the merits with respect to the issues Mr. Windhorst has actually objected to.

Second, as Mr. Windhorst expressly argued in his Motion (Doc. 144 at 2-3), he is likely to suffer irreparable reputational harm absent a stay of sanctions. Mr. Sabag does not dispute reputational harm is a classic form of irreparable harm, nor does he address any of Mr. Windhorst's cases. If anything, Mr. Sabag's continued attacking of Mr. Windhorst's reputation, *see* Doc. 147 at 4, further underscores that the harm to Mr. Windhorst absent a stay is irreparable.

To that end, Mr. Sabag is simply incorrect to assert that "[a]ny reputational harm that may arise for Mr. Windhorst when being forced to pay a sanctions award was brought about by Mr. Windhorst's own actions in failing to comply with this Court's order for his deposition." Doc. 147 at 3. Although Mr. Sabag may have a point if Mr. Windhorst had not paid the settlement funds, there is no dispute Mr. Windhorst has paid Mr. Sabag in full. Doc. 126 [Sabag's Opp. to Motions to Vacate and/or Stay] at 19 (acknowledging Mr. Sabag has received the payment that included the full settlement amount plus interests, costs, and Mr. Sabag's BVI legal fees); Doc. 142 [Sabag's Rule 72(a) Objections] at 10 (acknowledging Mr. Windhorst "pa[id] the full amounts that Mr. Sabag was owed"); Doc. 139 [Show Cause Hearing Transcript] at 29:6-8 (Mr. Sabag's counsel acknowledging Mr. Sabag is "keeping the money and still wanting the 1782 relief"). As such, under the parties' Settlement Agreement, Mr. Sabag was obligated to dismiss this case before the Magistrate Judge issued the Sanctions Order. Doc. 118-1 [Settlement Agreement] ¶ 5. In other

4

words, there would be no sanctions if Mr. Sabag had complied with his contractual obligations. Mr. Windhorst should not be penalized in light of Mr. Sabag's breach, which Mr. Sabag has leveraged to cause Mr. Windhorst further reputational harm. Thus, Mr. Windhorst has established he will suffer irreparable injury absent a stay.

Third, as also explained in Mr. Windhorst's Motion (Doc. 144 at 2), a stay will not substantially prejudice Mr. Sabag. Mr. Sabag does not dispute the immediate payment of "extra costs" are not important to Mr. Sabag. *Id.* Rather, all Mr. Sabag claims is that Mr. Windhorst's statement that Mr. Sabag is contractually bound to dismiss, release, and not pursue this proceeding is "baseless[]." Doc. 147 at 4. Tellingly, Mr. Sabag provides no support for his own baseless statement that Mr. Windhorst's position is baseless. Again, the Settlement Agreement is clear: Mr. Sabag became obligated to, *inter alia*, dismiss this proceeding within 5 days of receiving payment, Doc. 118-1 ¶ 5, and Mr. Sabag does not dispute Mr. Windhorst has made that payment. Doc. 126 at 19; Doc. 142 at 10; Doc. 139 at 29:6-8. Indeed, as the Magistrate Judge recognized (Doc. 141 at 9), the Emergency Arbitrator, who "did a pretty good job," (Doc. 139 at 36:6), agreed with Mr. Windhorst's interpretation. Doc. 135-1 ¶¶ 43-44 (Mr. Sabag "elected to enforce the Settlement Agreements and, under New York law, his obligations under those same agreements remained" and "[a]mong Mr. Sabag's obligations were his obligations to have disputes arising from alleged breach of the Settlement Agreements resolved in arbitration, not litigation, and to withdraw his §1782 Litigation.").[5]

---

[5] Mr. Windhorst, contrary to Mr. Sabag's assertion (Doc. 147 at 5), has never suggested the Court has ruled Mr. Sabag is bound to dismiss this proceeding. Mr. Windhorst has consistently maintained that question is for the arbitrator. *See, e.g.*, Doc. 139 at 25:17-20 ("But for us to go through that position now or be sanctioned now *while the arbitration is trying to resolve whether Mr. Sabag ought to dismiss*; and by the way, Mr. Sabag set in motion this entire proceeding, right?") (emphasis added).

Mr. Sabag also contends Mr. Windhorst's arguments regarding the lack of prejudice to Mr. Sabag are premised on Mr. Sabag being able to "trust Mr. Windhorst's promise to pay" and that Mr. Windhorst is "now fighting his obligation to pay after previously suggesting a willingness to pay." Doc. 147 at 5. Setting aside the fact Mr. Sabag does not explain how his lack of trust in Mr. Windhorst is prejudicial (it isn't: Mr. Sabag cannot dispute he has been paid in full), his argument is misleading. To be sure, Mr. Windhorst *voluntarily* offered to compensate Mr. Sabag for his legal fees incurred in connection with setting the deposition and briefing his OSC Motion (Doc. 107) as a gesture of goodwill to secure dismissal of this proceeding and to avoid further litigation and arbitration. Doc. 119 [Bento Decl.] ¶¶ 8-9. But Mr. Windhorst never agreed to be sanctioned. Indeed, Mr. Windhorst moved to vacate the OSC Order, Doc. 116, and repeatedly stated at the April 11, 2023 show cause hearing he opposes any sanctions. Doc. 139 at 25:10-12 ("we would respectfully request the Court to deny sanctions today and, and to vacate the prior order"); 26:3-6 ("Mr. Windhorst, on the other hand, not only is he going to be prejudiced to sit for a deposition or suffer sanctions before this Court, but there is the risk of inconsistent decisions in the arbitration and in this court."); 42:14-16 ("this Court should exercise its discretion to deny not just the 1782 but the sanctions altogether."). Thus, Mr. Windhorst's opposition to sanctions is entirely consistent with his prior position, and Mr. Sabag's argument that Mr. Windhorst cannot be trusted to make payment (when he has already done so) simply lends further credence to Mr. Windhorst's arguments that (i) sanctioning Mr. Windhorst would result in irreparable reputational harm, and (ii) a short stay will not unduly prejudice Mr. Sabag.

Finally, and as explained in Mr. Windhorst's Motion (Doc. 144 at 3-4), a stay would conserve judicial resources related to adjudicating Mr. Sabag's motion for fees and costs. Mr. Sabag does not dispute this—indeed, in his Unopposed Motion for an Extension of Time, Mr.

6

Sabag recognizes that delaying adjudication of his request for fees and costs "would [] conserve judicial and the parties' resources by deferring the need to fully brief the issue of fees and costs until after the Court's ruling on Mr. Windhorst's Motion to Stay Sanctions." Doc. 145 ¶ 6. Mr. Sabag cannot reasonably dispute that the public interest is served by the conservation of judicial resources. *See, e.g.*, *Ellis*, 798 F. Supp. 2d at 992 ("[T]he preservation of judicial resources and the prevention of inconsistent rulings is, of course, a compelling public interest."); *United States ex rel. Chepurko v. E-Biofuels, LLC*, 2014 WL 4216049, at *1-2 (S.D. Ind. Aug. 25, 2014) (weighing public interest factor in favor of stay because "the public has a financial interest as taxpayers in preserving judicial economy"). Moreover, Magistrate Judge Baker has ordered the parties attend a settlement conference on June 14 2023, (Doc. 148), which further supports Mr. Windhorst's request for a stay so as to conserve the resources of this Court and the parties. *See, e.g.*, *Chico v. Dunbar Armored, Inc.*, 2017 WL 4476334, at *3 (S.D. Fla. Oct. 6, 2017) (granting motion to stay discovery pending settlement conference to "allow for the parties to mediate th[e] case and conserve expenses for the benefit of both parties."); *Bowman v. 71 at Tulsa Hills Apartments, L.P.*, 2019 WL 3938479, at *2 (N.D. Okla. Aug. 20, 2019) (granting motion to stay discovery pending settlement conference due to "considerations of efficiency, judicial economy, and the public interest"). Thus, the public interest factor weighs in favor of a stay.[6]

---

[6] Mr. Sabag's reliance on *Central Illinois Carpenters Health & Welfare Trust Fund v. Con-Tech Carpentry, LLC*, 806 F.3d 935, 937-38 (7th Cir. 2015) is misplaced. Doc. 147 at 6. Mr. Windhorst did not unilaterally decide to continue this suit—rather, Mr. Sabag has insisted on taking Mr. Windhorst's deposition despite his obligation to dismiss this case. That this case is still being litigated is entirely because of Mr. Sabag, and Mr. Windhorst is seeking his attorneys' fees incurred after February 15, 2023 as damages in the ICDR arbitration.

For the foregoing reasons, the Court should stay the Sanctions Order to the extent it imposes sanctions on Mr. Windhorst until this Court resolves Mr. Windhorst's contemporaneously filed Rule 72(a) Objections.

### III.     The Sanctions Order is a dispositive ruling.

Finally, Mr. Sabag jumps the gun to argue the Sanctions Order is a non-dispositive ruling. Doc. 147 at 6-7. Mr. Windhorst's argument regarding the dispositive nature of a sanctions rulings is one of his objections to the Magistrate Judge's Sanctions Order, Doc. 143 at 33-34, and is only tangentially related to Mr. Windhorst's arguments in favor of a stay. *See* Doc. 144 at 3 (noting sanctions exacerbate irreparable harm to Mr. Windhorst in the form of reputational harm and mentioning the Magistrate Judge's lack of authority in imposing the sanctions in passing). Thus, even if Mr. Sabag ultimately prevails on this point, it does not change the weighing of the stay factors.

In any event, Mr. Windhorst submits his position regarding the dispositive nature of Rule 37 sanctions is the correct one. There is no dispute the issue has not been addressed by the Seventh Circuit, Doc. 147 at 6 (citing *Annie Oakley Enters. v. Amazon.com, Inc.*, 2021 WL 2373779, *8 (S.D. Ind. June 10, 2021)), and the cases cited by Mr. Sabag (Doc. 147 at 6-7) held Rule 37 sanctions were non-dispositive rulings because the parties in those cases agreed to clear error review. *Annie Oakley*, 2021 WL 2373779, at *8 n.2 (noting the "Plaintiffs invite[d] the Court to apply" the clearly erroneous or contrary to law standard of review of sanctions ruling); *Davis v. Indiana Packers Corp.*, 2022 WL 15739240, at *1 n.1 (N.D. Ind. Oct. 28, 2022) ("The parties do not dispute that [the clearly erroneous or contrary to law] standard applies to my review of Magistrate Judge Rodovich's decision awarding Indiana Packers' requested attorney's fees."). Moreover, although other Circuits have agreed with Mr. Sabag's position, the Seventh Circuit is

likely to agree with Mr. Windhorst. In *Alpern v. Lieb*, the Seventh Circuit held that a district judge may not refer a dispute regarding sanctions to a magistrate judge under § 636(b)(1)(A) because the grant or denial of a request for sanctions constitutes a dispositive matter. 38 F.3d 933, 935 (7th Cir. 1994) ("The power to award sanctions, like the power to award damages, belongs in the hands of the district judge. . . . . A district judge may refer a dispute about sanctions to a magistrate judge for a recommendation under § 636(b)(1)(B) or § 636(b)(3), but the magistrate judge may not make a decision with independent effect."). And in *Retired Chicago Police Ass'n v. City of Chicago*, the Seventh Circuit affirmed *Alpern*, explicitly stating that the Court's analysis in *Alpern* "encompassed *all* sanctions requests." 76 F.3d 856, 869 (7th Cir. 1996) (emphasis added). Under Seventh Circuit precedent, Mr. Windhorst has the meritorious position.

The statutory language in 28 U.S.C. § 636, which is implemented by Rule 72, *Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 426 (N.D. Ill. 2012), confirms that the imposition of sanctions here is dispositive. Section 636(b)(1)(A) provides that a district court judge reviews a magistrate judge's decision on most "pretrial matter[s]" under the clearly erroneous or contrary to law standard unless the issue is functionally equivalent to one of the exceptions articulated that section. Those exceptions may only be decided by a magistrate judge through a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A)-(B); Fed. R. Civ. P. 72(b). Tellingly, the final exception listed in § 636(b)(1)(A), "involuntarily dismiss an action," is a quintessential (albeit more drastic) form of Rule 37 sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)(v) (listing "dismissing the action or proceeding in whole or in part" as a potential sanction that may be imposed for not obeying a discovery order); *see also Mintel Int'l Grp. v. Neergheen*, 636 F. Supp. 2d 677, 690 (N.D. Ill. 2009) ("It is well established that Rule 37 permits the award of sanctions *with dispositive*

9

*effects*; monetary sanctions, the striking of claims and defenses; and default judgment.") (emphasis added) (citation omitted).

Finally, common sense supports Mr. Windhorst's position that a ruling on sanctions is dispositive. After the Court addresses whether sanctions should be imposed, the issue is conclusively resolved (absent an appeal). *See, e.g.*, *Cleversafe*, 287 F.R.D. at 431 ("The instant [Rule 37] motion seeks monetary sanctions, and that is a dispositive matter under Seventh Circuit precedent. That is the end of the inquiry.").

Thus, Mr. Windhorst submits that the Magistrate Judge could only recommend to this Court whether Mr. Windhorst should be sanctioned.

\* \* \* \* \*

WHEREFORE, Mr. Windhorst respectfully requests this Court to issue an order staying the Sanction Order pending resolution of Mr. Windhorst's contemporaneously filed Rule 72(a) Objections.

DATED:  May 22, 2023  */s/ Ann O'Connor McCready*
Ann O'Connor McCready, Atty. No. 32836-53
Taft Stettinius & Hollister LLP
One Indiana Square, Ste. 3500
Indianapolis, IN 46204
(317) 713-3500
amccready@taftlaw.com

*/s/ Lucas V.M. Bento*
Lucas V.M. Bento (New York Bar No. 4907986)
lucasbento@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave. 22d Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

Gavin S. Frisch (Mass. Bar No. 704216)
gavinfrsich@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Ste. 520
Boston, MA 02199
Telephone: (617) 712-7100
Fax: (617) 712-7200

*Attorneys for Lars Windhorst*

## CERTIFICATION OF SERVICE

I hereby certify that on May 22, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/* Ann O'Connor McCready